# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: BEECH-NUT NUTRITION COMPANY BABY FOOD LITIGATION | Master File No. 1:21-CV-00133-DNH-CFH |
| This Document Relates To:<br>ALL ACTIONS | **CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Jeremy Cantor, Rebecca Abbott, Erin Abdoo, Christina Allgood (a/k/a Christina Holland), Xena Almquist, Elizabeth Austin, Emily Baccari, Alyssa Barb, Kelsey Blankenship, Amanda Boots, Olivia Boyer, Celia Bruno, Ana Butkus, Derrick Carr, Mayelin Carranza, Kaitlynn Carson, Samantha Clark, Melanie Cole, Adrianne Cooper, Sheila Curry, Erica Douglas, Nathan Edwards, Morgan Engebretsen, Albachiara Farci, Lisa Fisher, Natalie Francois, Jillian Geffken, Rebecca George, Charita Harrell, Jill Hayden, Sammi Hobdy, Malik Hockaday, Amanda Holmes, Heather Hyden, Shaylan Isaacs, Karleen Kozaczka, Tabitha Latteyer, Andrew Lohse, Heather Malaga, Elizabeth McDowell, Katherine McGibney, Kali McGlinch, LaToya McHenry, Christina Mitchell, Loukevia Moore, Brittney Moyer, Stephanie Norgaard, Corinthea Pangelinan, Robert Partello, Krishna Patel, Maurice Peterson, Amanda Rogers, Bridget Salopek, Haley Sams, Vito Scarola, Amanda Schram, Liza Sike, Brandi Slabinski, Kinder Smith, Tamaya Stevenson, Porsche Stokes, Dillon Townzen, Brittany Wallace, Monique Warren, Jordan White, Natalie Williams, Amber Wright, Ashley Yates, and Christen Zulli ("Plaintiffs") on behalf of themselves and the Class and Subclasses of all others similarly situated defined below, bring this Consolidated Amended Class Action Complaint ("Complaint") against Defendant Beech-Nut Nutrition Company ("Defendant" or "Beech-Nut") for its breaches of warranties, fraud, negligent misrepresentations, and misleading, deceptive, unlawful, and unfair business practices concerning Beech-Nut's baby food products sold throughout the United States, including in this District,

which contain (or have a material risk of containing) certain toxic heavy metals. Plaintiffs seek both injunctive relief and damages on behalf of the proposed Class and Subclasses (as defined below) and allege the following based on (a) personal knowledge, (b) the investigation of counsel, and (c) information and belief.  Given the concealed nature of Beech-Nut's conduct, Plaintiffs believe that an opportunity to conduct discovery will reveal further support for Plaintiffs' allegations.

## NATURE OF THE ACTION

1.      Toxic heavy metals, such as arsenic, lead, cadmium, and mercury, have no health benefit.  In short, these toxic heavy metals are unfit for consumption. Both the U.S. Food and Drug Administration ("FDA") and the World Health Organization ("WHO") have declared toxic heavy metals dangerous to human health, particularly to infants and children, who are most vulnerable to its neurotoxic effects.

2.      Infants' developing brains are exceptionally sensitive to injury caused by toxic heavy metals and several developmental processes have been shown to be highly vulnerable to heavy metal toxicity.  Even low levels of exposure to toxic heavy metals can cause serious and often irreversible damage to brain development leading to permanent decreases in IQ, diminished future economic productivity, and increased risk of future criminal and antisocial behavior.

3.      Parents and other caregivers, including Plaintiffs and members of the Class and Subclasses, reasonably understood and believed that the baby food they purchased for their babies would be safe, healthy, and suitable for consumption by infants and young children. Alarmingly, they were wrong.

4.      On February 4, 2021, the United States House of Representatives Committee on Oversight and Reform's Subcommittee on Economic and Consumer Policy (the "House

Subcommittee") released a report entitled "Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury"[1] (the "Report").  According to the Report, several brands of baby food sold in the United States, including those sold by Beech-Nut, contain or have a material risk of containing elevated levels of toxic heavy metals.

5.      According to the Report, not only were there high levels of toxic heavy metals in Beech-Nut ingredients but Beech-Nut actually "used" such "tainted" ingredients in their baby foods.[2] The Report additionally found Beech-Nut's internal safety standards to be far more permissive than those of its competitors or "any existing regulatory standard."[3]

6.      On September 29, 2021, the House Subcommittee released a follow-up report ("Supplemental Report") entitled "New Disclosures Show Dangerous Levels of Toxic Heavy Metals in Even More Baby Foods."[4]

7.      The Supplemental Report explained that in June of 2021, public health officials in the State of Alaska conducted further testing of Beech-Nut Rice Cereal and found "dangerously high" levels of inorganic arsenic in "*all*" of the Beech-Nut Rice Cereal samples tested, leading Beech-Nut to institute a recall of certain rice cereal products.[5]

---

[1] *Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury*, Staff Report (the "Report"), Subcommittee on Economic and Consumer Policy of the Committee on Oversight and Reform, at 2, Feb. 4, 2021, https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (accessed February 24, 2021).

[2] Report, at 3-4.

[3] Report, at 37-38.

[4] *New Disclosures Show Dangerous Levels of Toxic Heavy Metals in Even More Baby Foods* Staff Report (the "Supplemental Report"), Subcommittee on Economic and Consumer Policy of the Committee on Oversight and Reform, September 29, 2021, available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/ECP%20Second%20Baby%20Food%20Report%209.29.21%20FINAL.pdf

[5] Supplemental Report, at 2.

8.     However, the House Subcommittee found that Beech-Nut's recall "appears to be incomplete," because there were still "dangerous levels of toxic inorganic arsenic in additional Beech-Nut infant rice cereal products that the company did not recall."[6]   Further, Beech-Nut continues to sell the vast array of its baby food products whose ingredients, as outlined below, contained (or are at material risk of containing) toxic heavy metals.

9.     Consumers lack the scientific knowledge necessary to determine whether Beech-Nut Baby Foods do in fact contain (or have a material risk of containing) toxic heavy metals or to ascertain the true nature of the ingredients and quality of Beech-Nut Baby Foods.   Reasonable parents and consumers, like Plaintiffs and the Classes, thus must and do rely on Beech-Nut to properly and fully disclose what Beech-Nut Baby Foods contain.   And reasonable parents and consumers trust manufacturers, like Beech-Nut, to sell baby food that is healthy, nutritious, suitable and safe for consumption, and free from harmful toxins and contaminants.   Parents and consumers certainly expect the food they feed their infants and toddlers to not have elevated levels of toxic heavy metals, which are known to have significant and dangerous health consequences. Beech-Nut labeled, packaged, and marketed Beech-Nut Baby Foods (defined below) as safe, healthy, and suitable for consumption by infants and young children and did not disclose the presence, and material risk, of heavy metals in those products.

10.     Astoundingly, while Beech-Nut touts its purported testing standards for the very heavy metal toxins that are contained at elevated levels in its Baby Foods because "the health and safety of your children is at the heart of what we do," the House Subcommittee found that Beech-Nut's internal safety standards were inadequate because they allowed levels of toxic heavy metals that far surpassed any regulatory standards.

---

[6] *Id.*

4

11.     Given the health risks associated with repeated exposure to toxic heavy metals, the presence of these substances in baby food is a material fact to consumers. No consumer would knowingly purchase baby foods that contain (or have a material risk of containing) elevated amounts of arsenic, lead, cadmium, or mercury.  Indeed, consumers, such as Plaintiffs and members of the Class and Subclasses, are unwilling to purchase baby food that contains (or has a material risk of containing) elevated levels of toxic heavy metals.

12.     Baby food that contains or materially risks containing heavy metals that bioaccumulate in infants and children, who generally cannot eat a balanced variety of different foods to minimize the impact of heavy metal bioaccumulation, is not what Plaintiffs and the Class and Subclasses bargained for and, in fact, is worthless.  The presence and risk of toxic heavy metals rendered the Beech-Nut Baby Foods unfit for their intended purpose and use, defective, and worthless, and denied consumers the benefit of their bargain.

13.     Yet, Beech-Nut knowingly sold baby foods containing (or having a material risk of containing) elevated levels of toxic heavy metals, and despite having actual knowledge of this fact, did not disclose the presence or risk of toxic heavy metals in its Beech-Nut Baby Foods to consumers (or the lack of adequate testing and safety standards).

14.     As a result of Beech-Nut's misleading, deceptive, unfair, and/or false business practices and breaches of warranties, at least tens of thousands of consumers paid for Beech-Nut Baby Foods that they thought were safe, healthy, nutritious, and suitable for consumption by their infants and young children, but which actually contained (or had a material risk of containing) toxic heavy metals.  At the same time, Beech-Nut profited from reasonable consumers who paid for Beech-Nut Baby Foods that both misrepresented and omitted material information as to the foods' true quality and value.  Beech-Nut continues to wrongfully induce consumers to purchase

Beech-Nut Baby Foods to this day.

15.     Accordingly, Plaintiffs bring this suit on behalf of themselves and a Class and Subclasses of similarly situated individuals seeking monetary and equitable relief resulting from Defendant's sale of Beech-Nut Baby Foods that contained (or had a material risk of containing) elevated levels toxic heavy metals.

## **THE PARTIES**

16.     Plaintiff Jeremy Cantor ("Plaintiff Cantor") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Colorado. Between 2020 and 2021, Plaintiff Cantor purchased several types of the Beech-Nut Baby Food Products from King Soopers grocery store in **Colorado** to feed his child, including but not limited to: Pouches (Apple, Peach & Strawberries), Classics Jars (Sweet Carrots; Sweet Peas; and Pear), Organics Jars (Pear), Organics Jars (Carrots), and Naturals Jars (Apple; and Sweet Potato; Apple & Kale; Mango; Apple, Pumpkin & Cinnamon; Pineapple, Pear, & Avocado; Sweet Corn & Green Beans; Apple, Cinnamon & Granola; Banana, Orange & Pineapple; Pear & Blueberries; and Peas, Green Beans & Asparagus).

17.     Plaintiff Rebecca Abbott ("Plaintiff Abbott") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Arkansas. Between 2020 and 2021, Plaintiff Abbott purchased several types of the Beech-Nut Baby Food Products from Walmart stores in **Arkansas** to feed her children, including but not limited to: Veggies Pouches (Zucchini Spinach & Banana, Squash Peas & Pear, and Carrot Zucchini & Pear), Fruities Pouches (Banana Apple & Strawberry, and Apple Peach & Strawberries), and Breakfast Pouches (Yogurt Banana & Mixed Berry). Plaintiff Abbott would be willing to purchase Beech-Nut's baby food

6

products in the future if they could be certain that they do not contain (or have a material risk of containing) heavy metals.

18.     Plaintiff Erin Abdoo ("Plaintiff Abdoo") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Arizona.  Between 2014 and 2017 and 2018 and 2020, Plaintiff Abdoo purchased several types of the Beech-Nut Baby Food Products from Walmart, Target, WinCo Foods, and Fry's stores in **Arizona** and **California** to feed her children, including but not limited to: Cereals (Single Grain Rice Cereal and Organic Oatmeal Cereal), Fruit & Veggie Melties (Banana Blueberry & Green Beans, Strawberry Apple & Yogurt, and Apple & Pumpkin), Fruit & Veggie Melties with Probiotics (Apple Carrot Mango & Yogurt), Fruity Oat Bars (Banana and Strawberry), Naturals Pouches (Banana Cinnamon & Granola, Banana Blueberries & Avocado, Banana Apple & Blueberries, Apple Pumpkin & Cinnamon, and Apple Mango & Spinach), Veggies Pouches (Squash Peas & Pear and Carrot Zucchini & Pear), Fruities Pouches (Pear Mango & Squash, Pear Banana & Raspberries, Banana Pear & Sweet Potato, Banana Apple & Strawberry, and Apple Sweet Potato & Pineapple), Breakfast Pouches (Yogurt Banana & Mixed Berry and Yogurt, Banana & Strawberry), Harvest Morning Pouches (Pear, Mango, Yogurt & Granola and Banana, Blueberries, Yogurt & Granola), Protein & Fiber Pouches (Pumpkin, Apple, Yogurt, Oats & Cinnamon), Favorite Flavor Pouches Variety Pack, Breakfast Pouches Variety Pack, Classics Jars (Sweet Carrots, Sweet Peas, Sweet Potato, Apples & Blueberries, Apple, Mango & Kiwi, Apple, Banana & Strawberries, Banana, Corn & Sweet Potato, Mixed Vegetables, Peach, Pear & Pineapple, Pear & Raspberries, Pear, and Squash), Harvest Dinners Jars (Chicken, Apple & Carrot, Chicken, Apple & Corn, and Turkey, Apple & Sweet Potato), Organics Jars (Sweet Potato, Apple Raspberries & Avocado, Apple, Banana Cinnamon & Granola, Carrots, Pumpkin, Apple, Pumpkin & Granola, Banana, Cinnamon &

Granola, Banana, Mango & Sweet Potato, Banana, and Butternut Squash & Sweet Corn), and Naturals Jars (Apple, Banana, Butternut Squash, Pear, Just Sweet Potatoes, Sweet Potato, Apple & Blackberries, Apple Pumpkin & Cinnamon, and Carrots, Sweet Corn & Pumpkin).

19.     Plaintiff Christina Allgood (a/k/a Christina Holland) ("Plaintiff Allgood") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Kentucky. Between 2020 and 2021, Plaintiff Allgood purchased several types of the Beech-Nut Baby Food Products from Walmart stores in **Kentucky** to feed her child, including but not limited to: Melties (Banana, Blueberry & Green Beans; and Strawberry, Apple & Yogurt), Bars (Banana & Pumpkin; and Strawberry), Pouches (Carrot, Apple & Pineapple; Banana, Cinnamon & Granola; Banana, Blueberries & Avocado; Banana, Apple & Blueberries; Apple, Pumpkin & Cinnamon; Zucchini, Spinach & Banana; Squash, Peas & Pear; Pumpkin, Zucchini & Apple; Pear, Mango & Squash; Pear, Banana & Raspberries; Peach, Apple & Banana; Banana, Pear & Sweet Potato; Banana, Apple & Strawberry; Apple, Sweet Potato & Pineapple; Apple, Peach, & Strawberries; Apple, Peach & Strawberries; Yogurt, Banana & Mixed Berry; Pear, Mango, Yogurt & Granola; Banana, Blueberries, Yogurt & Granola; Carrot, Apple & Sweet Potato; Pumpkin, Apple, Yogurt, Oats & Cinnamon; and Apple, Yogurt, Raspberries, Purple Carrot & Oats), Classics Jars (Sweet Carrots; Sweet Peas; Sweet Potato; Apples & Blueberries; Apple, Mango & Kiwi; Apple; Banana & Strawberries; Banana; Peach; Pear & Raspberries; Pear; and Squash), Organics Jars (Prunes; Sweet Potato; Apple, Kiwi & Spinach; Apple, Raspberries & Avocado; Apple; Banana, Cinnamon & Granola; Pumpkin; Apple, Pumpkin & Granola; Banana, Mango & Sweet Potato; Butternut Squash & Sweet Corn; Banana, Pumpkin & Rolled Oats; and Apple, Blueberries & Rolled Oats), and Naturals Jars (Butternut Squash; Apple & Blackberries; Apple, Pumpkin & Cinnamon; Beet, Pear & Pomegranate; Prunes; Pineapple, Pear & Avocado; Apple, Cinnamon & Granola; Banana,

8

Orange & Pineapple; Banana, Blueberries & Green Beans; Carrots, Sweet Corn & Pumpkin;

Guava, Pear & Strawberries; Pear & Blueberries; Banana, Pumpkin & Orange; Apple, Blueberries

& Ginger; and Carrot, Corn & Chickpea).

20.     Plaintiff Xena Almquist (Plaintiff "Almquist") is a natural person and is, and at all

times relevant hereto has been, a citizen and resident of the State of Alaska. Between 2018 and

2019, Plaintiff Almquist purchased several types of the Beech-Nut Baby Food Products from

Walmart and Fred Meyers stores in **Alaska** to feed her child, including but not limited to: Cereals

(Single Grain Rice Cereal), Crisps (Sweet Potato), Classics Jars (Sweet Carrots; Sweet Peas; Sweet

Potato; Apples & Blueberries; Apple, Mango & Kiwi; Apple; Banana & Strawberries; Banana;

Corn & Sweet Potato; Garden Vegetables; Mixed Vegetables; Peach; Pear & Pineapple; Pear &

Raspberries; Pear; Squash; Chicken & Chicken Broth; and Tuckey & Turkey Broth), Harvest

Dinners Jars (Chicken, Apple & Carrot; Chicken, Pear & Zucchini; Chicken, Apple & Corn; and

Turkey, Apple & Sweet Potato), Organics Jars (Sweet Potato; Apple, Raspberries & Avocados;

Apple; Banana, Cinnamon & Granola; Carrots; Pear; Apple, Pumpkin & Granola; Banana, Mango

& Sweet Potato; Butternut Squash & Sweet Corn; and Apple, Blueberries & Rolled oats), and

Naturals Jars (Apple; Banana; Butternut Squash; Carrots; Apple & Kale; Green Beans; Pear; Just

Sweet Potatoes; Mango; Sweet Potato; Apple & Blackberries; Apple, Pumpkin & Cinnamon;

Apple, Cinnamon & Granola; Carrots, Sweet Corn & Pumpkin; Guava, Pear & Strawberries;

Mango, Apple & Avocado; Pear & Blueberries; Banana, Pumpkin & Orange; Apple, Blueberries

& Ginger; Apple, Yogurt, Cinnamon & Oat; Mango, Carrot, Yogurt & Oat; Carrot, Corn &

Chickpea; and Stage 1, Variety Baby Food 16 Pack).

21.     Plaintiff Elizabeth Austin ("Plaintiff Austin") is a natural person and is, and at all

times relevant hereto has been, a citizen and resident of the State of South Carolina. Between 2007-

2019, Plaintiff Austin purchased several types of Beech-Nut Baby Food Products from Harris Teeter, Whole Foods, Kroger, Publix, Target, and Walmart stores in **South Carolina** and the Commonwealth of **Virginia** to feed her children including but not limited to: Fruit & Veggie Melties (Banana Blueberry & Green Beans, Strawberry Apple & Yogurt, and Apple & Pumpkin), Naturals Pouches (Banana Blueberries & Avocado and Banana Apple & Blueberries), Organics Jars (Prunes, Sweet Potato, Apple Raspberries & Avocado, Apple, Carrots, Pear, and Pumpkin), and Naturals Jars (Pear, Just Sweet Potatoes, Mango, and Apple & Blackberries).

22.     Plaintiff Emily Baccari ("Plaintiff Baccari") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Massachusetts. Between 2019 and 2021, Plaintiff Baccari purchased several types of the Beech-Nut Baby Food Products from Amazon and Target stores in **Massachusetts** to feed her children, including but not limited to: Bars (Banana; and Strawberry), Organics Jars (Apple, Kiwi & Spinach; Apple, Raspberries & Avocado; Banana, Cinnamon & Granola; Pear; Pear, Kale & Cucumber; Sweet Potato; Apple; Carrots; Pumpkin; Apple, Pumpkin & Granola; and Banana), and Naturals Jars (Apple & Blackberries; and Apple, Pumpkin & Cinnamon).

23.     Plaintiff Alyssa Barb ("Plaintiff Barb") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of West Virginia. Between 2003-2004, 2013-2014, 2018-2019, and 2020-2021, Plaintiff Barb purchased several types of the Beech-Nut Baby Food Products from Walmart and Food Lion stores in **West Virginia** to feed her children, including but not limited to: Fruit & Veggie Melties (Banana Blueberry & Green Beans, and Apple & Pumpkin), Baked Veggie Crisps (Sweet Potato), Naturals Pouches (Carrot Apple & Pineapple, Banana Cinnamon & Granola, Banana Blueberries & Avocado, Banana Apple & Blueberries, Apple Pumpkin & Cinnamon, Apple Mango & Spinach, and Apple & Kale), Veggies Pouches

(Zucchini Spinach & Banana, Squash Peas & Pear, Pumpkin Zucchini & Apple, and Carrot Zucchini & Pear), Fruities Pouches (Pear Apple & Banana, Banana Pear & Sweet Potato, and Banana Apple & Strawberry), Classics Jars (Sweet Carrot, Sweet Peas, & Sweet Potato), Organics Jars (Prunes, Sweet Potato, Apple, Banana Cinnamon & Granola, and Carrots, Pear, & Pumpkin), Naturals Jars (Apple, Banana, Butternut Squash, Carrots, Apple & Kale, Pear, Just Sweet Potatoes, Sweet Potato, Apple & Blackberries, and Pumpkin & Cinnamon).

24.     Plaintiff Kelsey Blankenship ("Plaintiff Blankenship") is a natural person and is a citizen and resident of the State of Ohio and previously was a citizen and resident of the State of Tennessee and State of Nevada.  Between 2020 and 2021, Plaintiff Blankenship purchased several types of the Beech-Nut Baby Food Products from Walmart stores in **Tennessee** and **Nevada** to feed her child, including but not limited to: Cereals (Single Grain Rice Cereal, Multigrain Cereal, and Organic Oatmeal), Fruit & Veggie Melties (Strawberry Apple & Yogurt, Banana Blueberries & Avocado, Apple Yogurt Cinnamon & Oat, and Apple Pumpkin & Cinnamon), Fruities Pouches (Peach Apple & Banana, Banana Apple & Strawberry, Apple Sweet Potato & Pineapple, and Apple Peach & Strawberries), Breakfast Pouches (Yogurt Banana & Mixed Berry), Classics Jars (Sweet Carrots, Sweet Peas, and Sweet Potato), Organics Jars (Sweet Potato, Apple, Banana Cinnamon & Granola, Carrots, and Pear), and Naturals Jars (Apple, Banana, Carrots, Green Beans, Pear, Just Sweet Potatoes, Mango, and Sweet Potato). Plaintiff Blankenship would be willing to purchase Beech-Nut's baby food products in the future if they could be certain that they do not contain (or have a material risk of containing) heavy metals.

25.     Plaintiff Amanda Boots ("Plaintiff Boots") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Minnesota. Between 2018 and 2019, Plaintiff purchased several types of Beech-Nut Baby Food Products from Walmart in

**Minnesota** and the State of **Illinois** to feed her child, including but not limited to: Cereal (Single Grain Rice Cereal) Fruit & Veggie Melties (Banana Blueberry & Green Beans and Strawberry Apple & Yogurt), Fruit & Veggie Bars (Apple & Spinach), Classics Jars (Sweet Carrots and Sweet Peas), Organics Jars (Prunes, Sweet Potato, Apple Kiwi & Spinach, Apple Raspberries & Avocado, and Apple), Naturals Jars (Apple, Banana, Butternut Squash, Carrots, Apple & Kale, Green Beans, Pear, Just Sweet Potatoes, Mango, Sweet Potato, Apple & Blackberries, Beet Pear & Pomegranate, Prunes, Pineapple Pear & Avocado, and Spinach Zucchini & Peas).

26.     Plaintiff Olivia Boyer ("Plaintiff Boyer") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Alabama.  Between 2017 and 2018 and 2020 and 2021, Plaintiff Boyer purchased several types of Beech-Nut Baby Food Products from Walmart, Sprouts Farmers Markets, Publix, and Target stores in **Alabama** and the State of **Florida** to feed her children, including but not limited to: Cereals (Single Grain Rice Cereal), Fruit & Veggie Melties (Banana Blueberry & Green Beans, Strawberry Apple & Yogurt and Apple & Pumpkin), Fruit & Veggie Melties with Probiotics (Apple Carrot Mango & Yogurt and Pear Mango Spinach & Yogurt), Veggies Pouches (Zucchini Spinach Banana, Squash Peas & Pear, Pumpkin Zucchini & Apple and Carrot Zucchini & Pear), Fruities Pouches (Pear Mango & Squash, Pear Banana & Raspberries, Peach Apple & Banana, Banana Pear & Sweet Potato, Banana Apple & Strawberry, Apple Sweet Potato & Pineapple, Apple Peach & Strawberries and Apple Mango & Carrot), Breakfast Pouches (Yogurt Banana & Mixed Berry), Classics Jars (Sweet Carrots. Sweet Peas and Sweet Potato), Organics Jars (Prunes, Sweet Potato, Apple Kiwi & Spinach, Apple Raspberries & Avocado, Apple, Banana Cinnamon & Granola, Carrots, Pear, Pumpkin and Pear Kale & Cucumber), Naturals Jars (Apple, Banana, Butternut Squash, Carrots, Apple & Kale, Green Beans, Pear, Just Sweet Potatoes, Mango, Sweet Potato, Apple & Blackberries, Pumpkin &

Cinnamon, Beet Pear & Pomegranate, Prunes, Pineapple Pear & Avocado, Spinach Zucchini & Peas, and Sweet Corn & Green Beans).

27.     Plaintiff Celia Bruno ("Plaintiff Bruno") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of **Indiana**.  Between 2020 and 2021, Plaintiff Bruno purchased several types of Beech-Nut Baby Food Products from Walmart, Walgreens, Strack & Van Til, and Meijer stores in **Indiana** and the State of **Illinois** to feed her child, including but not limited to: Organics Jars (Prunes, Sweet Potato, Apple, Carrots, and Pumpkin) and Naturals Jars (Carrots, Pear, and Prunes).

28.     Plaintiff Ana Butkus ("Plaintiff Butkus") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Kentucky.  Between 2020-2021, Plaintiff Butkus purchased several types of Beech-Nut Baby Food Products from Walmart stores in **Kentucky** to feed her child, including but not limited to: Fruit & Veggie Melties (Banana Blueberry & Green Beans, Strawberry Apple & Yogurt, and Apple & Pumpkin), Fruit & Veggie Melties with Probiotics (Apple Carrot Mango & Yogurt, and Pear Mango Spinach & Yogurt), Naturals Pouches (Carrot Apple & Pineapple, Banana Cinnamon & Granola, Banana Blueberries & Avocado, Banana Apple & Blueberries, Apple Yogurt Cinnamon & Oat, Apple Pumpkin & Cinnamon, and Apple Mango & Spinach), Veggies Pouches (Zucchini Spinach & Banana, Squash Peas & Pear, Pumpkin Zucchini & Apple, and Carrot Zucchini & Pear), Fruities Pouches (Pear Mango & Squash, Pear Banana & Raspberries, Peach Apple & Banana, Banana Pear & Sweet Potato, and Apple Peach & Strawberries, and Breakfast Pouches (Yogurt Banana & Mixed Berry), Classics Jars (Sweet Carrots, Sweet Peas, and Sweet Potato), Organics Jars (Apple Kiwi & Spinach, Apple Raspberries & Avocado, Banana Cinnamon & Granola, Carrots, Pear, Pumpkin, and Pear Kale & Cucumber), and Naturals Jars (Apple, Banana, Butternut Squash, Carrots, Apple

& Kale, Green Beans, Just Sweet Potatoes, Mango, Sweet Potato, Apple Pumpkin & Cinnamon, Beet Pear & Pomegranate, Pineapple Pear & Avocado, Spinach Zucchini & Peas, and Sweet Corn & Green Beans).

29.     Plaintiff Derrick Carr ("Plaintiff Carr") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Idaho.  Between 2018 and 2020, Plaintiff Car purchased several types of the Beech-Nut Baby Food Products from Walmart and WinCo stores in **Idaho** to feed his children, including but not limited to: Fruit & Veggie Melties (Banana Blueberry & Green Beans, Strawberry Apple & Yogurt, and Apple & Pumpkin), Naturals Pouches (Carrot Apple & Pineapple, Banana Cinnamon & Granola, Banana Blueberries & Avocado, Banana Apple & Blueberries, Apple Yogurt Cinnamon & Oat, Apple Pumpkin & Cinnamon, Apple Mango & Spinach, and Apple & Kale), Veggies Pouches (Zucchini Spinach & Banana, Squash Peas & Pear, Pumpkin Zucchini & Apple, and Carrot Zucchini & Pear), Fruities Pouches (Pear Mango & Squash, Pear Banana & Raspberries, Peach Apple & Banana, Banana Pear & Sweet Potato, Banana Apple & Strawberry, Apple Sweet Potato & Pineapple, Apple Peach & Strawberries, and Apple Mango & Carrot), Breakfast Pouches (Yogurt Banana & Mixed Berry and Yogurt, Banana & Strawberry), Harvest Morning Pouches (Pear, Mango, Yogurt & Granola and Banana, Blueberries, Yogurt & Granola), Iron & Zinc Pouches (Apple, Blueberries & Spinach), Protein & Fiber (Pumpkin, Apple, Yogurt, Oats & Cinnamon and Apple, Yogurt, Raspberries, Purple Carrot & Oats), Favorite Flavor Pouches Variety Pack, Blends with Prebiotic Fiber, Protein & Fiber, and Iron & Zinc Variety Pack, Fruities Pouches Variety Pack, Veggies Pouches Variety Pack, and Breakfast Pouches Variety Pack.

30.     Plaintiff Mayelin Carranza ("Plaintiff Carranza") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Nebraska. Between 2018

and 2021, Plaintiff Carranza purchased several types of Beech-Nut Baby Food Products from Walmart, Target, Whole Foods, and Natural Grocers stores in **Nebraska** to feed her children, including but not limited to: Naturals Pouches (Apple Yogurt Cinnamon & Oat), Veggies Pouches (Squash Peas & Pear), Breakfast Pouches (Yogurt Banana & Mixed Berry), Classics Jars (Sweet Carrots, Sweet Peas, and Sweet Potato), Organics Jars (Sweet Potato, Apple Kiwi & Spinach, Apple Raspberries & Avocado, Apple, Banana Cinnamon & Granola, Carrots, Pear, and Pumpkin), and Naturals Jars (Banana, Butternut Squash, Carrots, Apple & Kale, Green Beans, Pear, Just Sweet Potatoes, Mango, Sweet Potato, Apple Pumpkin & Cinnamon, Pineapple Pear & Avocado, Spinach Zucchini & Peas, and Sweet Corn & Green Beans).

31.     Plaintiff Kaitlynn Carson ("Plaintiff Carson") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Texas. Between 2020 and 2021, Plaintiff Carson purchased several types of the Beech-Nut Baby Food Products from Walmart stores in **Texas** to feed her child, including but not limited to: Melties (Banana, Blueberry & Green Beans; Apple & Pumpkin; and Strawberry, Apple & Yogurt), Crisps (Sweet Potato), Bars (Apple & Spinach; Banana & Pumpkin; and Strawberry), Pouches (Banana, Cinnamon & Granola; Banana, Blueberries & Avocado; Apple, Yogurt, Cinnamon & Oat; Apple, Pumpkin & Cinnamon; and Apple, Mango & Spinach), Classics Jars (Sweet Carrots; Sweet Peas; Sweet Potato; Apples & Blueberries; Apple; Banana & Strawberries; Banana; Corn & Sweet Potato; Garden Vegetables; Mixed Vegetables; Pear & Pineapple; Pear; and Squash), Harvest Dinners Jars (Chicken, Pear & Zucchini; and Chicken, Apple & Corn), Organics Jars (Prunes; Sweet Potato; Apple, Kiwi & Spinach; Apple; Banana, Cinnamon & Granola; Carrots; Pear; Pumpkin; Pear, Kale & Cucumber; Apple, Pumpkin & Granola; Banana, Mango & Sweet Potato; Banana; Butternut Squash & Sweet Corn; and Apple, Blueberries & Rolled Oats), and Naturals Jars (Butternut Squash; Carrots; Apple

& Kale; Green Beans; Pear; Just Sweet Potatoes; Mango; Sweet Potato; Apple & Blackberries; Apple, Pumpkin & Cinnamon; Beet, Pear & Pomegranate; Pineapple, Pear & Avocado; Spinach, Zucchini & Peas; Sweet Corn  Green Beans; Carrots, Sweet Corn & Pumpkin; Guava, Pear & Strawberries; Mango, Apple & Avocado; Pear & Blueberries; Peas, Green Beans & Asparagus; Banana, Pumpkin & Orange; Apple, Blueberries & Ginger; Apple, Yogurt, Cinnamon & Oat; and Mango, Carrot, Yogurt & Oat).

32.     Plaintiff Samantha Clark ("Plaintiff Clark") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Delaware. Between 2017-2018 and 2020-2021, Plaintiff Clark purchased several types of the Beech-Nut Baby Food Products from Walmart and Food Lion stores in **Delaware** to feed her children, including but not limited to: Naturals Jars (Apple, Banana, Butternut Squash, Carrots, Green Beans, Pear, and Prunes).

33.     Plaintiff Melanie Cole ("Plaintiff Cole") is a natural person and is, at all times relevant hereto has been, a citizen and resident of the State of Missouri.  Between 2014 and 2018, Plaintiff Cole purchased several types of Beech-Nut Baby Food Products from Dierbergs Markets and Schnucks stores in **Missouri** to feed her children, including but not limited to: Organics Jars (Prunes, Sweet Potato, Apple Kiwi & Spinach, Apple Raspberries & Avocado, Apple, Carrots, Pear, and Pumpkin).

34.     Plaintiff Adrianne Cooper ("Plaintiff Cooper") is a natural person and is, at all times relevant hereto has been, a citizen and resident of the State of Oklahoma. Between 2015 and 2020, Plaintiff Cooper purchased several types of the Beech-Nut Baby Food Products from Walmart stores in **Oklahoma** to feed her children, including but not limited to:  Cereals (Single Grain Rice Cereal and Multigrain Cereal), Classics Jars (Sweet Carrots, Sweet Peas, and Sweet Potato), and

Naturals Jars (Apple, Banana, Butternut Squash, Carrots, Green Beans, Pear, Just Sweet Potatoes, and Mango).

35.     Plaintiff Sheila Curry ("Plaintiff Curry") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Maryland. Between 2020 and 2021, Plaintiff Curry purchased several types of Beech-Nut Baby Food Products from Food Lion, Walmart, and Wegmans stores in **Maryland** to feed her child, including but not limited to: Cereals (Single Grain Rice Cereal; and Multigrain Cereal), Melties (Banana, Blueberry & Green Bean; Strawberry, Apple & Yogurt; and Apple & Pumpkin), Pouches (Zucchini, Spinach & Banana; Squash, Peas & Pear; and Pumpkin, Zucchini & Apple), Classics Jars (Sweet Carrots; Sweat Peas; Sweat Potato; Apples & Blueberries; Apple, Mango & Kiwi; Apple; Banana & Strawberries; Corn & Sweet Potato; Garden Vegetables; Mixed Vegetables; Peach; Pear; Squash; Beef & Beef Broth; and Chicken & Chicken Broth), Harvest Dinners Jars (Chicken, Apple & Corn), Organics Jars (Prunes; Sweet Potato; Apple, Raspberries & Avocado; and Pumpkin), and Naturals Jars (Apple; Banana; Butternut Squash; Carrots; Apple & Kale; Green Beans; Pear; Spinach, Zucchini & Peas; and Banana, Orange & Pineapple).

36.     Plaintiff Erica Douglas ("Plaintiff Douglas") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of South Dakota. Between 2018 and 2020, Plaintiff Douglas purchased several types of the Beech-Nut Baby Food Products from Safeway stores in **South Dakota** to feed her children, including but not limited to: Cereals (Single Grain Rice Cereal), Classics Jars (Sweet Potato; Apples & Blueberries; Apple; Banana & Strawberries; Banana; Peach; Squash; Beef & Beef Broth; Chicken & Chicken Broth; and Turkey & Turkey Broth), Organics Jars (Prunes; Sweet Potato; Apple; and Pear), and Naturals Jars (Butternut Squash; Carrots; Just Sweet Potatoes; Apple & Blackberries; and Prunes).

37.     Plaintiff Nathan Edwards ("Plaintiff Edwards") is a natural person and is, at all times relevant hereto has been, a citizen and resident of the State of Wisconsin. Between 2017 and 2021, Plaintiff Edwards purchased several types of the Beech-Nut Baby Food Products from Target, Woodman's, and Meijer stores in **Wisconsin** to feed his children, including but not limited to:  Organics Jars (Sweet Potato, Apple Raspberries & Avocado, and Pumpkin) and Naturals Jars (Apple, Butternut Squash, Carrots, Apple & Blackberries, and Beet Pear & Pomegranate).

38.     Plaintiff Morgan Engebretsen ("Plaintiff Engebretsen") is a natural person and is a citizen and resident of the State of Montana and previously was a citizen and resident of the State of Colorado.  Between 2018-2022, Plaintiff Engebretsen purchased several types of the Beech-Nut Baby Food Products from Walmart, Safeway, and City Market stores in **Montana** and the State of **Colorado** to feed her children, including but not limited to: Cereals (Single Grain Rice Cereal and Multigrain Cereal), Fruit & Veggie Melties (Banana Blueberry & Green Beans), Naturals Pouches (Banana Cinnamon & Granola, Apple Yogurt Cinnamon & Oat), Fruities Pouches (Pear Banana & Raspberries, Peach Apple & Banana), Classics Jars (Apples & Blueberries, Apple, Mango & Kiwi, Apple, Banana & Strawberries, Banana, Peach, Pear & Pineapple, Pear & Raspberries), Organics Jars (Prunes, Banana Cinnamon & Granola, Pear Kale & Cucumber, Banana, and Apple, Blueberries & Rolled Oats), Naturals Immune System Support Jars (Banana, Pumpkin & Orange), and Naturals Superblends Jars (Apple, Yogurt, Cinnamon & Oat and Mango, Carrot, Yogurt & Oat).

39.     Plaintiff Albachiara Farci ("Plaintiff Farci") is a natural person and is, and at all times relevant hereto has been, a resident of the State of New Jersey. Between 2021 and 2022, Plaintiff Farci purchased several types of the Beech-Nut Baby Food Products from ShopRite and CTown stores in **New Jersey** to feed her child, including but not limited to: Pouches (Zucchini,

Spinach & Banana; Squash, Peas & Pear; and Carrot, Zucchini & Pear), Classics Jars (Beef & Beef Broth; Chicken & Chicken Broth; Turkey & Turkey Broth; Sweet Carrots; Sweet Peas; Sweet Potato; Apples & Blueberries; Apple; Banana; Corn & Sweet Potato; Garden Vegetables; Mixed Vegetables; Peach; Pear & Raspberries; Pear; and Squash), Organics Jars (Apple, Kiwi & Spinach; Apple, Raspberries & Avocado; Banana, Cinnamon & Granola; Pear; Prunes; Sweet Potato; Apple; Carrots; Pumpkin; Apple, Pumpkin & Granola; Banana, Cinnamon & Granola; and Butternut Squash & Sweet Corn), Naturals Jars (Apple; Butternut Squash; Carrots; Pear; Just Sweet Potatoes; Sweet Potato; Apple & Blackberries; Beet, Pear & Pomegranate; Spinach, Zucchini & Peas; Sweet Corn & Green Beans; Apple, Cinnamon & Granola; and Pear & Blueberries).

40.     Plaintiff Lisa Fisher ("Plaintiff Fisher") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of North Dakota.  Between 2019 and 2021, Plaintiff Fisher purchased several types of the Beech-Nut Baby Food Products from Target and Walmart stores in **North Dakota** to feed her children, including but not limited to: Cereals (Multigrain Cereal, Organic Oatmeal Cereal, Whole Grain Cereal), Naturals Pouches (Carrot Apple & Pineapple, Banana Blueberries & Avocado, Banana Apple & Blueberries, Apple Pumpkin & Cinnamon, Apple Mango & Spinach, and Apple & Kale), Fruities Pouches (Pear Banana & Raspberries, Peach Apple & Banana, Banana Pear & Sweet Potato, Banana Apple & Strawberry, and Apple Mango & Carrot), Classics Jars (Sweet Potato, Apples & Blueberries, Garden Vegetables, Mixed Vegetables, Chicken & Chicken Broth, and Turkey & Turkey Broth), Naturals Jars (Apple & Blackberries, Banana, Orange & Pineapple, and Mango, Apple & Avocado).

41.      Plaintiff Natalie Francois ("Plaintiff Francois") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Maryland. Between 2021 and 2022, Plaintiff Francois purchased several types of the Beech-Nut Baby Food Products from Giant, Safeway, Shoppers and Whole Foods stores in **Maryland** to feed her child, including but not limited to: Classics Jars (Sweet Carrots; Sweet Potato; Apples & Blueberries; Apple; Banana; Peach; Pear; Squash; and Turkey & Turkey Broth), Organics Jars (Prunes; Sweet Potato; Apple, Raspberries & Avocado; Apple; Banana, Cinnamon & Granola; Carrots; Pear; Pumpkin; Pumpkin & Granola; Banana, Mango & Sweet Potato; Banana; and Butternut Squash & Sweet Corn), and Naturals Jars (Apple; Banana; Butternut Squash; Carrots; Apple & Kale; Pear; Just Sweet Potatoes; Mango; Sweet Potato; Apple & Blackberries; Apple, Pumpkin & Cinnamon; Apple, Cinnamon & Granola; and Pear & Blueberries).

42.      Plaintiff Jillian Geffken ("Plaintiff Geffken") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of North Carolina. Between 2016 and 2019, Plaintiff Geffken purchased several types of the Beech-Nut Baby Food Products from Food Lion stores in **North Carolina** to feed her children, including but not limited to: Cereals (Single Grain Rice Cereal; Multigrain Cereal; and Organic Oatmeal Cereal), Melties (Apple & Pumpkin; Apple, Carrot, Mango & Yogurt; and Pear, Mango, Spinach & Yogurt), Crisps (Sweet Potato), Bars (Banana), Mini Waffles (Butternut Berry), Pouches (Carrot, Apple & Pineapple; Banana, Cinnamon & Granola; Banana, Blueberries & Avocado; Banana, Apple & Blueberries; Apple, Mango & Spinach; Apple & Kale; Zucchini, Spinach & Banana; Squash, Peas & Pear; Pumpkin, Zucchini & Apple; Carrot, Zucchini & Pear; Pear, Mango & Squash; Pear, Banana & Raspberries; Peach, Apple & Banana; Banana, Pear & Sweet Potato; Banana, Apple & Strawberry; Apple, Sweet Potato & Pineapple; and Apple, Peach & Strawberry), Classics Jars (Sweet Carrots;

Sweet Peas; Sweet Potato; Apples & Blueberries; Apple, Mango & Kiwi; Apple; Banana & Strawberries; Banana; Corn & Sweet Potato; Garden Vegetables; Mixed Vegetables; Peach; Pear & Pineapple; Pear & Raspberries; Pear; Squash; Beef & Beef Broth; and Chicken & Chicken Broth), Harvest Dinners Jars (Chicken, Apple & Carrot; Chicken, Pear & Zucchini; and Chicken, Apple & Corn), Organics Jars (Prunes; Apple, Raspberries & Avocado; Apple; Carrots; Pear; Pear, Kale & Cucumber; and Banana), and Naturals Jars (Banana; Butternut Squash; Carrots; Apple & Kale; Green Beans; Pear; Just Sweet Potatoes; Mango; Sweet Potato; Apple & Blackberries; Apple, Pumpkin & Cinnamon; Beet, Pear & Pomegranate; Prunes; Spinach, Zucchini & Peas; Banana, Orange & Pineapple; and Carrot, Corn & Chickpea).

43.     Plaintiff Rebecca George ("Plaintiff George") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Wyoming and previously was a citizen and resident of the State of Missouri.  Between 2017-2021, Plaintiff George purchased several types of the Beech-Nut Baby Food Products from Hy-Vi, Target, Walmart, and Albertson's stores in **Wyoming** and **Missouri** to feed her children, including but not limited to: Fruit & Veggie Melties (Banana Blueberry & Green Beans, Strawberry Apple & Yogurt, and Apple & Pumpkin), Fruit & Veggie Bars (Apple & Spinach and Banana & Pumpkin), Fruity Oat Bars (Banana and Strawberry), Naturals Pouches (Carrot Apple & Pineapple, Banana Cinnamon & Granola, Banana Blueberries & Avocado, Banana Apple & Blueberries, Apple Yogurt Cinnamon & Oat, Apple Pumpkin & Cinnamon, and Apple Mango & Spinach), Veggies Pouches (Squash Peas & Pear, Pumpkin Zucchini & Apple, and Carrot Zucchini & Pear), Fruities Pouches (Pear Mango & Squash, Pear Banana & Raspberries, Peach Apple & Banana, Banana Pear & Sweet Potato, Banana Apple & Strawberry, Apple Sweet Potato & Pineapple, Apple Peach & Strawberries, and Apple Mango & Carrot), Iron & Zinc Pouches (Apple, Blueberries & Spinach), Prebiotic Fiber Pouches

(Carrot, Apple & Sweet Potato), Classics Jars (Sweet Carrots, Sweet Potato, Apples & Blueberries, Apple, Banana & Strawberries, Banana, Corn & Sweet Potato, Mixed Vegetables, Peach, Pear & Raspberries, Pear), Organics Jars (Prunes, Sweet Potato, Apple Kiwi & Spinach, Apple Raspberries & Avocado, Apple, Banana Cinnamon & Granola, Carrots, Pear, Pumpkin, Apple, Pumpkin & Granola, Banana, Cinnamon & Granola, Banana, Pumpkin & Rolled Oats, and Apple, Blueberries & Rolled Oats), Naturals Jars (Apple, Banana, Pear, Sweet Potatoes, Apple & Blackberries, Apple, Pumpkin & Cinnamon, Prunes, Pineapple, Pear & Avocado, Apple, Cinnamon & Granola, Banana, Orange & Pineapple, Banana, Blueberries & Green Beans, Carrots, Sweet Corn & Pumpkin, Guava, Pear & Strawberries, Pear & Blueberries).

44.     Plaintiff Charita Harrell ("Plaintiff Harrell") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the Commonwealth of Pennsylvania. Between 2008 and 2010 and 2019 and 2021, Plaintiff Harrell purchased several types of Beech-Nut Baby Food Products from Shoprite and Save-A-Lot stores in **Pennsylvania** and the Commonwealth of **Virginia** to feed her children, including but not limited to Classics Jars (Sweet Carrots and Sweet Potato) and Naturals Jars (Banana and Apple & Blackberries).

45.     Plaintiff Jill Hayden ("Plaintiff Hayden") is a natural person and a citizen and resident of the State of Louisiana and was formerly a citizen and resident of the State of **Maryland**. Between 2017 and 2018, Plaintiff Hayden purchased several types of the Beech-Nut Baby Food Products from Walmart stores in **Maryland** to feed her child, including but not limited to: Cereals (Single Grain Rice Cereal, Multigrain Cereal, Organic Oatmeal Cereal, Whole Grain Cereal), Fruit & Veggie Melties (Strawberry Apple & Yogurt), Naturals Pouches (Carrot Apple & Pineapple, Banana Cinnamon & Granola, Banana Blueberries & Avocado, Banana Apple & Blueberries, Apple Yogurt Cinnamon & Oat, Apple Pumpkin & Cinnamon, Apple Mango & Spinach, and

Apple & Kale), Veggies Pouches (Zucchini Spinach & Banana, Squash Peas & Pear, Pumpkin Zucchini & Apple, and Carrot Zucchini & Pear), Fruities Pouches (Pear Mango & Squash, Pear Banana & Raspberries, Peach Apple & Banana, Banana Pear & Sweet Potato, Banana Apple & Strawberry, Apple Sweet Potato & Pineapple, Apple Peach & Strawberries, and Apple Mango & Carrot), Breakfast Pouches (Yogurt Banana & Mixed Berry and Yogurt, Banana & Strawberry), Harvest Morning (Pear, Mango, Yogurt & Granola and Banana, Blueberries, Yogurt & Granola), Iron & Zinc Pouches (Apple, Blueberries & Spinach), Prebiotic Fiber Pouches (Carrot, Apple & Sweet Potato), Protein & Fiber (Pumpkin, Apple, Yogurt, Oats & Cinnamon and Apple, Yogurt, Raspberries, Purple Carrot & Oats), Classics Jars (Sweet Carrots, Sweet Potato, Apples & Blueberries, Apple, Mango & Kiwi, Banana & Strawberries, Banana, Corn & Sweet Potato, Peach, Pear & Pineapple, Pear & Raspberries, Pear, Squash, Beef & Beef Broth, Chicken & Chicken Broth, Turkey & Turkey Broth), Harvest Dinners Jars (Chicken, Apple & Carrot, Chicken, Pear & Zucchini, Chicken, Apple & Corn, and Turkey, Apple & Sweet Potato), Organics Jars (Sweet Potato, Apple Kiwi & Spinach, Apple Raspberries & Avocado, Banana Cinnamon & Granola, Carrots, Pear, Pumpkin, Pear Kale & Cucumber, Apple, Pumpkin & Granola, Banana, Cinnamon & Granola, Banana, Mango & Sweet Potato, Banana, Butternut Squash & Sweet Corn, Mango, Yogurt & Rolled Oats, Banana, Pumpkin & Rolled Oats, and Apple, Blueberries & Rolled Oats), Naturals Jars (Banana, Butternut Squash, Carrots, Apple & Kale, Pear, Just Sweet Potatoes, Mango, Sweet Potato, Apple & Blackberries, Apple Pumpkin & Cinnamon, Beet Pear & Pomegranate, Pineapple Pear & Avocado, Sweet Corn & Green Beans, Apple, Cinnamon & Granola, Banana, Orange & Pineapple, Banana, Blueberries & Green Beans, Carrots, Sweet Corn & Pumpkin, Guava, Pear & Strawberries, Mango, Apple & Avocado, Pear & Blueberries, Immune System Support: Banana, Pumpkin & Orange, Immune System Support: Pear, Kale & Orange,

Immune System Support: Apple, Blueberries & Ginger, Superblends: Apple, Yogurt, Cinnamon & Oat, Superblends: Mango, Carrot, Yogurt & Oat, Superblends: Banana, Chickpea & Kale, and Superblends: Banana, Chickpea & Kale).

46.     Plaintiff Sammy Hobdy ("Plaintiff Hobdy") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Alabama. Between 2020-2021, Plaintiff Hobdy purchased several types of Beech-Nut Baby Food Products from Walmart, Winn-Dixie, and Piggly Wiggly stores in **Alabama** and the States of **Florida** and **Georgia** to feed her child, including but not limited to: Cereal (Single Grain Rice Cereal) Fruit & Veggie Melties (Strawberry Apple & Yogurt), Fruity Oat Bars (Banana and Strawberry), Naturals Pouches (Carrot Apple & Pineapple, Banana Cinnamon & Granola, Apple Pumpkin & Cinnamon, and Apple & Kale) Fruities Pouches (Pear Mango & Squash, Peach Apple & Banana, Banana Pear & Sweet Potato, Banana Apple & Strawberry, Apple Sweet Potato & Pineapple, Apple Peach & Strawberries, and Apple Mango & Carrot), Classics Jars (Sweet Carrots, Sweet Peas, and Sweet Potato), Organics Jars (Sweet Potato, Apple Kiwi & Spinach, Apple Raspberries & Avocado, and Banana Cinnamon & Granola), and Naturals Jars (Butternut Squash, Apple & Kale, Green Beans, Sweet Potato, Apple & Blackberries, Pineapple Pear & Avocado, and Spinach Zucchini & Peas). Plaintiff Hobdy would be willing to purchase Beech-Nut's baby food products in the future if they could be certain that they do not contain (or have a material risk of containing) heavy metals.

47.     Plaintiff Malik Hockaday ("Plaintiff Hockaday") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Illinois. In 2022, Plaintiff Hockaday purchased several types of the Beech-Nut Baby Food Products from Hy-Vee stores in **Illinois** to feed her child, including but not limited to: Classics Jars (Corn & Sweet Potato; and

Squash), Organics Jars (Sweet Potato), and Naturals Jars (Green Beans; and Sweet Corn & Green Beans).

48.     Plaintiff Amanda Holmes ("Plaintiff Holmes") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Alaska.  Between 2020 and when she learned about the congressional reports in 2022, Plaintiff Holmes purchased several types of the Beech-Nut Baby Food Products from Target, Fred Myers, Safeway, Kroger, and Amazon stores in **Alaska** to feed her child, including but not limited to: Cereals (Multigrain Cereal and Whole Grain Cereal), Fruit & Veggie Melties (Banana Blueberry & Green Beans, Strawberry Apple & Yogurt, and Apple & Pumpkin), Baked Veggie Crisps (Sweet Potato), Fruit & Veggie Bars (Apple & Spinach and Banana & Pumpkin), Fruity Oat Bars (Banana and Strawberry), Veggies Pouches (Zucchini Spinach & Banana, Squash Peas & Pear, Pumpkin Zucchini & Apple, and Carrot Zucchini & Pear), Fruities Pouches (Pear Mango & Squash, Pear Banana & Raspberries, Peach Apple & Banana, Banana Pear & Sweet Potato, Banana Apple & Strawberry, Apple Sweet Potato & Pineapple, Apple Peach & Strawberries, and Apple Mango & Carrot), Breakfast Pouches (Yogurt Banana & Mixed Berry and Yogurt, Banana & Strawberry), Harvest Morning Pouches (Pear, Mango, Yogurt & Granola and Banana, Blueberries, Yogurt & Granola), Breakfast Variety Pack Pouches (Yogurt, Banana & Strawberry and Yogurt, Banana & Mixed Berry), Classics Jars (Sweet Carrots, Sweet Peas, Sweet Potato, Apples & Blueberries, Apple, Mango & Kiwi, Apple, Banana & Strawberries, Banana, Corn & Sweet Potato, Garden Vegetables, Mixed Vegetables, Peach, Pear & Pineapple, Pear & Raspberries, Pear, and Squash), Organics Jars (Prunes, Sweet Potato, Apple Kiwi & Spinach, Apple Raspberries & Avocado, Apple, Banana Cinnamon & Granola, Carrots, Pear, Pumpkin, Pear Kale & Cucumber, Apple, Pumpkin & Granola, Banana, Cinnamon & Granola, Banana, Mango & Sweet Potato, Banana, Butternut

Squash & Sweet Corn, Mango, Yogurt & Rolled Oats, Banana, Pumpkin & Rolled Oats, and Apple, Blueberries & Rolled Oats), and Naturals Jars (Apple, Banana, Butternut Squash, Carrots, Apple & Kale, Green Beans, Pear, Just Sweet Potatoes, Mango, Sweet Potato, Apple & Blackberries, Apple Pumpkin & Cinnamon, Beet Pear & Pomegranate, Prunes, Pineapple Pear & Avocado, Spinach Zucchini & Peas, Sweet Corn & Green Beans, Apple, Cinnamon & Granola, Banana, Orange & Pineapple, Banana, Blueberries & Green Beans, Carrots, Sweet Corn & Pumpkin, Guava, Pear & Strawberries, Mango, Apple & Avocado, Pear & Blueberries, Peas, and Green Beans & Asparagus).

49.     Plaintiff Heather Hyden ("Plaintiff Hyden") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Texas. Between 2019 and 2021, Plaintiff Hyden purchased several types of the Beech-Nut Baby Food Products from Walmart and H-E-B stores in **Texas** to feed to her children, including but not limited to: Cereals (Single Grain Rice Cereal), Melties (Banana, Blueberry & Green Beans; Apple & Pumpkin; and Strawberry, Apple & Yogurt), Pouches (Carrot, Apple & Pineapple; Banana, Cinnamon & Granola; Banana, Blueberries & Avocado; Banana, Apple & Blueberries; Apple, Pumpkin & Cinnamon; Apple, Mango & Spinach; Carrot, Zucchini & Pear; Pear, Mango & Squash; Banana, Blueberries, Yogurt & Granola; and Pumpkin, Apple, Yogurt, Oats & Cinnamon), Classics Jars (Beef & Beef Broth; Chicken & Chicken Broth; Turkey & Turkey Broth; Sweet Carrots; Sweet Peas; Sweat Potato; Apples & Blueberries; Apple, Mango & Kiwi; Apple; Banana & Strawberries; Banana; Corn & Sweet Potato; Garden Vegetables; Mixed Vegetables; Peach; Pear & Pineapple; Pear & Raspberries; Pear; and Squash), Harvest Dinners Jars (Chicken, Apple & Carrot; Chicken, Pear & Zucchini; Chicken, Apple & Corn; and Turkey, Apple & Sweet Potato), Organics Jars (Apple, Kiwi & Spinach; Apple, Raspberries & Avocado; Pear; Pear, Kale & Cucumber; Sweet

Potato; Pumpkin; Banana, Mango & Sweet Potato; Banana; and Butternut Squash & Sweet Corn), Naturals Jars (Banana; Butternut Squash; Carrots; Green Beans; Pear; Just Sweet Potatoes; Sweet Potato; Prunes; Apple & Kale; Mango; Apple & Blackberries; Apple, Pumpkin & Cinnamon; Pineapple, Pear & Avocado; Spinach, Zucchini & Peas; Sweet Corn & Green Beans; Apple, Cinnamon & Granola; Banana, Orange & Pineapple; Banana, Blueberries & Green Beans; Carrots, Sweet Corn & Pumpkin; Guava, Pear & Strawberries; Mango, Apple & Avocado; Pear & Blueberries; Peas, Green Beans & Asparagus; and Banana, Pumpkin & Orange).

50.     Plaintiff Shaylan Isaacs ("Plaintiff Isaacs") is a natural person and is a citizen and resident of the State of North Dakota and was formally a citizen and resident of the State of Utah. Between 2020 and 2021 Plaintiff Isaacs purchased several types of Beech-Nut Baby Food Products from Walmart, Smiths, and Target stores in **Utah** to feed her child, including but not limited to: Fruit & Veggie Melties (Apple & Pumpkin), Naturals Pouches (Apple & Kale), Classics Jars (Sweet Potato), Organics Jars (Prunes), and Naturals Jars (Banana, Butternut Squash, Apple & Kale, Apple & Blackberries, and Prunes).

51.     Plaintiff Karleen Kozaczka ("Plaintiff Kozaczka") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Rhode Island.  Between 2018 and 2021, Plaintiff Kozaczka purchased several types of Beech-Nut Baby Food Products from BJ's, Stop and Shop, Target, and Walmart stores in **Rhode Island**, **Massachusetts**, and **New Hampshire** to feed her child, including but not limited to: Fruit & Veggie Melties (Banana Blueberry & Green Beans, Strawberry Apple & Yogurt, and Apple & Pumpkin).

52.     Plaintiff Tabitha Latteyer ("Plaintiff Latteyer") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Iowa.  Between 2020-2021, Plaintiff Latteyer purchased several types of the Beech-Nut Baby Food Products from Walmart

stores in **Iowa**, **Minnesota**, and **Indiana** to feed her child, including but not limited to: Naturals Pouches (Carrot Apple & Pineapple, Banana Blueberries & Avocado, Apple Pumpkin & Cinnamon, Apple Mango & Spinach, and Apple & Kale), Veggies Pouches (Squash Peas & Pear and Pumpkin Zucchini & Apple), Classics Jars (Sweet Potato, Apple, and Garden Vegetables), Organics Jars (Prunes, Sweet Potato, Carrots, Pumpkin, and Banana), Naturals Jars (Apple, Banana, Butternut Squash, Carrots, Green Beans, Prunes, Spinach Zucchini & Peas, and Guava, Pear & Strawberries).

53.     Plaintiff Andrew Lohse ("Plaintiff Lohse") is a natural person and is a citizen and resident of the State of South Dakota and previously was a citizen and resident of the State of Michigan. Between 2013 and 2019, Plaintiff Lohse purchased several types of Beech-Nut Baby Food Products from Walmart, Meyers, and Target stores in **Michigan** to feed his children, including but not limited to:  Cereals (Single Grain Rice Cereal and Organic Oatmeal), Fruit & Veggie Melties with Probiotics  (Apple Carrot Mango & Yogurt), Fruity Oat Bars (Strawberry), Naturals Pouches (Carrot Apple & Pineapple, Banana Blueberries & Avocado, Banana Apple & Blueberries, Apple Yogurt Cinnamon & Oat, Apple Pumpkin & Cinnamon, Apple Mango & Spinach, and Apple & Kale), Veggies Pouches (Zucchini Spinach & Banana, Squash Peas & Pear, Pumpkin Zucchini & Apple, and Carrot Zucchini & Pear), Fruities Pouches (Pear Mango & Squash, Pear Banana & Raspberries, Peach Apple & Banana, Banana Pear & Sweet Potato, Banana Apple & Strawberry, Apple Sweet Potato & Pineapple, Apple Peach & Strawberries, and Apple Mango & Carrot), Breakfast Pouches (Yogurt Banana & Mixed Berry), Classics Jars (Sweet Carrots, Sweet Peas, and Sweet Potato), Organics Jars (Prunes, Sweet Potato, Apple Kiwi & Spinach, Apple Raspberries & Avocado, Apple, Banana Cinnamon & Granola, Carrots, Pear, Pumpkin, and Pear Kale & Cucumber), Naturals Jars (Apple, Banana, Butternut Squash, Carrots,

Apple & Kale, Green Beans, Pear, Just Sweet Potatoes, Mango, Sweet Potato, Apple &
Blackberries, Apple Pumpkin & Cinnamon, Beet Pear & Pomegranate, Prunes, Pineapple Pear &
Avocado, Spinach Zucchini & Peas, and Sweet Corn & Green Beans).

54.    Plaintiff Heather Malaga ("Plaintiff Malaga") is a natural person and is, and at all
times relevant hereto has been, a citizen and resident of the State of Mississippi.  In 2017 and 2020,
Plaintiff Malaga purchased several types of the Beech-Nut Baby Food Products from Walmart and
Winn-Dixie stores in **Mississippi** to feed her children, including but not limited to: Naturals
Pouches (Carrot Apple & Pineapple, Banana Cinnamon & Granola, Banana Blueberries &
Avocado, Banana Apple & Blueberries, Apple Yogurt Cinnamon & Oat, Apple Pumpkin &
Cinnamon, Apple Mango & Spinach, and Apple & Kale), Veggies Pouches (Zucchini Spinach &
Banana, Squash Peas & Pear, Pumpkin Zucchini & Apple, and Carrot Zucchini & Pear), Fruities
Pouches (Pear Mango & Squash, Pear Banana & Raspberries, Peach Apple & Banana, Banana
Pear & Sweet Potato, Banana Apple & Strawberry, Apple Sweet Potato & Pineapple, Apple Peach
& Strawberries, and Apple Mango & Carrot), Breakfast Pouches (Yogurt Banana & Mixed Berry
and Yogurt, Banana & Strawberry), Harvest Morning Pouches (Pear, Mango, Yogurt & Granola
and Banana, Blueberries, Yogurt & Granola), Iron & Zinc Pouches (Apple, Blueberries &
Spinach), Prebiotic Fiber Pouches (Carrot, Apple & Sweet Potato), Protein & Fiber (Pumpkin,
Apple, Yogurt, Oats & Cinnamon and Apple, Yogurt, Raspberries, Purple Carrot & Oats), Classics
Jars (Sweet Carrots, Sweet Peas, Sweet Potato, Apples & Blueberries, Apple, Mango & Kiwi,
Apple, Banana & Strawberries, Banana, Corn & Sweet Potato, Garden Vegetables, Mixed
Vegetables, Peach, Pear & Pineapple, Pear & Raspberries, Pear, Squash, and Beef & Beef Broth),
Harvest Dinners Jars (Chicken, Apple & Carrot, Chicken, Pear & Zucchini, Chicken, Apple &
Corn, and Turkey, Apple & Sweet Potato), Organics Jars (Prunes, Sweet Potato, Apple Kiwi &

Spinach, Apple Raspberries & Avocado, Apple, Banana Cinnamon & Granola, Carrots, Pear, Pumpkin, Pear Kale & Cucumber, Apple, Pumpkin & Granola, Banana, Cinnamon & Granola, Banana, Mango & Sweet Potato, Banana, Butternut Squash & Sweet Corn, Mango, Yogurt & Rolled Oats, Banana, Pumpkin & Rolled Oats, and Apple, Blueberries & Rolled Oats), and Naturals Jars (Apple, Banana, Butternut Squash, Carrots, Apple & Kale, Green Beans, Pear, Just Sweet Potatoes, Mango, Sweet Potato, Apple & Blackberries, Apple Pumpkin & Cinnamon, Beet Pear & Pomegranate, Prunes, Pineapple Pear & Avocado, Spinach Zucchini & Peas, Sweet Corn & Green Beans, Apple, Cinnamon & Granola, Banana, Orange & Pineapple, Banana, Blueberries & Green Beans, Carrots, Sweet Corn & Pumpkin, Guava, Pear & Strawberries, Mango, Apple & Avocado, Pear & Blueberries, Peas, Green Beans & Asparagus, Immune System Support: Banana, Pumpkin & Orange, Immune System Support: Pear, Kale & Orange, Immune System Support: Apple, Blueberries & Ginger, Superblends: Apple, Yogurt, Cinnamon & Oat, Superblends: Mango, Carrot, Yogurt & Oat, Superblends: Banana, Chickpea & Kale, and Superblends: Carrot, Corn & Chickpea). Plaintiff Malaga would be willing to purchase Beech-Nut's baby food products in the future if they could be certain that they do not contain (or have a material risk of containing) heavy metals.

55.     Plaintiff Elizabeth McDowell ("Plaintiff McDowell") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Alabama.  Between 2008-2019, Plaintiff McDowell purchased several types of Beech-Nut Baby Food Products from Dollar General, Publix, and Earth Fare stores in **Alabama** feed her children, including but not limited to: Naturals Jars (Banana and Pear).

56.     Plaintiff Katherine McGibney ("Plaintiff McGibney") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Maine.  Between

2020 and 2022, Plaintiff McGibney purchased several types of the Beech-Nut Baby Food Products from IGA stores in **Maine** to feed her child, including but not limited to: Cereals (Single Grain Rice Cereal, Multigrain Cereal, Organic Oatmeal Cereal, Whole Grain Cereal), Fruit & Veggie Bars (Apple & Spinach and Banana & Pumpkin), Iron & Zinc Pouches (Apple, Blueberries & Spinach), Prebiotic Fiber Pouches (Carrot, Apple & Sweet Potato), Classics Jars (Sweet Carrots, Sweet Peas, Sweet Potato, Apples & Blueberries, Apple, Mango & Kiwi, Apple, Banana & Strawberries, Banana, Corn & Sweet Potato, Garden Vegetables, Mixed Vegetables, Peach, Pear & Pineapple, Pear & Raspberries, Pear, Squash, Beef & Beef Broth, Chicken & Chicken Broth, Turkey & Turkey Broth), Harvest Dinners Jars (Chicken, Apple & Carrot, Chicken, Apple & Corn, and Turkey, Apple & Sweet Potato), Organics Jars (Prunes, Sweet Potato, Apple Kiwi & Spinach, Apple Raspberries & Avocado, Apple, Banana Cinnamon & Granola, Carrots, Pear, Pumpkin, Pear Kale & Cucumber, Apple, Pumpkin & Granola, Banana, Cinnamon & Granola, Banana, Mango & Sweet Potato, Banana, Butternut Squash & Sweet Corn), and Naturals Jars (Apple, Banana, Butternut Squash, Carrots, Apple & Kale, Green Beans, Pear, Prunes, Pineapple Pear & Avocado, Spinach Zucchini & Peas, , Cinnamon & Granola, Banana, Carrots, Sweet Corn & Pumpkin, Mango, Apple & Avocado, Pear & Blueberries, Peas, Green Beans & Asparagus, Superblends: Apple, Yogurt, Cinnamon & Oat, Superblends: Mango, Carrot, Yogurt & Oat). Plaintiff McGibney would be willing to purchase Beech-Nut's baby food products in the future if they could be certain that they do not contain (or have a material risk of containing) heavy metals.

57.     Plaintiff Kali McGlinch ("Plaintiff McGlinch") is a natural person is a natural person and is a citizen and resident of the State of Utah and previously was a citizen and resident of the State of Ohio.  Between 2019-2021, Plaintiff McGlinch purchased several types of Beech-Nut Baby Food Products from Walmart, Smith's, Dollar General, Family Dollar, Fillmore Market,

Krogers, Amazon, and Sam's Club stores in **Utah** and **Ohio** to feed her child, including but not limited to: Stage 1 Jars (Chicken & Chicken Broth, Beef & Beef Broth, and Turkey & Turkey Broth Baby Food).

58.     Plaintiff LaToya McHenry ("Plaintiff McHenry") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Georgia. Between 2017-2018, Plaintiff McHenry purchased several types of Beech-Nut Baby Food Products from Kroger and Walmart stores in **Georgia** to feed her child, including but not limited to: Cereals (Single Grain Rice Cereal, Multigrain Cereal, and Organic Oatmeal), Fruit & Veggie Melties (Banana Blueberry & Green Beans, Strawberry Apple & Yogurt, and Apple & Pumpkin), Classics Jars (Sweet Carrots, Sweet Peas, and Sweet Potato), Organics Jars (Prunes, Sweet Potato, Apple Kiwi & Spinach, Apple, Banana Cinnamon & Granola, Carrots, Pear, Pumpkin, and Pear Kale & Cucumber, Naturals Jars (Apple, Banana, Butternut Squash, Carrots, Apple & Kale, Green Beans, Pear, Just Sweet Potatoes, Mango, Sweet Potato, Apple Pumpkin & Cinnamon, Pineapple Pear & Avocado, Spinach Zucchini & Peas, and Sweet Corn & Green Beans).

59.     Plaintiff Christina Mitchell ("Plaintiff Mitchell") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Tennessee. Between 2017-2020, Plaintiff Mitchell purchased several types of the Beech-Nut Baby Food Products from Walmart and Publix stores in **Tennessee** to feed her children, including but not limited to: Naturals Pouches (Carrot Apple & Pineapple, Banana Cinnamon & Granola, Banana Apple & Blueberries, Apple Yogurt Cinnamon & Oat, and Apple Pumpkin & Cinnamon), Veggies Pouches (Squash Peas & Pear, and Carrot Zucchini & Pear), Fruities Pouches (Pear Mango & Squash and Peach Apple & Banana), Organics Jars (Prunes, Sweet Potato, Apple Kiwi & Spinach, Apple Raspberries

& Avocado, and Banana Cinnamon & Granola), and Naturals Jars (Butternut Squash, Apple &
Kale, Mango, Apple & Blackberries, Beet Pear & Pomegranate, and Pineapple Pear & Avocado).

60.     Plaintiff Loukevia Moore ("Plaintiff Moore") is a natural person and is, and at all
times relevant hereto has been, a citizen and resident of the State of Louisiana.  Between 1999 and
2021, Plaintiff Moore purchased several types of the Beech-Nut Baby Food Products from Target
stores in **Louisiana**, **Florida**, and **Alabama** to feed her children, including but not limited to:
Cereals (Single Grain Rice Cereal, Multigrain Cereal, Organic Oatmeal Cereal, Whole Grain
Cereal), Fruit & Veggie Melties (Strawberry Apple & Yogurt, and Apple & Pumpkin), Naturals
Pouches (Carrot Apple & Pineapple, Banana Cinnamon & Granola, Banana Blueberries &
Avocado, Banana Apple & Blueberries, Apple Yogurt Cinnamon & Oat, Apple Pumpkin &
Cinnamon, Apple Mango & Spinach, and Apple & Kale), Veggies Pouches (Zucchini Spinach &
Banana, Squash Peas & Pear, Pumpkin Zucchini & Apple, and Carrot Zucchini & Pear), Fruities
Pouches (Pear Mango & Squash, Pear Banana & Raspberries, Peach Apple & Banana, Banana
Pear & Sweet Potato, Banana Apple & Strawberry, Apple Sweet Potato & Pineapple, Apple Peach
& Strawberries, and Apple Mango & Carrot), Breakfast Pouches (Yogurt Banana & Mixed Berry
and Yogurt, Banana & Strawberry), Harvest Morning Pouches (Pear, Mango, Yogurt & Granola
and Banana, Blueberries, Yogurt & Granola), Iron & Zinc Pouches (Apple, Blueberries &
Spinach), Prebiotic Fiber Pouches (Carrot, Apple & Sweet Potato), Protein & Fiber Pouches
(Pumpkin, Apple, Yogurt, Oats & Cinnamon and Apple, Yogurt, Raspberries, Purple Carrot &
Oats), Favorite Flavor Pouches Variety Pack, Blends with Prebiotic Fiber, Protein & Fiber, and
Iron & Zinc Variety Pack, Fruities Pouches Variety Pack, Veggies Pouches Variety Pack,
Breakfast Pouches Variety Pack, Classics Jars (Sweet Carrots, Sweet Peas, Sweet Potato, Apples
& Blueberries, Apple, Mango & Kiwi, Apple, Banana & Strawberries, Banana, Corn & Sweet

Potato, Garden Vegetables, Mixed Vegetables, Peach, Pear & Pineapple, Pear & Raspberries, Pear, Squash, Beef & Beef Broth, Chicken & Chicken Broth, Turkey & Turkey Broth), Classics Jars Meat Jars Variety Pack, Harvest Dinners Jars (Chicken, Apple & Carrot, Chicken, Pear & Zucchini, Chicken, Apple & Corn, and Turkey, Apple & Sweet Potato), Organics Jars (Prunes, Sweet Potato, Apple Kiwi & Spinach, Apple Raspberries & Avocado, Apple, Banana Cinnamon & Granola, Carrots, Pear, Pumpkin, Pear Kale & Cucumber, Apple, Pumpkin & Granola, Banana, Cinnamon & Granola, Banana, Mango & Sweet Potato, Banana, Butternut Squash & Sweet Corn, Mango, Yogurt & Rolled Oats, Banana, Pumpkin & Rolled Oats, and Apple, Blueberries & Rolled Oats), and Naturals Jars (Apple, Banana, Butternut Squash, Carrots, Apple & Kale, Green Beans, Pear, Just Sweet Potatoes, Mango, Sweet Potato, Apple & Blackberries, Apple Pumpkin & Cinnamon, Beet Pear & Pomegranate, Prunes, Pineapple Pear & Avocado, Spinach Zucchini & Peas, Sweet Corn & Green Beans, Apple, Cinnamon & Granola, Banana, Orange & Pineapple, Banana, Blueberries & Green Beans, Carrots, Sweet Corn & Pumpkin, Guava, Pear & Strawberries, Mango, Apple & Avocado, Pear & Blueberries, Peas, Green Beans & Asparagus, Immune System Support: Banana, Pumpkin & Orange, Immune System Support: Pear, Kale & Orange, Immune System Support: Apple, Blueberries & Ginger, Superblends: Apple, Yogurt, Cinnamon & Oat, Superblends: Mango, Carrot, Yogurt & Oat, Superblends: Banana, Chickpea & Kale, and Superblends: Carrot, Corn & Chickpea).

61.     Plaintiff Brittney Moyer ("Plaintiff Moyer") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Vermont. Between 2017 and 2021 Plaintiff Moyer purchased several types of the Beech-Nut Baby Food Products from Walmart, Shaws, and Price Chopper stores in **Vermont** to feed her children, including but not limited to: Cereals (Single Grain Rice Cereal, Multigrain Cereal, Organic Oatmeal Cereal, Whole

Grain Cereal), Fruit & Veggie Melties (Banana Blueberry & Green Beans, Strawberry Apple & Yogurt, and Apple & Pumpkin), Fruit & Veggie Bars (Apple & Spinach), Fruity Oat Bars (Banana), Naturals Pouches (Carrot Apple & Pineapple, Banana Cinnamon & Granola, Banana Blueberries & Avocado, Banana Apple & Blueberries, Apple Yogurt Cinnamon & Oat, Apple Pumpkin & Cinnamon, Apple Mango & Spinach, and Apple & Kale), Veggies Pouches (Zucchini Spinach & Banana, Squash Peas & Pear, Pumpkin Zucchini & Apple, and Carrot Zucchini & Pear), Fruities Pouches (Pear Mango & Squash, Pear Banana & Raspberries, Peach Apple & Banana, Banana Pear & Sweet Potato, Banana Apple & Strawberry, Apple Sweet Potato & Pineapple, Apple Peach & Strawberries, and Apple Mango & Carrot), Breakfast Pouches (Yogurt Banana & Mixed Berry and Yogurt, Banana & Strawberry), Harvest Morning Pouches (Pear, Mango, Yogurt & Granola and Banana, Blueberries, Yogurt & Iron & Zinc Pouches (Apple, Blueberries & Spinach), Prebiotic Fiber Pouches (Carrot, Apple & Sweet Potato), Protein & Fiber (Pumpkin, Apple, Yogurt, Oats & Cinnamon and Apple, Yogurt, Raspberries, Purple Carrot & Oats), Favorite Flavor Pouches Variety Pack, Blends with Prebiotic Fiber, Protein & Fiber, and Iron & Zinc Variety Pack, Fruities Pouches Variety Pack, Veggies Pouches Variety Pack, Breakfast Pouches Variety Pack, Classics Jars (Sweet Carrots, Sweet Peas, Sweet Potato, Apples & Blueberries, Apple, Mango & Kiwi, Apple, Banana & Strawberries, Banana, Garden Vegetables, Mixed Vegetables, Peach, Pear & Pineapple, Pear & Raspberries, Pear, Squash, Chicken & Chicken Broth, Turkey & Turkey Broth), Harvest Dinners Jars (Chicken, Apple & Carrot, Chicken, Pear & Zucchini, Chicken, Apple & Corn, and Turkey, Apple & Sweet Potato), Organics Jars (Apple Kiwi & Spinach, Apple Raspberries & Avocado, Apple, Banana Cinnamon & Granola, Pear, Pumpkin, Pear Kale & Cucumber, Apple, Pumpkin & Granola, Banana, Cinnamon & Granola, Banana, Mango & Sweet Potato, Banana, and Butternut Squash & Sweet Corn), Naturals Jars (Apple,

Banana, Apple & Kale, Green Beans, Pear, Mango, Apple & Blackberries, Apple Pumpkin & Cinnamon, Beet Pear & Pomegranate, Pineapple Pear & Avocado, Apple, Cinnamon & Granola, Banana, Orange & Pineapple, Banana, Blueberries & Green Beans, Guava, Pear & Strawberries, Mango, Apple & Avocado, Pear & Blueberries, Immune System Support: Banana, Pumpkin & Orange, Immune System Support: Pear, Kale & Orange, Immune System Support: Apple, Blueberries & Ginger, Superblends: Apple, Yogurt, Cinnamon & Oat, and Superblends: Mango, Carrot, Yogurt & Oat).

62.     Plaintiff Stephanie Norgaard ("Plaintiff Norgaard") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Oregon.  Between 2018 and 2019 and 2020 and 2021 Plaintiff Norgaard purchased several types of Beech-Nut Baby Food Products from Walmart, Fred Meyers and Safeway stores in **Oregon** to feed her children, including but not limited to: Fruit & Veggie Melties (Banana Blueberry & Green Beans, Strawberry Apple & Yogurt, and Apple & Pumpkin), Naturals Pouches (Carrot Apple & Pineapple, Banana Cinnamon & Granola, Banana Blueberries & Avocado, Banana Apple & Blueberries, Apple Yogurt Cinnamon & Oat, Apple Pumpkin & Cinnamon, Apple Mango & Spinach, and Apple & Kale), Veggies Pouches (Zucchini Spinach & Banana, Squash Peas & Pear, Pumpkin Zucchini & Apple, and Carrot Zucchini & Pear), Fruities Pouches (Pear Mango & Squash, Pear Banana & Raspberries, Peach Apple & Banana, Banana Pear & Sweet Potato, Banana Apple & Strawberry, Apple Sweet Potato & Pineapple, Apple Peach & Strawberries, and Apple Mango & Carrot), Breakfast Pouches (Yogurt Banana & Mixed Berry), Classics Jars (Sweet Peas and Sweet Potato), Organics Jars (Prunes, Sweet Potato, Apple, Carrots, and Pear), and Naturals Jars (Apple, Banana, Carrots, Green Beans, Pear, and Mango). Plaintiff Norgaard would be willing to purchase Beech-

Nut's baby food products in the future if they could be certain that they do not contain (or have a material risk of containing) heavy metals.

63.     Plaintiff Corinthea Pangelinan ("Plaintiff Pangelinan") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Arizona.  Between 2017 and 2020, Plaintiff Pangelinan purchased several types of Beech-Nut Baby Food Products from Walmart, Target, and Safeway stores in **Arizona** and the State of **California** to feed her children, including but not limited to: Fruit & Veggie Melties (Banana Blueberry & Green Beans, Strawberry Apple & Yogurt, and Apple & Pumpkin), Fruit & Veggie Melties with Probiotics (Apple Carrot Mango & Yogurt and Pear Mango Spinach & Yogurt), Baked Veggie Crisps (Sweet Potato), Fruit & Veggie Bars (Apple & Spinach, Banana & Pumpkin, Banana, and Strawberry), Veggies Pouches (Zucchini Spinach & Banana, Squash Peas & Pear, Pumpkin Zucchini & Apple, and Carrot Zucchini & Pear), Fruities Pouches (Peach Apple & Banana, Pear Mango & Squash, Pear Banana & Raspberries, Banana Pear & Sweet Potato, Banana Apple & Strawberry, Apple Sweet Potato & Pineapple, Apple Peach & Strawberries, Apple Mango & Carrot, and Yogurt Banana & Mixed Berry), Organics Jars (Sweet Potato, Apple Kiwi & Spinach, Apple Raspberries & Avocado, Pear, and Pear Kale & Cucumber), Naturals Jars (Apple, Banana, Butternut Squash, Apple & Kale, Pear, Just Sweet Potatoes, Mango, Apple & Blackberries, Pineapple Pear & Avocado, Spinach Zucchini & Peas, and Sweet Corn & Green Beans).

64.     Plaintiff Robert Partello ("Plaintiff Partello") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of New York.  Between 2019 and 2020, Plaintiff Partello purchased several types of Beech-Nut Baby Food Products from Walmart stores in **New York** to feed his child, including but not limited to: Cereals (Single Grain Rice Cereal and Multigrain Cereal), Fruit & Veggie Melties (Banana Blueberry & Green Beans

and Strawberry Apple & Yogurt) and Baked Veggie Crisps (Sweet Potato), Fruity Oat Bars (Banana and Strawberry), Naturals Pouches (Banana Cinnamon & Granola, Banana Apple & Blueberries, and Apple Yogurt Cinnamon & Oat), Veggies Pouches (Squash Peas & Pear), Fruities Pouches (Pear Banana & Raspberries, Peach Apple & Banana, Banana Apple & Strawberry, and Apple Peach & Strawberries), Classics Jars (Sweet Peas and Sweet Potato), and Naturals Jars (Apple, Banana, Carrots, Green Beans, Pear, Sweet Potato, Apple & Blackberries, and Sweet Corn & Green Beans).

65.     Plaintiff Krishna Patel ("Plaintiff Patel") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Indiana.  Between 2016 and 2018, Plaintiff Patel purchased several types of the Beech-Nut Baby Food Products from Walmart, Kroger, Meijer and Fresh Thyme stores in **Indiana** to feed her children, including but not limited to: Veggies Pouches (Carrot Zucchini & Pear), Fruities Pouches (Pear Mango & Squash, Peach Apple & Banana, and Banana Apple & Strawbery), Classics Jars (Sweet Carrots, Sweet Peas, Sweet Potato, Apples & Blueberries, Garden Vegetables, Mixed Vegetables, Peach), and Naturals Jars (Apple & Blackberries, Beet, Pear & Pomegranate, Spinach, Zucchini & Peas, Carrots, Sweet Corn & Pumpkin, and Guava, Pear & Strawberries).

66.     Plaintiff Maurice Peterson ("Plaintiff Peterson") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the District of Columbia between 2015-2017, Plaintiff Peterson purchased several types of the Beech-Nut Baby Food Products from Safeway and Giant Food stores in the **District of Columbia** and **Maryland** to feed his child including but not limited to: Single Grain Rice Cereal, Veggies Pouches (Squash Peas & Pear, Pumpkin Zucchini & Apple), Classics Jars (Sweet Carrots, Sweet Peas, Sweet Potato, Apple, Mango & Kiwi, Apple, Banana & Strawberries, Banana, Corn & Sweet Potato, Garden Vegetables,

Mixed Vegetables, Peach, Pear & Pineapple, Pear). Plaintiff Peterson would be willing to purchase Beech-Nut's baby food products in the future if they could be certain that they do not contain (or have a material risk of containing) heavy metals.

67.     Plaintiff Amanda Rogers ("Plaintiff Rogers") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Washington.   Between 2015 and 2020, Plaintiff Rogers purchased several types of Beech-Nut Baby Food Products from Amazon, Walmart, Safeway, Albertson, Haggen Food & Pharmacy stores in **Washington** to feed her children, including but not limited to: Cereals (Single Grain Rice Cereal, Multigrain Cereal, and Organic Oatmeal), Naturals Pouches (Banana Cinnamon & Granola, Banana Blueberries & Avocado, Banana Apple & Blueberries, Apple Yogurt Cinnamon & Oat, Apple Pumpkin & Cinnamon, Apple Mango & Spinach, and Apple & Kale), Fruities Pouches (Pear Banana & Raspberries, Peach Apple & Banana, and Apple Sweet Potato & Pineapple), Classics Jars (Sweet Carrots, Sweet Peas, and Sweet Potato), Organics Jars (Prunes, Sweet Potato, Apple Kiwi & Spinach, Apple Raspberries & Avocado, Apple, Banana Cinnamon & Granola, Carrots, Pear, Pumpkin, and Pear Kale & Cucumber), and Naturals Jars (Apple, Banana, Butternut Squash, Carrots, Apple & Kale, Green Beans, Pear, Just Sweet Potatoes, Mango, Sweet Potato, Apple & Blackberries, Apple Pumpkin & Cinnamon, Beet Pear & Pomegranate, Prunes, Pineapple Pear & Avocado, Spinach Zucchini & Peas, and Sweet Corn & Green Beans).

68.     Plaintiff Bridget Salopek ("Plaintiff Salopek") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of New Mexico.  Between 2018-2021, Plaintiff Salopek purchased several types of the Beech-Nut Baby Food Products from Sprouts Farmers Market, Albertsons, and Target stores in **New Mexico** and the States of **California**, **Texas**, and **Arizona** to feed her children, including but not limited to: Cereals (Single

Grain Rice Cereal), Fruit & Veggie Melties (Banana Blueberry & Green Beans, Strawberry Apple & Yogurt, and Apple & Pumpkin), Baked Veggie Crisps (Sweet Potato), Fruit & Veggie Bars (Apple & Spinach and Banana & Pumpkin), Fruity Oat Bars (Strawberry), Veggies Pouches (Zucchini Spinach & Banana, Squash Peas & Pear, and Carrot Zucchini & Pear), and Breakfast Pouches (Yogurt Banana & Mixed Berry).

69.     Plaintiff Haley Sams ("Plaintiff Sams") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Georgia. Between 2019 and 2021, Plaintiff Sams purchased several types of Beech-Nut Baby Food Products from Walmart stores in **Georgia** to feed her child, including but not limited to: Melties (Banana, Blueberry & Green Beans; Strawberry, Apple & Yogurt; Apple & Pumpkin; and Apple, Carrot, Mango & Yogurt), Pouches (Carrot, Apple & Pineapple; Banana, Cinnamon & Granola; Banana, Blueberries & Avocado; Banana, Apple & Blueberries; Apple, Yogurt, Cinnamon & Oats; Apple, Pumpkin & Cinnamon; Apple, Mango & Spinach; Apple & Kale; Zucchini, Spinach & Banana; Squash, Peas & Pear; Pumpkin, Zucchini & Apple; Carrot, Zucchini & Pear; Pear, Mango & Squash; Pear, Banana & Raspberries; Peach, Apple & Banana; Banana, Pear & Sweet Potato; Banana, Apple & Strawberry; Apple, Sweet Potato & Pineapple; Apple, Peach & Strawberries; Apple, Mango & Carrot; Yogurt, Banana & Mixed Berry; and Yogurt, Banana & Strawberry), and Harvest Dinners Jars (Chicken, Apple & Corn).

70.     Plaintiff Vito Scarola ("Plaintiff Scarola") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Florida. Between 2016 and 2018, Plaintiff Scarola purchased several types of Beech-Nut Baby Food Products from Walmart and Publix stores in **Florida** to feed his child, including but not limited to: Cereals (Single Grain Rice Cereal; Multigrain Cereal; and Whole Grain Cereal), Melties (Strawberry, Apple & Yogurt; and

Apple, Carrot, Mango & Yogurt), Pouches (Banana, Cinnamon & Granola; Banana, Apple & Blueberries; Pumpkin, Zucchini & Apple; Pear, Mango & Squash; Pear, Banana & Raspberries; Banana, Apple & Strawberry; Apple, Peach & Strawberries; Yogurt, Banana & Mixed Berry; Yogurt, Banana & Strawberry; Pear, Mango, Yogurt & Granola; Pumpkin, Apple, Yogurt, Oats & Cinnamon; Apple, Yogurt, Raspberries, Purple Carrot & Oats; and Fruities Pouches 9 Pack), Classics Jars (Sweet Carrots; Sweet Peas; Apple; Banana & Strawberries; Banana; Corn & Sweet Potato; Garden Vegetables; Mixed Vegetables; Peach; Pear & Pineapple; and Squash), Organics Jars (Apple; Carrots; and Banana), and Naturals Jars (Apple; Banana; Butternut Squash; Carrots; Green Beans; Pear; and Sweet Potato).

71.     Plaintiff Amanda Schram ("Plaintiff Schram") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of South Carolina. Between 2019 and 2020, Plaintiff Schram purchased several types of Beech-Nut Baby Food Products from Walmart stores in **South Carolina** and the State of **North Carolina** to feed her children, including but not limited to: Cereals (Single Grain Rice Cereal), Fruit & Veggie Melties (Banana Blueberry & Green Beans, Strawberry Apple & Yogurt, and Apple & Pumpkin), Classics Jars (Sweet Carrots, Sweet Peas, and Sweet Potato), Organics Jars (Sweet Potato, Apple Kiwi & Spinach, Apple, Banana Cinnamon & Granola, Carrots, and Pear), and Naturals Jars (Apple, Banana, Butternut Squash, Carrots, Apple & Kale, Green Beans, Pear, Just Sweet Potatoes, Mango, Apple & Blackberries, and Prunes). Plaintiff Schram would be willing to purchase Beech-Nut's baby food products in the future if they could be certain that they do not contain (or have a material risk of containing) heavy metals.

72.     Plaintiff Liza Sike ("Plaintiff Sike") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of New Jersey.  Between 2016 through

2021, Plaintiff Sike purchased several types of the Beech-Nut Baby Food Products from Target, Buy Buy Baby, and Walmart stores in **New Jersey** to feed her children, including but not limited to: Organics Jars (Prunes, Sweet Potato, Apple Kiwi & Spinach, Apple Raspberries & Avocado, Apple, Banana Cinnamon & Granola, Carrots, Pear, Pumpkin, Pear Kale & Cucumber, Apple, Pumpkin & Granola, Banana, Cinnamon & Granola, Banana, Mango & Sweet Potato, Banana, Butternut Squash & Sweet Corn, Mango, Yogurt & Rolled Oats, Banana, Pumpkin & Rolled Oats, and Apple, Blueberries & Rolled Oats) and Naturals Jars (Banana, Butternut Squash, Carrots, Sweet Potato, Apple, Cinnamon & Granola, and Immune System Support: Apple, Blueberries & Ginger).

73.     Plaintiff Brandi Slabinski ("Plaintiff Slabinski") is a natural person and is a citizen and resident of the State of South Carolina and previously was a citizen and resident of the State of Maryland. Between 2020 and 2021, Plaintiff Slabinski purchased several types of the Beech-Nut Baby Food Products from Target, Giant, and Safeway stores in **Maryland** to feed her children, including but not limited to: Classics Jars (Sweet Carrots, Sweet Peas, Sweet Potato, Apples & Blueberries, Apple, Mango & Kiwi, Banana & Strawberries, Peach, Pear, Squash, Beef & Beef Broth, Chicken & Chicken Broth, Turkey & Turkey Broth), Harvest Dinners Jars (Turkey, Apple & Sweet Potato), Organics Jars (Prunes, Sweet Potato, Apple Kiwi & Spinach, Apple Raspberries & Avocado, Apple, Carrots, Pear, Pumpkin, Pear, Kale & Cucumber, Banana, Mango & Sweet Potato), and Naturals Jars (Apple, Banana, Butternut Squash, Carrots, Apple & Kale, Green Beans, Just Sweet Potatoes, Mango, Sweet Potato, Apple & Blackberries, Beet Pear & Pomegranate, Prunes, Pineapple Pear & Avocado, Spinach, Zucchini & Peas, Banana, Orange & Pineapple, Banana, Blueberries & Green Beans, Mango, Apple & Avocado, Pear & Blueberries, Immune

System Support: Banana, Pumpkin & Orange, Immune System Support: Pear, Kale & Orange, Immune System Support: Apple, Blueberries & Ginger).

74.     Plaintiff Kinder Smith ("Plaintiff Smith") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Tennessee.  Between 2008-2011 and 2014-2017, Plaintiff Smith purchased several types of the Beech-Nut Baby Food Products from Walmart and Kroger stores in **Tennessee** to feed her children, including but not limited to: Cereals (Single Grain Rice Cereal), Classics Jars (Sweet Carrots, Sweet Peas, and Sweet Potato), Organics Jars Prunes, Sweet Potato, and Apple Raspberries & Avocado), and Naturals Jars (Apple, Banana, Butternut Squash, Carrots, Green Beans, Pear, Sweet Potato, Prunes, Pineapple Pear & Avocado, and Sweet Corn & Green Beans).

75.     Plaintiff Tamaya Stevenson ("Plaintiff Stevenson") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of **New Jersey**. Between 2021 and 2022, Plaintiff Stevenson purchased several types of the Beech-Nut Baby Food Products from Fine Fair stores in the State of **New York** to feed her child, including but not limited to: Pouches (Squash, Peas & Pear; and Apple, Peach & Strawberries), and Classics Jars (Sweet Carrots; Sweet Peas; Sweet Potato; Apples & Blueberries; Apple, Mango & Kiwi; Apple; Banana & Strawberries; Banana; Corn & Sweet Potato; Garden Vegetables; Mixed Vegetables; Peach; Pear & Pineapple; Pear & Raspberries; Pear; and Squash).

76.     Plaintiff Porsche Stokes ("Plaintiff Stokes") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Georgia.  Between 2020 and 2021, Plaintiff Stokes purchased several types of Beech-Nut Baby Food Products from Walgreens, and Kroger stores in **Georgia** to feed her child, including but not limited to: Cereals (Single Grain Rice Cereal and Organic Oatmeal), Fruit & Veggie Melties with Probiotics (Apple Carrot Mango

& Yogurt), Veggies Pouches (Squash Peas & Pear), Fruities Pouches (Apple Mango & Carrot), Organics Jars (Sweet Potato, Apple, Banana Cinnamon & Granola, Carrots, Pear, and Pumpkin), Naturals Jars (Apple, Banana, Butternut Squash, Carrots, Apple & Kale, Green Beans, Pear, Mango, Sweet Potato, Apple Pumpkin & Cinnamon, Pineapple Pear & Avocado, and Sweet Corn & Green Beans).

77.   Plaintiff Dillon Townzen ("Plaintiff Townzen") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Arkansas and was formerly a citizen and resident of the State of Oregon.  Between 2012-2013, 2016, 2018, and 2020, Plaintiff Townzen purchased several types of Beech-Nut Baby Food Products from Walmart, Albertsons, Safeway, and Fred Meyer stores in **Oregon** to feed his children, including but not limited to: Cereals (Multigrain Cereal), Classics Jars (Sweet Carrots, Sweet Peas, and Sweet Potato), Organics Jars (Apple Kiwi & Spinach, Apple Raspberries & Avocado, Apple, Banana Cinnamon & Granola, Carrots, Pear, and Pumpkin) and Naturals Jars (Apple, Banana, Butternut Squash, Apple & Kale, Green Beans, Pear, Mango, Sweet Potato, Apple & Blackberries, Apple Pumpkin & Cinnamon, Beet Pear & Pomegranate, Pineapple Pear & Avocado, Spinach Zucchini & Peas, and Sweet Corn & Green Beans).

78.   Plaintiff Brittany Wallace ("Plaintiff Wallace") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Illinois.  Between 2016-2021, Plaintiff Wallace purchased several types of Beech-Nut Baby Food Products from Walmart, Dollar General, Target, and Kroger stores in **Illinois** and the State of **Kentucky** to feed her children, including but not limited to: Organics Jars (Prunes).

79.   Plaintiff Monique Warren ("Plaintiff Warren") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Connecticut. Between 2017-

2019, Plaintiff Warren purchased several types of the Beech-Nut Baby Food Products from Walmart, Big Y, Shoprite, and Stop and Shop stores in **Connecticut** and **Oklahoma** to feed her child, including but not limited to: Cereals (Single Grain Rice Cereal and Multigrain Cereal), Fruit & Veggie Melties (Apple & Pumpkin), Classics Jars (Sweet Carrots, Sweet Peas, and Sweet Potato), Organics Jars (Apple, Carrots, and Pear), and Naturals Jars (Apple, Butternut Squash, Carrots, Green Beans, Pear, Apple & Blackberries, and Spinach Zucchini & Peas).

80.     Plaintiff Jordan White ("Plaintiff White") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Washington. In 2022, Plaintiff White purchased several types of Beech-Nut Baby Food Products from Walmart stores in **Washington** to feed her child, including but not limited to: Classics Jars (Pear; and Squash), Organics Jars (Pear; Prunes; Sweet Potato; Apple; Carrots; and Banana), and Naturals Jars (Apple; Banana; Butternut Squash; Carrots; Green Beans; Pear; Sweet Potato; and Prunes).

81.     Plaintiff Natalie Williams ("Plaintiff Williams") is a natural person and is, at all times relevant hereto has been, a citizen and resident of the State of Missouri. Between 2020 and 2021, Plaintiff Williams purchased several types of Beech-Nut Baby Food Products from Walmart, Amazon, and Target stores in **Missouri** and the State of **Kansas** to feed her child, including but not limited to: Cereals (Multigrain Cereal and Organic Oatmeal), Fruit & Veggie Melties (Strawberry Apple & Yogurt), Breakfast Pouches (Yogurt Banana & Mixed Berry), Classics Jars (Sweet Carrots, Sweet Peas, and Sweet Potato), Organics Jars (Sweet Potato, Apple Raspberries & Avocado, Apple, Carrots, and Pear), and Naturals Jars (Carrots, Just Sweet Potatoes, and Apple & Blackberries).

82.     Plaintiff Amber Wright ("Plaintiff Wright") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Kentucky. Between 2020 and

2021, Plaintiff Wright purchased several types of Beech-Nut Baby Food Products from Walmart, Kroger, Meijer, and Price Less Foods stores in **Kentucky** to feed her child, including but not limited to: Classics Jars (Sweet Carrots, Sweet Peas, and Sweet Potato), Organics Jars (Sweet Potato, Apple Kiwi & Spinach, Apple Raspberries & Avocado, Apple, Banana Cinnamon & Granola, Pear, Pumpkin, and Pear Kale & Cucumber), and Naturals Jars (Apple, Banana, Butternut Squash, Apple & Kale, Green Beans, Pear, Just Sweet Potatoes, Mango, Sweet Potato, Apple & Blackberries, Apple Pumpkin & Cinnamon, Pineapple Pear & Avocado, and Spinach Zucchini & Peas).

83.     Plaintiff Ashley Yates ("Plaintiff Yates") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Mississippi.  Between 2016 and 2019, Plaintiff Yates purchased several types of the Beech-Nut Baby Food Products from Kroger, Walmart, and Cash-Saver stores in **Mississippi** to feed her children, including but not limited to: Cereals (Single Grain Rice Cereal, Multigrain Cereal, Organic Oatmeal Cereal), Fruit & Veggie Melties (Banana Blueberry & Green Beans, Strawberry Apple & Yogurt, and Apple & Pumpkin), Baked Veggie Crisps (Sweet Potato), Fruit & Veggie Bars (Apple & Spinach and Banana & Pumpkin), Fruity Oat Bars (Strawberry), Naturals Pouches (Carrot Apple & Pineapple, Banana Cinnamon & Granola, Banana Blueberries & Avocado, Banana Apple & Blueberries, Apple Yogurt Cinnamon & Oat, Apple Pumpkin & Cinnamon, Apple Mango & Spinach, and Apple & Kale), Veggies Pouches (Zucchini Spinach & Banana, Squash Peas & Pear, Pumpkin Zucchini & Apple, and Carrot Zucchini & Pear), Fruities Pouches (Pear Mango & Squash), Breakfast Pouches (Yogurt Banana & Mixed Berry and Yogurt, Banana & Strawberry), Iron & Zinc Pouches (Apple, Blueberries & Spinach), Favorite Flavor Pouches Variety Pack, Blends with Prebiotic Fiber, Protein & Fiber, and Iron & Zinc Variety Pack, Classics Jars (Sweet Carrots, Sweet Peas, Sweet

Potato, Apples & Blueberries, Apple, Mango & Kiwi, Apple, Banana & Strawberries, Banana, Corn & Sweet Potato, Garden Vegetables, Mixed Vegetables, Peach, Pear & Pineapple, Pear & Raspberries, Pear, Squash, Beef & Beef Broth, Chicken & Chicken Broth, Turkey & Turkey Broth), Classics Jars Meat Jars Variety Pack, Harvest Dinners Jars (Chicken, Apple & Carrot, Chicken, Pear & Zucchini, and Chicken, Apple & Corn), and Organics Jars (Apple Kiwi & Spinach, Apple Raspberries & Avocado, Apple, Banana Cinnamon & Granola, Carrots, Pear, Pumpkin, Pear Kale & Cucumber, Apple, Pumpkin & Granola).

84.     Plaintiff Christen Zulli ("Plaintiff Zulli") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Hawaii.  Between 2018 and 2021, Plaintiff Zulli purchased several types of the Beech-Nut Baby Food Products from Target stores in **Hawaii** to feed her children, including but not limited to: Organics Jars (Sweet Potato, Apple Kiwi & Spinach, Apple Raspberries & Avocado, Pumpkin, Pear Kale & Cucumber, Apple, Pumpkin & Granola, Banana, Cinnamon & Granola, Banana, Mango & Sweet Potato, Banana, and Butternut Squash & Sweet Corn) and Naturals Jars (Butternut Squash, Carrots, Apple & Kale, Green Beans, Just Sweet Potatoes, Apple & Blackberries, Sweet Corn & Green Beans, Guava, Pear & Strawberries, and Superblends: Carrot, Corn & Chickpea).

85.     Each Plaintiff believed they were feeding their respective child(ren) healthy, nutritious baby food that was safe and suitable for consumption.  Each Plaintiff saw and relied upon the packaging of the Beech-Nut Baby Food Product(s) purchased.  Each Plaintiff made those purchases without knowledge that the Beech-Nut Baby Foods contained (or had a material risk of containing) toxic heavy metals.  If each Plaintiff had known that the Beech-Nut Baby Foods purchased contained (or had a material risk of containing) toxic heavy metals, each Plaintiff would not have purchased or would not have paid as much for the Beech-Nut Baby Foods.

47

86.     Plaintiffs Schram, Malaga, Blankenship, Peterson, Abbott, Hobdy, Norgaard, and McGibney, Almquist, Cantor, Carson, and White, amongst others, would be willing to purchase Beech-Nut Baby Foods in the future if they could be certain that they do not contain (or have a material risk of containing) toxic or harmful heavy metals.

87.     Defendant Beech-Nut Nutrition Company is a Delaware corporation with its principal place of business located at One Nutritious Place, Amsterdam, New York, 12010.  Beech-Nut does business throughout the United States, and markets, advertises, labels, represents, warrants, distributes, and sells baby food products online and at brick-and-mortar retail stores. New York is the nerve center of Beech-Nut's business operations related to the conduct alleged herein.

### JURISDICTION AND VENUE

88.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), because this case is a class action where the aggregate claims of all members of the proposed Classes exceed $5,000,000.00, exclusive of interest and costs, and the Plaintiffs and most members of the proposed Classes are citizens of a state different from Defendant.

89.     The Court has personal jurisdiction over Defendant. Defendant has transacted business and maintained substantial contact throughout the United States, including in this District. Defendant's conduct has taken place in, been directed at, and has had the intended effect of, causing injury to persons residing in, located in, or doing business throughout the United States, including in this District.

90.     Venue is proper in this District because a substantial portion of the events complained of herein took place in this District, and this Court has jurisdiction over Defendant. Specifically, Defendant's decision-making regarding the marketing of the baby foods at issue,

including the decision to omit the material information regarding the toxic heavy metals in the products, was located in this District. Furthermore, Defendant is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

I.    **BEECH-NUT PROMOTES BEECH-NUT BABY FOODS AS HEALTHY AND SAFE FOR INFANTS AND YOUNG CHILDREN—QUALITIES THAT ARE MATERIAL TO CONSUMERS—BUT FAILS TO DISCLOSE THE PRESENCE OR RISK OF TOXIC HEAVY METALS**

91.    Few things are as precious as babies to their parents and other caretakers. Consumer research from The Nielsen Company shows that the "big three" attributes buyers look for in a baby food product are a trusted brand, good infant nutrition, and the safety of the products for consumption by children.[7]

92.    Consumers expect that sellers of baby food will regard their children's health and safety as paramount when formulating their products, sourcing their ingredients, and testing for safety, and that sellers will be transparent in their labeling and marketing about what goes into their baby food products.[8]

93.    Beech-Nut knows this. Beech-Nut manufactures, markets, advertises, labels, distributes, and sells baby food products throughout the United States and cultivates the image of manufacturing nutritious, impurity-free, and safe baby food, stating on its website: "Making high quality, safe, and nutritious foods for babies and toddlers will always be our #1 priority."[9]

94.    Beech-Nut's advertising strategy is focused on promoting Beech-Nut Baby Foods as organic and free from unnatural ingredients in order to justify the placement of its products

---

[7]  OH, BABY! Trends in the Baby Food and Diaper Markets Around the World, at 17 (The Nielsen Company, August 2015), available at: https://www.nielsen.com/wp-content/uploads/sites/3/2019/04/Global20Baby20Care20Report20Revised20FINAL-2.pdf .

[8] *Id.*

[9] Our Story, Beech-Nut, https://www.beechnut.com/our-story/ (accessed May 12, 2022).

within the premium category of baby food. This is not surprising given that, for example, organic baby food was valued at $1.9 billion in the U.S. in 2018 and is expected to reach $3.32 billion by 2024.[10]  The incredible rise in consumer demand for organic baby food is "driven by the growing awareness among consumers to limit that baby's exposure to the harmful chemicals used in conventional food production and the awareness of the benefits of organic products."[11]

95.     Beech-Nut promotes its food as premium baby food and in doing so, labels and markets its products as safe, healthy, and suitable for consumption by infants and young children, labeling its products, among other things, "natural" and "organic", "USDA-Certified Organic," "non-GMO," "real food for babies", "free from artificial preservatives, colors and flavors",[12] and "nothing artificial added."[13]  It utilizes advertising mantras such as "[w]hat you see is what's inside. So you'll know exactly what you're eating"[14]; "[w]e make it easy to know what goes into your baby food/Just what You See and Nothing Else";[15] "What you see is what you get/Every mom wants to know what goes into her baby's food"[16]; and "Just real ingredients + no artificial anything + simple preparation = real baby food."[17] Beech-Nut labels also indicate the target age

---

[10] *North America Organic Baby Food Market Expected to Reach a Value of $3.32 Billion by 2024 with a CAGR of 9.6%* (Jan. 20, 2020), available at https://www.businesswire.com/news/home/20200120005436/en/North-America-Organic-Baby-Food-MarketExpected-to-Reach-a-Value-of-3.32-Billion-by-2024-with-a-CAGR-of-9.6---ResearchAndMarkets.com (last visited Nov. 1, 2021).

[11] *Organic Baby Food Market- Growth, Trends, COVID-19 Impact, and Forecast,* available at https://www.mordorintelligence.com/industry-reports/organic-baby-food-market (last visited Nov. 1, 2021).

[12]  Our Story, Beech-Nut, https://www.beechnut.com/our-story/ (accessed May 12, 2022).

[13] Food Quality & Safety, Beech-Nut, https://www.beechnut.com/food-quality-safety/ (accessed Feb. 23, 2021).

[14] https://www.facebook.com/beechnutfoods/photos/10153879948704508

[15] - https://www.facebook.com/beechnutfoods/photos/10153317402169508

[16]  https://www.facebook.com/beechnutfoods/photos/10153879948704508

[17] https://www.facebook.com/beechnutfoods/photos/10152357012049508

or "stage" for which the food is appropriate to emphasize the foods' suitability for consumption by young children and infants. For example, Beech-Nut warrants that "Stage 1" food is appropriate for infant consumption "[f]rom about four months" and "Stage 2" is appropriate for infant consumption "[f]rom about 6 months," and so on.

96.     Examples of such packaging and representations are provided below, starting with Stage 1 Baby Foods, suitable for babies as young as 4 months (and, thus, designed to be the first solid foods babies consume in their lives). This is Beech-Nut "Naturals," touted on the label as "real food for babies" and "Non-GMO Product VERIFIED":

 

97.     Also in Stage 1 is the Beech-Nut "Organics" line (pictured below), with "organic sweet potatoes" as the sole ingredient listed. Once again, "real food for babies" appears prominently.




98.     In addition to purees, Beech-Nut also makes Baby Cereal in their Stage 1 "Organics" line. This is labeled as "Oatmeal Whole Grain Baby Cereal" (pictured below) and is "USDA Organic."  Just above the picture of the bowl the label advertises that the product contains "60% daily value of iron" (and further states on its website that the product is "[f]ortified with 60% of [a] baby's Daily Value (DV) of iron."[18] Notably, Beech-Nut indicates the presence of a beneficial heavy metal but does *not* disclose toxic heavy metals, including arsenic, lead, cadmium, and/or mercury.

---

[18] Beech-Nut, *Organics Oatmeal Cereal Canister,* https://www.beechnut.com/product/organic-oatmeal-cereal- canister/ (last visited June 21, 2022).



99.     Also in Stage 1 is Beech-Nut's Single Grain rice "Baby Cereal," both in the plastic

bottle and box containers (again, pictured below). The box version states that it is "Made with

Natural Ingredients" and "soy free" while the bottle says "Non-GMO Product VERFIED."  Both

packages note the "daily value" of the heavy metal iron (60% per serving in the bottle, 45% in the

box), again without mentioning any other heavy metal, such as arsenic, lead, cadmium, and

mercury. Beech-Nut's line of rice cereal products has been discontinued for its high arsenic levels

because Beech-Nut was not confident it could meet even the 100ppb FDA standard.





100.   Beech-Nut also makes Stage 2 Foods, which as noted on the label (pictured below) is suitable for children "from about 6 months." This sweet potato product is touted on the label as having "nothing artificial added" and is "Non-GMO Product VERIFIED."  The sole ingredients listed are sweet potato and water.




101.    Beech-Nut "fruities" are also found in Stage 2. Once again labeled "Non-GMO Project Verified," the label says the product contains 1/3 banana, 1/4 apple, and 3/4 strawberry.



102.    Beech-Nut also sells Stage 3 Foods, which as noted on the label is suitable for children starting at "8 months." This "real food for babies" product is one of Beech-Nut "Naturals"

"superblends," touting some of the health benefits of the product: "3 g healthy fat, 2 g protein, 25% dv potassium [daily value], and 1 g fiber."

 

103.     Beech-Nut also sells "melties" in their "Natural" line as Stage 3, including these "melties" (pictured below) that contain "probiotics." The label touts the health benefits of the product, which has "no sugar added" and is "certified" gluten free. Beech-Nut's label represents that "With Beech-Nut Naturals [TM] snacks, we strive to use the fewest ingredients possible to provide a snack your toddler will love …

- nothing artificial added
- made with real fruit, vegetable, & yogurt
- peanut-free and gluten-free
- stage 3 snack for 8 months and up.





104.    Beech-Nut also sells in Stage 3 its "fruit & veggie melties," "Non-GMO Project VERIFIED," with "no sugar added," and "just three ingredients," stating "we strive to use the fewest ingredients possible to provide a snack your toddler will love. … this is real for toddlers."





105.    Beech-Nut's Stage 4, suitable for children "from about 12 months," includes this yogurt, banana, and berries "breakfast pouch." Once again, the product is said to contain "nothing artificial added."



106.    Beech-Nut's labels and product packaging uniformly fail to disclose the presence of toxic heavy metals or that the Baby Foods may contain toxic heavy metals.

107.    Further, throughout its representations, and in concert with the on-label branding of its products, Beech-Nut assures parents that the "health and safety of your children is at the heart of what we do." "As parents ourselves, we are proud to feed our own children Beech-Nut products and have taken the responsibility to provide safe, nutritious food as our highest purpose for over 130 years."[19]

108.    Beech-Nut not only touts the safety and health benefits of its Baby Foods, it expressly promotes its testing standards for the very same toxic heavy metals that are contained at

---

[19] Food Quality & Safety, Beech-Nut, https://www.beechnut.com/food-quality-safety/ (accessed May 12, 2022).

elevated levels in its products.  Beech-Nut represents on its website that "what's inside your baby food matters," and champions their dedication to creating healthy baby food. Beech-Nut is "proud to offer natural and organic products that that are free from artificial preservatives, colors and flavors," and that it "conduct[s] over 20 rigorous tests on [its] purees, testing for up to 255 pesticides and heavy metals" through "a team of about 350 people passionate about making food for your – and our! – little ones. Making high quality, safe, and nutritious foods for babies and toddlers will always be our #1 priority."[20]

109.   Beech-Nut's website further touts its testing legacy and experience: "our lab analysts have over 140 years of combined food testing experience" and states that Beech-Nut prides itself on its partnership with farms to help ensure they understand, and can meet, the level of quality we require."  Indeed, Beech-Nut represents that it "continuously improve[s] our food safety and quality standards based on the most up-to-date, scientific technology." [21]

110.   Beech-Nut also claims that it "[goes] above and beyond standard," citing that in 2019 (as further described below), "Beech-Nut co-founded The Baby Food Council to create science-based standards for reducing levels of heavy metals in food products to as low as reasonably achievable, using best in class management techniques." Beech-Nut's message goes directly to parents and invokes their responsibility as parents: "We know moms, dads, and caregivers depend on our commitment to safety and quality to help keep their children thriving."[22]

111.   Beech-Nut's pattern of representations is consistent in insuring that its products are safe for consumption through its thorough testing program. For example, Beech-Nut's website stated that Beech-Nut has "been testing [] ingredients for heavy metals since 1985, and [Beech-

---

[20] Our Story, Beech-Nut, https://www.beechnut.com/our-story/ (accessed June 21, 2022).

[21] Food Quality Safety, Beech-Nut, https://www.beechnut.com/food-quality-safety/ (accessed June 21, 2022).

[22] Food Quality Safety, Beech-Nut, https://www.beechnut.com/food-quality-safety/ (accessed June 21, 2022).

Nut is] aware of no higher standards in the industry than the ones [Beech-Nut] employ[s]." To accomplish this, Beech-Nut "test[s] for up to 255 pesticides and heavy metals (like lead, cadmium, arsenic and other nasty stuff). Just like you would, we send the produce back if it's not good enough. Even in the case of our infant rice cereal, which is already below the proposed FDA limit for arsenic in rice cereals, we still test every, single lot to ensure it's safe to consume."[23]

112.    In 2016, Beech-Nut's website likewise represented the quality and safety of its products (which also included a specific claim about the rice cereal product Beech-Nut was ultimately forced to recall): "The EPA, USDA and other government bodies have high standards for limits on pesticides and organic certification. That's not good enough for us. Our pesticide standards are 10 times stricter than government requirements. Our infant rice cereal, for instance, is already below the proposed FDA limit for arsenic in rice cereals – we test every lot to ensure this. Beech-Nut highest standards: Our pesticide standards are 10x higher than government requirements. We test for 235 pesticides, heavy metals and toxins. … Then we conduct more than 20 rigorous tests on our delicious purees to ensure that the safety, quality and flavors are just right – before they reach your baby's high chair. So you know that you are feeding your baby only the very best quality (and the tastiest!)."[24]

113.    Beech-Nut's declarations as to its safety standards date back at least as far as its 2004 website posting: "We're unusually strict about choosing, preparing and packaging our baby foods. Which makes them purer than many items you would pick up in the fresh produce aisle. All raw produce we use is tested for pesticide residues that meet our specifications — which are

---

[23] Food Quality & Safety, Beech-Nut (Sept. 4, 2019),
https://web.archive.org/web/20190904110613/https://www.beechnut.com/food-quality-safety/ (accessed June 21, 2022)

[24] https://web.archive.org/web/20160715075725/http://www.beechnut.com/our-values/food-quality-safety/.

significantly stricter than federal standards. The soil we use is tested to ensure no chemicals or heavy metals are present. It's standards like these that ensure you get high quality baby food when you open the jar."[25]

114.     Beech-Nut's parent company, Hero Group, also promotes Beech-Nut Baby Foods as natural and made from quality ingredients.  According to its website, Hero Group states that "[o]ur US-based baby food brand Beech-Nut strives to inspire a lifelong love of good food. The range of Beech-Nut naturals was developed with the aspiration to provide consumers with products that would be the closest to homemade as possible, and is therefore made from premium ingredients cooked in a gentle way to keep the color and taste of the natural ingredients we use – just fruit and vegetables without any artificial preservatives."[26]

115.     The Beech-Nut Baby Food Products that contain or have a material risk of containing heavy metals include at least the following products (and those in the same lines of products):

**Stage 1 Beech-Nut Baby Foods**

Beech-Nut Organics Cereal (Stage 1):  Rice, Oatmeal.

Beech-Nut Cereal (Stage 1):  Rice, Oatmeal.

Beech-Nut Naturals (Stage 1) Jars: Apple, Carrots, Pear, Sweet Potato, Prunes.

Beech-Nut Organics (Stage 1) Jars: Apple, Carrots, Pear, Sweet Potato, Prunes.

---

[25]https://web.archive.org/web/20040212052220/http://www.beechnut.com/Our%20Company/small%20details/details_tough_standards.asp.

[26] Baby & Toddler Food Brands Overview, Hero Group,  https://group.hero.arapreview.nl/baby-toddler-food-btf-category

## Stage 2 Beech-Nut Baby Foods

Beech-Nut Organics (Stage 2) Jars:  Apple, Pumpkin & Granola; Banana, Cinnamon & Granola; Banana, Mango & Sweet Potato; Apple, Kiwi & Spinach.

Beech-Nut Naturals (Stage 2) Jars:  Apple, Pumpkin & Cinnamon; Apple, Cinnamon & Granola; Banana, Orange & Pineapple; Banana, Blueberries & Green Beans; Apple & Blackberries; Apple & Kale; Carrots, Sweet Corn & Pumpkin; Guava, Pear & Strawberries; Mango; Mango, Apple & Avocado; Pear & Blueberries; Spinach, Zucchini & Peas.

Beech-Nut Harvest Dinners (Stage 2) Jars:  Chicken, Apple & Carrot; Chicken, Pear & Zucchini; Chicken, Apple & Corn; Turkey, Apple & Sweet Potato.

Beech-Nut Nothing Artificial Added (Stage 2) Jars:  Apple & Blueberries; Apple, Mango & Kiwi; Apple; Banana & Strawberries; Corn & Sweet Potato; Garden Vegetables; Mixed Vegetables; Peach; Pear & Pineapple; Pear & Raspberries; Pear; Sweet Carrots; Sweet Potato.

Beech-Nut Fruities (Stage 2) Pouches:  Banana, Apple & Strawberry; Peach, Apple & Banana; Pear, Mango & Squash; Apple, Mango & Carrot; Apple, Sweet Potato & Pineapple; Banana, Pear & Sweet Potato; Apple, Peach & Strawberries; Pear, Banana & Raspberries.

Beech-Nut Veggies (Stage 2) Pouches:  Carrot, Zucchini & Pear; Pumpkin, Zucchini & Apple; Squash, Peas & Pear; Zucchini, Spinach & Banana.

## Stage 3 Beech-Nut Baby Foods

Beech-Nut Naturals Immune System Support (Stage 3) Jars: Pear, Kale & Orange; Kale, Blueberries & Ginger.

Beech-Nut Naturals Superblends (Stage 3) Jars:  Apple, Yogurt, Cinnamon & Oat; Mango, Carrot, Yogurt & Oat; Banana, Chickpea & Kale; Carrot, Corn & Chickpea.

Beech-Nut Organics (Stage 3) Jars:  Mango, Yogurt & Rolled Oats; Banana, Pumpkin & Rolled Oats; Apple, Blueberries & Rolled Oats.

Apple, Carrot, Mango & Yogurt.

Beech-Nut Naturals Fruit & Veggie (Stage 3) Melties:  Apple & Pumpkin; Banana, Blueberry & Green Beans.

Beech-Nut Naturals Yogurt (Stage 3) Melties:  Strawberry, Apple & Yogurt.

Beech-Nut Naturals Melties with Probiotics (Stage 3):  Pear, Mango, Spinach & Yogurt;

Apple, Carrot, Mango & Yogurt.

**Stage 4 Beech-Nut Baby Foods**

Beech-Nut Harvest Morning (Stage 4) Pouches:  Pear, Mango, Yogurt & Granola; Banana, Blueberries, Yogurt & Granola.

Beech-Nut Iron & Zinc (Stage 4) Pouches:  Apple, Blueberries & Spinach.

Beech-Nut Protein & Fiber (Stage 4) Pouches:  Pumpkin, Apple, Yogurt, Oats & Cinnamon; Apple, Yogurt, Raspberry, Purple Carrot & Oats.

Beech-Nut Fruit & Veggie Blends with Prebiotic Fiber (Stage 4) Pouches:  Carrot, Apple & Sweet Potato.

Beech-Nut Breakfast (Stage 4) Pouches: Yogurt, Banana & Mixed Berry; Yogurt, Banana & Strawberry.

Beech-Nut Naturals Fruit & Veggie Bars (Stage 4):  Apple & Spinach.

Beech-Nut Naturals Fruity Oat Bars (Stage 4):  Strawberry.

Beech-Nut Mini Waffles with Hidden Veggies (Stage 4):  Butternut & Berries; Pumpkin, Apple & Cinnamon.

116.    Beech-Nut markets under its "naturals" and "organics" in order to emphasize the foods' suitability for consumption by young children and infants.

117.    Beech-Nut Baby Foods' packaging and labels do not list, let alone warn, potential customers that the Beech-Nut Baby Foods contain or have a material risk of containing toxic heavy metals.

118.    Plaintiffs and the Classes are reasonable consumers who do not have the scientific knowledge or wherewithal to independently determine that the Beech-Nut Baby Food Products contained, or were at materials risk of containing, toxic heavy metals or to understand the true nature of the Products' ingredients.  Consumers must, and do, rely on Beech-Nut to provide them with accurate information on the ingredients in the Baby Food Products, particularly given the Baby Food Products contain or are at material risk of containing arsenic, lead, cadmium and/or

mercury – facts which are material to consumers given their propensity to cause adverse health effects.

119.    Beech-Nut's representations and warranties (and omissions) were intended to, and did, induce Plaintiffs and those similarly situated to trust and rely on Beech-Nut and purchase Beech-Nut Baby Foods. Beech-Nut intentionally omitted the presence of heavy metals in order to induce and mislead reasonable consumers to purchase Beech-Nut Baby Foods.

120.    Plaintiffs and other similarly situated consumers, having read and relied on such representations and warranties, were induced to believe that Beech-Nut Baby Foods were premium baby food products that were safe, healthy, and suitable for consumption by infants and children, and purchased them as a result. Notably, none of Beech-Nut's packaging or marketing materials warned that Beech-Nut Baby Foods contained or had a material risk of containing heavy metals that could harm the health and physiological and neurocognitive development, including brain development, of infants and children consuming such baby food products.

121.    Beech-Nut falsely represented and warranted the contents, ingredients, safety, quality, and nutritional value of Beech-Nut Baby Foods because Beech-Nut knew that Plaintiffs and similarly situated consumers would never have purchased the Beech-Nut Baby Foods to be fed to their children if truthful information had been provided. At all times, Beech-Nut had a duty to provide only accurate and truthful representations, warranties, and information about Beech-Nut Baby Foods, and the aforesaid conduct breached that duty. As a result, Plaintiffs and those similarly situated were economically harmed.

II.   **HEAVY METALS ARE NEUROTOXINS THAT HAVE NEGATIVE EFFECTS ON CHILD DEVELOPMENT, EVEN AT LOW LEVELS OF CONSUMPTION, BECAUSE BIOACCUMULATION CAUSES TOXICITY TO INCREASE OVER TIME**

122.   Heavy metals, such as the arsenic, lead, mercury, and cadmium that have been found in Beech-Nut Baby Foods, are neurotoxins, or substances that "alter[] the structure of function of the nervous system."[27] Exposure to these neurotoxins has been shown to "diminish quality of life, reduce academic achievement, and disturb behavior, with profound consequences for the welfare and productivity of entire societies."[28]

123.   Research continuously shows that exposure to food containing these heavy metals causes "troubling risks for babies, including cancer and lifelong deficits in intelligence[.]"[29] Specifically, the heavy metals "can harm a baby's developing brain and nervous system" and cause negative impacts such as "the permanent loss of intellectual capacity and behavioral problems like attention-deficit hyperactivity disorder (ADHD)."[30] These developmental conditions can be caused by exposure to even trace amounts of these substances.[31]

124.   For these reasons, organizations such as the FDA and WHO have declared arsenic, lead, cadmium, and mercury "dangerous to human health, particularly to babies and children, who are most vulnerable to their neurotoxic effects."[32] Further, the FDA has acknowledged that

---

[27] https://www.britannica.com/science/neurotoxin

[28] Jane Houlihan and Charlotte Brody, *What's in my baby's food?*, 13, Healthy Babies Bright Futures (Oct. 2019), https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf (accessed Feb. 22, 2021) (hereinafter "Healthy Babies Bright Futures Report").

[29] Healthy Babies Bright Futures Report, at 1.

[30] Healthy Babies Bright Futures Report, at 6.

[31] Healthy Babies Bright Futures Report, at 1.

[32] *See Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury, Staff Report* (the "Report"), Subcommittee on Economic and Consumer Policy of the Committee on Oversight and Reform, at 2, February 4, 2021, https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (accessed Feb. 4, 2021).

"exposure to [these four heavy] metals are likely to have the most significant impact on public health" and has prioritized them in connection with its heavy metals workgroup looking to reduce the risks associated with human consumption of heavy metals.[33]

125.    The risk from heavy metals grows over time as they accumulate in the kidneys and other internal organs; indeed, "[t]hese toxins can remain in your body for years."[34]  Due to their smaller physical size and still-developing brain and organs, infants and toddlers are particularly susceptible to the toxic effects of heavy metals because "[t]hey also absorb more of the heavy metals that get into their bodies than adults do."[35]

126.    Because heavy metals bioaccumulate in the body, regular consumption of even small amounts of toxic heavy metals over a long period of time may raise the risk of bladder, lung, and skin cancer; cognitive and reproductive problems; and type 2 diabetes, among other conditions.[36]

127.    Thus, exposure to heavy metals, even in small amounts, can lead to life-long effects. According to Victor Villarreal, Ph.D., Assistant Professor in the Department of Educational Psychology at the University of Texas at San Antonio, who has studied the effects of heavy metals on childhood development, "[t]he effects of early exposure to heavy metals can have long-lasting impacts that may be impossible to reverse."[37]

---

[33] Report, at 3.

[34] https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/ at

[35] *Id.*

[36] *Id.*

[37] *Id.*

A.    Arsenic

128.    Arsenic has been shown to cause "cognitive deficits among school-age children exposed early in life, and neurological problems in adults who were exposed to arsenic-poisoned milk as infants."[38]  The effects of arsenic exposure are irreversible and in addition to the cognitive and neurological effects it has on child development, arsenic also creates a risk of "respiratory, gastrointestinal, hematological, hepatic, renal, skin, neurological and immunological effects, as well as damaging effects on the central nervous system[.]"[39]

129.    Arsenic is recognized as one of the top ten chemicals of major public concern by the WHO.[40]  The Agency for Toxic Substances and Disease Registry ("ATSDR") recognizes arsenic as the number one substance to pose the most significant threat to human health.[41]

130.    While both organic and inorganic arsenic are dangerous to humans, the FDA has recognized that children are likely to be "particularly susceptible to neurotoxic effects of inorganic arsenic."[42]

131.    Arsenic's harmful effects have caused both the U.S. Environmental Protection Agency ("EPA") and FDA to set standards limiting the allowable amount of arsenic in products meant for human consumption. For example, the FDA has released a draft action level of 10 parts per billion ("ppb") of inorganic arsenic for apple juice,[43] and the EPA has set the same limit for

---

[38] Healthy Babies Bright Futures Report, at 13.

[39] Report, at 10 (quoting Miguel Rodríguez-Barranco et al., *Association of Arsenic, Cadmium and Manganese Exposure with Neurodevelopment and Behavioural Disorders in Children: A Systematic Review and Meta-Analysis* (June 1, 2013), https://pubmed.ncbi.nlm.nih.gov/23570911/) (accessed Feb. 23, 2021).

[40] https://monographs.iarc.who.int/list-of-classifications (last visited on Mar. 19, 2021).

[41] ATSDR's Substance Priority List https://www.atsdr.cdc.gov/spl/index.html (last visited on Mar. 21, 2021).

[42] FDA, Guidance for Industry: Action Level for Inorganic Arsenic in Rice Cereals for Infants (Aug. 2020), https://www.fda.gov/regulatory-information/search-fda-guidance-documents/guidance-industry-action-level-inorganic-arsenic-rice-cereals-infants (last accessed June 6, 2022), at 5.

[43] EPA, Supporting Document for Action Level for Arsenic in Apple Juice  https://www.fda.gov/food/chemical-metals-natural-toxins-pesticides-guidance-documents-regulations/supporting-document-action-level-arsenic-apple-

arsenic (inorganic and organic) for drinking water.[44]  Additionally, the FDA has set a limit of 10 ppb for bottled water[45] and has published guidance on the action level for inorganic  arsenic in rice cereals for infants to 100 ppb.[46] The FDA has taken action against companies whose products contain arsenic levels exceeding this limit.[47]  Notably, though the FDA has set a limit of 100 ppb of inorganic arsenic for infant rice cereal, it did so because it was focused on the level of arsenic that would cause cancer, but "disregarded the risk of neurological damage, which happens at a much lower level." Thus, according to the Subcommittee's Congressional Report, "the 100 ppb limit is too high to adequately protect infants and children from the effects of inorganic arsenic."[48]

132.    Consumer Reports advocates levels as low as 3 ppb and Healthy Babies Bright Futures ("HBBF") seeks a goal of no measurable amount of inorganic arsenic in baby food.[49]

133.    The FDA has made clear that arsenic levels can be reduced by best practices: "We think that it is possible to reduce dietary exposure to inorganic arsenic from infant rice cereals through industry's use of current good manufacturing practices, in particular selection of sources of rice or rice-derived ingredients with lower inorganic arsenic levels and testing these incoming rice and rice-derived ingredients."[50]

---

juice (accessed June 20, 2022).

[44] EPA, Drinking Water Arsenic Rule History, https://www.epa.gov/dwreginfo/drinking-water-arsenic-rule-history#Review (accessed June 20, 2022).

[45] Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods. FDA Failed to Warn Consumers of Risk*, THE WASHINGTON POST (Feb. 4, 2021), https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (accessed Feb. 22, 2021).

[46] https://www.fda.gov/regulatory-information/search-fda-guidance-documents/guidance-industry-action-level-inorganic-arsenic-rice-cereals-infants.

[47] *See, e.g.*, Warning Letter from FDA to Valley Processing, Inc. (June 2, 2016), https://www.fda.gov/iceci/enforcementactions/warningletters /2016/ucm506526.htm.

[48] Report, at 52.

[49] https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/; Healthy Babies Bright Futures Report, at 9.

[50] FDA, Guidance for Industry: Action Level for Inorganic Arsenic in Rice Cereals for Infants (Aug. 2020), https://www.fda.gov/regulatory-information/search-fda-guidance-documents/guidance-industry-action-level-

**B.     Lead**

134.    With respect to lead, the HBBF Report states "[n]o safe level of exposure has been identified."[51]  The EPA, WHO, Centers for Disease Control and Prevention ("CDC"), European Union ("EU"), and American Academy of Pediatrics ("AAP") unanimously agree that there is no established "safe level of lead (Pb) in a child's blood."[52]

135.    Lead ingestion by humans has long been subject to regulatory scrutiny. Indeed, the FDA has set a 5 ppb lead standard for bottled water, the WHO has set 10 ppb lead as a provisional guideline for drinking water, and the EPA has set an action level of 15 ppb for lead in drinking water. FDA has also issued guidance for lead in certain juices (50 ppb) and candy (100 ppb).[53] The EU has set the maximum lead level in infant formula to 20 ppb.[54]

136.    These repeated calls for lower and lower limits for lead contamination are based upon uncontroverted public knowledge of the dangers of lead exposure and potentially fatal lead ingestion. In fact, studies list lead as the second most harmful substance that poses a significant threat to human health.[55]

137.    Exposure to lead has been shown to cause harm to children's brain and nervous systems and is associated with a range of negative health outcomes including "behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth."[56] Additionally, because lead can accumulate in the body, even low-level chronic exposure can be

---

inorganic-arsenic-rice-cereals-infants (last accessed June 6, 2022), at 5.

[51] Healthy Babies Bright Futures Report, at 13.

[52] Report, at 10.

[53] Report, at 21.

[54] Report, at 22.

[55] ATSDR's Substance Priority List https://www.atsdr.cdc.gov/spl/index.html (last visited on Mar. 21, 2021).

[56] Report, at 11.

hazardous over time.[57]   Even very low exposure levels to lead "cause[s] lower academic achievement, attention deficits and behavior problems."[58]   For example, one study found that "children age 0 to 24 months lose more than 11 million IQ points from exposure to arsenic and lead in food."[59]

138.   The proven negative effects of lead exposure have caused several health organizations—including the AAP, the Environmental Defense Fund, and Consumer Reports—to recommend that lead in baby foods ***not exceed 1 ppb***.[60]

## C.   Mercury

139.   It has been recognized that "[y]oung and unborn children are at greatest risk from mercury exposure because their nervous systems are still developing."[61]

140.   Indeed, mercury has long been subject to regulatory scrutiny.  For example, the EPA has set a maximum mercury level in drinking water to 2 ppb.[62]

141.   Exposure to even a small amount of the heavy metal mercury can cause "serious health problems, and is a threat to the development of the child [] early in life."[63]  For example, exposure to even low doses of mercury "may delay a child's walking and talking, shorten attention

---

[57] FDA, Lead in Food, Foodwares, and Dietary Supplements (www.fda.gov/food/metals-and-your-food/lead-food-foodwares-and-dietary-supplements) (last visited on Mar. 19, 2021).

[58] Healthy Babies Bright Futures Report, at 13.

[59] *Id.*

[60] Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods. FDA Failed to Warn Consumers of Risk*, THE WASHINGTON POST (Feb. 4, 2021), https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (last accessed Feb. 22, 2021).

[61] Missouri Dept. of Nat. Resources, *Mercury Can Affect Human Health*, https://dnr.mo.gov/env/mercury/mercury-impact.htm#:~:text=Mercury%20Can%20Affect%20Human%20Health,and%20developmental%20disorders%20in%20humans.&text=In%20low%20doses%2C%20mercury%20may,with%20fertility%20and%20blood%20pressure (accessed Feb. 22, 2021).

[62] Report, at 32.

[63] *Mercury and health*, https://www.who.int/news-room/fact-sheets/detail/mercury-and-health#:~:text=Exposure%20to%20mercury%20%E2%80%93%20even%20small,%2C%20kidneys%2C%20skin%20and%20eyes (accessed Feb. 24, 2021).

span and cause learning disabilities."[64]  Exposure to mercury has also been linked to greater risk

of lower IQ scores and intellectual disability in children[65] and mercury exposure at two and three

years of age has been positively associated with autistic behaviors among pre-school age

children.[66]

142.   The WHO warns that mercury "may have toxic effects on the nervous, digestive

and immune systems, and on lungs, kidneys, skin and eyes" and considered mercury "one of the

top ten chemicals or groups of chemicals of major public health concern."[67] Mercury is the number

three substance on the ATSDR's list of dangerous substances in the environment, potentially

posing a significant threat to human health.[68]

143.   Due to the harm caused by human absorption of mercury, EPA has instituted a limit

of 2 ppb on drinking water.[69]

144.   HBBF advocates for a goal of ***zero levels*** of mercury in baby food.[70] This

recommendation is based, in part, on the fact that epidemiological research shows "mercury . . .

has been consistently associated with adverse subsequent neuro-development."[71]

---

[64] Missouri Dept. of Nat. Resources, *Mercury Can Affect Human Health*, https://dnr.mo.gov/env/mercury/mercury-impact.htm#:~:text=Mercury%20Can%20Affect%20Human%20Health,and%20developmental%20disorders%20in%20humans.&text=In%20low%20doses%2C%20mercury%20may,with%20fertility%20and%20blood%20pressure\ (accessed Feb. 22, 2021).

[65] Healthy Babies Bright Futures Report, at 14.

[66] Report, at 12-3.

[67] Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods. FDA Failed to Warn Consumers of Risk*, THE WASHINGTON POST (Feb. 4, 2021), https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (last accessed Feb. 22, 2021).

[68] https://www.atsdr.cdc.gov/spl/index.html

[69] https://www.epa.gov/ground-water-and-drinking-water/national-primary-drinking-water-regulations#Inorganic

[70] Healthy Babies Bright Futures Report, at 9.

[71] Margaret R. Karagas, et al., Evidence on the Human Health Effects of Low-Level Methylmercury Exposure (June 1, 2012) (https://pubmed.ncbi.nlm.nih.gov/22275730/) (last visited on Mar. 18, 2021).

### D.     Cadmium

145.    "[C]admium . . . can be toxic for everyone and pose particular risks for young children."[72]  Eating food or drinking water with very high cadmium levels severely irritates the stomach, leading to vomiting, diarrhea, and sometimes death. Eating lower levels of cadmium over a long period can lead to kidney damage and can cause bones to become fragile and break easily. Exposure to cadmium in air has caused lung cancer, and perhaps prostate cancer, in workers. The U.S. Department of Health and Human Services ("HHS") and the EPA, both consider cadmium and cadmium compounds human carcinogens.[73]

146.    Children with higher cadmium levels are three times more likely to have learning disabilities and participate in special education, according to a new study led by Harvard University researchers.[74]

147.    The EPA has set a maximum cadmium level in drinking water to 5 ppb, the FDA has set a maximum level in bottled water to 5 ppb, and the WHO set a maximum cadmium level in drinking water to 3 ppb.[75]

---

[72] Jesse Hirsch, Heavy Metals in Baby Food: What You Need to Know, Consumer Reports (Aug. 16, 2018), https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food-a6772370847/; see also David C. Bellinger, A Strategy for Comparing the Contributions of Environmental Chemicals and Other Risk Factors to Neurodevelopment of Children, Environ. Health Perspect. (Apr. 2012), https://doi.org/10.1289/ehp.1104170; Miguel Rodriguez-Barranco, et al. Association of Arsenic, Cadmium and Manganese Exposure with Neurodevelopment and Behavioral Disorders in Children: A Systematic Review and Met-Analysis (June 1, 2013) (https://pubmed.ncbi.nlm.nih.gov/23570911) (last visited March 17, 2022); Min-Jing Lee, et al., Heavy Metals' Effects on Susceptibility to Attention-Deficit/Hyperactivity Disorder: Implication of Lead, Cadmium, and Antimony (June 10, 2018). (https://pubmed.ncbi.nlm.nih.gov/29890770/) (last visited last visited March 17, 2022).

[73] NYS Dept. of Health, *Cadmium in Children's Jewelry*, https://www.health.ny.gov/environmental/chemicals/cadmium/cadmium_jewelry.htm#:~:text=Children%20can%20be%20exposed%20to,to%20cadmium%20in%20children's%20jewelry (accessed Feb. 22, 2021).

[74] Marla Cone, *Is Cadmium as Dangerous for Children as Lead?*, SCIENTIFIC AMERICAN (Feb. 10, 2012), https://www.scientificamerican.com/article/is-cadmium-as-dangerous-for-children-lead/ (accessed Feb. 22, 2021).

[75] Report, at 29.

148.     HBBF advocates for a goal of *zero levels* of cadmium in baby food and Consumer Reports has called for a limit of 1 ppb of cadmium in fruit juices.[76]

## III.   BEECH-NUT KNOWINGLY SOLD BABY FOOD WITH ELEVATED LEVELS OF TOXIC HEAVY METALS TO PLAINTIFFS AND THE CLASSES

149.     On February 4, 2020, the House Subcommittee published the Report containing the results of the House Subcommittee's investigation into the heavy metal content of the major U.S. brands of baby food, including Beech-Nut.

150.     The House Subcommittee's Report contained findings that Beech-Nut knowingly sold baby foods to United States consumers that contained elevated levels of the toxic heavy metal's arsenic, lead, mercury, and cadmium. The Report found the presence of toxic heavy metals in baby foods produced by Beech-Nut; in some instances, several toxic heavy metals were found at dangerous levels in a single baby food ingredient (e.g. cinnamon).[77] These findings include the following:

- Beech-Nut used ingredients after they tested as high as 913.4 ppb arsenic. Beech-Nut routinely used high-arsenic additives that tested over 300 ppb arsenic to address product characteristics such as "crumb softness."[78] Beech-Nut used at least 45 ingredients containing over 100 ppb arsenic.[79]

- Beech-Nut used ingredients containing as much as 886.9 ppb lead. It used many ingredients with high lead content, including 483 that contained over 5 ppb lead (which is the FDA's level for bottled water), 89 that contained over 15 ppb lead (which is the

---

[76] https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/; Healthy Babies Bright Futures Report, at 9.

[77] Beech-Nut, Raw Material Heavy Metal Testing (Dec. 6, 2019) (online at http://oversight.house.gov/sites/democrats.oversight.house.gov/files/4.xlsx)

[78] Report, at 3.

[79] Report, at 17.

FDA's action level for drinking water), and 57 that contained over 20 ppb lead (which is the European Union's standard for infant formula, which itself is often considered lax).[80]

- Beech-Nut used 105 ingredients that tested over 20 ppb cadmium. Some tested much higher, up to 344.55 ppb cadmium.[81]

- Beech-Nut [does] not even test for mercury in baby food.[82]

151. The Report further found, as discussed more in depth below, that Beech-Nut's internal safety standards were uniquely permissive amongst baby food manufacturers, allowing for levels of toxic heavy metals that "far surpass any existing regulatory standard in existence and toxic heavy metal levels for any other [responding] baby food manufacturer."[83]

152. Further, as also discussed below, the Report made clear that Beech-Nut's policy of only doing ingredient testing "does not work" and "recklessly endangers babies and children and prevents the company[y] from even knowing the full extent of the danger presented by [its] products."[84]

153. On September 29, 2021, the House Subcommittee released the Supplemental Report entitled "New Disclosures Show Dangerous Levels of Toxic Heavy Metals in Even More Baby Foods."[85] The Supplemental Report stated that in May and June of 2021, public health

---

[80] Report, at 3 and 23.

[81] Report, at 3.

[82] Report, at 4.

[83] Report, at 37-38.

[84] Report, at 56-57.

[85] *New Disclosures Show Dangerous Levels of Toxic Heavy Metals in Even More Baby Foods* Staff Report (the "Supplemental Report"), Subcommittee on Economic and Consumer Policy of the Committee on Oversight and Reform, September 29, 2021, available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/ECP%20Second%20Baby%20Food%20Report%209.29.21%20FINAL.pdf.

officials in Alaska conducted testing of Beech-Nut Rice Cereal and found "dangerously high levels of inorganic arsenic" in "*all"* of the Beech-Nut Rice Cereal samples tested.[86]

154.    In response to the Alaska testing results, Beech-Nut recalled "One Lot" of Single Grain Rice cereal already on the shelves.  Simultaneously, Beech-Nut completely discontinued the sale of Single Grain Rice Cereal, admitting that it simply could not consistently meet the FDA level of 100 ppb for inorganic arsenic.[87]

155.    However, the House Subcommittee found that Beech-Nut's recall appeared to be "incomplete," because there were *still* "dangerous levels of toxic inorganic arsenic in additional Beech-Nut infant rice cereal products that the company did not recall."[88]

156.    The Supplemental Report also reiterated a warning that went unheeded by Beech-Nut after the initial Report: that Beech-Nut's failure to test final products, but only ingredients, "appears to have contributed to its failure to detect the dangerous inorganic arsenic levels in its recalled products."[89]

157.    By knowingly selling baby foods with elevated levels of toxic heavy metals to U.S. consumers, Beech-Nut knowingly exposed millions of children to substances that have harmful effects on neurological development and brain function (among other adverse health effects), and can cause permanent decreases in IQ, diminished future economic productivity, and increased risk of future criminal and antisocial behavior.[90]

---

[86] Supplemental Report, at 15.

[87] *Beech-Nut Nutrition Company Issues a Voluntary Recall of One Lot of Beech-Nut Single Grain Rice Cereal and Also Decides to Exit the Rice Cereal Segment, June 8, 2021, available at* https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/beech-nut-nutrition-company-issues-voluntary-recall-one-lot-beech-nut-single-grain-rice-cereal-and.

[88] Supplemental Report, at 2.

[89] Supplemental Report, at 2-3.

[90] Report, at 2.

A.     **Beech-Nut Ignored Reports That Its Beech-Nut Baby Foods Have Been Found to Contain Toxic Heavy Metals**

158.    In August 2018, Consumer Reports, a non-profit organization that has tested and evaluated products for over 85 years, released a report entitled "Heavy Metals in Baby Food: What You Need to Know" (the "CR Report").[91]

159.    As part of its investigation, the Consumer Reports food safety team "analyzed 50 nationally distributed packaged foods made for babies and toddlers, checking for cadmium, lead, mercury, and inorganic arsenic, the type most harmful to health."

160.    The CR Report found that "*all* the samples of Beech-Nut Classics Sweet Potatoes …had concerning levels of lead" (emphasis added). The CR Report also found concerning levels of toxic heavy metals in Beech-Nut Rice Single Grain Cereal and Beech-Nut Oatmeal Whole Grain Baby Cereal, and Beech-Nut Organic Whole Grain Baby Cereal.

161.    In October 2019, Healthy Babies Bright Future ("HBBF"), a child neurological development science and health alliance, tested 168 containers of Baby-Food, including Beech-Nut, and produced a report entitled "What's in My Baby Food." (the "HBBF Report"). The HBBF Report, which was based upon widespread testing of baby foods from across the country, found significant amounts of arsenic, lead, cadmium, and mercury in various baby food products, including those sold by Beech-Nut.[92]

162.    The Congressional Report, which included internal Beech-Nut testing as described above, and the Supplemental Report, which included testing conducted by the State of Alaska (the

---

[91] *Heavy Metals in Baby Food: What You Need to Know*, Consumer Reports ("the CR Report"), published August 16, 2018, Updated September 29, 2021, available at https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food-a6772370847/

[92] *What's in My Baby Food,* Healthy Babies Bright Future, 2019 Report ("HBBF Report"), available at https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2019-10/BabyFoodReport_FULLREPORT_ENGLISH_R5b.pdf

results of which were known to Beech-Nut), were thus far from the first warnings Beech-Nut had that its Baby Foods have been found to contain toxic heavy metals.

163.     As just some of the examples of its baby food ingredients that contained significant levels of heavy metal toxins, Beech-Nut was previously made aware that:

- Classic Sweet Carrots as well as Carrots had very high levels of lead;

- Beech-Nut Oatmeal Whole Grain Baby Cereal had very high levels of cadmium;

-  Beech-Nut Sweet Potatoes had very high levels of lead; and

-  Beech-Nut Rice Single Grain Baby Cereal had very high levels of arsenic.

In the latter case, this included results much higher than the 100 ppb level set by the FDA[93].

164.     The Executive Summary of the HBBF Report sounded a clarion call to baby food manufacturers, including Beech-Nut, for "urgency of action," and emphasized the cumulative effect of toxic heavy metals in children and especially on their IQ. "Exposures and impacts add up," the HBBF warned.[94]

165.     In the wake of the HBBF Report, Beech-Nut co-founded The Baby Food Council in 2019. This coalition joined major baby food manufacturers with the U.S. Department of Agriculture ("USDA"), the FDA, and leading health and environmental experts in the field to increase the safety of baby food products in the U.S. In part, The Baby Food Council formally focused on reducing dangerous toxic heavy metals in baby foods.  Expressing its commitment to reducing toxic heavy metals in its products, ***thereby acknowledging a problem and promising to fix the issue***, Beech-Nut executive, Jason Jacobs, Vice President of Food Safety & Quality, said,

---

[93] See HBBF Report, Appendix A.

[94] See HBBF Report, at 8.

"Being a dad, I understand the need for safe food. Beech-Nut cares deeply about the safety of all food – not just baby food – and that's why we were a founding member of the Baby Food Council."[95]

166. At the same time as Beech-Nut announced the formation of the Baby Food Council, it insisted in an October 2019 statement posted on its website that, "[w]e apply rigorous testing protocols. Our process starts with high-quality fruits and vegetables that meet BNN's own standards, which in some cases are 10 times stricter than those of the U.S. government. For example, we test for 255 common contaminants, such as lead, other heavy metals and pesticides, to confirm that all the ingredients delivered to us and used in our products comply with our standards.  If they don't, we send them back."[96]

167. However, as described herein, notwithstanding its purported commitment to food safety as part of the Baby Food Council (and otherwise), Beech-Nut's subsequent actions fall far short of these statements, which fail to reveal the full truth of Beech-Nut's production processes. Beech-Nut is not working to reduce the dangerous levels of toxic heavy metals in its products. In fact, it does not even have adequate data to rely on due to its arbitrary acceptable limits and inadequate testing procedures.

**B.     Beech-Nut Fails to Test Finished Products**

168. The Report found that Beech-Nut only tested individual ingredients, and not its final product(s). According to the Subcommittee, this policy "recklessly endangers babies and children and prevents [Beech-Nut] from ever knowing the full extent of the danger presented by [Beech-Nut's] products."[97]

---

[95] https://www.beechnut.com/baby-food-council/.

[96] *Id.*

[97] Report, at 56-7.

169.    As a result of never testing its finished products, Beech-Nut has no record of the level of toxic heavy metals present in its Beech-Nut Baby Foods being sold in stores every day.

170.    The June 2021 nationwide recall by Beech-Nut of a production lot of single grain rice cereal due to inorganic arsenic contamination demonstrates that testing only key ingredients (*e.g.* rice flour that goes into infant rice cereal) for heavy metals without also sampling the production lots of the finished product is not a sufficiently rigorous or reliable preventive control for the baby food industry.[98] This disconnect is embodied in Beech-Nut's recall announcement, in which Beech-Nut stated that "the rice flour used to produce these products tested below the FDA guidance level for inorganic arsenic" but that the State of Alaska's testing of the packaged Beech-Nut products still detected inorganic arsenic concentrations in excess of the 100 ppb action level.[99]

## C.    Beech-Nut Sets Arbitrary and Inadequate Internal Specifications and Often Exceeds Those Limits

171.    Information Beech-Nut provided to the Subcommittee shows that it set internal specifications for lead and cadmium in key raw ingredients at 100 ppb, seemingly to align with the 100 ppb FDA action level for inorganic arsenic in infant rice cereal.[100]  These specifications appear to have no health-based or risk-based justification and are five times higher than the current EU limit for lead in baby food (20 ppb)[101] and two-and-a-half times higher than the current EU limit for cadmium in baby food (40 ppb).[102]

---

[98] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/beech-nut-nutrition-company-issues-voluntary-recall-one-lot-beech-nut-single-grain-rice-cereal-and.

[99] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/beech-nut-nutrition-company-issues-voluntary-recall-one-lot-beech-nut-single-grain-rice-cereal-and.

[100] Beech-Nut, *Raw Material Heavy Metal Testing* (Dec. 6, 2019) (online at http://oversight.house.gov/sites/democrats.oversight.house.gov/files/4.xlsx).

[101] *See* European Commission Regulation (EU) 2021/1317 of 9 August 2021 amending Regulation (EC) No 1881/2006 as regards maximum levels of lead in certain foodstuffs, available at https://eur-lex.europa.eu/legal-content/EN/TXT/?uri=CELEX:32021R1317.

[102] *See* European Commission Regulation (EU) 2021/1323 of 10 August 2021 amending Regulation (EC) No

172.    The Report also found that Beech-Nut established other unreasonably high internal guidelines governing the presence of toxic heavy metals in its baby food ingredients, which caused its finished baby foods to contain unreasonably high levels of toxic heavy metals. For example, the Report found that Beech-Nut "set an internal specification limit . . . of 3,000 ppb inorganic arsenic for certain ingredients, including vitamin mix" and that as a result, Beech-Nut used ingredients in its baby foods containing 710.9, 465.2, and 401.4 ppb arsenic.[103] These levels far exceed the limits of 10 ppb inorganic arsenic set forth by the FDA for bottled water and apple juice, and the 10 ppb limit set forth by the EPA for drinking water and were the highest of any manufacturer that responded to the Subcommittee's requests.

173.    Additionally, the Report found that Beech-Nut set internal guidelines of 3,000 ppb for cadmium and 5,000 ppb for lead for certain ingredients which, like Beech-Nut's guidelines for arsenic, "far surpass any existing regulatory standard in existence and toxic heavy metal levels for any other baby food manufacturer that responded to the Subcommittee's inquiry."[104]

174.    Not only are Beech-Nut's internal specifications insufficient, but Beech-Nut fails to abide by its own inadequate internal specifications. The Report also found that in addition to permitting dangerously high levels of toxic heavy metals, Beech-Nut has often sold foods that *exceeded* its own already-egregiously high internal standards. For example, the Subcommittee's Report found that "Beech-Nut sold eleven products that surpassed its own internal cadmium limits" and that "[b]y doing so, Beech-Nut accepted dehydrated potato containing 119.6, 143.5, and 148.4 ppb cadmium, far surpassing its own internal limit of 90 ppb for that ingredient.[105]

---

1881/2006 as regards maximum levels of cadmium in certain foodstuffs, available at https://eur-lex.europa.eu/eli/reg/2021/1323/oj.

[103] Report, at 37.

[104] Report, at 38.

[105] *Id.*

175.    Further, the Report noted that, "Beech-Nut's explanation of why it accepted products over its own internal limits was that it did so "rarely" and the ingredients were "generally restricted to a 20% variance of BNN's allowable limits…."  But, "the cadmium examples show, Beech-Nut accepted certain ingredients in spite of their own testing results which showed that they contained over 20% more cadmium than their already-high internal limit."[106]

## IV.    BEECH-NUT FALSELY, DECEPTIVELY, AND MISLEADING CLAIMS THAT ITS BEECH-NUT BABY FOODS ARE HEALTHY AND SAFE FOR CONSUMPTION BY INFANTS AND YOUNG CHILDREN

176.    Baby food manufacturers hold a special position of public trust. Consumers believe that they would not sell unsafe products. Beech-Nut took advantage of its position for profit.

177.    Beech-Nut's labeling and marketing wrongfully represents that its Beech-Nut Baby Foods are of a particular quality, grade or standard and contain certain characteristics that the products do not actually possess.  Beech-Nut advertised its products as safe, healthy, nutritious, natural, organic, and safe for consumption by infants and young children. By doing so, Beech-Nut had a duty to ensure that its statements regarding its products were true and not false, misleading, or deceptive, yet continued to make false, misleading, and deceptive statements regarding the safety of its baby foods despite knowledge that its baby foods contained elevated levels of heavy metals.

178.    Beech-Nut violated this duty by labeling, marketing, and advertising its baby foods through statements regarding the safety of its baby foods despite knowing that its baby foods contained elevated levels of heavy metals.  Beech-Nut omitted and continues to omit key information from its product labels regarding contaminants such as toxic heavy metals (or its inadequate testing and safety standards).

---

[106] Report, at 39.

179.     As a result of Beech-Nut's false, misleading, and deceptive statements, Plaintiffs and members of the Class and Subclasses bought Beech-Nut Baby Foods they would not have otherwise bought, and paid more for Beech-Nut Baby Foods than they would have paid had it been fully disclosed that Beech-Nut Baby Foods contained (or had a material risk of containing) dangerous levels of heavy metals (or its inadequate testing and safety standards).

180.     Beech-Nut knew or should have been aware that a consumer would be feeding its products to children, often making its products the primary source of food for a child. This leads to repeated exposure of the heavy metals to the child.

181.     Beech-Nut thus wrongfully and misleadingly labeled, advertised, and sold the Beech-Nut Baby Foods without any label or warning indicating to consumers that these products contain, or have a material risk of containing, heavy metals, or that these toxins can over time accumulate in the baby's body to the point where poisoning, injury, and/or disease can occur. Beech-Nut intentionally omitted these facts from its labeling, marketing, advertising in order to induce and mislead reasonable consumers into purchasing Beech-Nut Baby Foods.

## V.     BABY FOODS CAN BE MANUFACTURED WITHOUT MEASURABLE LEVELS OF TOXIC HEAVY METALS

182.     For decades, FDA regulations have required that any "manufacturer of food must at all times utilize quality control procedures which will reduce contamination to the lowest level currently feasible."[107]  The Federal Food Safety Modernization Act of 2011, implemented in part through a 2015 FDA rule (the "Preventive Control Rule"),[108] requires manufacturers of food for humans, including infant and toddler food manufacturers, to "identify and implement preventive

---

[107] 21 C.F.R. § 109.7(b); Poisonous or Deleterious Substances in Food, 42 Fed. Reg. 52, 813, 52,819 (Sept. 30, 1977) (Final Rule).

[108] Current Good Manufacturing Practice, Hazard Analysis, and Risk-Based Preventive Control for Human Food, 80 Fed. Reg. 55,907 (Sept. 17, 2015) (Final Rule).

controls to provide assurances that any hazards" requiring a preventive control—defined to include

"chemical" hazards like toxic heavy metals—will be significantly minimized or prevented," such

that the food "will not be adulterated" under the Federal Food, Drug and Cosmetic Act (21 U.S.C.

§ 342).[109]  Thus, Beech-Nut has a duty to "reduce contamination to the lowest level currently

feasible," 21 C.F.R. 109.7(b) – a duty with which it fails to comply as demonstrated by the

successful efforts of other companies to lower the heavy metal content in their respective baby

food products.

### A.      Other Baby Food Manufacturers Offer Safer Alternatives

183.    In contrast to Beech-Nut, other baby food manufacturers have produced products

free from toxic heavy metals or with levels that are not measurable.

184.    The Clean Label Project tests products for more than 400 contaminants, including

heavy metals, chemicals, and plastics, and presents its Purity Award to companies with products

with the lowest levels of the contaminants when compared to other products in a given category.[110]

185.    Cerebelly, manufacturer of shelf-stable pureed baby food pouches and Once Upon

a Farm, a manufacturer of cold-pressed, refrigerated blends for infants and children, were both

recipients of the Clean Label Project's Purity Award.[111]

186.    Nature's One is another baby food manufacturer of organic pediatric nutritional

products, including infant and toddler formulas, who received the Clean Label Project's Purity

---

[109] *See* 21 U.S.C. § 350g(c); 21 C.F.R. § 117.135(a)(1).

[110] https://cleanlabelproject.org/purity-award/ (last accessed Feb. 22, 2022);
https://cleanlabelproject.org/Once%20Upon%20A%20Farm/ (last accessed Feb. 22, 2022).

[111] https://www.foodnavigator-usa.com/Article/2021/02/08/Cerebelly-receives-The-Clean-Label-Project-Purity-Award-confirming-its-products-are-free-from-heavy-metals# (last accessed Feb. 22, 2022).

Award.[112] According to independent laboratory tests, *its products regularly test at zero for harmful contaminants*.[113]

187.    Manufacturer, Yumi, also takes numerous proactive steps to ensure its products are safe for infants and children.[114] Yumi does not use ingredients such as rice and fruit juice, both known to contain high levels of arsenic.[115] Yumi also regularly tests both the ingredients and finished products for Toxic Heavy Metals and/or other toxins.[116]

### B.    There Are Methods to Reduce Toxic Heavy Metals to Non-Worrisome Levels

188.    "[T]here are ways for [baby food] manufacturers to significantly reduce or eliminate these [heavy] metals from their products."[117] Consumer Reports identified baby food products with heavy metal levels low enough to not cause concern, as well as some products with heavy metal levels that were not measurable.[118]

189.    In testing conducted by Consumer Reports, approximately one-third of tested products had levels of heavy metals that were below levels of concern and other products had immeasurable levels of heavy metals.[119] As stated by Dr. James E. Rogers, the Consumer Reports Director of Food Safety Research and Testing, "'Every category of food we tested was represented

---

[112]  https://cleanlabelproject.org/Natures-one/ (last accessed Feb. 22, 2022).

[113] Exclusive: As baby food industry is slow to reduce toxic metals, blueprint already exists | WJLA (last accessed on Feb. 22, 2022).

[114] https://helloyumi.com/heavy-metals/ (last accessed Feb. 22, 2022).

[115] *Id*.

[116] *Id*.

[117] *Id*.

[118] https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/ (last accessed Feb. 22, 2022).

[119] *Id*.

in that lower-risk group. That indicates that there are ways for manufacturers to significantly reduce or eliminate these [heavy] metals from their products.'"[120]

190.    For example, the House Supplemental Report indicates that one Beech-Nut competitor was able to maintain an internal target of 23 ppb for arsenic in its rice cereal, oatmeal cereal, and puffed grains products between September 2012 and December 2018.[121]

191.    In addition, as a result of public health efforts, exposure to lead has consistently and notably decreased over the past 40 years.[122] These efforts include increasing awareness of the dangers of even low levels of lead exposure to young children.[123] The progress towards decreasing childhood exposure to lead was so impressive that the CDC identified "childhood lead poisoning prevention as 1 of 10 great US public health achievements during 2001 to 2010."[124]

192.    There are simple, inexpensive methods to reduce toxic heavy metals in food products. For example, the inorganic forms of arsenic, referred to as arsenite and arsenate, are water-soluble and found in rice.[125]

## VI.    BEECH-NUT HAD A DUTY TO DISCLOSE THE PRESENCE OR RISK OF HEAVY METAL CONTAMINATION IN BEECH-NUT BABY FOOD PRODUCTS

193.    Beech-Nut packaged, labeled, advertised, and marketed its products, among other things, safe, health, and suitable for consumption by infants and young children.  By doing so, Beech-Nut had a duty to ensure that its statements regarding its products were true and not false,

---

[120] *Id*.

[121] Supplemental Report, at 22.

[122] Dignam, T., Kaufmann, R. B., LeStourgeon, L., & Brown, M. J. (2019). Control of Lead Sources in the United States, 1970-2017: Public Health Progress and Current Challenges to Eliminating Lead Exposure. Journal of public health management and practice: JPHMP, 25 Suppl 1, Lead Poisoning Prevention (Suppl 1 LEAD POISONING PREVENTION), S13–S22. Available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6522252/#R6 (last accessed Feb. 22, 2022).

[123] *Id*.

[124] *Id*.

[125] *Id*.

misleading, or deceptive, yet continued to make false, misleading, and deceptive statements regarding the safety of its baby foods despite knowledge that its baby foods contained or had a material risk of containing toxic heavy metals.

194.    Beech-Nut's false, misleading, and deceptive packaging, labeling, advertising, and marketing of its Beech-Nut Baby Foods wrongfully conveys to consumers that Beech-Nut Baby Foods have certain superior qualities and characteristics that they do not actually possess. For example, Beech-Nut's misrepresentations and omissions caused Plaintiffs and other consumers to believe that its Beech-Nut Baby Foods do not contain high levels of toxic heavy metals, which is material information to a reasonable consumer.

195.    Through its false, misleading, and deceptive packaging, labeling, advertising, and marketing, Beech-Nut seeks to induce—and does induce—consumers to purchase Beech-Nut Baby Foods when they would otherwise have purchased other baby foods that do not contain (or risk containing) toxic heavy metals.

196.    Beech-Nut knew that its customers trust the quality of its products and that customers expect Beech-Nut's products to be free of elevated levels toxic heavy metals.  For example, Beech-Nut specifically promotes that, to ensure its products are safe for consumption, Beech-Nut employs a thorough testing program.

197.    Beech-Nut's knowledge that its customers trust the quality of its products, their expectations that Beech-Nut Baby Foods will be free of elevated levels of toxic heavy metals, and consumers' willingness to pay more for baby foods that are free from toxins and contaminants, is evident in Beech-Nut's marketing campaigns that are intended to convey to consumers that Beech-Nut Baby Foods possess certain qualities and characteristics that justify the price.

198.    Beech-Nut knew or should have known that the Beech-Nut Baby Foods contained or had a material risk of containing toxic heavy metals that pose health risks to humans, and particularly to infants and young children. Beech-Nut knew consumers purchased the Beech-Nut Baby Foods based on the reasonable expectation that Beech-Nut sold and had manufactured the Beech-Nut Baby Foods in a way that was prescribed by its marketing and advertising.

199.    Beech-Nut intended that Plaintiffs and Class members and other consumers rely on these representations and omissions, as evidenced by the intentional and conspicuous placement of the misleading representations on the Beech-Nut Baby Foods' packaging by Beech-Nut, as well as its advertising, marketing, and labeling of the Beech-Nut Baby Foods as, among other things, healthy, nutritious, organic, non-GMO, purely sourced, of the highest quality, rigorously tested, and safe for consumption by infants and young children.

200.    Beech-Nut recklessly and with willful and wanton disregard of the rights and health of the those who purchased and consumed its Beech-Nut Baby Foods, disregarded the unreasonable risks created by the presence of toxic heavy metals in its baby food, and failed to adequately inform or warn Plaintiffs and those similarly situated.

201.    Beech-Nut's labeling, marketing, and advertising is deceptive, misleading, unfair and false to Plaintiffs and other consumers of Beech-Nut Baby Foods. Beech-Nut failed to disclose that the products contain or had a risk of containing any level of toxic heavy metals. Beech-Nut intentionally omitted this in order to induce and mislead reasonable consumers like Plaintiffs and members of the Classes to purchase Beech-Nut Baby Foods.  This is true especially considering the long-standing campaign by Beech-Nut to label, market, and advertise the Beech-Nut Baby Foods as, among other things, healthy, nutritious, organic, non-GMO, purely sourced, of the

highest quality, rigorously tested, and safe for consumption by infants and children, and to induce consumers, such as Plaintiffs, to purchase the products.

202.    As a result of Beech-Nut's false, misleading, and deceptive statements and omissions, a reasonable consumer would have no reason to suspect the presence of heavy metals in the Beech-Nut Baby Foods without conducting his or her own tests or relying on tests conducted by a third party.  And no reasonable consumer would knowingly purchase Beech-Nut Baby Food Products if they knew that the Products contained, or had a material risk of containing, toxic heavy metals.

203.    As a result of Beech-Nut's false, misleading, and deceptive statements and omissions, Plaintiffs and members of the Classes bought Beech-Nut Baby Foods they would not have otherwise bought and/or paid more for Beech-Nut Baby Foods than they would have paid had it been fully disclosed that Beech-Nut Baby Foods contain orhad a material risk of containing toxic heavy metals and are entitled to relief.

204.    Further, this suit is the proper means to seek relief.  The FDA, through its Closer to Zero Initiative ("Action Plan"), is reviewing the levels of Heavy Metals in baby foods and considering action levels for certain toxic elements as appropriate. The FDA states that it has "prioritized babies and young children because their smaller body sizes and metabolism make them more vulnerable to the harmful effects of these contaminants." But any proposed action levels if adopted would only prohibit the placement of the baby foods in the market in the future – it would not require the disclosure of the presence of Heavy Metals on any label or packaging or apply retroactively. Thus, the Action Plan does not address the basis of this lawsuit: the disclosure of Heavy Metals on the product packaging. And if there is even final adoption of the Action Plan,

the FDA set forth a generalized and long period of review which vaguely extends to "April 2024 and beyond."

## **TOLLING AND ESTOPPEL**

### I.   **DISCOVERY RULE TOLLING**

205.    Plaintiffs and the Class and Subclasses had no way of knowing about Beech-Nut's conduct with respect to the presence of toxic heavy metals.

206.    Neither Plaintiffs nor any other members of the Class or Subclasses, through the exercise of reasonable diligence, could have discovered the conduct alleged herein. Further, Plaintiffs and members of the Class and Subclasses did not discover and did not know of facts that would have caused a reasonable person to suspect that Beech-Nut was engaged in the conduct alleged herein.

207.    For these, reasons, all applicable statutes of limitation have been tolled by discovery rule with respect to claims asserted by Plaintiffs, the Class, and the Subclasses.

### II.   **FRAUDULENT CONCEALMENT TOLLING**

208.    By failing to provide notice of the presence of toxic heavy metals in the Beech-Nut Baby Foods, Beech-Nut concealed its conduct and the existence of the claims asserted herein from Plaintiffs and the members of the Class and Subclasses.

209.     Upon information and belief, Beech-Nut intended its acts to conceal the facts and claims from Plaintiffs and members of the Classes and Subclasses. Plaintiffs and the members of the Class and Subclasses were unaware of the facts alleged herein without any fault or lack of diligence on their part and could not have reasonably discovered Beech-Nut's conduct. For this reason, any statute of limitations that otherwise may apply to the claims of Plaintiffs or members of the Class or Subclasses should be tolled.

### III.    ESTOPPEL

210.    Beech-Nut was under a continuous duty to disclose to Plaintiffs and the members of the Classes the risks of consuming the Baby Food Products.

211.    Beech-Nut knowingly, affirmatively, and actively concealed or recklessly disregarded the true risks of consuming the Beech-Nut Baby Food Products, and led consumers to believe they were safe and suitable for consumption.

212.    Accordingly, Beech-Nut is estopped from relying on any statutes of limitations in defense of this action.

## CLASS ACTION ALLEGATIONS

213.    Plaintiffs bring this action individually and on behalf of the following Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and (3), and 23(c)(4):

> **NATIONWIDE CLASS:**   All persons in the United States who purchased Beech-Nut Baby Foods for personal, family, or household use, and not for resale, within the applicable statute of limitations (the "Class").

214.    In addition, Plaintiffs bring this action individually and on behalf of the following statewide subclasses based on their state of residence at the time of purchase of Beech-Nut Baby Foods and/or at the time this pleading was filed, pursuant to Rules 23(a), 23(b)(2) and (3), and 23(c)(4) of the Federal Rules of Civil Procedure.

215.    Plaintiffs Boyer, Hobdy, McDowell, and Moore ("Alabama Plaintiff") bring this action individually and on behalf of the following subclass:

> All persons who are or were citizens of Alabama and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use, and not for resale, within the applicable statute of limitations (the "Alabama Subclass").

216.    Plaintiffs Almquist and Holmes ("Alaska Plaintiff") bring this action individually and on behalf of the following subclass:

> All persons who are or were citizens of Alaska and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use and not for resale within the applicable statute of limitations (the "Alaska Subclass").

217.   Plaintiffs Abdoo, Pangelinan, and Salopek ("Arizona Plaintiff") bring this action individually and on behalf of the following subclass:

> All persons who are or were citizens of Arizona and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household  use and not for resale within the applicable statute of limitations (the "Arizona Subclass").

218.   Plaintiff Abbott ("Arkansas Plaintiff") brings this action individually and on behalf of the following subclass:

> All persons who are or were citizens of Arkansas and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use and not for resale within the applicable statute of limitations (the "Arkansas Subclass").

219.   Plaintiffs Abdoo, Pangelinan, and Salopek ("California Plaintiff") bring this action individually and on behalf of the following subclass:

> All persons who are or were citizens of California and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use and not for resale within the applicable statute of limitations (the "California Subclass").

220.   Plaintiffs Cantor and Engebretsen ("Colorado Plaintiff") bring this action individually and on behalf of the following subclass:

> All persons who are or were citizens of Colorado and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use and not for resale within the applicable statute of limitations (the "Colorado Subclass").

221.   Plaintiff Warren ("Connecticut Plaintiff") brings this action individually and on behalf of the following subclass:

> All persons who are or were citizens of Connecticut and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use and not for resale within the applicable statute of limitations (the "Connecticut Subclass").

222.   Plaintiff Clark ("Delaware Plaintiff") brings this action individually and on behalf of the following subclass:

All persons who are or were citizens of Delaware and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use and not for resale within the applicable statute of limitations (the "Delaware Subclass").

223.    Plaintiff Peterson ("District of Columbia Plaintiff") brings this action individually and on behalf of the following subclass:

All persons who are or were citizens of Washington, D.C. and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use and not for resale within the applicable statute of limitations (the "Washington, D.C. Subclass").

224.    Plaintiffs Boyer, Hobdy, Moore, Scarola ("Florida Plaintiff") bring this action individually and on behalf of the following subclass:

All persons who are or were citizens of Florida and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use and not for resale within the applicable statute of limitations (the "Florida Subclass").

225.    Plaintiff Hobdy, McHenry, Sams, and Stokes ("Georgia Plaintiff") bring this action individually and on behalf of the following subclass:

All persons who are or were citizens of Georgia and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use and not for resale within the applicable statute of limitations (the "Georgia Subclass").

226.    Plaintiff Zulli ("Hawaii Plaintiff") brings this action individually and on behalf of the following subclass:

All persons who are or were citizens of Hawaii and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use and not for resale within the applicable statute of limitations (the "Hawaii Subclass").

227.    Plaintiff Carr ("Idaho Plaintiff") brings this action individually and on behalf of the following subclass:

All persons who are or were citizens of Idaho and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use and not for resale within the applicable statute of limitations (the "Idaho Subclass").

228.    Plaintiffs Bruno, Boots, Hockaday, and Wallace ("Illinois Plaintiff") bring this action individually and on behalf of the following subclass:

> All persons who are or were citizens of Illinois and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use and not for resale within the applicable statute of limitations (the "Illinois Subclass").

229.    Plaintiffs Bruno, Latteyer, and Patel ("Indiana Plaintiff") bring this action individually and on behalf of the following subclass:

> All persons who are or were citizens of Indiana and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use and not for resale within the applicable statute of limitations (the "Indiana Subclass").

230.    Plaintiff Latteyer ("Iowa Plaintiff") brings this action individually and on behalf of the following subclass:

> All persons who are or were citizens of Iowa and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use and not for resale within the applicable statute of limitations (the "Iowa Subclass").

231.    Plaintiff Williams ("Kansas Plaintiff") brings this action individually and on behalf of the following subclass:

> All persons who are or were citizens of Kansas and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use and not for resale within the applicable statute of limitations (the "Kansas Subclass").

232.    Plaintiffs Allgood (a/k/a Holland), Butkus, Wallace, and Wright ("Kentucky Plaintiff") bring this action individually and on behalf of the following subclass:

> All persons who are or were citizens of Kentucky and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use and not for resale within the applicable statute of limitations (the "Kentucky Subclass").

233.    Plaintiff Moore ("Louisiana Plaintiff") brings this action individually and on behalf of the following subclass:

> All persons who are or were citizens of Louisiana and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use  and not for resale within the applicable statute of limitations (the "Louisiana Subclass").

234. Plaintiff McGibney ("Maine Plaintiff") brings this action individually and on behalf of the following subclass:

> All persons who are or were citizens of Maine and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use and not for resale within the applicable statute of limitations (the "Maine Subclass").

235. Plaintiffs Curry, Francois, Hayden, Peterson, and Slabinski ("Maryland Plaintiff") brings this action individually and on behalf of the following subclass:

> All persons who are or were citizens of Maryland and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use and not for resale within the applicable statute of limitations (the "Maryland Subclass").

236. Plaintiffs Baccari and Kozaczka ("Massachusetts Plaintiff") bring this action individually and on behalf of the following subclass:

> All persons who are or were citizen for personal, family, or household use s of Massachusetts and/or purchased Beech-Nut Baby Foods in the state for household use and not for resale within the applicable statute of limitations (the "Massachusetts Subclass").

237. Plaintiff Lohse ("Michigan Plaintiff") brings this action individually and on behalf of the following subclass:

> All persons who are or were citizens of Michigan and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use and not for resale within the applicable statute of limitations (the "Michigan Subclass").

238. Plaintiff Boots and Latteyer ("Minnesota Plaintiff") bring this action individually and on behalf of the following subclass:

> All persons who are or were citizens of Minnesota and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use and not for resale within the applicable statute of limitations (the "Minnesota Subclass").

239. Plaintiff Malaga and Yates ("Mississippi Plaintiff") bring this action individually and on behalf of the following subclass:

> All persons who are or were citizens of Mississippi and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use and not for resale within the applicable statute of limitations (the "Mississippi Subclass").

240.    Plaintiff Cole, George, and Williams ("Missouri Plaintiff") bring this action individually and on behalf of the following subclass:

> All persons who are or were citizens of Missouri and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use and not for resale within the applicable statute of limitations (the "Missouri Subclass").

241.    Plaintiff Engebretsen ("Montana Plaintiff") brings this action individually and on behalf of the following subclass:

> All persons who are or were citizens of Montana and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use and not for resale within the applicable statute of limitations (the "Montana Subclass").

242.    Plaintiff Carranza ("Nebraska Plaintiff") brings this action individually and on behalf of the following subclass:

> All persons who are or were citizens of Nebraska and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use and not for resale within the applicable statute of limitations (the "Nebraska Subclass").

243.    Plaintiff Blankenship ("Nevada Plaintiff") brings this action individually and on behalf of the following subclass:

> All persons who are or were citizens of Nevada and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use and not for resale within the applicable statute of limitations (the "Nevada Subclass").

244.    Plaintiff Kozaczka ("New Hampshire Plaintiff") brings this action individually and on behalf of the following subclass:

> All persons who are or were citizens of New Hampshire and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use and not for resale within the applicable statute of limitations (the "New Hampshire Subclass").

245.    Plaintiffs Farci, Sike, and Stevenson ("New Jersey Plaintiff") bring this action individually and on behalf of the following subclass:

> All persons who are or were citizens of New Jersey and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use and not for resale within the applicable statute of limitations (the "New Jersey Subclass").

246.    Plaintiff Salopek ("New Mexico Plaintiff") brings this action individually and on behalf of the following subclass:

> All persons who are or were citizens of New Mexico and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use and not for resale within the applicable statute of limitations (the "New Mexico Subclass").

247.    Plaintiff Partello and Stevenson ("New York Plaintiff") bring this action individually and on behalf of the following subclass:

> All persons who are or were citizens of New York and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use and not for resale within the applicable statute of limitations (the "New York Subclass").

248.    Plaintiffs Geffken and Schram ("North Carolina Plaintiff") bring this action individually and on behalf of the following subclass:

> All persons who are or were citizens of North Carolina and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use and not for resale within the applicable statute of limitations (the "North Carolina Subclass").

249.    Plaintiff Fisher ("North Dakota Plaintiff") brings this action individually and on behalf of the following subclass:

> All persons who are or were citizens of North Dakota and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use and not for resale within the applicable statute of limitations (the "North Dakota Subclass").

250.    Plaintiff McGlinch ("Ohio Plaintiff") brings this action individually and on behalf of the following subclass:

> All persons who are or were citizens of Ohio and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use and not for resale within the applicable statute of limitations (the "Ohio Subclass").

251.     Plaintiffs Cooper, and Warren ("Oklahoma Plaintiff") bring this action individually

and on behalf of the following subclass:

> All persons who are or were citizens of Oklahoma and/or purchased Beech-Nut Baby
> Foods in the state for personal, family, or household use and not for resale within the
> applicable statute of limitations (the "Oklahoma Subclass").

252.     Plaintiff Norgaard and Townzen ("Oregon Plaintiff") bring this action individually

and on behalf of the following subclass:

> All persons who are or were citizens of Oregon and/or purchased Beech-Nut Baby Foods
> in the state for personal, family, or household use and not for resale within the applicable
> statute of limitations (the "Oregon Subclass").

253.     Plaintiff Harrell ("Pennsylvania Plaintiff") brings this action individually and on

behalf of the following subclass:

> All persons who are or were citizens of Pennsylvania and/or purchased Beech-Nut Baby
> Foods in the state for personal, family, or household use and not for resale within the
> applicable statute of limitations (the "Pennsylvania Subclass").

254.     Plaintiff Kozaczka ("Rhode Island Plaintiff") brings this action individually and on

behalf of the following subclass:

> All persons who are or were citizens of Rhode Island and/or purchased Beech-Nut Baby
> Foods in the state for personal, family, or household use and not for resale within the
> applicable statute of limitations (the "Rhode Island Subclass").

255.     Plaintiffs Austin, and Schram ("South Carolina Plaintiff") bring this action

individually and on behalf of the following subclass:

> All persons who are or were citizens of South Carolina and/or purchased Beech-Nut Baby
> Foods in the state for personal, family, or household use and not for resale within the
> applicable statute of limitations (the "South Carolina Subclass").

256.     Plaintiff Douglas ("South Dakota Plaintiff") brings this action individually and on

behalf of the following subclass:

All persons who are or were citizens of South Dakota and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use and not for resale within the applicable statute of limitations (the "South Dakota Subclass").

257.    Plaintiffs Blankenship, Mitchell, and Smith ("Tennessee Plaintiff") bring this action individually and on behalf of the following subclass:

All persons who are or were citizens of Tennessee and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use and not for resale within the applicable statute of limitations (the "Tennessee Subclass").

258.    Plaintiffs Carson, Hyden, and Salopek ("Texas Plaintiff") bring this action individually and on behalf of the following subclass:

All persons who are or were citizens of Texas and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use and not for resale within the applicable statute of limitations (the "Texas Subclass").

259.    Plaintiff Isaacs and McGlinch ("Utah Plaintiff") bring this action individually and on behalf of the following subclass:

All persons who are or were citizens of Utah and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use and not for resale within the applicable statute of limitations (the "Utah Subclass").

260.    Plaintiff Moyer ("Vermont Plaintiff") brings this action individually and on behalf of the following subclass:

All persons who are or were citizens of Vermont and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use and not for resale within the applicable statute of limitations (the "Vermont Subclass").

261.    Plaintiff Austin and Harrell ("Virginia Plaintiff") bring this action individually and on behalf of the following subclass:

All persons who are or were citizens of Virginia and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use and not for resale within the applicable statute of limitations (the "Virginia Subclass").

262.    Plaintiffs Rogers and White ("Washington Plaintiff") brings this action individually and on behalf of the following subclass:

> All persons who are or were citizens of Washington and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use and not for resale within the applicable statute of limitations (the "Washington Subclass").

263.    Plaintiff Barb ("West Virginia Plaintiff") brings this action individually and on behalf of the following subclass:

> All persons who are or were citizens of West Virginia and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use and not for resale within the applicable statute of limitations (the "West Virginia Subclass").

264.    Plaintiff Edwards ("Wisconsin Plaintiff") brings this action individually and on behalf of the following subclass:

> All persons who are or were citizens of Wisconsin and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use and not for resale within the applicable statute of limitations (the "Wisconsin Subclass").

265.    Plaintiff George ("Wyoming Plaintiff") brings this action individually and on behalf of the following subclass:

> All persons who are or were citizens of Wyoming and/or purchased Beech-Nut Baby Foods in the state for personal, family, or household use use and not for resale within the applicable statute of limitations (the "Wyoming Subclass").

266.    The foregoing subclasses are referred to herein as the "State Subclasses."  The Nationwide Class with the State Subclasses are referred to herein as the "Classes."

267.    Excluded from the Classes are Beech-Nut; any parent, subsidiary, or affiliate of Beech-Nut; any entity in which Beech-Nut has or had a controlling interest, or which Beech-Nut otherwise controls or controlled; any officer, director, employee, legal representative, predecessor, successor, or assignee of Beech-Nut; and any judges presiding over this case.

268.    Plaintiffs reserve the right to modify or amend the definition of the proposed Classes and/or add subclasses before the Court determines whether certification is appropriate.

269.    **Ascertainability**. The proposed Classes and Subclasses are readily ascertainable because they are defined using objective criteria so as to allow class members to determine if they are part of a Class or Subclass. Class members are ascertainable through self-identification, the use of purchase records, reward and/or membership programs, and the possession of Beech-Nut Baby Foods themselves.

270.    **Numerosity (Rule 23(a)(1))**. The Classes and Subclasses are so numerous that joinder of individual members herein is impracticable. The exact number of members of the Class and Subclasses, as herein identified and described, is not known, but sales figures indicate that millions of individuals have purchased Beech-Nut Baby Foods, which are sold throughout the United States by third-party retailers.

271.    **Commonality and Predominance (Rule 23(a)(2) and Rule 23(b)(3))**. Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class and Subclass members, including the following:

- whether Defendant misrepresented material facts and/or failed to disclose material facts in connection with the packaging, labeling, marketing, distribution, and sale of Beech-Nut Baby Foods;

- whether Defendant represents to consumers that the Beech-Nut Baby Foods have characteristics, benefits, or qualities that they do not have;

- whether Defendant's representations and omissions on the labeling of the Beech-Nut Baby Foods are likely to mislead, deceive, confuse, or confound consumers acting reasonably;

- whether Beech-Nut knew or should have known that its Baby Foods contained toxic heavy metals, or had a material risk of containing toxic heavy metals

- whether Beech-Nut had a duty to disclose, and wrongfully failed to disclose, that the Beech-Nut Baby Foods contained, or had a material risk of containing, toxic heavy metals;

- whether Beech-Nut had a duty to disclose, and wrongfully failed to disclose, its inadequate testing and/or safety standards;

- whether Defendant had knowledge that its representations and/or omissions were false, deceptive, and misleading;

- whether Defendant continues to make representations and/or omissions despite knowledge that the representations and/or omissions are false, deceptive, and misleading;

- whether Defendant breached its express warranties;

- whether Defendant breached its implied warranties;

- whether Defendant engaged in fraudulent, deceptive, misleading, unlawful, and/or unfair trade practices;

- whether Defendant engaged in false advertising;

- whether Defendant made negligent and/or fraudulent misrepresentations and/or omissions;

- whether Plaintiffs and the members of the Class are entitled to actual, statutory, and punitive damages;

- whether Defendant unjustly retained a benefit such that restitution is appropriate; and

- whether Plaintiffs and members of the Class are entitled to declaratory and injunctive relief.

272. Defendant has engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiffs and members of the Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by members of the proposed Classes flow, in each instance, from a common nucleus of operative fact, namely, Defendant's deceptive packaging, labeling, marketing, and advertising of the Beech-Nut Baby Foods. Each instance of harm suffered by Plaintiffs and

members of the Classes has directly resulted from a single course of illegal conduct. Each Class Member has been exposed to the same deceptive practice, as each of the Beech-Nut Baby Foods: (a) bear the materially same representations and/or omissions regarding the health and quality of the Beech-Nut Baby Foods, in that they are safe, healthy, and suitable for consumption by infants and young children, and (b) the Beech-Nut Baby Foods actually contain (or have a material risk of containing) toxic heavy metals. Therefore, individual questions, if any, pale in comparison to the numerous common questions predominating in this action.

273.   **Typicality (Rule 23(a)(3))**. Plaintiffs' claims are typical of the claims of the other members of the proposed Class and Subclasses. Plaintiffs and members of the Class and Subclasses (as applicable) suffered injuries as a result of Beech-Nut's wrongful conduct that is uniform across the Class and Subclasses.

274.   **Adequacy (Rule 23(a)(4))**. Plaintiffs have and will continue to fairly and adequately represent and protect the interests of the Class and Subclasses. Plaintiffs have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interest that is antagonistic to those of the Class and Subclasses, and Defendant has no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and Subclasses, and they have the resources to do so. Neither Plaintiffs nor Plaintiffs' counsel have any interest adverse to those of the other members of the Class and Subclasses.

275.   **Substantial Benefits**. This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class and Subclasses is impracticable. The prosecution of separate actions by individual members of the Class and Subclasses would impose

heavy burdens upon the Courts and Defendant, would create a risk of inconsistent or varying adjudications of the questions of law and fact common to members of the Classes and Subclasses, and would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

276.    Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual members of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

277.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) (and Fed. R. Civ. P. 23(b)(1)) because Defendant has acted or refused to act on grounds generally applicable to the Classes and Subclasses, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class and Subclasses as a whole.

278.    In the alternative, the common questions of fact and law, *supra*, are appropriate for issue certification on behalf of the proposed Classes under Fed. R. Civ. P. 23(c)(4).

279.    Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

## BREACH OF EXPRESS WARRANTY

### (Brought on behalf of the Nationwide Class or, alternatively, the State Subclasses)

280.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

281.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant for breach of express warranty.

282.    Beech-Nut packaged, labeled, marketed, and sold the Beech-Nut Baby Foods into the stream of commerce with the intent that the Beech-Nut Baby Foods would be purchased by Plaintiffs and the Class.

283.    Defendant expressly warranted and represented to Plaintiffs and the Classes that its Beech-Nut Baby Foods were and are safe, healthy, and suitable for consumption by infants and young children.

284.    Defendant made these express warranties regarding the Beech-Nut Baby Foods' quality, ingredients, and fitness for consumption on Beech-Nut Baby Foods' packaging and labels, and through other forms of uniform, nationwide marketing, its website and on social media.  These affirmations of fact and/or promises became part of the basis of the bargain, and the contract, that Plaintiffs and the Classes entered into with Beech-Nut upon purchasing the Beech-Nut Baby Foods.

285.    Defendant's warranties and representations were made in connection with the sale of the Beech-Nut Baby Foods to Plaintiffs and the Classes. Plaintiffs and the Classes reasonably relied on Defendant's warranties, and representations regarding the Beech-Nut Baby Foods in deciding whether to purchase Defendant's products.

286.    Contrary to Defendant's warranties and representations, Beech-Nut Baby Foods do not conform to Defendant's affirmations of fact and promises in that they are not safe, healthy, and suitable for consumption by infants and young children.

287.    Defendant therefore breached the express warranties by placing Beech-Nut Baby Food into the stream of commerce and selling the products to consumers, when they have elevated levels of heavy metals that bioaccumulate and can cause toxicity and adverse health effects, rendering these products unfit for their intended use and purpose, and unsafe and unsuitable for consumer use as represented and marketed by Beech-Nut. These high levels of toxic heavy metals substantially impair the use, value, safety of Beech-Nut Baby Foods.

288.    Beech-Nut was at all times aware, or should have been aware, of the elevated levels of toxic heavy metals, and material risk thereof, in Beech-Nut Baby Foods. Beech-Nut was on notice of these concerns with their products, but nowhere on the package labeling or on Beech-Nut's website or other marketing materials did Beech-Nut warn Plaintiffs and members of the Classes that they were at risk of feeding their children products with elevated levels of toxic heavy metals as outlined herein.

289.    Instead, Beech-Nut concealed and omitted the presence of and material risk of containing toxic heavy metals in the Beech-Nut Baby Foods and deceptively represented that these products were safe, healthy, and suitable for consumption by infants and young children. Beech-Nut thus failed to ensure that the material representations it was making to consumers were true.

290.    The elevated levels of toxic heavy metals at issue in the Beech-Nut Baby Foods existed when the products left Defendant's possession or control and were sold to Plaintiffs and members of the Classes. The elevated levels of toxic heavy metals contained in, and having a

material risk to be contained in, the Beech-Nut Baby Foods were undiscoverable by Plaintiffs and members of the Classes at the time of purchase of the Beech-Nut Baby Foods.

291.    As manufacturers, marketers, advertisers, distributors, and sellers of the Beech-Nut Baby Foods, Beech-Nut had exclusive knowledge and notice of the fact that the Beech-Nut Baby Foods did not conform to the affirmations of fact and promises.

292.    In addition, or in the alternative, to the formation of an express contract, Defendant made each of the above-described representations to induce Plaintiffs and members of the Classes to rely on such representations.

293.    Beech-Nut's affirmations of fact and promises were material, and Plaintiffs and members of the putative Classes reasonably relied upon such representations in purchasing the Beech-Nut Baby Foods.

294.    All conditions precedent to Defendant's liability for its breach of express warranty have been performed by Plaintiffs or members of the Classes.

295.    Affording Beech-Nut an opportunity to cure its breaches of written warranties would be unnecessary and futile here. Beech-Nut was placed on reasonable notice of the elevated levels of toxic heavy metals in the Beech-Nut Baby Foods and breach of the warranties based on Beech-Nut's own scientific research and its expertise in the food production industry. Indeed, Beech-Nut routinely measures the amount of heavy metals in the ingredients of its Beech-Nut Baby Foods.  Defendant also had notice of its breaches of warranties by virtue of publication of the Healthy Babies Bright Futures Report in 2019.  Beech-Nut has had ample opportunity to cure the elevated level of toxic heavy metal in their Beech-Nut Baby Foods to make them safe, healthy and suitable for consumption by infants and young children, but has failed to do so.

296.    Beech-Nut also was provided with pre-suit notice of its breaches of warranty when certain Plaintiffs and absent Class members sent Beech-Nut a certified letter containing the basis of their claims.

297.    Beech-Nut has also been provided with notice by the consumer class action complaints filed against it.

298.    As a direct and proximate result of Beech-Nut's breaches of express warranty, Plaintiffs and members of the putative Classes have been damaged because they did not receive the products as specifically warranted by Beech-Nut. Plaintiffs and members of the putative Classes did not receive the benefit of the bargain and suffered damages at the point of sale stemming from their overpayment for Beech-Nut Baby Foods.

299.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to their express warranties and resulting breach.

## SECOND CLAIM FOR RELIEF

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

**(Brought on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

300.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

301.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant for breach of implied warranty of merchantability.

302.    Defendant was and is the merchant, manufacturer, marketer, warrantor and seller of goods – the Beech-Nut Baby Foods – to Plaintiffs and the Classes and knew or had reason to know of the specific use for which the Baby Foods were purchased.

303.   Plaintiffs and the Classes are consumers who purchased the Beech-Nut Baby Foods manufactured, sold and marketed by Beech-Nut throughout the United States, as well as through Beech-Nut's website.

304.   An implied warranty that the Beech-Nut Baby Foods were merchantable arose by operation of law as part of the sale of the Baby Foods.

305.   By placing the goods into the stream of commerce, Beech-Nut impliedly warranted to Plaintiffs and the Classes that the Beech-Nut Baby Foods were of merchantable quality, free of materials defects, fit for their ordinary and intended use (consumption by infants and young children), and conformed to the promises and affirmations of fact made on the Beech-Nut Baby Foods' sealed packages, containers, and labels, including that the food was safe, healthy, and suitable for consumption by infants and young children.

306.   Defendant's products when sold, and at all times thereafter, were not merchantable or reasonably fit for either the use they were intended or the uses reasonably foreseeable by Defendant.

307.   Defendant breached its implied warranty of merchantability because Beech-Nut's Baby Foods contained (or had a material risk of containing) toxic heavy metals, including arsenic, lead, mercury, and cadmium, which can cause adverse health effects, rendering the Products unfit for their intended use and purpose as Baby Foods, and which impair the use, value and safety of the Products.

308.   The toxic and/or harmful levels of heavy metals existed when Beech-Nut's Baby Foods left Defendant's possession or control and were sold to Plaintiffs and the members of the Classes.  The amounts of toxic and/or harmful levels of heavy metals in Beech-Nut's Baby Foods were undiscoverable by Plaintiffs and the members of the Classes at the time of their purchases.

309.     As outlined herein, Beech-Nut represented on its labels, on its website, and through national advertising, among other means, that its Baby Foods were safe, healthy, and suitable for consumption by infants and young children.

310.     Contrary to these representations, Beech-Nut's Baby Foods contained (or were at material risk of containing) toxic levels of heavy metals which was not disclosed on the Baby Foods or labels, or in Defendant's marketing and advertising.  Instead, the Baby Foods are unsafe because they contained (or were at material risk of containing) toxic levels of heavy metals and therefore were and are unsafe and unsuitable for consumer use.  Beech-Nut had, and has, exclusive knowledge of the materials facts concerning the defective nature of its Baby Foods.

311.     Plaintiffs and the members of the Classes were at all material times intended third party beneficiaries of Beech-Nut and its agents in the distribution and sale of its Baby Foods. Beech-Nut exercises substantial control over the outlets that sell Beech-Nut's Baby Foods, which are the same means by Plaintiffs and the Classes purchased the Baby Foods.  Defendant's warranties are not intended to apply to distributors but are instead intended to apply to consumers, including Plaintiffs and the Classes, to whom Beech-Nut directly markets through labels and product packaging, and who review the labels and product packaging in connection with their purchases.  As a result, the warranties are designed and intended to benefit the consumers, including Plaintiffs and the Classes, who purchase the Baby Foods.  Privity therefore exists based on the foregoing and because Beech-Nut impliedly warranted to Plaintiffs and the Classes through the packaging that the Baby Foods were safe, health, and suitable for consumption by infants and your children without disclosing the toxic levels of heavy metals (or risk thereof).

312.     Defendant was on notice of this breach, as it was aware of the heavy metals contained, or at risk of being contained, in the Beech-Nut Baby Foods based on its exclusive

knowledge of the manufacturing processes, quality control practices, and the physical and chemical composition of the Products, and its own testing and expertise, based on the public investigation by Healthy Babies Bright Futures that showed Defendant's baby food products as containing various levels of toxic heavy metals, and based on the Congressional investigation into these matters.

313.   Beech-Nut also was provided with pre-suit notice of its breaches of warranty when certain Plaintiffs and absent Class members sent Beech-Nut a certified letter containing the basis of their claims.

314.   Beech-Nut was also provided notice by class action complaints filed against it concerning these issues.

315.   As a direct and proximate result of Defendant's conduct, Plaintiffs and the Classes have suffered actual damages in that they have purchased Beech-Nut Baby Foods that are worthless and/or worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of heavy metals and Beech-Nut's conduct relating thereto in the manufacture and sale of the Baby Foods.

316.   Plaintiffs and the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to their implied warranties and resulting breach.

### THIRD CLAIM FOR RELIEF

### FRAUDULENT MISREPRESENTATION

**(Brought on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

317.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

318.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant for fraudulent misrepresentation.

319.    Defendant falsely represented to Plaintiffs and the Class that the Beech-Nut Baby Foods are safe, healthy, and suitable for consumption by infants and young children.  However, the Beech-Nut Baby Foods contained, or were at risk of containing, heavy metals that do not conform to the packaging. Therefore, Defendant has made misrepresentations about the Beech-Nut Baby Foods.

320.    Defendant's misrepresentations regarding the Beech-Nut Baby Foods are material to a reasonable consumer because they relate to the safety and quality of products specifically intended to feed infants and young children, which the consumer is receiving and paying for. A reasonable consumer would attach importance to such representations and would be induced to act thereon in deciding whether or not to purchase the Beech-Nut Baby Foods.

321.    Defendant intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiffs and the Class to purchase Beech-Nut Baby Foods.

322.    Defendant knew that its representations about Beech-Nut Baby Foods were false in that Beech-Nut Baby Foods contained, or were at risk of containing, elevated levels of heavy metals that do not conform to the products' labels, packaging, advertising, and statements. Defendant allowed its packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiffs and the Classes.

323.    Defendant intended that Plaintiffs and member of the Classes rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the Beech-Nut Baby Foods' packaging by Defendant, as well as its advertising,

marketing, and labeling of the Beech-Nut Baby Foods as, among other things, safe, healthy, and suitable for consumption by infants and young children.

324.    Plaintiffs and the Classes did in fact rely on these misrepresentations when purchasing Beech-Nut Baby Foods to their detriment. Given the deceptive manner in which Defendant advertised, represented, and otherwise promoted Beech-Nut Baby Foods, Plaintiffs' and the Classes' reliance on Defendant's misrepresentations was reasonable and justifiable.

325.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the Classes have suffered actual damages in that they purchased Beech-Nut Baby Foods that were worthless or worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals that do not conform to the products' labels, packaging, advertising, and statements.

326.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## FOURTH CLAIM FOR RELIEF

### FRAUD BY OMISSION

**(Brought on behalf of Nationwide Class or, alternatively, the State Subclasses)**

327.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

328.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant for fraud by omission.

329.    Defendant actively and knowingly concealed from and failed to disclose to Plaintiffs and the Classes that Beech-Nut Baby Foods contained, or were at risk of containing, heavy metals that do not conform to the products' labels, packaging, advertising, and statements. Further, Beech-Nut actively and knowingly concealed its inadequate testing and safety standards.

330.    Defendant was under a duty to disclose to Plaintiffs and the Classes the true quality, characteristics, ingredients, and suitability of the Beech-Nut Baby Foods because: (1) Defendant was in a superior position to know the true state of facts about its products; (2) Defendant was in a superior position to know the actual ingredients, characteristics, and suitability of Beech-Nut Baby Foods for consumption by infants and young children; and (3) Defendant knew that Plaintiffs and the Classes could not reasonably have been expected to learn or discover that Beech-Nut Baby Foods were misrepresented in the packaging, labels, advertising, and websites prior to purchasing Beech-Nut Baby Foods; (4) Defendant's packaging and labels disclosed misleading information to consumers by omitting that Beech-Nut Baby Foods contain (or have a material risk of containing) toxic heavy metals; (5) Beech-Nut is in a position of public trust as a manufacturer of baby foods; and (6) based on Defendant's partial statements on Beech-Nut Baby Foods' labels and packaging that gave a misleading impression to reasonable consumers that the Baby Foods are safe, healthy, and suitable for consumption by infants and young children, without further information on the presence of, and material risk of, heavy metals that had not been disclosed, Defendant assumed the obligation to make a full and fair disclosure of the whole truth.

331.    Defendant knows its customers trust the quality of its products and that they expect Beech-Nut Baby Foods to be safe, healthy, and suitable for consumption by infants and young children and to not contain or have a risk of containing elevated levels of heavy metals. Defendant also knows that certain consumers seek out and wish to purchase baby foods that possess high quality ingredients free of toxins, contaminants, or chemicals, and that these consumers will pay more for baby foods that they believe possess these qualities.

332.    Due to the omissions on Beech-Nut Baby Foods packaging, Defendant had a duty to disclose the whole truth about the presence, and material risk, of toxic heavy metals in Beech-

Nut Baby Foods to Plaintiffs and the Classes.  Defendant failed to discharge its duty to disclose the presence or risk of heavy metals in Beech-Nut Baby Foods.

333.    The facts concealed or not disclosed by Defendant to Plaintiffs and the Classes are material in that a reasonable consumer would have considered them important when deciding whether to purchase Beech-Nut Baby Foods.

334.    Defendant knew or should have known the omissions were material to Plaintiffs' and the Classes' decisions to purchase Beech-Nut Baby Foods and would induce Plaintiffs and the Classes to purchase Beech-Nut Baby Foods.

335.    Plaintiffs and the Classes justifiably relied on the Defendant's omissions to their detriment. The detriment is evident from the true quality, characteristics, and ingredients of Beech-Nut Baby Foods, which is inferior when compared to how Beech-Nut Baby Foods are advertised and represented by Defendant.

336.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the Classes have suffered actual damages in that they purchased Beech-Nut Baby Foods that were worthless or worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

337.    Plaintiffs and the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

### FIFTH CLAIM FOR RELIEF

### NEGLIGENT MISREPRESENTATION

**(Brought on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

338.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

339.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant for negligent misrepresentation.

340.     Because Defendant has superior knowledge regarding the quality and safety of its ingredients and because Plaintiffs and members of the Classes trust and rely on Defendant to provide accurate and truthful information regarding the Beech-Nut Baby Foods that are intended to feed infants and young children, which Plaintiffs and members of the Classes cannot ascertain on their own, Defendant had a duty to Plaintiffs and the Classes to give correct information regarding Beech-Nut Baby Foods.

341.     Defendant packaged, labeled, marketed, and advertised the Beech-Nut Baby Foods in a manner indicating that Beech-Nut Baby Foods were and are, among other things, safe, healthy, and suitable for consumption by infants and young children. However, Beech-Nut Baby Foods contained, or were at risk of containing, heavy metals that do not conform to the packaging. Therefore, Defendant has made misrepresentations about Beech-Nut Baby Foods.

342.     Defendant's misrepresentations regarding Beech-Nut Baby Foods are material to a reasonable consumer because they relate to the safety and quality of products intended for infants and young children, which the consumer is receiving and paying for. A reasonable consumer would attach importance to such representations and would be induced to act thereon in deciding whether or not to purchase Beech-Nut Baby Foods.

343.     At all relevant times when such misrepresentations were made, Defendant knew or had been negligent in not knowing that the Beech-Nut Baby Foods contained, or were at risk of containing, heavy metals. Defendant has no reasonable grounds for believing its misrepresentations were not false and misleading.

344.    Defendant knew or should have known that the ingredients, qualities, and characteristics of the Beech-Nut Baby Foods were not as advertised or suitable for their intended use, consumption by infants and young children, and were otherwise not as warranted and represented by Defendant. Specifically, Defendant knew or should have known that: (1) the Beech-Nut Baby Foods were not nutritious, superior quality, pure, natural, healthy and safe for consumption because they contained, or had a risk of containing, levels of heavy metals and/or other unnatural ingredients or contaminants that do not conform to the packaging; (2) beech-Nut had inadequate testing and safety standards; (3) the Beech-Nut Baby Foods were adulterated, or at risk of being adulterated, by heavy metals; and (4) the Beech-Nut Baby Foods were otherwise not as warranted and represented by Defendant.

345.    Defendant intended that Plaintiffs and member of the Classes would rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the Beech-Nit Baby Foods' packaging by Defendant, as well as its advertising, marketing, and labeling of the Beech-Nut Baby Foods as, among other things, safe, healthy, and suitable for consumption by infants and young children.

346.    Plaintiffs and members of the Classes have reasonably and justifiably relied on Defendant's negligent misrepresentations when purchasing the Beech-Nut Baby Foods, and had the correct facts been known, would not have purchased the Beech-Nut Baby Foods at all.

347.    Defendant breached its duty to Plaintiffs and the Class by formulating, testing, manufacturing, advertising, marketing, distributing, and selling products to Plaintiffs and the Class that do not have the ingredients, qualities, characteristics, and suitability for consumption as advertised by Defendant and by failing to promptly remove Beech-Nut Baby Foods from the marketplace or to take other appropriate remedial action.

348.     As a direct and proximate result of Defendant's conduct, Plaintiffs and the Classes have suffered actual damages in that they purchased Beech-Nut Baby Foods that were worthless or worth less than the price they paid and that they would not have purchased at all had they known they contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

349.     Plaintiffs and the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

### SIXTH CLAIM FOR RELIEF

### UNJUST ENRICHMENT

**(Brought on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

350.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

351.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant for unjust enrichment.

352.     Substantial benefits have been conferred on Defendant by Plaintiffs and the Classes through the purchase of Beech-Nut Baby Foods. Defendant knowingly and willingly accepted and enjoyed these benefits.

353.     Defendant either knew or should have known that the payments rendered by Plaintiffs and the Classes were given and received with the expectation that the Beech-Nut Baby Foods would have the qualities, characteristics, ingredients, and suitability for consumption represented and warranted by Defendant through its labeling and product packaging, and through its other forms of uniform, nationwide marketing, its website and on social media. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances

when Plaintiffs and the Classes did not receive the benefit of the Baby Foods for which they bargained.

354.    Defendant has been unjustly enriched in retaining the revenues derived from the purchases of its Baby Foods y Plaintiffs and the Classes.  Defendant's acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendant to retain the benefits without payment of the value to Plaintiffs and the Class because Defendants' labeling of the Baby Foods was misleading to consumers, which caused injuries to Plaintiffs and the Classes because they would not have purchased Defendant's Baby Foods, would have bought less of the Baby Foods, or would have paid less for the Baby Foods had they known that they contained harmful levels of toxic heavy metals (or had a material risk of containing those heavy metal toxins).

355.    As a direct and proximate result, Plaintiffs and the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

356.    Plaintiffs and the Class seek restitution, disgorgement, imposition of a constructive trust, and/or other appropriate injunctive and declaratory relief, and any other just and proper relief available under the laws.

**SEVENTH CLAIM FOR RELIEF**

**ALABAMA DECEPTIVE TRADE PRACTICES ACT**

**Ala. Code 1975 § 8-19-1** *et seq.*

**(Brought on behalf of Alabama Plaintiff and the Alabama Subclass)**

357.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

358.    Alabama Plaintiff and Alabama Subclass Members are or were residents of Alabama and/or purchased Beech-Nut Baby Foods in Alabama.

359.    Plaintiffs provided Defendant pre-suit notice pursuant to Ala. Code §8-19-10(e) of the Alabama Deceptive Trade Practices Act ("ADTPA") by, *inter alia,* sending a certified letter containing the basis of Plaintiffs' claims.

360.    Defendant is a "person" as defined by Ala. Code 1975 § 8-19-3(10).

361.    Alabama Plaintiff and Alabama Subclass Members are actual or potential consumers within the meaning of Ala. Code 1975 § 8-19-3(4) of Beech-Nut Baby Foods.

362.    Defendant engages in "trade or commerce" within the meaning of Ala. Code 1975 § 8-19-3(14) by "advertising, buying, offering for sale, sale or distribution or performance of any service or goods and any other article, commodity, or thing of value wherever situated" in Alabama and affecting the people of Alabama.

363.    Beech-Nut engaged in unfair, unconscionable, and deceptive acts or practices in the conduct of trade or commerce, in violation of Ala. Code 1975 § 8-19-5, including but not limited to the following:

(a)    Caused confusion or misunderstanding as to the source, sponsorship, approval, or certification of its Beech-Nut Baby Foods, in violation of Ala. Code 1975 § 8-19-5(2) and/or Ala. Code 1975 § 8-19-5(27);

(b)    Knowingly or recklessly made a false representation as to the characteristics, ingredients, uses, benefits, or qualities of Beech-Nut Baby Foods, in violation of Ala. Code 1975 § 8-19-5(5) and/or Ala.Code 1975 § 8-19-5(27);

(c)    Represented that Beech-Nut Baby Foods are healthy, nutritious, and safe for consumption by infants and young children when it knew or should have known Beech-Nut Baby Foods contain or materially risk containing elevated levels of heavy metals, in violation of Ala. Code 1975 § 8-19-5(7) and Ala. Code 1975 § 8-19-5(27);

(d)      Knowingly advertised Beech-Nut Baby Foods with an intent not to sell them as advertised, in violation of Ala. Code. 1975 § 8-19-5(9) and/or Ala. Code 1975 § 8-19-5(27); and

(e)      Knowingly failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals when such failure to disclose such information was intended to induce Alabama Plaintiff and Alabama Subclass Members to enter into transactions to purchase Beech-Nut Baby Foods, in violation of Ala. Code 1975 § 8-19-5(27).

364.    As detailed herein, Beech-Nut's deceptive trade practices significantly impacted the public because Defendant sells Beech-Nut Baby Foods nationwide, including in Alabama, and there are millions of consumers of Beech-Nut Baby Foods, including the Alabama Plaintiff and Alabama Subclass Members.

365.    Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained, or had a material risk of containing, elevated levels of toxic heavy metals.

366.    As a direct and proximate result of Defendant's unfair, unconscionable, and deceptive acts or practices, Alabama Plaintiff and Alabama Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less, because it contains or has a material risk of containing elevated levels of toxic heavy metals.

367.    Beech-Nut's deceptive trade practices caused injury in fact and actual damages to Alabama Plaintiff and Alabama Subclass Members in the form of the loss or diminishment of

value of Beech-Nut Baby Foods Alabama Plaintiff and Alabama Subclass Members purchased, which allowed Defendant to profit at the expense of Alabama Plaintiff and Alabama Subclass Members. The injuries to Alabama Plaintiff and Alabama Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

368.     Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Alabama Plaintiff and Alabama Subclass Members, such that prospective injunctive relief is necessary.

369.     Alabama Plaintiff and Alabama Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair, unconscionable, and deceptive acts or practices including, but not limited to, actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees and/or costs, as well as any other just and proper relief, under Ala. Code 1975 § 8-19-10 and applicable law.

## EIGHTH CLAIM FOR RELIEF

**ALASKA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT**

**Alaska Stat. Ann. § 45.50.471, *et seq*.**

**(Brought on behalf of Alaska Plaintiff and the Alaska Subclass)**

370.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

371.     Alaska Plaintiff and Alaska Subclass Members are or were residents of Alaska and/or purchased Beech-Nut Baby Foods in Alaska.

372.     Alaska Plaintiff and Alaska Subclass Members are actual or potential consumers within the meaning of 13.14.  AS § 45.50.561(4).

373.     The Alaska Unfair Trade Practices and Consumer Protection Act ("AUTPCPA"),
AS § 45.50.471(a) provides that "[u]nfair methods of competition and unfair or deceptive acts or
practices in the conduct of trade or commerce are declared to be unlawful."

374.     Beech-Nut engaged in deceptive, unfair, and unlawful trade acts or practices in
the course of conduct of trade or commerce, in violation of AS § 45.50.471, including but not
limited to the following:

    (a)   Caused a likelihood of confusion or misunderstanding as to the source,
          sponsorship, or approval, or certification of its Beech-Nut Baby Foods, in
          violation of Alaska Stat. Ann. § 45.50.471(b)(3);

    (b)   Knowingly or recklessly made a false representation as to the characteristics,
          ingredients, uses, and benefits of Beech-Nut Baby Foods, in violation of AS §§
          45.50.471(b)(4) and 45.50.471(b)(11);

    (c)   Represented that Beech-Nut Baby Foods are healthy, nutritious, and safe for
          consumption by infants and young children when it knew or should have known
          Beech-Nut Baby Foods contain or materially risk containing elevated levels of
          heavy metals, in violation of AS §§ 45.50.471(b)(6) and 45.50.471(b)(11);

    (d)   Advertised Beech-Nut Baby Foods with an intent not to sell them as advertised, in
          violation of AS §§ 45.50.471(b)(8) and 45.50.471(b)(11); and

    (e)   Failed to disclose the material information that Beech-Nut Baby Foods contained
          or materially risked containing elevated levels of toxic heavy metals when such
          failure to disclose such information was intended to induce Alaska Plaintiff and
          Alaska Subclass Members to enter into transactions to purchase Beech-Nut Baby
          Foods, in violation of AS §§ 45.50.471(b)(12) and 45.50.471(b)(11).

375.     As detailed herein, Beech-Nut's deceptive trade practices significantly impacted the public because Defendant sells Beech-Nut Baby Foods nationwide, including in Alaska, and there are millions of consumers of Beech-Nut Baby Foods, including Alaska Plaintiff and Alaska Subclass Members.

376.     Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or had a material risk of containing elevated levels of toxic heavy metals.

377.     As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Alaska Plaintiff and the Alaska Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less, because it contains or has a material risk of containing elevated levels of toxic heavy metals.

378.     Beech-Nut's deceptive trade practices caused injury in fact and actual damages to Alaska Plaintiff and Alaska Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Alaska Plaintiff and Alaska Subclass Members purchased, which allowed Defendant to profit at the expense of Alaska Plaintiff and Alaska Subclass Members. The injuries to Alaska Plaintiff and Alaska Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

379.     Alaska Plaintiff and Alaska Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unlawful, unfair, and deceptive acts and practices, as provided by the AUTPCPA and applicable law.

## NINTH CLAIM FOR RELIEF

## ARIZONA CONSUMER FRAUD ACT

### Ariz. Rev. Stat. Ann. § 44-1521, *et seq.*

### (Brought on behalf of Arizona Plaintiff and the Arizona Subclass)

Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

380.    Arizona Plaintiff and Arizona Subclass Members are or were residents of Arizona and/or purchased Beech-Nut Baby Foods in Arizona.

381.    Beech-Nut is a "person" as defined by A.R.S. § 44-1521(6) and its baby food products are "merchandise" as defined by A.R.S. § 44-1521(5), which includes any "goods."

382.    A.R.S. § 44-1522(A) prohibits the "act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby."

383.    For the reasons discussed herein, Defendant violated and continues to violate the Arizona Consumer Fraud Act by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by A.R.S. § 44-1521, *et seq*. Beech-Nut's acts and practices, including its material omissions, described herein, were committed with the intent to, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

384.    At all times mentioned herein, Beech-Nut engaged in "sale" in Arizona as defined by A.R.S. § 44-1521 in that they advertised, offered for sale or attempted to sell merchandise.

385.    Beech-Nut repeatedly advertised on the labels for Beech-Nut Baby Foods, on its websites, and through national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe, healthy, and suitable for infant and child consumption. Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals.

386.    Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Arizona Plaintiff and Arizona Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less, because it contains or materially risks containing elevated levels of toxic heavy metals.

387.    Beech-Nut's deceptive trade practices caused injury in fact and actual damages to Arizona Plaintiff and Arizona Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Arizona Plaintiff and Arizona Subclass Members purchased, which allowed Defendant to profit at the expense of Arizona Plaintiff and Arizona Subclass Members. The injuries to Arizona Plaintiff and Arizona Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

388.    Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Arizona Plaintiff and Arizona Subclass Members, such that prospective injunctive relief is necessary.

389.     Arizona Plaintiff and Arizona Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair, fraudulent, and deceptive acts and practices, including, but not limited to, actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees and/or costs, as well as any other just and proper relief, as provided by the Arizona Consumer Fraud Act and applicable law.

### TENTH CLAIM FOR RELIEF

### ARKANSAS DECEPTIVE TRADE PRACTICES ACT

### Ark. Code Ann. § 4-88-101, *et seq.*

### (Brought on behalf of the Arkansas Plaintiff and the Arkansas Subclass)

Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

390.     Arkansas Plaintiff and Arkansas Subclass Members are or were residents of Arkansas and/or purchased Beech-Nut Baby Foods in Arkansas.

391.     Defendant is a "person" as defined by Ark. Code Ann. § 4-88-102(5).

392.     Arkansas Plaintiff and Arkansas Subclass Members are actual or potential consumers of Beech-Nut Baby Foods.

393.     At all times herein, Beech-Nut engaged in the sale or advertisement of Beech-Nut Baby Foods, which are "goods" as defined by Ark. Code Ann. § 4-88-102(4).

394.     Ark. Code Ann. § 4-88-107(a) provides that "[d]eceptive and unconscionable trade practices [are] unlawful." As detailed herein, Beech-Nut engaged in unfair, unconscionable, and deceptive trade practices in violation of the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-101, *et seq.,* including but not limited to the following:

> (a)     Knowingly falsely represented the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of Beech-Nut Baby Foods or

whether Beech-Nut Baby Goods are of a particular standard, quality, or grade, in violation of Ark. Code Ann. § 4-88-107(a)(1);

(b)     Advertised Beech-Nut Baby Foods with an intent not to sell it as advertised, in violation of Ark. Code Ann. § 4-88-107(a)(3);

(c)     Represented that Beech-Nut Baby Foods are healthy, nutritious, and safe for consumption by infants and young children when it knew or should have known Beech-Nut Baby Foods contain or materially risk containing elevated levels of heavy metals, in violation of in violation of Ark. Code Ann. §§ 4-88-107(a)(10) and 4-88-108(a)(1); and

(d)     Failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals when such failure to disclose such information was intended to induce Arkansas Plaintiff and Arkansas Subclass Members to enter into transactions to purchase Beech-Nut Baby Foods, in violation of Ark. Code Ann. § 4-88-108(a)(2).

395.    Beech-Nut's representations and omissions were material because they were intended to, likely to, and did in fact deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Arkansas Plaintiff and Arkansas Subclass Members suffered damages by purchasing Beech-Nut Baby Foods in reliance on Beech-Nut's representations and omissions because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less, because it contains or materially risks containing elevated levels of toxic heavy metals.

396.    Beech-Nut's deceptive trade practices caused injury in fact and actual damages to Arkansas Plaintiff and Arkansas Subclass Members in the form of financial loss or the loss or diminishment of value of Beech-Nut Baby Foods Arkansas Plaintiff and Arkansas Subclass Members purchased, which allowed Defendant to profit at the expense of Arkansas Plaintiff and Arkansas Subclass Members. The injuries to Arkansas Plaintiff and Arkansas Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

397.    Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Arkansas Plaintiff and Arkansas Subclass Members, such that prospective injunctive relief is necessary.

398.    Arkansas Plaintiff and Arkansas Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair, unconscionable, and deceptive acts and practices, including, but not limited to, actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees, and/or costs, as well as any other just and proper relief, pursuant to Ark. Code Ann. § 4-88-107(f)(1) and applicable law.

## ELEVENTH CLAIM FOR RELIEF

### CALIFORNIA CONSUMER LEGAL REMEDIES ACT

### Cal. Civ. Code § 1750, *et seq.*

### (Brought on behalf of California Plaintiff and the California Subclass)

399.    Plaintiffs incorporate the forgoing allegations as if fully set forth herein.

400.    California Plaintiff and California Subclass Members are or were residents of California and/or purchased Beech-Nut Baby Foods in California.

401.    Plaintiffs provided Defendant, notice of the specific complaint and damages in accordance with Cal. Civ. Code § 1761 of the California Consumer Legal Remedies Act ("CLRA") by, *inter alia*, sending a certified letter containing the basis of Plaintiffs' claims.

402.    Plaintiffs have also have also filed an affidavit in accordance with Cal. Civ. Code § 1780 concurrently with this Consolidated Amended Complaint.

403.    California Plaintiff and California Subclass Members are "consumer[s]" as that term is defined in Cal. Civ. Code § 1761(d).

404.    Beech-Nut Baby Foods are "goods" as that term is defined in Cal. Civ. Code § 1761(a).

405.    Defendant is a "person" as that term is defined in Cal. Civ. Code § 1761©.

406.    California Plaintiff's and California Subclass Members' purchase of Defendant's products constituted a "transaction" as that term is defined in Cal. Civ. Code § 1761(e).

407.    Defendant's fraudulent, unfair and deceptive acts, practices, and conduct with respect to consumer sales alleged herein violates the California's Consumer Legal Remedies Act (the "CLRA"), including but not limited to the following provisions:

(a)    Cal. Civ. Code § 1770(a)(5), by misrepresenting the source, sponsorship, approval, or certification of its Beech-Nut Baby Foods;

(b)    Cal. Civ. Code § 1770(a)(5), by negligently, recklessly, and/or intentionally representing that Beech-Nut Baby Foods are healthy, nutritious, made from the best ingredients, and safe for consumption when in fact they contain or materially risk containing elevated levels of toxic heavy metals, and by failing to make any mention of heavy metals in Beech-Nut Baby Foo©(c)    Cal. Civ. Code § 1770(a)(7), by negligently, recklessly, and/or intentionally representing that the

Beech-Nut Baby Foods were of a particular standard, quality, or grade, when they were of another;

(d)   Cal. Civ. Code § 1770(a)(9), by negligently, recklessly, and/or intentionally advertising Beech-Nut Baby Foods with intent not to sell them as advertised;©d

(e)   Cal. Civ. Code § 1770(a)(16), by representing that Beech-Nut Baby Foods have been supplied in accordance with previous representations when they have not.

408.   Defendant was obligated to disclose the presence of, and material risk of, heavy metals in Beech-Nut Baby Foods because:  (a) Beech-Nut had exclusive knowledge of the presence of heavy metals in Beech-Nut Baby Foods that were not known or reasonably accessible to California Plaintiff and the California Subclass Members; (b) Beech-Nut actively concealed the presence of heavy metals from California Plaintiff and California Subclass Members; and (c) Beech-Nut made partial statements on Beech-Nut Baby Foods labels and packaging that gave the misleading impression to reasonable consumers, including California Plaintiff and California Subclass Members, without further information on the presence of heavy metals that had not been disclosed.

409.   California Plaintiff and California Subclass Members relied on Defendant's representations when purchasing Defendant's toxic baby foods.

410.   California Plaintiff and California Subclass Members were deceived by Defendant's deceptive, fraudulent, and unconscionable acts and practices in that had they known the truth they would not have purchased Defendant's products.

411.   As a direct and proximate result of these violations, California Plaintiff and California Subclass Members have been harmed, and that harm will continue unless Defendant is

enjoined from using the misleading marketing described herein in any manner in connection with the advertising and sale of Beech-Nut Baby Foods.

412.     Beech-Nut's deceptive trade practices caused injury in fact and actual damages to California Plaintiff and California Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods California Plaintiff and California Subclass Members purchased, which allowed Defendant to profit at the expense of California Plaintiff and California Subclass Members.

413.     Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to California Plaintiff and California Subclass Members, such that prospective injunctive relief is necessary. California Plaintiff and California Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's fraudulent, unfair, and deceptive acts, practices, and conduct, including, but not limited to actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees, and/or costs, as well as any other just and proper relief, pursuant to Cal. Civ. Code § 1780(a) and applicable law.

## TWELFTH CLAIM FOR RELIEF

### CALIFORNIA FALSE ADVERTISING LAW

**Cal. Bus. & Prof. Code § 17500,** *et seq.*

**(Brought on behalf of California Plaintiff and the California Subclass)**

414.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

415.     California Plaintiff and California Subclass Members are or were residents of California and/or purchased Beech-Nut Baby Foods in California.

416. California's False Advertising Law prohibits any statement in connection with the advertisement or sale of goods "which is untrue or misleading." Cal. Bus. & Prof. Code §17500.

417. Beech-Nut's untrue and misleading statements significantly impacted the public because Defendant sells Beech-Nut Baby Foods nationwide, including in California, and there are millions of consumers of Beech-Nut Baby Foods, including California Plaintiff and California Subclass Members.

418. As set forth herein, Defendant's claims that Beech-Nut Baby Foods are healthy, nutritious, made from the best ingredients, and safe for consumption are literally false, due to their unsafe levels of toxic heavy metals, and likely to deceive the public.

419. Defendant's claims that Beech-Nut Baby Foods are healthy, nutritious, made from the best ingredients, and safe for consumption are untrue or misleading, as is failing to mention the presence of toxic heavy metals in Beech-Nut Baby Foods.

420. Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or had a material risk of containing elevated levels of toxic heavy metals.

421. Defendant knew, or reasonably should have known, that all these claims were untrue or misleading and likely to deceive the public.

422. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Plaintiffs and members of the Class suffered damages by purchasing Beech-Nut Baby Foods because they received a product that was worthless, and/or worth less, because it contains or has a material risk of containing elevated levels of toxic heavy metals, and they would not have purchased Beech-Nut Baby Foods had they known this fact.

423.     Beech-Nut's deceptive trade practices caused injury in fact and actual damages to California Plaintiff and California Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods California Plaintiff and California Subclass Members purchased, which allowed Defendant to profit at the expense of California Plaintiff and California Subclass Members.

424.     Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to California Plaintiff and California Subclass Members, such that prospective injunctive relief is necessary. California Plaintiffs and California Subclass Members are entitled to injunctive and equitable relief and restitution in the amount they spent on Beech-Nut Baby Foods, as well as any other just and proper relief, pursuant to Cal. Bus. & Prof. Code § 17535 and applicable law.

## THIRTEENTH CLAIM FOR RELIEF

### CALIFORNIA'S UNFAIR COMPETITION LAW

### Cal. Bus. & Prof. Code § 17200 *et seq.*

### (Brought on behalf of California Plaintiff and the California Subclass)

425.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

426.     California Plaintiff and California Subclass Members are or were residents of California and/or purchased Beech-Nut Baby Foods in California.

427.     The Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code §17200.

428.     Defendant is a person within the meaning of Cal. Bus. & Prof. Code § 17201.

429.     For the reasons discussed herein, Defendant violated and continues to violate the California's Unfair Competition Law by engaging in the herein described fraudulent, deceptive,

unfair acts or practices proscribed by Cal. Bus. & Prof. Code § 17200 *et seq*. Beech-Nut's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

430.    Defendant Beech-Nut fraudulently represented that Beech-Nut Baby Foods are healthy, nutritious, made from the best ingredients, and safe for consumption are literally false due to their elevated levels of toxic heavy metals and are likely to deceive the public, including reasonable consumers, as is Defendant failing to make any mention of heavy metals in the Beech-Nut Foods labeling.

431.    Defendant Beech-Nut repeatedly advertised on the labels for Beech-Nut Baby Foods, on its websites, and through national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe and healthy for infant and child consumption. Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals.

432.    Defendant Beech-Nut's fraudulent representations that Beech-Nut Baby Foods are safe, healthy, and suitable for infant and child consumption are literally false due to their elevated levels of toxic heavy metals and are likely to deceive the public, including reasonable consumers, as is Defendant failing to make any mention of heavy metals in the Beech-Nut Foods labeling.

433.    As alleged herein, Defendant Beech-Nut unlawfully advertised and sold Beech-Nut Baby Foods using false or misleading claims, such that Defendant's actions as alleged herein violate at least the following laws in addition to the Unfair Competition Law:

(a)    The CLRA, Cal. Bus. & Prof. Code § 1750 *et seq*.; and

(b)    The False Advertising Law, California Business & Professions Code § 17500, *et seq*.

434. Defendant's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Beech-Nut Baby Foods is unlawful, fraudulent, or unfair because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

435. Defendant's conduct with respect to the labeling, packaging, advertising, marketing, and sale of Beech-Nut Baby Foods is also unlawful, fraudulent, or unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including, but not limited to, the False Advertising Law and the CLRA.

436. Defendant's conduct with respect to the labeling, packaging, advertising, marketing, and sale of Beech-Nut Baby Foods is also unlawful, fraudulent, or unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves can reasonably avoid.

437. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, California Plaintiff and California Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less, because it contains or has a material risk of containing elevated levels of toxic heavy metals.

438. Beech-Nut's deceptive trade practices caused injury in fact and actual damages to California Plaintiff and California Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods California Plaintiff and California Subclass Members purchased, which allowed Defendant to profit at the expense of California Plaintiff and California Subclass Members.

439.    In accordance with Cal. Bus. & Prof. Code § 17203, California Plaintiff and California Subclass Members seek an order enjoining Defendant from continuing to conduct business through fraudulent or unlawful acts and practices. Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to California Plaintiff and California Subclass Members, such that prospective injunctive relief is necessary.

440.    On behalf of California Plaintiff and California Subclass Members, California Plaintiff also seeks an order for the restitution of all monies from the sale of Beech-Nut Baby Foods, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition, as well as any other just and proper relief, pursuant to Cal. Bus. & Prof. Code § 17203 and applicable law.

**FOURTEENTH CLAIM FOR RELIEF**

**COLORADO CONSUMER PROTECTION ACT**

**Colo. Rev. Stat. § 6-1-101, *et seq*.**

**(Brought on behalf of Colorado Plaintiff and the Colorado Subclass)**

441.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

442.    Colorado Plaintiff and Colorado Subclass Members are or were residents of Colorado and/or purchased Beech-Nut Baby Foods in Colorado.

443.    Defendant is a "person" as defined by C.R.S. § 6-1-102(6).

444.    Colorado Plaintiff and Colorado Subclass Members are actual or potential consumers of Beech-Nut Baby Foods.

445.    Beech-Nut engaged in deceptive, unfair, and unlawful trade acts or practices in the course of their business, vocation, or occupation, in violation of C.R.S. § 6-1-105, including but not limited to the following:

(a)    Knowingly or recklessly made a false representation as to the characteristics, ingredients, and uses of Beech-Nut Baby Foods, in violation of C.R.S. §6-1-105(1)(e);

(b)    Knowingly made a false representation as to the source, sponsorship, approval, or certification of its Beech-Nut Baby Goods, in violation of R.S. §6-1-105(1)(b);

(c)    Represented that Beech-Nut Baby Foods are healthy, nutritious, and safe for consumption by infants and young children when it knew or should have known Beech-Nut Baby Foods contain or materially risk containing elevated levels of heavy metals, in violation of C.R.S. § 6-1-105(1)(g);

(d)    Advertised Beech-Nut Baby Foods with an intent not to sell it as advertised, in violation of C.R.S. §6-1-105(1)(i); and

(e)    Failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals when such failure to disclose such information was intended to induce Plaintiffs and the Classes to enter into transactions to purchase Beech-Nut Baby Foods, in violation of C.R.S. §6-1-105(1)(u).

446.    As detailed herein, Beech-Nut's deceptive trade practices significantly impacted the public because Defendant sells Beech-Nut Baby Foods nationwide, including in Colorado, and there are millions of actual or potential consumers of Beech-Nut Baby Foods, including Colorado Plaintiff and Colorado Subclass Members.

447.    Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being

aware that Beech-Nut Baby Foods contained or had a material risk of containing elevated levels of toxic heavy metals.

448.   As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Colorado Plaintiff and Colorado Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less, because it contains or has a material risk of containing elevated levels of toxic heavy metals.

449.   Beech-Nut's deceptive trade practices caused injury in fact and actual damages to Colorado Plaintiff and Colorado Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Colorado Plaintiff and Colorado Subclass Members purchased, which allowed Defendant to profit at the expense of Colorado Plaintiff and Colorado Subclass Members. The injuries to Colorado Plaintiff and Colorado Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

450.   Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Colorado Plaintiff and Colorado Subclass Members, such that prospective injunctive relief is necessary. Colorado Plaintiff and Colorado Class Members seek relief for the injuries they have suffered as a result of Beech-Nut's deceptive, unfair, and unlawful trade acts and practices including, but not limited to, actual damages, statutory damages, restitution, penalties, injunctive relief, attorneys' fees, and/or costs, as well as any other just and proper relief, pursuant to C.R.S. § 6-1-101, *et. seq.* and applicable law.

**FIFTEENTH CLAIM FOR RELIEF**

**CONNECTICUT UNFAIR TRADE PRACTICES ACT**

**Conn. Gen. Stat. Ann. § 42-110a,** *et seq.*

**(Brought on behalf of Connecticut Plaintiff and the Connecticut Subclass)**

451.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

452.    Connecticut Plaintiff and Connecticut Subclass Members are or were residents of Connecticut and/or made purchases of Beech-Nut Baby Foods in Connecticut.

453.    Defendant is a "person" as defined by C.G.S.A. § 42-110a(3).

454.    Connecticut Plaintiff and Connecticut Subclass Members are actual or potential consumers of Beech-Nut Baby Foods.

455.    At all times mentioned herein, Beech-Nut engaged in "trade" or "commerce" in Connecticut as defined by C.G.S.A. § 42-110a(4), in that it engaged in the "advertising," "sale," and "distribution" of any "goods," "services," "property," "articles," "commodities," or "things of value" in Connecticut.

456.    The Connecticut Unfair Trade Practices Act ("CUTPA") provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." C.G.S.A. § 42-110b(a).

457.    For the reasons discussed herein, Defendant violated and continues to violate CUTPA by engaging in the herein described deceptive or unfair acts or practices proscribed by C.G.S.A. § 42-110a. *et seq*. Beech-Nut's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

458.    Beech-Nut repeatedly advertised on the labels for Beech-Nut Baby Foods, on its websites, and through national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe, healthy, and suitable for infant and child consumption. Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals.

459.    Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Connecticut Plaintiff and Connecticut Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less, because it contains or materially risks containing elevated levels of toxic heavy metals.

460.    Beech-Nut's deceptive trade practices caused injury in fact and actual damages to Connecticut Plaintiff and Connecticut Subclass Members in the form of the loss of money or diminishment of value of Beech-Nut Baby Foods Connecticut Plaintiff and Connecticut Subclass Members purchased, which allowed Defendant to profit at the expense of Connecticut Plaintiff and Connecticut Subclass Members. The injuries Connecticut Plaintiff and Connecticut Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

461.    Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Connecticut Plaintiff and Connecticut Subclass Members, such that prospective injunctive relief is necessary.

Connecticut Plaintiff and Connecticut Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, including, but not limited to, actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees and costs, as well as any other just and proper relief, pursuant to C.G.S.A. § 42-110g and applicable law.

## SIXTEENTH CLAIM FOR RELIEF

### DELAWARE CONSUMER FRAUD ACT

### Del. Code Ann. tit. 6, § 2511, *et seq.*

### (Brought on behalf of Delaware Plaintiff and Delaware Subclass)

462.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

463.    Delaware Plaintiff and Delaware Subclass Members are or were residents of Delaware and/or made purchases of Beech-Nut Baby Foods in Delaware.

464.    Defendant is a "person" as defined by 6 Del.C. § 2511(7).

465.    Beech-Nut Baby Foods are "merchandise" as defined by 6 Del.C. § 2511(6).

466.    6 Del.C. § 2513(a) prohibits "[t]he act, use, or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale, lease, receipt, or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby."

467.    For the reasons discussed herein, Defendant violated and continues to violate the Delaware Consumer Fraud Act by engaging in the herein described deceptive, fraudulent, false and unfair acts or practices, and other prohibited omissions, proscribed by 6 Del.C. § 2511, *et seq.*

Beech-Nut's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

468.    At all times mentioned herein, Beech-Nut engaged "advertisement" and "sale" in Delaware as defined 6 Del.C. §§ 2511(1) & (8).

469.    Beech-Nut repeatedly advertised on the labels for Beech-Nut Baby Foods, on its websites, and through national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe, healthy, and suitable for infant and child consumption. Beech-Nut knowingly or negligently failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals.

470.    Beech-Nut's knowingly or negligent representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals. Delaware Plaintiff and Delaware Subclass Members are victims of Defendant's unlawful actions who could not have reasonably avoided this harm because they did know of the presence of toxic heavy metals in Beech-Nut Baby Foods and because Beech-Nut concealed this fact.

471.    As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Delaware Plaintiff and Delaware Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less, because it contains or materially risks containing elevated levels of toxic heavy metals.

472. Beech-Nut's deceptive trade practices caused injury in fact and actual damages to Delaware Plaintiff and Delaware Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Delaware Plaintiff and Delaware Subclass Members purchased, which allowed Defendant to profit at the expense of Delaware Plaintiff and Delaware Subclass Members. The injuries to Delaware Plaintiff and Delaware Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

473. Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Delaware Plaintiff and Delaware Subclass Members, such that prospective injunctive relief is necessary. Delaware Plaintiff and Delaware Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair, fraudulent, and deceptive acts and practices, including, but not limited to, actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees and costs, as well as any other just and proper relief, pursuant to the Delaware Consumer Fraud Act and applicable law.

## SEVENTEENTH CLAIM FOR RELIEF

### DISTRICT OF COLUMBIA ("DC") CONSUMER PROTECTION PROCEDURES ACT

### D.C. Code Ann. § 28-3901, *et seq.*

### (Brought on behalf of District of Columbia Plaintiff and the District of Columbia Subclass)

474. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

475. DC Plaintiff and the DC Subclass are or were residents of Washington, DC ("DC") and/or purchased Beech-Nut Baby Foods in DC.

476. Defendant is a "person" as defined by D.C. Code Ann. § 28-3901(a)(1) and a "merchant" as defined by D.C. Code Ann. § 28-3901(a)(2).

477. DC Plaintiff and DC Subclass Members are actual or potential consumers as defined by D.C. Code Ann. § 28-3901(a)(3) of Beech-Nut Baby Foods.

478. Beech-Nut engaged in deceptive, unfair, and unlawful trade acts or practices in the course of their business, vocation, or occupation, in violation of D.C. Code Ann.  § 28-3904, including but not limited to the following:

(a) Falsely represented the sponsorship, approval, certification, characteristics, ingredients, uses, and benefits of Beech-Nut Baby Foods, in violation of D.C. Code Ann. § 28-3904(a);

(b) Represented that Beech-Nut Baby Foods were of a particular standard, quality, or grade, when they were of another, in violation of D.C. Code Ann. § 28-3904(d);

(c) Represented that Beech-Nut Baby Foods are healthy, nutritious, and safe for consumption by infants and young children when it knew or should have known Beech-Nut Baby Foods contain or materially risk containing elevated levels of heavy metals, in violation of D.C. Code Ann. § 28-3904(e);

(d) Advertised Beech-Nut Baby Foods with an intent not to sell them as advertised, in violation of D.C. Code Ann. § 28-3904(h); and

(e) Failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals when such failure to disclose such information was intended to induce DC Plaintiff and DC Subclass Members to enter into transactions to purchase Beech-Nut Baby Foods, in violation of D.C. Code Ann. § 28-3904(f).

479.   As detailed herein, Beech-Nut's deceptive trade practices significantly impacted the public because Defendant sells Beech-Nut Baby Foods nationwide, including in DC and there are millions of consumers of Beech-Nut Baby Foods, including DC Plaintiff and DC Subclass Members.

480.   Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or had a material risk of containing elevated levels of toxic heavy metals.

481.   As a direct and proximate result of Defendant's unfair and deceptive trade acts or practices, DC Plaintiff and DC Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less, because it contains or has a material risk of containing elevated levels of toxic heavy metals.

482.   Beech-Nut's deceptive trade practices caused injury in fact and actual damages to DC Plaintiff and DC Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods DC Plaintiff and DC Subclass Members purchased, which allowed Defendant to profit at the expense of DC Plaintiff and DC Subclass Members. The injuries to DC Plaintiff and DC Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

483.   Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to DC Plaintiff and DC Subclass Members, such that prospective injunctive relief is necessary.

484.    DC Plaintiff and DC Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair, unlawful, and deceptive acts and practices including, but not limited to, actual damages, statutory damages, restitution, penalties, injunctive and declaratory relief,  attorneys' fees, and/or costs, as well as any other just and proper relief, pursuant to D.C. Code Ann. § 28-3901(a)(1), *et seq.* and applicable law.

### EIGHTEENTH CLAIM FOR RELIEF

**FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**

**Fla. Stat. § 501.201, *et seq.***

**(Brought on behalf of Florida Plaintiff and Florida Subclass)**

485.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

486.    Florida Plaintiff and Florida Subclass Members are or were residents of Florida and/or made purchases of Beech-Nut Baby Foods in Florida.

487.    Florida Plaintiff and Florida Subclass Members are "consumers," as defined by Fla. Stat. § 501.203(7), and the products sold by Beech-Nut are "goods" within the meaning of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

488.    FDUTPA, Fla. Stat. § 501.204, provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

489.    For the reasons discussed herein, Defendant violated and continues to violate FDUTPA by engaging in the herein described unconscionable, deceptive, and unfair acts or practices proscribed by Fla. Stat. § 501.201, *et seq*. Beech-Nut's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

490.     At all times mentioned herein, Beech-Nut engaged in trade or commerce in Florida, as defined by Fla. Stat. § 501.203(8), in that they advertised, offered for sale, sold or distributed goods or services in Florida and/or engaged in trade or commerce directly or indirectly affecting the people of Florida.

491.     Beech-Nut repeatedly advertised on the labels for Beech-Nut Baby Foods, on its websites, and through national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe, healthy, and suitable for infant and child consumption. Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals.

492.     Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Florida Plaintiff and Florida Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less, because it contains or materially risks containing elevated levels of toxic heavy metals.

493.     Beech-Nut's deceptive trade practices caused injury in fact and actual damages to Florida Plaintiff and Florida Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Florida Plaintiff and Florida Subclass Members purchased, which allowed Defendant to profit at the expense of Florida Plaintiff and Florida Subclass Members. The injuries to Florida Plaintiff and Florida Subclass Members were to legally protected interests. The

gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

494.   Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Florida Plaintiff and Florida Subclass Members, such that prospective injunctive relief is necessary.

495.   Florida Plaintiff and Florida Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, including, but not limited to, actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees and/or costs, as well as any other just and proper relief, as provided by Fla. Stat. § 501.211 and applicable law.

### NINETEENTH CLAIM FOR RELIEF

### GEORGIA FAIR BUSINESS PRACTICES ACT

### O.C.G.A. § 10-1-390 *et seq*.

**(Brought on behalf of Georgia Plaintiff and the Georgia Subclass)**

496.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

497.   Georgia Plaintiff and Georgia Subclass Members are or were residents of Georgia and/or made purchases of Beech-Nut Baby Foods in Georgia.

498.   Upon information and belief, Defendant does not maintain a place of business in Georgia, nor does Defendant maintain property or assets in Georgia. Georgia Plaintiff and Georgia Subclass Members thus are not required to provide Defendant with pre-suit written demand for relief pursuant to O.C.G.A. § 10-1-399(b) of the Georgia Fair Business Practices Act ("GFBPA"). Notwithstanding, to the extent that such statutory notice is deemed required by the Court, Georgia

Plaintiffs have provided notice in accordance with O.C.G.A. § 10-1-399(b) to Defendant by, *inter alia*, sending a certified letter containing the basis of Plaintiffs' claims.

499.    Georgia Plaintiff and Georgia Subclass Members are "consumers" within the meaning of O.C.G.A. § 10-1-392(6).

500.    Georgia Plaintiff's and Georgia Subclass Members' purchases of Beech-Nut Baby Foods are "consumer transactions" within the meaning of O.C.G.A. § 10-1-392(10).

501.    At all times mentioned herein, Beech-Nut engaged in trade or commerce in Georgia, as defined by O.C.G.A. § 10-1-392(28), in that it advertised, distributed, offered for sale, sold or distributed goods or services in Georgia and/or engaged in trade or commerce directly or indirectly affecting the people of Georgia.

502.    O.C.G.A. § 10-1-393(a) provides that "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are declared unlawful."

503.    Beech-Nut engaged in unlawful, unfair, and deceptive acts or practices in the conduct of consumer transactions in trade or commerce, in violation of O.C.G.A. §§ 10-1-390 *et seq.,* including but not limited to the following:

> (a)    Caused actual confusion or actual misunderstanding as to the source, sponsorship, approval, or certification of its Beech-Nut Baby Goods, in violation of O.C.G.A. § 10-1-393(b)(2);

> (b)    Made a false representation as to the sponsorship, characteristics, ingredients, uses, or benefits of Beech-Nut Baby Foods, in violation of O.C.G.A. § 10-1-393(b)(5);

> (c)    Represented that Beech-Nut Baby Foods are healthy, nutritious, and safe for consumption by infants and young children when it knew or should have known

Beech-Nut Baby Foods contain or materially risk containing elevated levels of heavy metals, in violation of O.C.G.A. § 10-1-393(b)(7); and

(d)   Advertised Beech-Nut Baby Foods with an intent not to sell it as advertised, in violation of O.C.G.A. § 10-1-393(b)(9).

504.   Beech-Nut repeatedly advertised on the labels for Beech-Nut Baby Foods, on its websites, and through national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe, healthy, and suitable for infant and child consumption. Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals.

505.   Beech-Nut's representations and omissions were material because they were likely to cause reasonable consumers to rely on them and to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Plaintiff and Georgia Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less, because it contains or materially risks containing elevated levels of toxic heavy metals.

506.   Beech-Nut's deceptive trade practices caused injury in fact and actual damages to Georgia Plaintiffs and Georgia Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Georgia Plaintiff and Georgia Subclass Members purchased, which allowed Defendant to profit at the expense of Georgia Plaintiff and Georgia Subclass Members. The injuries to Georgia Plaintiff and Georgia Subclass Members were to legally protected interests.

The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

507.    Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Georgia Plaintiff and Georgia Subclass Members, such that prospective injunctive relief is necessary.

508.    Georgia Plaintiff and Georgia Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, including but not limited to, actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees and/or costs, as well as any other just and proper relief, as provided by O.C.G.A § 10-1-399 and applicable law.

## TWENTIETH CLAIM FOR RELIEF

### HAWAII UNFAIR AND DECEPTIVE ACTS AND PRACTICES ACT

### Haw. Rev. Stat. Ann. § 480-1, *et seq.*

### (Brought on behalf of Hawaii Plaintiff and Hawaii Subclass)

509.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

510.    Hawaii Plaintiff and Hawaii Subclass Members are or were residents of Hawaii and/or made purchases of Beech-Nut Baby Foods in Hawaii.

511.    Hawaii Plaintiff and Hawaii Subclass Members are "consumers" within the meaning of HRS § 480-1.

512.    At all times mentioned herein, Beech-Nut engaged in trade or commerce in Hawaii, in that it advertised, distributed, offered for sale, sold, or distributed goods or services in Hawaii and/or engaged in trade or commerce directly or indirectly affecting the people of Hawaii.

513.    HRS § 480-2(a) provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."

514.    For the reasons discussed herein, Defendant violated and continues to violate the HRS § 480-1, *et seq.* by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by HRS § 480-1, *et seq.* Beech-Nut's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment

515.    Beech-Nut repeatedly advertised, both on the labels for Beech-Nut Baby Foods, on its websites, and through national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe, healthy, and suitable for infant and child consumption. Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals.

516.    Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Hawaii Plaintiff and Hawaii Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less, because it contains or materially risks containing elevated levels of toxic heavy metals.

517.    Beech-Nut's deceptive trade practices caused injury in fact and actual damages to Hawaii Plaintiff and Hawaii Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Hawaii Plaintiff and Hawaii Subclass Members purchased, which

allowed Defendant to profit at the expense of Hawaii Plaintiff and Hawaii Subclass Members. The injuries to Hawaii Plaintiff and Hawaii Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

518. Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Hawaii Plaintiff and Hawaii Subclass Members, such that prospective injunctive relief is necessary.

519. Hawaii Plaintiff and Hawaii Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, including but not limited to actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees and/or costs, as well as any other just and proper relief, as provided by HRS § 480-13 and applicable law.

## TWENTY FIRST CLAIM FOR RELIEF

### IDAHO CONSUMER PROTECTION ACT

### Idaho Code Ann. § 48-601

520. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

521. Idaho Plaintiff and the Idaho Subclass are or were residents of Idaho and/or purchased Beech-Nut Baby Foods in Idaho.

522. Defendant is a "person" as defined by I.C. § 48-602(1).

523. Idaho Plaintiff and Idaho Subclass Members are actual or potential consumers of Beech-Nut Baby Foods.

524. Beech-Nut Baby Foods are "goods" as defined by I.C. § 48-602(6).

525. Beech-Nut engaged in deceptive, unfair, and unlawful trade acts or practices in the

(a)     Caused likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of Beech-Nut Baby Foods, in violation of I.C. § 48-603(2);

(b)     Falsely represented the characteristics, ingredients, uses, and benefits of Beech-Nut Baby Foods, in violation of I.C. § 48-603(5);

(c)     Represented that the Beech-Nut Baby Foods were of a particular standard, quality, or grade, when it knew or should have known that they were of another in violation of I.C. § 48-603(7);

(d)     Represented that Beech-Nut Baby Foods are healthy, nutritious, and safe for consumption by infants and young children when it knew or should have known Beech-Nut Baby Foods contain or materially risk containing elevated levels of heavy metals, in violation of I.C. § 48-603(17);

(e)     Advertised Beech-Nut Baby Foods with an intent not to sell them as advertised, in violation of I.C. § 48-603(9); and

(f)     Failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals when such failure to disclose such information was intended to induce Idaho Plaintiff and the Idaho Subclass to enter into transactions to purchase Beech-Nut Baby Foods, in violation of I.C. § 48-603(17).

526.    As detailed herein, Beech-Nut's unfair and deceptive trade practices significantly impacted the public because Defendant sells Beech-Nut Baby Foods nationwide, including in Idaho, and there are millions of consumers of Beech-Nut Baby Foods, including Idaho Plaintiff and Idaho Subclass Members.

527.   Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or had a material risk of containing elevated levels of toxic heavy metals.

528.   As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Plaintiffs and members of the Class suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less, because it contains or has a material risk of containing elevated levels of toxic heavy metals.

529.   Beech-Nut's deceptive trade practices caused injury in fact and actual damages to Idaho Plaintiff and Idaho Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Idaho Plaintiff and Idaho Subclass Members purchased, which allowed Defendant to profit at the expense of Idaho Plaintiff and Idaho Subclass Members. The injuries to Idaho Plaintiff and Idaho Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

530.   Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Idaho Plaintiff and Idaho Subclass Members, such that prospective injunctive relief is necessary.

531.   Idaho Plaintiff and Idaho Class Members seek relief for the injuries they have suffered as a result of Beech-Nut's unlawful, unfair, unconscionable, and deceptive acts and practices, including, but not limited to, actual damages, statutory damages, restitution, penalties,

injunctive and declaratory relief, attorneys' fees and/or costs, as well as any other just and proper

relief, pursuant to I.C. § 48-601, *et seq*. and applicable law.

## TWENTY SECOND CLAIM FOR RELIEF

**ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**

**ILCS Ch. 815, ACT 505, *et seq*.**

**(Brought on behalf of Illinois Plaintiff and the Illinois Subclass)**

532.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

533.    Illinois Plaintiff and Illinois Subclass Members are or were residents of Illinois

and/or purchased Beech-Nut Baby Foods in Illinois.

534.    Defendant is a "person" as defined by 815 ILCS 505/1.

535.    Illinois Plaintiff and Illinois Subclass Members are actual or potential consumers

as defined by 815 ILCS 505/1(e) of Beech-Nut Baby Foods.

536.    At all times mentioned herein, Beech-Nut engaged in "trade" or "commerce" in

Illinois as defined by 815 ILCS 505/1(f), in that they engaged in the "advertising," "offering for

sale," "sale," and "distribution" of any "property," "article," "commodity" or "thing of value" in

Illinois.

537.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA")

provides that "…[u]nfair or deceptive acts or practices, including but not limited to the use or

employment of any deception, fraud, false pretense, false promise, misrepresentation or the

concealment, suppression or omission of any material fact, with intent that others rely upon the

concealment, suppression or omission of such material fact, or the use or employment of any

practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act'… in the conduct

of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

538.    For the reasons discussed herein, Defendant violated and continues to violate ICFA by engaging in the herein described deceptive or unfair acts or practices proscribed by 815 ILCS 505/1, *et seq.*  Beech-Nut's acts and practices, including its material omissions, described herein, were intended to, likely to, and did in fact, deceive and mislead members of the public, including consumers acting and relying reasonably under the circumstances, to their detriment.

539.    Beech-Nut repeatedly advertised on the labels for Beech-Nut Baby Foods, on its websites, and through national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe, healthy, and suitable for infant and child consumption. Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals.

540.    Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Illinois Plaintiff and Illinois Subclass Members suffered damages by purchasing Beech-Nut Baby Foods in reliance on Beech-Nut's statements because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less, because it contains or materially risks containing elevated levels of toxic heavy metals.

541.    Beech-Nut's deceptive trade practices caused injury in fact and actual damages to Illinois Plaintiff and Illinois Subclass Members in the form of the loss or diminishment of value

of Beech-Nut Baby Foods Illinois Plaintiff and Illinois Subclass Members purchased, which allowed Defendant to profit at the expense of Illinois Plaintiff and Illinois Subclass Members. The injuries to Illinois Plaintiff and Illinois Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

542.    Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Illinois Plaintiff and Illinois Subclass Members, such that prospective injunctive relief is necessary.

543.    Illinois Plaintiff and Illinois Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, including, but not limited to, actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees and/or costs, as well as any other just and proper relief, as provided by 815 ILCS 505/10a and applicable law.

<u>**TWENTY THIRD CLAIM FOR RELIEF**</u>

**INDIANA'S DECEPTIVE CONSUMER SALES ACT**

**Ind. Code Ann. § 24-5-0.5-0.1** *et seq***.**

**(Brought on behalf of Indiana Plaintiff and the Indiana Subclass)**

544.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

545.    Indiana Plaintiff and Indiana Subclass Members are or were residents of Indiana and/or purchased Beech-Nut Baby Foods in Indiana.

546.    In accordance with IC 24-5-0.5-5 of the Indiana's Deceptive Consumer Sales Act ("IDCSA"), IC 24-5-0.5-3(a), Plaintiffs have provided Defendant written notice of the specific

complaint and damages by, *inter alia*, sending a certified letter containing the basis of Plaintiffs' claims on April 13, 2021.

547.    At all times mentioned herein, Defendant was a "person" as defined under IC 24-5-0.5-2(2) as well as a "supplier" as defined under IC 24-5-0.5-2 (3) in that they were a "seller" "or other person who engages in or solicits consumer transactions."

548.    The IDCSA, IC 24-5-0.5-2 (3), provides that "[a] supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction."

549.    Beech-Nut engaged in deceptive, unfair, and unlawful trade acts or practices, in the course of consumer transactions, in violation of IC 24-5-0.5-2 (3), including but not limited to the following:

(a)    Made a false representation that they knew or should have known was false as to the characteristics, ingredients, uses, and benefits of Beech-Nut Baby Foods, in violation of IC 24-5-0.5-2 (3)(b)(1);

(b)    Represented that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, while they knew or reasonable should have known they were of another, in violation of IC 24-5-0.5-2 (3)(b)(2);

(c)    Represented that Beech-Nut Baby Foods are healthy, nutritious, and safe for consumption by infants and young children when it knew or should have known Beech-Nut Baby Foods contain or materially risk containing elevated levels of heavy metals; and

(d)    Failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals when such failure to disclose such information was intended to induce Plaintiffs and the Classes to enter into transactions to purchase Beech-Nut Baby Foods.

550.     As detailed herein, Beech-Nut's deceptive trade practices significantly impacted the public because Defendant sells Beech-Nut Baby Foods nationwide, including in Indiana, and there are millions of actual or potential consumers of Beech-Nut Baby Foods, including Indiana Plaintiff and Indiana Subclass Members.

551.     Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or had a material risk of containing elevated levels of toxic heavy metals.

552.     As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Indiana Plaintiff and Indiana Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less,  because it contains or has a material risk of containing elevated levels of toxic heavy metals.

553.     Beech-Nut's deceptive trade practices caused injury in fact and actual damages to Indiana Plaintiff and Indiana Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Plaintiff and Indiana Subclass Members purchased, which allowed Defendant to profit at the expense of Plaintiff and Indiana Subclass Members. The injuries to Indiana Plaintiff and Indiana Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

554.      Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Indiana Plaintiff and Indiana Subclass Members, such that prospective injunctive relief is necessary.

555.    Indiana Plaintiff and Indiana Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair, unlawful, and deceptive acts and practices, under., including, but not limited to, compensatory damages, statutory damages, restitution, penalties, injunctive relief, and/or attorneys' fees and costs, as well as any other just and proper relief, pursuant to IC 24-5-0.5-1, *et seq.* and applicable law.

### TWENTY FOURTH CLAIM FOR RELIEF

### IOWA CONSUMER RIGHTS ACT

### Iowa Code Ann. § 714.14H, *et seq.*

### (Brought on behalf of Iowa Plaintiff and the Iowa Subclass)

556.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

557.    Iowa Plaintiff and Iowa Subclass Members are or were residents of Iowa and/or purchased Beech-Nut Baby Foods in Iowa.

558.    Defendant is a "person" as defined by I.C.A. § 714H.2(7).

559.    Iowa Plaintiff and Iowa Subclass Members are actual or potential consumers of Beech-Nut Baby Foods.

560.    At all times mentioned herein, Beech-Nut engaged in the "sale" or "advertisement" of "merchandise" in trade or commerce as each term is defined by I.C.A. § 714H.2.I.C.A. § 714.14H.3(1), the Private Right of Action for Consumer Fraud Act, provides that "[a] person shall not engage in a practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation,  concealment, suppression, or omission of a material fact, with intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement sale, or lease of consumer merchandise"

561.    For the reasons discussed herein, Defendant violated and continues to violate the Iowa Consumer Rights Act by engaging in the herein described deceptive or unfair acts or practices proscribed by I.C.A. § 714.14H *et seq*.  Beech-Nut's acts and practices, including its material omissions, described herein, were intended to, likely to, and did in fact deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

562.    Beech-Nut repeatedly advertised, both on the labels for Beech-Nut Baby Foods, on its websites, and through national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe, healthy, and suitable for infant and child consumption. Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals.

563.    Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Iowa Plaintiff and Iowa Subclass Members suffered damages in the form of ascertainable loss of money or property by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less,  because it contains or materially risks containing elevated levels of toxic heavy metals.

564.    Beech-Nut's deceptive trade practices caused injury in fact and actual damages to Iowa Plaintiff and Iowa Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Iowa Plaintiff and Iowa Subclass Members purchased, which allowed

Defendant to profit at the expense of Iowa Plaintiff and Iowa Subclass Members. The injuries to Iowa Plaintiff and Iowa Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

565.    Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Iowa Plaintiff and Iowa Subclass Members, such that prospective injunctive relief is necessary.

566.    Iowa Plaintiff and Iowa Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, including, but not limited to, actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees and/or costs, as well as any other just and proper relief, as provided by I.C.A. § 714.H5 *et seq.* and applicable law.

## TWENTY FIFTH CLAIM FOR RELIEF

### KANSAS CONSUMER PROTECTION ACT

### Kan. Stat. Ann. § 50-623, *et seq.*

### (Brought on behalf of Kansas Plaintiff and Kansas Subclass)

567.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

568.    Kansas Plaintiff and Kansas Subclass are or were residents of Kansas and/or purchased Beech-Nut Baby Foods in Kansas.

569.    Defendant is a "person" as defined by K.S.A. 50-624(i).

570.    Defendant is also a "supplier" as defined by K.S.A. 50-624(l) in that they are "a manufacturer, distributor, dealer, seller, lessor, assignor, or other person who, in the ordinary course of business, solicits, engages in or enforces consumer transactions, whether or not dealing directly with the consumer."

571.    Kansas Plaintiff and Kansas Subclass Members are actual or potential "consumers," as defined by K.S.A. 50-624(b) of Beech-Nut Baby Foods.

572.    Beech-Nut, willingly and knowingly or with reason to know, engaged in unfair, unconscionable, and deceptive acts or practices in the conduct of trade or commerce in connection with a consumer transaction, in violation of K.S.A. 50-623 *et seq*., including but not limited to the following:

(a)    Made a false representation as to the sponsorship, approval, characteristics, ingredients, uses, or benefits of Beech-Nut Baby Foods, in violation of K.S.A. 50-626(b)(1)(A);

(b)    Made a materially false representation as to the standard, quality, or grade of Beech-Nut Baby Foods, in violation of K.S.A. 50-626(b)(1)(D);

(c)    Represented that Beech-Nut Baby Foods are healthy, nutritious, and safe for consumption by infants and young children when it knew or should have known Beech-Nut Baby Foods contain or materially risk containing elevated levels of heavy metals and that consumers would rely to their detriment, in violation of K.S.A. 50-626(b)(2) and K.S.A. 50-627(b)(6); and

(d)    Failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals when such failure to disclose such information was intended to induce Plaintiffs and the Classes to enter into transactions to purchase Beech-Nut Baby Foods, in violation of K.S.A. 50-626(b)(3).

573.    As detailed herein, Beech-Nut's deceptive trade practices significantly impacted the public because Defendant sells Beech-Nut Baby Foods nationwide, including in Kansas, and

there are millions of consumers of Beech-Nut Baby Foods, including Kansas Plaintiff and Kansas Subclass Members.

574.    Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or had a material risk of containing elevated levels of toxic heavy metals.

575.    As a direct and proximate result of Defendant's unfair, unconscionable, and deceptive acts or practices, Kansas Plaintiff and Kansas Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less, because it contains or has a material risk of containing elevated levels of toxic heavy metals.

576.    Beech-Nut's deceptive trade practices caused injury in fact and actual damages to Kansas Plaintiff and Kansas Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Kansas Plaintiff and Kansas Subclass Members purchased, which allowed Defendant to profit at the expense of Kansas Plaintiff and Kansas Subclass Members. The injuries to Kansas Plaintiff and Kansas Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

577.    Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Kansas Plaintiff and Kansas Subclass Members, such that prospective injunctive relief is necessary.

578.    Kansas Plaintiff and Kansas Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair, unconscionable, and deceptive acts and practices,

including, but not limited to, compensatory damages, statutory damages, restitution, penalties, injunctive relief, and/or attorneys' fees and costs, as well as other just and proper relief, pursuant to K.S.A. 50-634 and applicable law.

## TWENTY SIXTH CLAIM FOR RELIEF

### KENTUCKY CONSUMER PROTECTION ACT

### Ky. Rev. Stat. Ann. § 367.110, *et seq.*

### (Brought on behalf of Kentucky Plaintiff and the Kentucky Subclass)

579. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

580. Kentucky Plaintiff and Kentucky Subclass Members are or were residents of Kentucky and/or made purchases of Beech-Nut Baby Foods in Kentucky.

581. Defendant is a "person" as defined by KRS § 367.110(1).

582. Kentucky Plaintiff and Kentucky Subclass Members are actual or potential consumers of Beech-Nut Baby Foods who purchased such "goods" for "personal, family or household purposes" as defined by KRS § 367.220(1).

583. At all times mentioned herein, Beech-Nut engaged in "trade" or "commerce" in Kentucky as defined by § 367.110(2), in that they engaged in the "advertising," "offering for sale," "sale," and "distribution" of any "property," "article," "commodity," or "thing of value" in Kentucky.

584. The Kentucky Consumer Protection Act ("KCPA") provides that "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." KRS § 367.170.

585. For the reasons discussed herein, Defendant violated and continues to violate the KCPA by engaging in the herein described deceptive or unfair acts or practices proscribed by KRS

166

§ 367.110, *et seq*.  Beech-Nut's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

586.    Beech-Nut repeatedly advertised on the labels for Beech-Nut Baby Foods, on its websites, and through national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe, healthy, and suitable for infant and child consumption. Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals.

587.    Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Kentucky Plaintiff and Kentucky Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less,  because it contains or materially risks containing elevated levels of toxic heavy metals.

588.    Beech-Nut's deceptive trade practices caused injury in fact and actual damages to Kentucky Plaintiff and Kentucky Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Kentucky Plaintiff and Kentucky Subclass Members purchased, which allowed Defendant to profit at the expense of Kentucky Plaintiff and Kentucky Subclass Members. The injuries to Kentucky Plaintiff and Kentucky Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

589.    Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Kentucky Plaintiff and Kentucky Subclass Members, such that prospective injunctive relief is necessary.

590.    Kentucky Plaintiff and Kentucky Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, including, but not limited to, actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees and/or costs, as well as any other just and proper relief, as provided by KRS § 367.220 and applicable law.

## <u>TWENTY SEVENTH CLAIM FOR RELIEF</u>

## LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

## La. Stat. Ann. § 51:1401, *et seq*.

### (Brought on behalf of Louisiana Plaintiff and the Louisiana Subclass)

591.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

592.    Louisiana Plaintiff and Louisiana Subclass Members are or were residents of Louisiana and/or made purchases of Beech-Nut Baby Foods in Louisiana.

593.    Defendant is a "person" as defined by LSA-R.S. 51:1402(8).

594.    Louisiana Plaintiff and Louisiana Subclass Members are actual or potential consumers as defined by LSA-R.S. 51:1402(1) of Beech-Nut Baby Foods.

595.    At all times mentioned herein, Beech-Nut engaged in "trade" or "commerce" in Louisiana as defined by LSA-R.S. 51:1402(10), in that it engaged in the "advertising," "offering for sale," "sale," and "distribution" of any "property," "article" "commodity," or "things of value" affecting Louisiana.

596.    The Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1405(A), provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

597.    For the reasons discussed herein, Defendant violated and continues to violate LSA-R.S. 51:1401, *et seq.* by engaging in the herein described deceptive or unfair acts or practices in trade or commerce proscribed by LSA-R.S. 51:1401, *et seq.* Beech-Nut's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

598.    Beech-Nut repeatedly advertised, both on the labels for Beech-Nut Baby Foods, on its websites, and through national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe, healthy, and suitable for infant and child consumption. Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals.

599.    Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Louisiana Plaintiff and Louisiana Subclass Members suffered damages in the form of an ascertainable loss by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less,  because it contains or materially risks containing elevated levels of toxic heavy metals.

600.    Beech-Nut's deceptive trade practices caused injury in fact and actual damages to Louisiana Plaintiff and Louisiana Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Louisiana Plaintiff and Louisiana Subclass Members purchased, which allowed Defendant to profit at the expense of Louisiana Plaintiff and Louisiana Subclass Members. The injuries to Louisiana Plaintiff and Louisiana Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

601.    Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Louisiana Plaintiff and Louisiana Subclass Members, such that prospective injunctive relief is necessary.

602.    Louisiana Plaintiff and Louisiana Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, including, but not limited to, actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees and/or costs, as well as any other just and proper relief, as provided by LSA-R.S. 51:1409 and applicable law.

## **TWENTY EIGHTH CLAIM FOR RELIEF**

### **MAINE UNFAIR TRADE PRACTICES ACT**

### **Me. Rev. Stat. tit. 5, § 205-A**

### **(Brought on behalf of Maine Plaintiff and the Maine Subclass)**

603.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

604.    Maine Plaintiff and Maine Subclass Members are or were residents of Maine and/or made purchases of Beech-Nut Baby Foods in Maine.

605.    Plaintiffs provided Defendant a pre-suit settlement offer pursuant to Me. Rev. Stat. Ann. tit. 5, §213(1-A) of the Maine Unfair Trade Practices Act ("MUTPA") by, inter alia, sending a certified letter containing a written demand for relief and the basis of Plaintiffs' claims.

606.    Defendant is a "person" as defined by 5 M.R.S.A. § 206(2).

607.    Maine Plaintiff and Maine Subclass Members are actual or potential consumers of Beech-Nut Baby Foods.

608.    At all times mentioned herein, Beech-Nut engaged in "trade" and "commerce," as defined by 5 M.R.S.A. § 206(3), in that it engaged in the "advertising," "offering for sale," "sale," and "distribution" of any "property," "article" "commodity," or "things of value" affecting Maine.

609.    5 M.R.S.A. § 207 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful."

610.    For the reasons discussed herein, Defendant violated and continues to violate the Maine Unfair Trades Practices Act by engaging in the herein described deceptive or unfair acts or practices proscribed by 5 M.R.S.A. § 205-A, *et seq*. Beech-Nut's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

611.    Beech-Nut repeatedly advertised, both on the labels for Beech-Nut Baby Foods, on its websites, and through national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe, healthy, and suitable for infant and child consumption. Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals.

612.    Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being

aware that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals.

613.   As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Maine Plaintiff and Maine Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less,  because it contains or materially risks containing elevated levels of toxic heavy metals.

614.   Beech-Nut's deceptive trade practices caused injury in fact and actual damages to Maine Plaintiff and Maine Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Maine Plaintiff and Maine Subclass Members purchased, which allowed Defendant to profit at the expense of Maine Plaintiff and Maine Subclass Members. The injuries to Maine Plaintiff and Maine Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

615.   Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Maine Plaintiff and Maine Subclass Members, such that prospective injunctive relief is necessary.

616.   Maine Plaintiff and Maine Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, including, but not limited to, actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees and/or costs, as well as any other just and proper relief, as provided by 5 M.R.S.A. § 213 and applicable law.

## TWENTY NINTH CLAIM FOR RELIEF

**MARYLAND CONSUMER PROTECTION ACT**

**Md. Code Ann., Com. Law § 13-101 (West)**

**(Brought on behalf of Maryland Plaintiff and Maryland Subclass)**

617.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

618.     Maryland Plaintiff and Maryland Subclass are or were residents of Maryland and/or purchased Beech-Nut Baby Foods in Maryland.

619.     Defendant is a "person" as defined by MD Code, Commercial Law, § 13-101(h).

620.     Maryland Plaintiff is an actual or potential consumer as defined by MD Code, Commercial Law, § 13-101(c) of Beech-Nut Baby Foods, which are consumer goods.

621.     Beech-Nut engaged in unfair, abusive, and deceptive practices in the sale of consumer goods, in violation of the Maryland Consumer Protection Act, MD Code, Commercial Law, § 13-301, including but not limited to the following:

(a)     Made a false representation as to the sponsorship, approval, characteristics, ingredients, uses, or benefits of Beech-Nut Baby Foods, in violation of MD Code, Commercial Law, § 13-301(2)(i);

(b)     Made a materially false representation as to the standard, quality, or grade of Beech-Nut Baby Foods, in violation of MD Code, Commercial Law, § 13-301(2)(iv);

(c)     Represented that Beech-Nut Baby Foods are healthy, nutritious, and safe for consumption by infants and young children when it knew or should have known Beech-Nut Baby Foods contain or materially risk containing elevated levels of heavy metals, in violation of MD Code, Commercial Law, §§ 13-301(1) & (9); and

(d)     Failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals when such failure to disclose such information was intended to induce Maryland Plaintiff and Maryland Subclass Members to enter into transactions to purchase Beech-Nut Baby Foods, in violation of MD Code, Commercial Law, §§ 13-301(3) & (9).

622.     As detailed herein, Beech-Nut's deceptive trade practices significantly impacted the public because Defendant sells Beech-Nut Baby Foods nationwide, including in Maryland, and there are millions of consumers of Beech-Nut Baby Foods, including Maryland Plaintiff and Maryland Subclass Members.

623.     Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or had a material risk of containing elevated levels of toxic heavy metals.

624.     As a direct and proximate result of Defendant's unfair, unconscionable, and deceptive acts or practices, Maryland Plaintiff and Maryland Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less, because it contains or has a material risk of containing elevated levels of toxic heavy metals.

625.     Beech-Nut's deceptive trade practices caused injury in fact and actual damages to Maryland Plaintiff and Maryland Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Maryland Plaintiff and Maryland Subclass Members purchased, which allowed Defendant to profit at the expense of Maryland Plaintiff and Maryland Subclass Members. The injuries to Maryland Plaintiff and Maryland Subclass Members were to legally

protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

626.    Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Maryland Plaintiff and Maryland Subclass Members, such that prospective injunctive relief is necessary.

627.    Maryland Plaintiff and Maryland Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair, unconscionable, and deceptive acts and practices, including, but not limited to, compensatory damages, statutory damages, restitution, penalties, injunctive relief, and/or attorneys' fees and costs, as well as other just and proper relief, pursuant to MD Code, Commercial Law, § 13-101, *et seq.* and applicable law.

## THIRTIETH CLAIM FOR RELIEF

### MASSACHUSETTS CONSUMER PROTECTION ACT

### Mass. Gen. Laws Ann. ch. 93A, § 1 *et seq.*

### (Brought on behalf of Massachusetts Plaintiff and the Massachusetts Subclass)

628.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

629.    Massachusetts Plaintiff and Massachusetts Subclass Members hereby assert claims under the Massachusetts Consumer Protection Law, M.G.L.A. ch. 93A § 1, *et seq.* ("MCPL"). Upon information and belief, Defendant does not maintain a place of business in Massachusetts, nor does Defendant maintain property or assets in Massachusetts. Plaintiffs thus are not required to provide Defendant with pre-suit written demand for relief pursuant to M.G.L.A. ch. 93A § 9(3). Notwithstanding, to the extent that such statutory notice is deemed required by the Court, Plaintiffs provided notice in accordance with M.G.L.A. ch. 93A § 9(3) to Defendant by, *inter alia,* sending a certified letter containing the basis of Plaintiffs' claims.

630.    Massachusetts Plaintiff and Massachusetts Subclass Members are or were residents of Massachusetts and/or made purchases of Beech-Nut Baby Foods in Massachusetts.

631.    Defendant is a "person" as defined by M.G.L.A. ch. 93A § 1(a).

632.    Massachusetts Plaintiff is an actual or potential consumer of Beech-Nut Baby Foods.

Defendant engages in "trade or commerce" within the meaning of Beech-Nut engaged in trade or commerce in Florida, as defined by M.G.L.A. ch. 93A § 1(b) in that they advertised, offered for sale, sold, or distributed goods or services in Massachusetts and/or engaged in trade or commerce directly or indirectly affecting the people of Massachusetts.

633.    M.G.L.A. ch. 93A § 2(a), states "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

634.    For the reasons discussed herein, Defendant violated and continues to violate the M.G.L.A. by engaging in the herein described deceptive or unfair acts or practices proscribed by M.G.L.A. ch. 93A § 1, *et seq.*  Beech-Nut's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

635.    Beech-Nut repeatedly advertised on the labels for Beech-Nut Baby Foods, on its websites, and through national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe, healthy, and suitable for infant and child consumption. Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals.

636.    Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being

aware that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Massachusetts Plaintiff and Massachusetts Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less, because it contains or materially risks containing elevated levels of toxic heavy metals.

637.    Beech-Nut's deceptive trade practices caused injury in fact and actual damages to Massachusetts Plaintiff and Massachusetts Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Massachusetts Plaintiff and Massachusetts Subclass Members purchased, which allowed Defendant to profit at the expense of Massachusetts Plaintiff and Massachusetts Subclass Members. The injuries to Massachusetts Plaintiff and Massachusetts Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

638.    Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Massachusetts Plaintiff and Massachusetts Subclass Members, such that prospective injunctive relief is necessary.

639.    Massachusetts Plaintiff and Massachusetts Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, including, but not limited to, actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees and/or costs, as well as any other just and proper relief, as provided by M.G.L.A. ch. 93A § 9 and applicable law.

**THIRTY FIRST CLAIM FOR RELIEF**

**MICHIGAN CONSUMER PROTECTION ACT**

**MCL § 445,** *et seq.*

**(Brought on behalf of Michigan Plaintiff and the Michigan Subclass)**

640.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

641.     Michigan Plaintiff and Michigan Subclass Members are or were residents of Michigan and/or made purchases of Beech-Nut Baby Foods in Michigan.

642.     At all times mentioned herein, Beech-Nut engaged in "trade or commerce" in Michigan, as defined by MCL § 445.902(g), in that it provided goods, property, or services primarily for personal, family, or household purposes, and advertised, solicited, offered for sale, and sold goods or services.

643.     The Michigan Consumer Protection Act ("MCPA"), MCL § 445.903, provides that "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful[.]"

644.     Beech-Nut engaged in deceptive, unfair, and unlawful trade acts or practices, in the course of trade or commerce, in violation of MCL § 445.903, including but not limited to the following:

(a)     Caused probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of Beech-Nut Baby Foods, in violation of MCL § 445.903(1)(a);

(b)     Represented that Beech-Nut Baby Foods have sponsorship, approval, characteristics, ingredients, uses, or benefits that it does not have, in violation of MCL § 445.903(1)(c);

(c)     Represented that Beech-Nut Baby Goods are of a particular standard, quality, or grade, when Beech-Nut knew or should have known they are of another, in violation of MCL § 445.903(1)(e);

(d)     Advertised or represented Beech-Nut Baby Foods with intent not to sell or dispose of those goods as advertised or represented, in violation of MCL § 445.903(1)(g); and

(e)     Failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals when such failure to disclose such information was intended to induce Michigan Plaintiff and Michigan Subclass Members to enter into transactions to purchase Beech-Nut Baby Foods and was not reasonably known by Michigan Plaintiff and Michigan Subclass members in violation of MCL § 445.903(s).

645.    As detailed herein, Beech-Nut's deceptive trade practices significantly impacted the public because Defendant sells Beech-Nut Baby Foods nationwide, including in Michigan, and there are millions of actual or potential consumers of Beech-Nut Baby Foods, including Michigan Plaintiff and Michigan Subclass Members.

646.    Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or had a material risk of containing elevated levels of toxic heavy metals.

647.    As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Michigan Plaintiff and Michigan Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they

known the truth, and they received a product that was worthless, and/or worth less,  because it contains or has a material risk of containing elevated levels of toxic heavy metals.

648.     Beech-Nut's deceptive trade practices caused injury in fact and actual damages to Michigan Plaintiff and Michigan Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Michigan Plaintiff and Michigan Subclass Members purchased, which allowed Defendant to profit at the expense of Michigan Plaintiff and Michigan Subclass Members. The injuries to Michigan Plaintiff and Michigan Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

649.     Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Michigan Plaintiff and Michigan Subclass Members, such that prospective injunctive relief is necessary.

650.     Michigan Plaintiff and Michigan Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, including, but not limited to, actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees and/or costs, as well as any other just and proper relief, as provided by MCL § 445.911 and applicable law.

**THIRTY SECOND CLAIM FOR RELIEF**

**MINNESOTA'S UNLAWFUL TRADE PRACTICES ACT**

**Minn. Stat. Ann. § 325D09,** *et seq.*

**(Brought on behalf of Minnesota Plaintiff and the Minnesota Subclass)**

651.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

652.     Minnesota Plaintiff and the Minnesota Subclass are or were residents of Minnesota and/or purchased Beech-Nut Baby Foods in Minnesota.

653.    Defendant is a "person" within the meaning of the Minnesota Unlawful Trade Practices ACT ("MUTPA"), Minn. Stat. Ann. § 325D10(a).

654.    Defendant engaged in the sale of merchandise within the meaning of Minn. Stat. Ann. § 325D10(c).

655.    Defendant violated the MUTPA, Minn. Stat. Ann. § 325D13, by knowingly misrepresenting the true quality and ingredients of the Beech-Nut Baby Foods in connection with the sale of merchandise.

656.    Defendant repeatedly advertised, on the labels for Beech-Nut Baby Foods, on its websites, and through national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe, healthy, and suitable for infant and child consumption. Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals.

657.    Defendant knew or should have known that Beech-Nut Baby Foods did not have the quality and ingredients described above because they contained, and/or had a material risk of containing toxic heavy metals.

658.    Defendant's pattern of knowing misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive Minnesota Plaintiff and Minnesota Subclass Members with respect to the Beech-Nut Baby Foods' quality, ingredients, and suitability for consumption by babies.

659.    Defendant intended that Minnesota Plaintiff and Minnesota Subclass Members would rely on Defendant's misrepresentations, concealment, warranties, deceptions, and/or omissions regarding Beech-Nut Baby Foods' quality, ingredients, and suitability for consumption by babies.

660.     Defendant's conduct and omissions described herein occurred repeatedly in Defendants' trade or business and were capable of deceiving a substantial portion of the consuming public.

661.     The facts concealed or not disclosed by Defendant were material facts in that any reasonable consumer, including Minnesota Plaintiff and Minnesota Subclass Members, would have considered them in deciding whether to purchase Beech-Nut Baby Foods. Had Minnesota Plaintiff and Minnesota Subclass Members known Beech-Nut Baby Foods did not have the quality advertised by Defendant, they would not have purchased Beech-Nut Baby Foods.

662.     Defendant's unlawful conduct is continuing, with no indication that Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Minnesota Plaintiff and Minnesota Subclass Members.

663.     Minnesota Plaintiff and Minnesota Subclass Members would not have purchased Beech-Nut Baby Foods at all had they known of the presence or risk of heavy metals and/or any other ingredients or contaminants that do not conform to the packaging claims.

664.     Minnesota Plaintiff and Minnesota Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair, unconscionable, and deceptive acts and practices, including but not limited to actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees, and/or costs, as well as any other just and proper relief pursuant to Minn. Stat. § 8.31, subd. 3a and § 325D.15 and applicable law.  Additionally, this claim for relief is proper under Minn. Stat. § 8.31, subd. 3a, because it benefits the public due to the significate harm to the public caused by Defendant's past and continuing conduct, as set forth above.

**THIRTY EIGHTH CLAIM FOR RELIEF**

**MINNESOTA'S UNIFORM DECEPTIVE TRADE PRACTICES ACT**

**Minn. Stat. § 325D.43,** *et seq.*

**(Brought on behalf of Minnesota Plaintiff and the Minnesota Subclass)**

665.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

666.    Minnesota Plaintiff and the Minnesota Subclass are or were residents of Minnesota and/or purchased Beech-Nut Baby Foods in Minnesota.

667.    Defendant is a "person" within the meaning of the Minnesota Uniform Deceptive Trade Practices Act ("MUDTPA").

668.    Defendant engaged in acts prohibited by the MUDTPA, Minn. Stat. § 325D.44, Subd. 1, including but not limited to:

(a)    Caused likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of Beech-Nut Baby Foods, in violation of Minn. Stat. § 325D.44, Subd. 1 (2);

(b)    Representing that Beech-Nut Baby Foods have approval, characteristics, ingredients, uses, or benefits that they do not have, in violation of Minn. Stat. § 325D.44, Subd. 1 (5);

(c)    Representing that Beech-Nut Baby Foods  are of a particular standard, quality, or grade, if they are of another, in violation of Minn. Stat. § 325D.44, Subd. 1 (7);

(d)    Advertising Beech-Nut Baby Foods with intent not to sell them as advertised, in violation of Minn. Stat. § 325D.44, Subd. 1 (9); and

(e)   Engaging in other conduct, as detailed herein, which similarly creates a likelihood of confusion or of misunderstanding, in violation of Minn. Stat. **§** 325D.44, Subd. 1 (13).

669.   Defendant repeatedly advertised, on the labels for Beech-Nut Baby Foods, on its websites, and through national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe, healthy, and suitable for infant and child consumption. Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals.

670.   Defendant knew or should have known that Beech-Nut Baby Foods did not have the quality and ingredients described above because they contained, and/or had a material risk of containing, heavy metals and/or any other ingredients or contaminants that do not conform to the packaging claims.

671.   Defendant's misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive Minnesota Plaintiff and Minnesota Subclass Members with respect to Beech-Nut Baby Foods' ingredients, uses, benefits, standards, quality, grade, and suitability for consumption by babies.

672.   Defendant intended that Minnesota Plaintiff and Minnesota Subclass Members would rely on Defendant's misrepresentations, concealment, warranties, deceptions, and/or omissions regarding Beech-Nut Baby Foods' ingredients, uses, benefits, standards, quality, grade, and suitability for consumption by babies.

673.   Defendant's conduct and omissions described herein occurred repeatedly in Defendant's trade or business and were capable of deceiving a substantial portion of the consuming public.

674.    The facts concealed or not disclosed by Defendant were material facts in that Minnesota Plaintiff, Minnesota Subclass Members, and any reasonable consumer would have considered them in deciding whether to purchase the Baby Foods.  Had Minnesota Plaintiff and Minnesota Subclass Members known Beech-Nut Baby Foods did not have the quality advertised by Defendant, they would not have purchased Beech-Nut Baby Foods.

675.    Defendant intended that Minnesota Plaintiff and Minnesota Subclass Members would rely on the deception by purchasing Beech-Nut Baby Foods, unaware of the undisclosed material facts. This conduct constitutes consumer fraud.

676.    Defendant's unlawful and deceptive conduct is continuing, with no indication that Defendant intends to cease this fraudulent course of conduct, posing a threat of future harm to Minnesota Plaintiff and Minnesota Subclass Members.

677.    As a direct and proximate result of Defendant's conduct, Minnesota Plaintiff and Minnesota Subclass Members have suffered actual damages in that they purchased Beech-Nut Baby Food that was worth less than the price they paid.

678.    Minnesota Plaintiff and Minnesota Subclass Members would not have purchased Beech-Nut Baby Foods at all had they known of the presence of these heavy metals, perchlorate, and/or unnatural or other ingredients that do not conform to the packaging.

679.    Minnesota Plaintiff and Minnesota Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair, unconscionable, and deceptive acts and practices, including but not limited to actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees, and/or costs, as well as any other just and proper relief pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325D.45 and applicable law.

## THIRTY NINTH CLAIM FOR RELIEF

## MINNESOTA FALSE STATEMENT IN ADVERTISING ACT

## Minn. Stat. § 325F.67, *et seq.*

### (Brought on behalf of Minnesota Plaintiff and the Minnesota Subclass)

680.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

681.    Minnesota Plaintiff and Minnesota Subclass Members are or were residents of Minnesota and/or purchased Beech-Nut Baby Foods in Minnesota.

682.    Defendant is a "person" within the meaning of the False Statement in Advertising Act ("FSAA"), Minn. Stat. § 325F.67.

683.    Defendant intended to sell, and did sell, merchandise to the public and made representations including its material omissions, described herein, that were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

684.    Beech-Nut repeatedly advertised in Minnesota and elsewhere on the labels for Beech-Nut Baby Foods, on its websites, in publications, and through national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe, healthy, and suitable for infant and child consumption. Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals.

685.    Beech-Nut's representations and omissions in its advertisements were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals. As a direct and proximate result of Defendant's untrue, deceptive, and misleading advertisements, Minnesota Plaintiff and Minnesota Subclass

Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less,  because it contains or materially risks containing elevated levels of toxic heavy metals.

686.    Beech-Nut's deceptive trade practices caused injury in fact and actual damages to Minnesota Plaintiff and Minnesota Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Minnesota Plaintiff and Minnesota Subclass Members purchased, which allowed Defendant to profit at the expense of Minnesota and Minnesota Subclass Members. The injuries to Minnesota Plaintiff and the Minnesota Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

687.    Defendant knew or should have known that Beech-Nut Baby Foods did not have the quality and ingredients described above because they contained, and/or had a material risk of containing, heavy metals and/or any other ingredients or contaminants that do not conform to the packaging claims.

688.    Defendant's unlawful conduct is continuing, with no indication that Defendant intends to cease such false advertising, posing a threat of future harm to Minnesota Plaintiff and Minnesota Subclass Members, such that prospective injunctive relief is necessary.

689.    Minnesota Plaintiff and Minnesota Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair, unlawful, and fraudulent acts and practices, including, but not limited to, actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees, and/or costs, as well as any other just and proper relief available for Defendant's violations of the FSAA pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325F.67 and

applicable law. Additionally, this claim for relief is proper under Minn. Stat. § 8.31, subd. 3a, because it benefits the public due to the significate harm to the public caused by Defendant's past and continuing conduct, as set forth above.

## FORTIETH CLAIM FOR RELIEF

### MINNESOTA PREVENTION OF CONSUMER FRAUD ACT

### Minn. Stat. § 325F.68, *et seq.*

### (Brought on behalf of Minnesota Plaintiff and the Minnesota Subclass)

690.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

691.    Minnesota Plaintiff and Minnesota Subclass Members are or were residents of Minnesota and/or purchased Beech-Nut Baby Foods in Minnesota.

692.    Defendant is a "person" within the meaning of the Minnesota Prevention of Consumer Fraud Act ("MPCFA"), Minn. Stat. § 325F.68, Subd. 3.

Defendant engaged in the "sale" as defined by Minn. Stat. § 325F.68, Subd. 4 of "merchandise" as defined by Minn. Stat. § 325F.68, Subd. 2 because Beech-Nut sold, offered to sell, or attempted to sell Beech-Nut Baby Foods, which are goods.

693.    Minn. Stat. § 325F.69 prohibits "the act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise."

694.    For the reasons discussed herein, Defendant violated and continues to violate the MPCFA by engaging in the herein described fraudulent, deceptive, and misleading practices proscribed by Minn. Stat. § 325F.68. *et seq.* Beech-Nut's acts and practices, including its material omissions, described herein, were intended to, likely to, and did in fact, deceive and mislead

members of the public, including Minnesota Plaintiff, Minnesota Subclass Members, and other consumers acting reasonably under the circumstances, to their detriment.

695.    Beech-Nut repeatedly advertised on the labels for Beech-Nut Baby Foods, on its websites, and through national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe, healthy, and suitable for infant and child consumption. Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals.

696.    Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals. As a direct and proximate result of Defendant's deceptive and misleading acts or practices, Minnesota Plaintiff and Minnesota Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less, because it contains or materially risks containing elevated levels of toxic heavy metals.

697.    Beech-Nut's deceptive trade practices caused injury in fact and actual damages Minnesota Plaintiff and Minnesota Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Minnesota Plaintiff and Minnesota Subclass Members purchased, which allowed Defendant to profit at the expense of Minnesota Plaintiff and Minnesota Subclass Members. The injuries to Minnesota Plaintiff and Minnesota Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

698.    Defendant's unlawful conduct is continuing, with no indication that Defendant intends to cease this deceptive, misleading, and fraudulent course of conduct, posing a threat of future harm to Minnesota Plaintiff and Minnesota Subclass Members, such that prospective injunctive relief is necessary.

699.    Minnesota Plaintiff and Minnesota Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's fraudulent, deceptive, and misleading acts and practices, including, but not limited to, actual damages, injunctive and declaratory relief, attorneys' fees, and/or costs, as well as any other just and proper relief available pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325F.69 and applicable law. Additionally, this claim for relief is proper under Minn. Stat. § 8.31, subd. 3a, because it benefits the public due to the significate harm to the public caused by Defendant's past and continuing conduct, as set forth above.

### FORTY FIRST CLAIM FOR RELIEF

### MISSISSIPPI CONSUMER PROTECTION ACT

### Miss. Code. Ann. § 75-24-1, *et seq.*

### (Brought on behalf of Mississippi Plaintiff and Mississippi Subclass)

700.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

701.    Mississippi Plaintiff and Mississippi Subclass are or were residents of Mississippi and/or purchased Beech-Nut Baby Foods in Mississippi.

702.    In accordance with the requirements set forth in Miss. Code. Ann. § 75-24-15, Plaintiffs have "first made a reasonable attempt to resolve any claim through an informal dispute settlement program approved by the Attorney General" by submitting their claim to the Attorney General's Office.

703.    Defendant is a "person" as defined by Miss. Code Ann. § 75-24-3.

704.     Mississippi Plaintiff is an actual or potential consumer of Beech-Nut Baby Foods.

705.     Beech-Nut, knowingly or with reason to know, engaged in unfair, unconscionable, and deceptive acts or practices in the conduct of "trade" or commerce," as defined by Miss. Code Ann. § 75-24-3, in violation of Miss. Code Ann. § 75-24-3 *et seq*., including but not limited to the following:

(a)     Misrepresented the source, sponsorship, approval, or certification of Beech-Nut Baby Goods, in violation of Miss. Code Ann. § 75-24-3(2)(b);

(b)     Made a false representation as to the sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities of Beech-Nut Baby Foods, in violation of Miss. Code Ann. § 75-24-5(2)(e);

(c)     Made a false representation as to the standard, quality, or grade of Beech-Nut Baby Foods, in violation of Miss. Code Ann. § 75-24-5(2)(g);

(d)     Represented, including through advertisements, that Beech-Nut Baby Foods are healthy, nutritious, and safe for consumption by infants and young children when it knew or should have known Beech-Nut Baby Foods contain or materially risk containing elevated levels of heavy metals, in violation of Miss. Code Ann. §§ 75-24-5(1) & 2(i); and

(e)     Failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals when such failure to disclose such information was intended to induce Plaintiffs and the Classes to enter into transactions to purchase Beech-Nut Baby Foods, in violation of Miss. Code Ann. § 75-24-5(1).

706.     As detailed herein, Beech-Nut's deceptive trade practices significantly impacted the public because Defendant sells Beech-Nut Baby Foods nationwide, including in Mississippi,

and there are millions of consumers of Beech-Nut Baby Foods, including Mississippi Plaintiff and Mississippi Subclass Members.

707.    Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or had a material risk of containing elevated levels of toxic heavy metals.

708.    As a direct and proximate result of Defendant's unfair, unconscionable, and deceptive acts or practices, Mississippi Plaintiff and Mississippi Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less,  because it contains or has a material risk of containing elevated levels of toxic heavy metals.

709.    Beech-Nut's deceptive trade practices caused injury in fact and actual damages to Mississippi Plaintiff and Mississippi Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Mississippi Plaintiff and Mississippi Subclass Members purchased, which allowed Defendant to profit at the expense of, Mississippi Plaintiff and Mississippi Subclass Members. The injuries to Mississippi Plaintiff and Mississippi Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

710.    Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Mississippi Plaintiff and Mississippi Subclass Members, such that prospective injunctive relief is necessary.

711.    Mississippi Plaintiff and members of the Mississippi Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair, unconscionable, and deceptive acts and practices including, but not limited to, actual damages, statutory damages, restitution, penalties, injunctive relief, and/or attorneys' fees and/or costs, as well as any other just and proper relief, pursuant to Miss. Code Ann. § 75-24-3 and applicable law.

<u>**FORTY SECOND CLAIM FOR RELIEF**</u>

**MISSOURI MERCHANDISING PRACTICES ACT**

**Mo. Rev. Stat. § 407,** *et seq.*

**(Brought on behalf of Missouri Plaintiff and the Missouri Subclass)**

712.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

713.    Missouri Plaintiff and Missouri Subclass Members are or were residents of Missouri and/or purchased Beech-Nut Baby Foods in Missouri.

714.    At all times mentioned herein, Beech-Nut engaged in "trade" or "commerce" affecting Missouri, as defined by Mo. Rev. Stat. § 407.010(7), in that it advertised, offered for sale, sold and distributed goods, property, or services primarily for personal, family, or household purposes, and advertised, solicited, offered for sale, and sold "property," "article[s]," "commodit[ies]" or "thing[s] of value" in Missouri.

715.    Missouri Plaintiff and Missouri Subclass Members purchased Beech-Nut Baby Foods, which is "merchandise" within the meaning of Mo. Rev. Stat. § 407.010(4), "primarily for personal, family or household purposes." Mo. Rev. Stat. § 407.025(1).

716.    The Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.020, provides that "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of

any material fact in connection with the sale or advertisement of any merchandise in trade or commerce…in the state of Missouri, is declared to be an unlawful practice."

717.    For the reasons discussed herein, Defendant violated and continues to violate the MMPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by Mo. Rev. Stat. § 407.020 *et seq.* Beech-Nut's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

718.    Beech-Nut repeatedly advertised on the labels for Beech-Nut Baby Foods, on its websites, and through national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe, healthy, and suitable for infant and child consumption. Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals.

719.    Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Missouri Plaintiff and Missouri Subclass Members suffered ascertainable damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less, because it contains or materially risks containing elevated levels of toxic heavy metals, resulting in the loss of money or property.

720.    Beech-Nut's deceptive trade practices caused injury in fact and actual damages to Missouri Plaintiff and Missouri Subclass Members in the form of the loss or diminishment of value

of Beech-Nut Baby Foods Missouri Plaintiff and Missouri Subclass Members purchased, which allowed Defendant to profit at the expense of Missouri Plaintiff and Missouri Subclass Members. The injuries to Missouri Plaintiff and Missouri Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

721.    Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Missouri Plaintiff and Missouri Subclass Members, such that prospective injunctive relief is necessary.

722.    Missouri Plaintiff and Missouri Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, including, but not limited to, actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees and/or costs, as well as any other just and proper relief, as provided by Mo. Rev. Stat. § 407.025 and applicable law.

## FORTY THIRD CLAIM FOR RELIEF

## MONTANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT

### Mont. Code Ann. § 30-14-101, *et seq.*

### (Brought on behalf of Montana Plaintiff and the Montana Subclass)

723.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

724.    Montana Plaintiff and Montana Subclass Members are or were residents of Montana and/or purchased Beech-Nut Baby Foods in Montana.

725.    Defendant is a "person" as defined by MCA 30-14-102(7) and a "business" as defined by MCA 30-14-102(2).

726.     Montana Plaintiff and Montana Subclass Members are actual or potential consumers as defined by MCA 30-14-102(1) of Beech-Nut Baby Foods.

727.     At all times mentioned herein, Beech-Nut engaged in "trade" or "commerce," as defined by MCA 30-14-102(8)(a), affecting Montana in that they engaged in the advertising, sale, offering for sale, and distribution of goods, property, commodities, or things of value in Montana.

728.     MCA 30-14-103 provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."

729.     For the reasons discussed herein, Defendant violated and continues to violate MCA 30-14-101, *et seq.* by engaging in the herein described deceptive or unfair acts or practices proscribed by MCA 30-14-101, *et seq.* Beech-Nut's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

730.     Beech-Nut repeatedly advertised, both on the labels for Beech-Nut Baby Foods, on its websites, and through national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe, healthy, and suitable for infant and child consumption. Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals.

731.     Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Montana Plaintiff and Montana Subclass Members suffered damages by purchasing

Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less, because it contains or materially risks containing elevated levels of toxic heavy metals.

732.    Beech-Nut's deceptive trade practices caused injury in fact and actual damages to Montana Plaintiff and Montana Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Montana Plaintiff and Montana Subclass Members purchased, which allowed Defendant to profit at the expense of Montana Plaintiff and Montana Subclass Members. The injuries to Montana Plaintiff and Montana Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

733.    Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Montana Plaintiff and Montana Subclass Members, such that prospective injunctive relief is necessary.

734.    Montana Plaintiff and Montana Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, including, but not limited to, actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees and/or costs, as well as any other just and proper relief, as provided by MCA 30-14-133 and applicable law

### FORTY FORTH CLAIM FOR RELIEF

### NEBRASKA CONSUMER PROTECTION ACT

**Neb. Rev. Stat. Ann. § 59-1601** *et seq.*

**(Brought on Behalf of Nebraska and the Nebraska Subclass)**

735.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

736.   Nebraska Plaintiff and Nebraska Subclass Members are or were residents of Nebraska and/or purchased Beech-Nut Baby Foods in Nebraska.

737.   Defendant is a "person" as defined by Neb.Rev.St. § 59-1601(1).

738.   Nebraska Plaintiff and Nebraska Subclass Members are actual or potential consumers of Beech-Nut Baby Foods.

739.   At all times mentioned herein, Beech-Nut engaged in "trade" or "commerce" as defined by Neb.Rev.St. § 59-1601(2) affecting the people of Nebraska in that they engaged in the sale of assets and other commerce in Nebraska.

740.   Neb.Rev.St. § 59-1602 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce shall be unlawful."

741.   For the reasons discussed herein, Defendant violated and continues to violate the Nebraska Consumer Protection Act by engaging in the herein described deceptive or unfair acts or practices proscribed by Neb.Rev.St. § 59-1602, *et seq*. Beech-Nut's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

742.   Beech-Nut repeatedly advertised, both on the labels for Beech-Nut Baby Foods, on its websites, and through national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe, healthy, and suitable for infant and child consumption. Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals.

743.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unconscionable in that it violates the well-established public policies of

protecting children from avoidable dangers and ensuring its baby food is fit for human consumption, which directly impacts the public interest.

744.    Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Nebraska Plaintiff and Nebraska Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less,  because it contains or materially risks containing elevated levels of toxic heavy metals.

745.    Beech-Nut's deceptive trade practices caused injury in fact and actual damages to Nebraska Plaintiff and Nebraska Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Nebraska Plaintiff and Nebraska Subclass Members purchased, which allowed Defendant to profit at the expense of Nebraska Plaintiff and Nebraska Subclass Members. The injuries to Nebraska Plaintiff and Nebraska Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

746.    Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Nebraska Plaintiff and Nebraska Subclass Members, such that prospective injunctive relief is necessary.

747.    Nebraska Plaintiff and Nebraska Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, including, but not limited to, actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees

and/or costs, as well as any other just and proper relief, as provided by Neb.Rev.St. § 59-1609 and applicable law.

## FORTY FIFTH CLAIM FOR RELIEF

### NEBRASKA UNIFORM DECEPTIVE TRADE PRACTICES ACT

### Neb. Rev. Stat. § 87-301, *et seq.*

### (On Behalf of Nebraska Plaintiff and the Nebraska Subclass)

748.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

749.    Nebraska Plaintiff and Nebraska Subclass Members are or were residents of Nebraska and/or purchased Beech-Nut Baby Foods in Nebraska.

750.    Defendant is a "person" as defined by Neb. Rev. Stat. § 87-301(19).

751.    Nebraska Plaintiff and Nebraska Subclass Members are actual or potential consumers of Beech-Nut Baby Foods.

752.    The Nebraska Uniform Deceptive Trade Practices Act, Neb.Rev.St. § 87-303, provides that "[a] person likely to be damaged by a deceptive trade practice of another may bring an action for, and the court may grant, an injunction under the principles of equity against the person committing the deceptive trade practice."

753.    Neb.Rev.St. § 87-303.01(1) further provides that "[a]n unconscionable act or practice by a supplier in connection with a consumer transaction shall be a violation of the Uniform Deceptive Trade Practices Act."

754.    Beech-Nut willfully engaged in unfair, deceptive, and unconscionable acts or practices, in violation of Neb. Rev. Stat. §§87-301, *et seq.,* including but not limited to the following:

(a)   Caused likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of Beech-Nut Baby Foods, in violation of Neb. Rev. Stat. § 87-302 (a)(2);

(b)   Represented that Beech-Nut Baby Foods have sponsorship, approval, characteristics, ingredients, uses, or benefits that they do not have, in violation of Neb. Rev. Stat. § 87-302 (a)(5);

(c)   Represented that Beech-Nut Baby Foods are of a particular standard, quality, or grade, when Beech-Nut knew or should have known that they are of another, in violation of Neb. Rev. Stat. § 87-302 (a)(8); and

(d)   Advertised Beech-Nut Baby Foods with intent not to sell them as advertised, in violation of Neb. Rev. Stat. § 87-302 (a)(10).

755.   For the reasons discussed herein, Defendant violated and continues to violate the Nebraska Uniform Deceptive Trade Practices Act by engaging in the herein described deceptive or unfair acts or practices proscribed by Neb.Rev.St. § 87-301, *et seq*. Beech-Nut's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

756.   Beech-Nut repeatedly advertised on the labels for Beech-Nut Baby Foods, on its websites, and through national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe, healthy, and suitable for infant and child consumption. Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals.

757.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unconscionable in that it violates the well-established public policies of protecting children from avoidable dangers and ensuring its baby food is fit for human consumption, which directly impacts the public interest.

758.     Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Nebraska Plaintiff and Nebraska Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less,  because it contains or materially risks containing elevated levels of toxic heavy metals.

759.     Beech-Nut's deceptive trade practices caused injury in fact and actual damages to Nebraska Plaintiff and Nebraska Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Nebraska Plaintiff and Nebraska Subclass Members purchased, which allowed Defendant to profit at the expense of Nebraska Plaintiff and Nebraska Subclass Members. The injuries to Nebraska Plaintiff and Nebraska Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

760.     Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Nebraska Plaintiff and Nebraska Subclass Members, such that prospective injunctive relief is necessary.

761. Nebraska Plaintiff and Nebraska Subclass Members seek injunctive and declaratory relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, as provided by Neb.Rev.St. § 87-303.09 and applicable law.

**FORTY SIXTH CLAIM FOR RELIEF**

**NEVADA TRADE REGULATION AND PRACTICES ACT**

**Nev. Rev. Stat. Ann. § 598.0903, *et seq.***

**(Brought on behalf of the Nevada Plaintiff and the Nevada Subclass)**

762. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

763. Nevada Plaintiff and Nevada Subclass are or were residents of Nevada and/or purchased Beech-Nut Baby Foods in Nevada.

764. Defendant is a "person" under N.R.S. 598.0915.

765. Nevada Plaintiff and Nevada Subclass Members are actual or potential consumers of Beech-Nut Baby Foods, which are consumer goods.

766. Beech-Nut engaged in deceptive trade practices in the sale of consumer goods, and thus in the course of their business, in violation of N.R.S. 598.0915, including but not limited to the following:

(a) Knowingly made a false representation as to the source, sponsorship, approval or certification of Beech-Nut Baby Goods, in violation of N.R.S. 598.0915(2);

(b) Knowingly made a false representation as to the characteristics, ingredients, uses, or benefits of Beech-Nut Baby Foods, in violation of N.R.S. 598.0915(5);

(c) Made a materially false representation as to the standard, quality, or grade of Beech-Nut Baby Foods, in violation of N.R.S. 598.0915(7);

(d)     Knowingly represented and advertised that Beech-Nut Baby Foods are healthy, nutritious, and safe for consumption by infants and young children when it knew or should have known Beech-Nut Baby Foods contain or materially risk containing elevated levels of heavy metals, in violation of N.R.S. 598.0915(9) & (15); and

(e)     Failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals when such failure to disclose such information was intended to induce Plaintiffs and the Classes to enter into transactions to purchase Beech-Nut Baby Foods, in violation of N.R.S. 598.0915(9) & (15).

767.    As detailed herein, Beech-Nut's deceptive trade practices significantly impacted the public because Defendant sells Beech-Nut Baby Foods nationwide, including in Nevada, and there are millions of consumers of Beech-Nut Baby Foods, including the Nevada Plaintiff and Nevada Subclass Members.

768.    Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or had a material risk of containing elevated levels of toxic heavy metals.

769.    As a direct and proximate result of Defendant's unfair, unconscionable, and deceptive acts or practices, Nevada Plaintiff and Nevada Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less, because it contains or has a material risk of containing elevated levels of toxic heavy metals.

770.    Beech-Nut's deceptive trade practices caused injury in fact and actual damages to Nevada Plaintiff and Nevada Subclass Members in the form of the loss or diminishment of value

of Beech-Nut Baby Foods Nevada Plaintiff and Nevada Subclass Members purchased, which allowed Defendant to profit at the expense of Nevada Plaintiff and Nevada Subclass Members. The injuries Nevada Plaintiff and Nevada Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

771. Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Nevada Plaintiff and Nevada Subclass Members, such that prospective injunctive relief is necessary.

772. Nevada Plaintiff and Nevada Subclass Members seek relief seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, including, but not limited to, actual damages, statutory damages, restitution, penalties, injunctive relief, attorneys' fees and/or costs, as well as any other just and proper relief, pursuant to N.R.S. 598.0993 and applicable law.

## FORTY SEVENTH CLAIM FOR RELIEF

### NEW HAMPSHIRE CONSUMER PROTECTION ACT

### N.H. Rev. Stat. § 358-A:1, *et seq.*

### (Brought on behalf of New Hampshire Plaintiff and the New Hampshire Subclass)

773. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

774. New Hampshire Plaintiff and New Hampshire Subclass are or were residents of New Hampshire and/or purchased Beech-Nut Baby Foods in New Hampshire.

775. Defendant is a "person" under N.H. Rev. Stat. § 358-A:1.

776. New Hampshire Plaintiff and New Hampshire Subclass Members are actual or potential consumers of Beech-Nut Baby Foods, which are consumer goods.

777.    Beech-Nut engaged in deceptive trade practices in the sale of consumer goods, in the course of trade or commerce, in violation of N.H. Rev. Stat. § 358-A:2, including but not limited to the following:

(a)    Caused likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of Beech-Nut Baby Foods, in violation of N.H. Rev. Stat. § 358-A:2(II)

(b)    Knowingly made a false representation as to the sponsorship, approval, characteristics, ingredients, uses, or benefits of Beech-Nut Baby Foods, in violation of N.H. Rev. Stat. § 358-A:2(V);

(c)    Made a materially false representation as to the standard, quality, or grade of Beech-Nut Baby Foods, in violation N.H. Rev. Stat. § 358-A:2(VII);

(d)    Knowingly represented and advertised that Beech-Nut Baby Foods are healthy, nutritious, and safe for consumption by infants and young children while intending to sell Beech-Nut Baby Foods that contain or materially risk containing elevated levels of heavy metals, in violation of N.H. Rev. Stat. § 358-A:2(IX); and

(e)    Failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals when such failure to disclose such information was intended to induce Plaintiffs and the Classes to enter into transactions to purchase Beech-Nut Baby Foods, in violation of N.H. Rev. Stat. § 358-A:2.

778.    As detailed herein, Beech-Nut's deceptive trade practices significantly impacted the public because Defendant sells Beech-Nut Baby Foods nationwide, including in New Hampshire, and there are millions of consumers of Beech-Nut Baby Foods, including New Hampshire Plaintiff and New Hampshire Subclass Members.

779.    Beech-Nut's willful and knowing representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or had a material risk of containing elevated levels of toxic heavy metals.

780.    As a direct and proximate result of Defendant's unfair, unconscionable, and deceptive acts or practices, New Hampshire Plaintiff and New Hampshire Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less,  because it contains or has a material risk of containing elevated levels of toxic heavy metals.

781.    Beech-Nut's deceptive trade practices caused injury in fact and actual damages to New Hampshire Plaintiff and New Hampshire Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods New Hampshire Plaintiff and New Hampshire Subclass Members purchased, which allowed Defendant to profit at the expense of New Hampshire Plaintiff and New Hampshire Subclass Members. The injuries to New Hampshire Plaintiff and New Hampshire Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

782.    Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to New Hampshire Plaintiff and New Hampshire Subclass Members, such that prospective injunctive relief is necessary.

783.     New Hampshire Plaintiff and New Hampshire Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, including, but not limited to, actual damages, statutory damages, restitution, penalties, injunctive relief, attorneys' fees and/or costs. as well as any other just and proper relief, pursuant to N.H. Rev. Stat. § 358-A:10 and applicable law.

## FORTY EIGHTH CLAIM FOR RELIEF

### NEW JERSEY CONSUMER FRAUD ACT

### N.J. Stat. Ann. § 56:8-1, *et seq.*

**(Brought on behalf of New Jersey Plaintiff and the New Jersey Subclass)**

784.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

785.     New Jersey Plaintiff and New Jersey Subclass Members are or were residents of New Jersey and/or purchased Beech-Nut Baby Foods in New Jersey.

786.     Defendant is a "person" as defined by N.J.S.A. 56:8-1(d).

787.     New Jersey Plaintiff and New Jersey Subclass Members are actual or potential consumers of Beech-Nut Baby Foods.

788.     At all times mentioned herein, Beech-Nut engaged in trade or commerce in New Jersey in connection with the "sale" or "advertisement" of any "merchandise" as those terms are defined by N.J.S.A. 56:8-1.

789.     N.J.S.A. 56:8-2 prohibits "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise…"

790.    For the reasons discussed herein, Defendant violated and continues to violate the New Jersey Consumer Fraud Act by engaging in the herein described deceptive, unconscionable, false, or unfair acts or practices proscribed by N.J.S.A. 56:8-2. Beech-Nut's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

791.    Beech-Nut repeatedly advertised, both on the labels for Beech-Nut Baby Foods, on its websites, and through national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe, healthy, and suitable for infant and child consumption. Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals in violation of N.J.S.A. 56:8-2 and N.J.S.A. 56:8-10.

792.    Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, New Jersey Plaintiff and New Jersey Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less,  because it contains or materially risks containing elevated levels of toxic heavy metals.

793.    Beech-Nut's deceptive trade practices caused injury in fact and actual damages to New Jersey Plaintiff and New Jersey Subclass Members in the form of the ascertainable loss or diminishment of value of Beech-Nut Baby Foods New Jersey Plaintiff and New Jersey Subclass

Members purchased, which allowed Defendant to profit at the expense of New Jersey Plaintiff and New Jersey Subclass Members. The injuries to New Jersey Plaintiff and New Jersey Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

794.    Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to New Jersey Plaintiff and New Jersey Subclass Members, such that prospective injunctive relief is necessary.

795.    New Jersey Plaintiff and New Jersey Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, including, but not limited to, actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees and/or costs, as well as any other just and proper relief, as provided by N.J.S.A. 56:8-19 and applicable law.

## FORTY NINTH CLAIM FOR RELIEF

### NEW MEXICO UNFAIR PRACTICES ACT

### N.M. Stat. Ann. § 57-12-1, *et seq.*

### (Brought on behalf of New Mexico Plaintiff and the New Mexico Subclass)

796.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

797.    New Mexico Plaintiff and New Mexico Subclass Members are or were residents of New Mexico and/or purchased Beech-Nut Baby Foods in New Mexico.

798.    New Mexico Plaintiff and New Mexico Subclass Members are actual or potential consumers of Beech-Nut Baby Foods.

799.    Defendant is a "person" as defined by N.M. Stat. Ann. § 57-12-2(A).

800.    At all times mentioned herein, Beech-Nut engaged in "trade" or "commerce" as defined by N.M. Stat. Ann. § 57-12-2(C) in New Mexico in that they engaged in the advertising, offering for sale, sale, and distribution of property or any other articles, commodities, or things of value in New Mexico.

801.    The New Mexico Unfair Practices Act (NMUPA) provides that "[u]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce are unlawful." N.M. Stat. Ann. § 57-12-3.

802.    Beech-Nut engaged in deceptive trade practices in the sale of consumer goods, in the course of trade or commerce, in violation of N.M. Stat. Ann. § 57-12-3, *et seq*., including but not limited to the following:

(a)    Caused confusion or misunderstanding as to the source, sponsorship, approval or certification of Beech-Nut Baby Goods, in violation of N.M. Stat. Ann. § 57-12-2(D)(2);

(b)    Represented that Beech-Nut Baby Foods have sponsorship, approval, characteristics, ingredients, uses, or benefits that they do not have, in violation of N.M. Stat. Ann. § 57-12-2(D)(5);

(c)    Represented that Beech-Nut Baby Foods are of a particular standard, quality or grade when Beech-Nut knew or should have know that they are of another, in violation of N.M. Stat. Ann. § 57-12-2(D)(7);

(d)    Knowingly represented and advertised that Beech-Nut Baby Foods are healthy, nutritious, and safe for consumption by infants and young children while intending to sell Beech-Nut Baby Foods that contain or materially risk containing elevated levels of heavy metals, in violation of N.M. Stat. Ann. § 57-12-2(D)(14); and

(e)     Failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals when such failure to disclose such information was intended to induce Plaintiffs and the Classes to enter into transactions to purchase Beech-Nut Baby Foods, in violation of N.M. Stat. Ann. § 57-12-2(D)(14).

803.    Beech-Nut's false or misleading representations and omissions were made knowingly. Beech-Nut repeatedly advertised on the labels for Beech-Nut Baby Foods, on its websites, and through national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe, healthy, and suitable for infant and child consumption. Beech-Nut failed to disclose the material information, which it knew or should have known, that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals.

804.    Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, New Mexico Plaintiff and New Mexico Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less, because it contains or materially risks containing elevated levels of toxic heavy metals.

805.    Beech-Nut's deceptive trade practices, which occurred in Beech-Nut's ordinary course of business, caused injury in fact and actual damages to New Mexico Plaintiff and New Mexico Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods New Mexico Plaintiff and New Mexico Subclass Members purchased, which allowed

Defendant to profit at the expense of New Mexico Plaintiff and New Mexico Subclass Members. The injuries to New Mexico Plaintiff and New Mexico Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

806.    Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to New Mexico Plaintiff and New Mexico Subclass Members, such that prospective injunctive relief is necessary.

807.    New Mexico Plaintiff and New Mexico Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, including, but not limited to, actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees and/or costs, as well as any other just and proper relief, as provided by N.M. Stat. Ann. § 57-12-1 *et seq.* and applicable law.

## FIFTIETH CLAIM FOR RELIEF

### NEW YORK CONSUMER PROTECTION LAW

### N.Y. Gen. Bus. Law § 349

### (Brought on behalf of New York Plaintiff and the New York Subclass)

808.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

809.    New York Plaintiff and New York Subclass Members are or were residents of New York and/or purchased Beech-Nut Baby Foods in New York.

810.    New York Plaintiff and New York Subclass Members are actual or potential consumers of Beech-Nut Baby Foods.

811.    At all times mentioned herein, Beech-Nut engaged in "trade" or "commerce" in New York in that they engaged in the advertising, offering for sale, sale, and distribution of property or any other articles, commodities, or things of value in New York.

812.    N.Y. Gen. Bus. Law § 349(a) provides "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

813.    For the reasons discussed herein, Defendant violated and continues to violate N.Y. Gen. Bus. Law § 349 by engaging in the herein described deceptive or unfair acts or practices proscribed by N.Y. Gen. Bus. Law § 349. Beech-Nut's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

814.    Beech-Nut's deceptive trade practices significantly impacted the public because Defendant sells Beech-Nut Baby Foods nationwide, including in New York, and there are millions of consumers of Beech-Nut Baby Foods, including New York Plaintiff and New York Subclass Members.

815.    Beech-Nut repeatedly advertised on the labels for Beech-Nut Baby Foods, on its websites, and through national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe, healthy, and suitable for infant and child consumption. Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals.

816.    Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or materially risked containing elevated levels of

toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, New York Plaintiff and New York Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less,  because it contains or materially risks containing elevated levels of toxic heavy metals.

817.   Beech-Nut's deceptive trade practices caused injury in fact and actual damages to New York Plaintiff and New York Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods New York Plaintiff and New York Subclass Members purchased, which allowed Defendant to profit at the expense of New York Plaintiff and New York Subclass Members. The injuries to New York Plaintiff and New York Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

818.   Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary pursuant to N.Y. Gen. Bus. Law § 349(h),, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to New York Plaintiff and New York Subclass Members, such that prospective injunctive relief is necessary.

819.   New York Plaintiff and New York Subclass Members seek actual damages and attorneys' fees and are entitled to injunctive and equitable relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, including, but not limited to, actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees and/or costs, as well as any other just and proper relief, as provided by N.Y. Gen. Bus. Law § 349 and applicable law.

## FIFTY FIRST CLAIM FOR RELIEF

### NEW YORK FALSE ADVERTISING LAW

### N.Y. Gen. Bus. Law § 350

### (Brought on behalf of New York Plaintiff and the New York Subclass)

820.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

821.    New York Plaintiff and New York Subclass Members are or were residents of New York and/or purchased Beech-Nut Baby Foods in New York.

822.    New York Plaintiff and New York Subclass Members are actual or potential consumers of Beech-Nut Baby Foods.

823.    At all times mentioned herein, Beech-Nut engaged in "trade" or "commerce" in New York in that they engaged in the advertising, offering for sale, sale, and distribution of property or any other articles, commodities, or things of value in New York.

824.    N.Y. Gen. Bus. Law § 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

825.    Beech-Nut's untrue and misleading statements significantly impacted the public because Defendant sells Beech-Nut Baby Foods nationwide, including in New York, and there are millions of consumers of Beech-Nut Baby Foods, including New York Plaintiff and New York Subclass Members.

826.    As set forth herein, Defendant's claims that Beech-Nut Baby Foods are healthy, nutritious, made from the best ingredients, and safe for consumption are literally false, due to their unsafe levels of toxic heavy metals, and likely to deceive the public.

827.    Defendant's claims that Beech-Nut Baby Foods are healthy, nutritious, made from the best ingredients, and safe for consumption are untrue or misleading, as is failing to mention the presence of toxic heavy metals in Beech-Nut Foods.

828.    Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or had a material risk of containing elevated levels of toxic heavy metals.

829.    Defendant knew, or reasonably should have known, that all these claims were untrue or misleading and likely to deceive the public.

830.    As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Plaintiffs and members of the Class suffered damages by purchasing Beech-Nut Baby Foods because they received a product that was worthless, and/or worth less,  because it contains or has a material risk of containing elevated levels of toxic heavy metals, and they would not have purchased Beech-Nut Baby Foods had they known this fact.

831.    Beech-Nut's deceptive trade practices caused injury in fact and actual damages to New York Plaintiff and New York Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods New York Plaintiff and New York Subclass Members purchased, which allowed Defendant to profit at the expense of New York Plaintiff and New York Subclass Members.

832.    Defendant's conduct is ongoing and continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to New York Plaintiff and New York Subclass Members, such that prospective injunctive relief is necessary pursuant to N.Y. Gen. Bus. Law § 350-e.

833.    New York Plaintiff and New York Subclass Members seek actual damages and reasonable attorneys' fees and are entitled to injunctive and equitable relief, and restitution in the amount they spent on Beech-Nut Baby Foods, as provided by N.Y. Gen. Bus. Law § 350 and applicable law.

## FIFTY SECOND CLAIM FOR RELIEF

## NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT

## N.C. Gen. Stat. Ann. § 75-1, *et seq.*

### (Brought on behalf of North Carolina Plaintiff and the North Carolina Subclass)

834.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

835.    North Carolina Plaintiff and North Carolina Subclass Members are or were residents of North Carolina and/or purchased Beech-Nut Baby Foods in North Carolina.

836.    North Carolina Plaintiff and North Carolina Subclass Members are actual or potential consumers of Beech-Nut Baby Foods.

837.    At all times mentioned herein, Beech-Nut engaged in "commerce" in North Carolina in that they engaged in the advertising, sale, and distribution of goods, property, commodities, or things of value in North Carolina.

838.    The North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA") provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. Ann. § 75-1.1.

839.    For the reasons discussed herein, Defendant violated and continues to violate NCUDTPA by engaging in the herein described deceptive or unfair acts or practices proscribed by N.C. Gen. Stat. Ann. § 75-1 *et seq*. Beech-Nut's acts and practices, including its material

omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

840.    Beech-Nut repeatedly advertised on the labels for Beech-Nut Baby Foods, on its websites, and through national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe, healthy, and suitable for infant and child consumption. Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals.

841.    Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, North Carolina Plaintiff and North Carolina Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less, because it contains or materially risks containing elevated levels of toxic heavy metals.

842.    Beech-Nut's deceptive trade practices caused injury in fact and actual damages to North Carolina Plaintiff and North Carolina Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods North Carolina Plaintiff and North Carolina Subclass Members purchased, which allowed Defendant to profit at the expense of North Carolina Plaintiff and North Carolina Subclass Members. The injuries to North Carolina Plaintiff and North Carolina Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

843.    Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to North Carolina Plaintiff and North Carolina Subclass Members, such that prospective injunctive relief is necessary.

844.    North Carolina Plaintiff and North Carolina Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, including, but not limited to, actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees and/or costs, as well as any other just and proper relief, as provided by N.C. Gen. Stat. Ann. § 75-16 and applicable law.

## FIFTY THIRD CLAIM FOR RELIEF

## NORTH DAKOTA UNLAWFUL SALES OR ADVERTISING PRACTICES ACT

## N.D. Cent. Code Ann. § 51-15-01, *et seq*.

### (Brought on behalf of North Dakota Plaintiff and the North Dakota Subclass)

845.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

846.    North Dakota Plaintiff and North Dakota Subclass Members are or were residents of North Dakota and/or purchased Beech-Nut Baby Foods in North Dakota.

847.    North Dakota Plaintiff and North Dakota Subclass Members are actual or potential consumers of Beech-Nut Baby Foods.

848.    Beech-Nut is a "person" as defined by N.D. Cent. Code Ann. § 51-15-01(4).

849.    At all times mentioned herein, Beech-Nut engaged in "sale" of "merchandise" in North Dakota as each term defined by N.D. Cent. Code Ann. § 51-15-01 in that they engaged in the sale, offer to sale, or attempt to sell objects, wares, goods and commodities for consideration in North Dakota.

850.    Beech-Nut also engaged in "advertisement" in North Dakota through "attempt[ing] by publication, dissemination, solicitation, or circulation, oral or written, to induce, directly or indirectly, any person to enter into any obligation or acquire any title or interest in any merchandise." N.D. Cent. Code Ann. § 51-15-01.

851.    N.D. Cent. Code Ann. § 51-15-02 provides that "[t]he act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is declared to be an unlawful practice. The act, use, or employment by any person of any act or practice, in connection with the sale or advertisement of any merchandise, which is unconscionable or which causes or is likely to cause substantial injury to a person which is not reasonably avoidable by the injured person and not outweighed by countervailing benefits to consumers or to competition, is declared to be an unlawful practice."

852.    For the reasons discussed herein, Defendant violated and continues to violate the North Dakota Unlawful Sales or Advertising Practices Act (USAPA) by engaging in the herein described deceptive or unfair acts or practices proscribed by N.D. Cent. Code Ann. § 51-15-02. Beech-Nut's acts and practices, including its material omissions, described herein, were likely to, intended to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

853.    Beech-Nut repeatedly advertised on the labels for Beech-Nut Baby Foods, on its websites, and through national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe, healthy, and suitable for infant and child consumption. Beech-Nut failed

to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals.

854.    Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, North Dakota Plaintiff and North Dakota Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less, because it contains or materially risks containing elevated levels of toxic heavy metals.

855.    Beech-Nut's deceptive trade practices caused injury in fact and actual damages to North Dakota Plaintiff and North Dakota Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods North Dakota Plaintiff and North Dakota purchased, which allowed Defendant to profit at the expense of North Dakota Plaintiff and North Dakota Subclass Members. The injuries to North Dakota Plaintiff and North Dakota Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

856.    unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to North Dakota Plaintiff and North Dakota Subclass Members, such that prospective injunctive relief is necessary.

857.    North Dakota Plaintiff and North Dakota Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, as provided by N.D. Cent. Code Ann. § 51-15-07 and applicable law.

## FIFTY FOURTH CLAIM FOR RELIEF

## OHIO CONSUMER SALES PRACTICES ACT

## Ohio Rev. Code Ann. § 1345.01, *et seq*.

### (Brought on behalf of Ohio Plaintiff and the Ohio Subclass)

858.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

859.     Ohio Plaintiff and Ohio Subclass Members are or were residents of Ohio and/or purchased Beech-Nut Baby Foods in Ohio.

860.     Ohio Plaintiff and Ohio Subclass Members are "consumers" within the meaning of Ohio Rev. Code Ann. § 1345.01(D) that engaged in "consumer transactions" as defined by Ohio Rev. Code Ann. § 1345.01(A) with Defendant when they purchased Beech-Nut Baby Foods.

861.     At all times mentioned herein, Defendant was a "supplier" as defined by Ohio Rev. Code Ann. § 1345.01(C), in that they were a "seller" that was "engaged in the business of effecting or soliciting consumer transactions" in Ohio.

862.     The Ohio Consumer Sales Practices Act ("OSCPA"), Ohio Rev. Code Ann. §§ 1345.02, provides that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction" and that "[s]uch an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction."

863.     Beech-Nut engaged in deceptive, unfair, and unlawful trade acts or practices, in the course of consumer transactions, in violation of Ohio Rev. Code Ann. §§ 1345.02, including but not limited to the following:

(a)     Made a false representation that they knew or should have known was false as to the sponsorship, approval, performance, characteristics, ingredients, uses, and benefits of Beech-Nut Baby Foods, in violation of Ohio Rev. Code Ann. § 1345.02(1);

(b)      Represented that Beech-Nut Baby Foods are of a particular standard, quality grade, style or model when Beech-Nut knew or should have known they were of another, in violation of Ohio Rev. Code Ann. § 1345.02(2);

(c)      Represented that Beech-Nut Baby Foods are healthy, nutritious, and safe for consumption by infants and young children when it knew or should have known Beech-Nut Baby Foods contain or materially risk containing elevated levels of heavy metals; and

(d)      Failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals when such failure to disclose such information was intended to induce Plaintiffs and the Classes to enter into transactions to purchase Beech-Nut Baby Foods.

864.    As detailed herein, Beech-Nut's deceptive trade practices significantly impacted the public because Defendant sells Beech-Nut Baby Foods nationwide, including in Ohio, and there are millions of actual or potential consumers of Beech-Nut Baby Foods, including Ohio Plaintiff and Ohio Subclass Members.

865.    Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or had a material risk of containing elevated levels of toxic heavy metals.

866.    As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Ohio Plaintiff and Ohio Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less,  because it contains or has a material risk of containing elevated levels of toxic heavy metals.

867.     Beech-Nut's deceptive trade practices caused injury in fact and actual damages to Ohio Plaintiff and Ohio Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Ohio Plaintiff and Ohio Subclass Members purchased, which allowed Defendant to profit at the expense of Ohio Plaintiff and Ohio Subclass Members. The injuries to Ohio Plaintiff and Ohio Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

868.     Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Ohio Plaintiff and Ohio Subclass Members, such that prospective injunctive relief is necessary.

869.     Ohio Plaintiff and Ohio Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair, unlawful, and deceptive acts and practices, including, but not limited to, actual damages, statutory damages, restitution, penalties, injunctive relief, attorneys' fees, and/or costs, as well as any other just and proper relief, pursuant to Ohio Rev. Code Ann. § 1345.09 and applicable law.

## FIFTY FIFTH CLAIM FOR RELIEF

## OKLAHOMA CONSUMER PROTECTION ACT

### Okla. Stat. tit. 15, § 751, *et seq.*

### (Brought on behalf of Oklahoma Plaintiff and the Oklahoma Subclass)

870.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

871.     Oklahoma Plaintiff and Oklahoma Subclass Members are or were residents of Oklahoma and/or purchased Beech-Nut Baby Foods in Oklahoma.

872.     Defendant is a "person" as defined by Okla. Stat. § 15-752(1).

873.   Defendant engages in "consumer transactions" as defined by Okla. Stat. § 15-752(2) by "advertising" or "offering for sale or purchase" or selling "article[s], commodity[ies], or thing[s] of value" "for purposes that are personal, household, or business oriented." The Oklahoma Consumer Protection Act ("OCPA"), Okla. Stat. § 15-753.prohibits a person from "engag[ing] in a practice which is declared unlawful, including "unfair trade practices" as defined by Okla. Stat. § 15-752(14) and "deceptive trade practices" as defined by Okla. Stat. § 15-752(13).

874.   Defendant engaged in deceptive, unfair, and unlawful trade acts or practices in the course of trade or commerce, in violation of Okla. Stat § 15-751, *et seq.*, including but not limited to:

(a) Made a false or misleading representation its branding of Beech-Nut Baby Foods as a safe, legally compliant good that is safe for consumption when Defendant knew or should known that Beech-Nut Baby Foods contain or materially risk containing elevated levels of heavy metals and harmful toxins, in violation of Okla. Stat. § 15-753(2);

(b)  Falsely represented the characteristics, ingredients, uses, and benefits of Beech-Nut Baby Foods, in violation of Okla. Stat. § 15-753(5);

(c) Falsely represented that the Beech-Nut Baby Foods were of a particular standard, quality, or grade, when it knew or should have known that they were of another in violation of Okla. Stat. § 15-753(7);

(d) Advertised Beech-Nut Baby Foods with an intent not to sell it as advertised, in violation of Okla. Stat. § 15-753(8); and

(e) Committed an "unfair" or "deceptive" trade practice as each of those terms is defined in okla. Stat. § 15-752 by failing to disclose the material information that

226

Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals when such failure to disclose such information was intended to induce Plaintiffs and the Classes to enter into transactions to purchase Beech-Nut Baby Foods, in violation of Okla. Stat. § 15-753(20).

(f) Made a false or misleading representation, knowingly or with reason to know, as to the source, sponsorship, approval, or certification of the subject of a consumer transaction, in violation of Okla. Stat. § 15-753(8).

875.   For the reasons discussed herein, Defendant violated and continues to violate the OCPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by Okla. Stat. § 15-751 *et seq.* Beech-Nut's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

876.   Beech-Nut repeatedly advertised on the labels for Beech-Nut Baby Foods, on its websites, and through national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe, healthy, and suitable for infant and child consumption. Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals.

877.   Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Oklahoma Plaintiff and Oklahoma Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they

known the truth, and they received a product that was worthless, and/or worth less, because it contains or materially risked containing elevated levels of toxic heavy metals.

878. Beech-Nut's deceptive trade practices caused injury in fact and actual damages to Oklahoma Plaintiff and Oklahoma Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Oklahoma Plaintiff and Oklahoma Subclass Members purchased, which allowed Defendant to profit at the expense of Oklahoma Plaintiff and Oklahoma Subclass Members. The injuries to Oklahoma Plaintiff and Oklahoma Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

879. Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Oklahoma Plaintiff and Oklahoma Subclass Members, such that prospective injunctive relief is necessary.

880. Oklahoma Plaintiff and Oklahoma Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, including, but not limited to, actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees and/or costs, as well as any other just and proper relief, as provided by Okla. Stat. §§15-761.1 and applicable law.

## FIFTY SIXTH CLAIM FOR RELIEF

### Oregon Unlawful Trade Practices Act

### Ore. Rev. Stat. §646.605, *et seq.*

### (Brought on behalf of Oregon Plaintiff and the Oregon Subclass)

881. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

882.    Oregon Plaintiff and Oregon Subclass Members are or were residents of Oregon and/or purchased Beech-Nut Baby Foods in Oregon.

883.    Defendant is a "person" as defined by Ore. Rev. Stat. §646.605(4).

884.    Oregon Plaintiff and Oregon Subclass Members are actual or potential consumers of Beech-Nut Baby Foods.

885.    Beech-Nut Baby Foods are "goods" as defined by Ore. Rev. Stat. §646.605(6)(a) in that they "are or may be obtained primarily for personal, family or household purposes."

886.    At all times mentioned herein, Beech-Nut engaged in "trade" or "commerce" in Oregon, as defined by Ore. Rev. Stat. §646.605(8), in that it advertised, offered, or distributed for sale goods or services directly or indirectly affecting the people of Oregon.

887.    The Oregon Unlawful Trade Practices Act ("OUTPA"), Ore. Rev. Stat. §§ 646.607 and 646.608, prohibits the use of unconscionable tactics and misleading representations in connection with the of selling goods in the conduct of a person's business in trade or commerce:

(a) Made a false representation as to the characteristics, ingredients, uses, or benefits of Beech-Nut Baby Foods, in violation of Ore. Rev. Stat. § 646.605(1)(e).

(b) Made a materially false representation as to the standard, quality, or grade of Beech-Nut Baby Foods, in violation of Ore. Rev. Stat. §646.608(1)(g);

(c) Represented that Beech-Nut Baby Foods are healthy, nutritious, and safe for consumption by infants and young children when it knew or should have known Beech-Nut Baby Foods contain or materially risk containing elevated levels of heavy metals, in violation of Ore. Rev. Stat. §646.608(1)(u);

(d) Failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals when such failure to

disclose such information was intended to induce Plaintiffs and the Classes to enter into transactions to purchase Beech-Nut Baby Foods, in violation Ore. Rev. Stat. §646.607(1);

(e) Caused likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of Beech-Nut Baby Goods, in violation of Ore. Rev. Stat. § 646.608(b); and

(f) Made a false or misleading representation on the branding of Beech-Nut Baby Foods as a safe, legally compliant good that is safe for consumption when Defendant knew or should have known that Beech-Nut Baby Foods contain or materially risk containing elevated levels of heavy metals and harmful toxins, in violation of Ore. Rev. Stat. § 646.608(b.

888.   For the reasons discussed herein, Defendant violated and continues to violate the OUTPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by Ore. Rev. Stat. §§ 646.605 *et seq.* Beech-Nut's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

889.   Beech-Nut repeatedly advertised on the labels for Beech-Nut Baby Foods, on its websites, and through national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe, healthy, and suitable for infant and child consumption. Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals.

890.   Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being

aware that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Oregon Plaintiff and Oregon Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less,  because it contains or materially risked containing elevated levels of toxic heavy metals.

891.    Beech-Nut's deceptive trade practices caused injury in fact and actual damages to Oregon Plaintiff and Oregon Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Oregon Plaintiff and Oregon Subclass Members purchased, which allowed Defendant to profit at the expense of Oregon Plaintiff and Oregon Subclass Members. The injuries to Oregon Plaintiff and Oregon Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

892.    Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Oregon Plaintiff and Oregon Subclass Members, such that prospective injunctive relief is necessary.

893.    Oregon Plaintiff and Oregon Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, including, but not limited to, actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees and/or costs, as well as any other just and proper relief, as provided by Ore. Rev. Stat. §§ 646.638 and applicable law.

**FIFTY SEVENTH CLAIM FOR RELIEF**

**PENNSYLVANIA UNFAIR TRADE PRACTICES**

**AND CONSUMER PROTECTION LAW**

**73 Pa. Cons. Stat. Ann. § 201-1,** *et seq.*

**(Brought on behalf of Pennsylvania Plaintiff and the Pennsylvania Subclass)**

894.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

Pennsylvania Plaintiff and Pennsylvania Subclass Members are or were residents of Pennsylvania and/or purchased Beech-Nut Baby Foods in Pennsylvania.

895.    At all times mentioned herein, Beech-Nut engaged in "trade" or "commerce" in Pennsylvania, as defined by 73 Pa. Cons. Stat. Ann. § 201-2(3), in that it advertised, offered for sale, and sold provided goods, property, or services primarily for personal, family, or household purposes, and advertised, solicited, offered for sale, and sold "services," "property," "article[s]," "commodit[ies]," or "thing[s] of value" in Pennsylvania.

896.    Pennsylvania Plaintiff and Pennsylvania Subclass Members are persons with the meaning of 73 Pa. Const. Stat. Ann. § 201-2(2) who purchased Beech-Nut Baby Foods "primarily for personal, family or household purposes." 73 Pa. Const. Stat. Ann. § 201-9.2.

897.    Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons. Stat. Ann. § 201-3, provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . are hereby declared unlawful."

898.    Beech-Nut engaged in deceptive, unfair, and unlawful trade acts or practices in the course of their business, vocation, or occupation, in violation of 73 Pa. Cons. Stat. Ann. § 201-3, including but not limited to the following:

(a)     Caused likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of Beech-Nut Baby Goods, in violation of 73 Pa. Cons. Stat. Ann. § 201-2(4)(ii)

(b)     Knowingly or recklessly made a false representation as to the characteristics, ingredients, uses, and benefits of Beech-Nut Baby Foods, in violation of 73 Pa. Cons. Stat. Ann. § 201-3(v);

(c)     Represented that Beech-Nut Baby Foods are healthy, nutritious, and safe for consumption by infants and young children when it knew or should have known Beech-Nut Baby Foods contain or materially risk containing elevated levels of heavy metals, in violation of 73 Pa. Cons. Stat. Ann. § 201-3(xxi);

(d)     Advertised Beech-Nut Baby Foods with an intent not to sell it as advertised, in violation of 73 Pa. Cons. Stat. Ann. § 201-3; and

(e)     Failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals when such failure to disclose such information was intended to induce Plaintiffs and the Classes to enter into transactions to purchase Beech-Nut Baby Foods, in violation of 73 Pa. Cons. Stat. Ann. § 201-3(xxi).

899.    As detailed herein, Beech-Nut's deceptive trade practices significantly impacted the public because Defendant sells Beech-Nut Baby Foods nationwide, including in Pennsylvania, and there are millions of actual or potential consumers of Beech-Nut Baby Foods, including Pennsylvania Plaintiff and Pennsylvania Subclass Members.

900.    Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods

without being aware that Beech-Nut Baby Foods contained or had a material risk of containing elevated levels of toxic heavy metals.

901.    As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Pennsylvania Plaintiff and Pennsylvania Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less,  because it contains or has a material risk of containing elevated levels of toxic heavy metals.

902.    Beech-Nut's deceptive trade practices caused injury in fact and actual damages to Pennsylvania Plaintiff and Pennsylvania Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Pennsylvania Plaintiff and Pennsylvania Subclass Members purchased, which allowed Defendant to profit at the expense of Pennsylvania Plaintiff and Pennsylvania Subclass Members. The injuries to Pennsylvania Plaintiff and Pennsylvania Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

903.    Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Pennsylvania Plaintiff and Pennsylvania Subclass Members, such that prospective injunctive relief is necessary.

904.    Pennsylvania Plaintiff and Pennsylvania Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, including, but not limited to, actual damages, restitution, penalties, injunctive and declaratory

relief, attorneys' fees and/or costs, as well as any other just and proper relief, as provided by 73 Pa. Cons. Stat. Ann. § 201-9.2 and applicable law.

## FIFTY EIGHTH CLAIM FOR RELIEF

### Rhode Island Deceptive Trade Practices Act

### R.I. Gen. Laws §§6-13.1, *et seq.*

### (Brought on behalf of Rhode Island Plaintiff and the Rhode Island Subclass)

905.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

906.    Rhode Island Plaintiff and Rhode Island Subclass Members are or were residents of Rhode Island and/or purchased Beech-Nut Baby Foods in Rhode Island.

907.    Defendant is a "person" as defined by R.I. Gen. Laws §6-13.1-1(3).

908.    At all times mentioned herein, Beech-Nut engaged in "trade" or "commerce" in Rhode Island, as defined by R.I. Gen. Laws §6-13.1-1(5) in that it provided goods, property, or services primarily for personal, family, or household purposes, and advertised, solicited, offered for sale, and sold goods or services. The Rhode Island Deceptive Trade Practices Act ("RIDTPA") , R.I. Gen. Laws §6-13.1-2, prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

909.    For the reasons discussed herein, Defendant violated and continues to violate the RIDTPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by R.I. Gen. Laws §§6-13.1, *et seq.* Beech-Nut's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

910.    Beech-Nut repeatedly advertised on the labels for Beech-Nut Baby Foods, on its websites, and through national advertising campaigns, among other items, that Beech-Nut Baby

Foods were and are safe, healthy, and suitable for infant and child consumption. Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals.

911.    Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Rhode Island Plaintiff and Rhode Island Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less, because it contains or materially risked containing elevated levels of toxic heavy metals.

912.    Defendant's deceptive trade practices caused injury in fact and actual damages to Rhode Island Plaintiff and Rhode Island Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Rhode Island Plaintiff and Rhode Island Subclass Members purchased, which allowed Defendant to profit at the expense of Rhode Island Plaintiff and Rhode Island Subclass Members. The injuries to Rhode Island Plaintiff and Rhode Island Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

913.    Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Rhode Island Plaintiff and Rhode Island Subclass Members, such that prospective injunctive relief is necessary.

914.    Rhode Island Plaintiff and Rhode Island Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices,

including, but not limited to, actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees and/or costs, as well as any other just and proper relief, as provided by R.I. Gen. Laws §§6-13.1-5.2 and applicable law.

### FIFTY NINTH CLAIM FOR RELIEF

**South Carolina Unfair Trade Practices Act**

**S.C. Code Ann. §§39-5-10, *et seq.***

**(Brought on Behalf of South Carolina Plaintiff and the South Carolina Subclass)**

915.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

916.    South Carolina Plaintiff and South Carolina Subclass Members are or were residents of South Carolina and/or purchased Beech-Nut Baby Foods in South Carolina.

917.    Defendant is a "person" as defined by S.C. Code Ann. §39-5-10(a).

918.    At all times mentioned herein, Beech-Nut engaged in "trade" or "commerce" in Rhode Island, as defined by S.C. Code Ann. §39-5-10(b) in that it provided goods, property, or services primarily for personal, family, or household purposes, and advertised, solicited, offered for sale, and sold goods or services.

919.    The South Carolina Unfair Trade Practices Act ("SCUTPA"). S.C. Code Ann. §39-5-20, prohibits any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

920.    For the reasons discussed herein, Defendant violated and continues to violate the SCUTPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by S.C. Code Ann. §§39-5-10, *et seq.*  Beech-Nut's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

921.    Beech-Nut repeatedly advertised on the labels for Beech-Nut Baby Foods, on its websites, and through national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe, healthy, and suitable for infant and child consumption. Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals.

922.    Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, South Carolina Plaintiff and South Carolina Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less, because it contains or materially risked containing elevated levels of toxic heavy metals.

923.    Beech-Nut's deceptive trade practices caused injury in fact and actual damages to South Carolina Plaintiff and South Carolina Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods South Carolina Plaintiff and South Carolina Subclass Members purchased, which allowed Defendant to profit at the expense of South Carolina Plaintiff and South Carolina Subclass Members. The injuries to South Carolina Plaintiff and South Carolina Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

924.    Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to South Carolina

Plaintiff and South Carolina Subclass Members, such that prospective injunctive relief is necessary.

925.    South Carolina Plaintiff and South Carolina Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, including, but not limited to, actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees and/or costs, as well as any other just and proper relief, as provided by S.C. Code Ann. §39-5-140 and applicable law.

## SIXTIETH CLAIM FOR RELIEF

**South Dakota Deceptive Trade Practices and Consumer Protection Act**

**S.D. Codified Laws § 37-24-1, *et seq.***

**(Brought on behalf of South Dakota Plaintiff and the South Dakota Subclass)**

926.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

927.    South Dakota Plaintiff and South Dakota Subclass Members are or were residents of South Dakota and/or purchased Beech-Nut Baby Foods in South Dakota.

928.    Defendant is a "person" as defined by S.D. Codified Laws § 37-24-1(8).

929.    South Dakota's Deceptive Trade Practices and Consumer Protection Act ("SDDTPCPA"), S.D. Codified Laws § 37-24-6(1), makes it unlawful for any person to "knowingly act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby."

930.    Defendant willfully and knowingly engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts it

intended others to rely upon in connection with the sale or advertisement of "merchandise", as defined by S.D. Codified Laws § 37-24-1(7), in violation of S.D. Codified Laws § 37-24-6(1).

931.    For the reasons discussed herein, Defendant violated and continues to violate the SDDTPCPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by S.D. Codified Laws § 37-24-1, *et seq.*  Beech-Nut's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

932.    Beech-Nut repeatedly advertised on the labels for Beech-Nut Baby Foods, on its websites, and through national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe, healthy, and suitable for infant and child consumption. Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals.

933.    Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, South Dakota Plaintiff and South Dakota Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less, because it contains or materially risked containing elevated levels of toxic heavy metals.

934.    Beech-Nut's deceptive trade practices caused injury in fact and actual damages to South Dakota Plaintiff and South Dakota Subclass Members in the form of the loss or

diminishment of value of Beech-Nut Baby Foods South Dakota Plaintiff and South Dakota Subclass Members purchased, which allowed Defendant to profit at the expense of South Dakota Plaintiff and South Dakota Subclass Members. The injuries to South Dakota Plaintiff and South Dakota Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

935.   Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to South Dakota Plaintiff and South Dakota Subclass Members, such that prospective injunctive relief is necessary.

936.   South Dakota Plaintiff and South Dakota Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, including, but not limited to, actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees and/or costs, as well as any other just and proper relief, as provided by S.D. Codified Laws § 37-24-31 and applicable law.

## SIXTY FIRST CLAIM FOR RELIEF

### TENNESSEE CONSUMER PROTECTION ACT

### Tenn. Code Ann. § 47-18-101, *et seq.*

### (Brought on behalf of Tennessee Plaintiff and the Tennessee Subclass)

937.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

938.   Tennessee Plaintiff and Tennessee Subclass Members are or were residents of Tennessee and/or purchased Beech-Nut Baby Foods in Tennessee.

939.   Defendant is a "person" as defined by Tenn. Code Ann. § 47-18-103(14).

940.   Tennessee Plaintiff and Tennessee Subclass Members are actual or potential consumers as defined by Tenn. Code Ann. § 47-18-103(3) of Beech-Nut Baby Foods.

941.    At all times mentioned herein, Beech-Nut engaged in "trade," "commerce" or "consumer transaction" in Tennessee, as defined by Tenn. Code Ann. § 47-18-103(20), in that it engaged in the "advertising," "offering for sale," and "distribution" of any "goods," "services," "property," "articles," "commodities," or "things of value" in Tennessee.

942.    The Tennessee Consumer Protection Act ("TCPA") provides that "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce constitute unlawful acts or practices." Tenn. Code Ann. § 47-18-104(a).

943.    For the reasons discussed herein, Defendant knowingly and willfully violated and continues to violate the TCPA by engaging in the herein described deceptive or unfair acts or practices proscribed by Tenn. Code Ann. § 47-18-101 *et seq*., including but not limited to:

(a)    Caused likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of Beech-Nut Baby Goods, in violation of Tenn. Code Ann. § 47-18-104(b)(2)

(b)    Represented that Beech-Nut Baby Goods have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have, in violate on of Tenn. Code Ann. § 47-18-104(b)(5);

(c)    Represented that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another, Tenn. Code Ann. § 47-18-104(b)(7); and

(d)    Advertised goods or services with intent not to sell them as advertised, Tenn. Code Ann. § 47-18-104(b)(9).

944. Beech-Nut's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

945. Beech-Nut repeatedly advertised on the labels for Beech-Nut Baby Foods, on its websites, and through national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe, healthy, and suitable for infant and child consumption. Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals.

946. Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Tennessee Plaintiff and Tennessee Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less, because it contains or materially risks containing elevated levels of toxic heavy metals which subjected them to unwarranted health and safety risks and monetary damages.

947. Beech-Nut's deceptive trade practices caused injury in fact and actual damages to Tennessee Plaintiff and Tennessee Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Tennessee Plaintiff and Tennessee Subclass Members purchased, which allowed Defendant to profit at the expense of Tennessee Plaintiff and Tennessee Subclass Members. The injuries to Tennessee Plaintiff and Tennessee Subclass Members were to legally

protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

948.     Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Tennessee Plaintiff and Tennessee Subclass Members, such that prospective injunctive relief is necessary.

949.     Tennessee Plaintiff and Tennessee Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, including, but not limited to, actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees and/or costs, as well as any other just and proper relief, as provided by Tenn. Code Ann. § 47-18-109 and applicable law.

<u>**SIXTY SECOND CLAIM FOR RELIEF**</u>

**TEXAS DECEPTIVE TRADE PRACTICES-CONSUMER PROTECTION ACT**

**Tex. Bus. & Com. Code § 17.41 *et seq.***

**(Brought on behalf of Texas Plaintiff and the Texas Subclass)**

950.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

951.     Texas Plaintiff and Texas Subclass Members are or were residents of Texas and consumers within the meaning of the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.45(4), who purchased Beech-Nut Baby Foods in Texas.

952.     Plaintiffs provided Defendant written notice of the specific complaint and damages to Defendant in accordance with Tex. Bus. & Com. Code § 17.505 by*, inter alia,* a certified letter containing the basis of Plaintiffs' claims.

953.     At all material times herein, Beech-Nut engaged in "trade" or "commerce" as defined by the TDTPA, Tex. Bus. & Com. Code § 17.45(4).

954. The TDTPA, Tex. Bus. & Com. Code § 17.46(a), makes it unlawful to commit "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce."

955. For the reasons discussed herein, Defendant violated and continues to violate the TDTPA by engaging in the herein described unconscionable, false, misleading, deceptive, and unfair acts or practices proscribed by the TDTPA Tex. Bus. & Com. Code §§ 17.41 *et seq*., including but not limit the following:

(a) Caused confusion or misunderstanding as to the source, sponsorship, approval, or certification of Beech-Nut Baby Foods, in violation of Tex. Bus. & Com. Code § 17.46(b)(2);

(b) Representing that Beech-Nut Baby Foods have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have, in violation of Tex. Bus. & Com. Code § 17.46(b)(5);

(c) Representing that goods or services are of a particular standard, quality, or grade when they are of another, Tex. Bus. & Com. Code § 17.46(b)(7);

(d) Advertising goods or services with intent not to sell them as advertised, Tex. Bus. & Com. Code § 17.46(b)(9);

(e) Failing to disclose information concerning its goods or services which was known at the time of the transaction and such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed, Tex. Bus. & Com. Code § 17.46(b)(24).

956. Beech-Nut's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers

acting reasonably in reliance on Beech-Nut's acts and practices under the circumstances, to their detriment.

957.    Beech-Nut repeatedly advertised, on the labels for Beech-Nut Baby Foods, on its websites, and through national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe, healthy, and suitable for infant and child consumption. Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals.

958.    Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to rely and induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Texas Plaintiff and Texas Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less, because it contains or materially risked containing elevated levels of toxic heavy metals.

959.    Beech-Nut's deceptive trade practices caused injury in fact and actual damages to Texas Plaintiff and Texas Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Texas Plaintiff and Texas Subclass Members purchased, which allowed Defendant to profit at the expense of Texas Plaintiffs and Texas Subclass Members. The injuries to Texas Plaintiffs and Texas Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

960.    Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Texas Plaintiff and Texas Subclass Members, such that prospective injunctive relief is necessary.

961.    Texas Plaintiff and Texas Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and false, misleading, or deceptive acts and practices, including, but not limited to, actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees and/or costs, as well as any other just and proper relief, as provided by Tex. Bus. & Com. Code Ann. § 17.50 and applicable law.

## SIXTY THIRD CLAIM FOR RELIEF

### UTAH CONSUMER SALES PRACTICES ACT

### Utah Code Ann. §§13-11-1, *et seq.*

### (Brought on behalf of Utah Plaintiff and the Utah Subclass)

962.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

963.    Utah Plaintiff and Utah Subclass Members are or were residents of Utah and/or purchased Beech-Nut Baby Foods in Utah.

964.    Defendant is a "person" as defined by Utah Code Ann. §13-11-3(5).

965.    At all relevant times, Defendant was a "supplier" in connection with "consumer transactions" as those terms are each defined by Utah Code Ann. §13-11-3 (5) & (6).

966.    Utah's Consumer Sales Practices Act ("UCSPA"), Utah Code Ann. §13-11-4, prohibits any "deceptive act or practice by a supplier in connection with a consumer transaction… whether it occurs before, during, or after the transaction."

967.    The USCPA, Utah Code Ann. §13-11-5, also prohibits any "unconscionable act or practice by a supplier in connection with a consumer transaction…whether it occurs before, during, or after the transaction."

968.    Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts it intended others to rely upon in connection consumer transactions in violation Utah Code Ann. §13-11-1, *et seq,* including but not limited to:

(a)    Indicated that the Beech-Nut Baby Foods has sponsorship, approval, performance characteristics, accessories, uses, or benefits, that it does not have, in violation of Utah Code Ann. § Section 13-11-4(2)(a);

(b)    Made a false or misleading representation on the branding of Beech-Nut Baby Foods as a safe, legally compliant good that is safe for consumption when Defendant knew or should have known that Beech-Nut Baby Foods contain or materially risk containing elevated levels of heavy metals and harmful toxins, in violation of Utah Code Ann. §§ 13-11-4(2)(a) & (i);

(c)    Made a false representation as to the standard, quality, or grade of Beech-Nut Baby Foods, in violation of Utah Code Ann. § 13-11-4(2)(b); and

(d)    Represented, including through adveriements, that Beech-Nut Baby Foods are healthy, nutritious, and safe for consumption by infants and young children when it knew or should have known Beech-Nut Baby Foods contain or materially risk containing elevated levels of heavy metals, in violation of Utah Code Ann. § 13-11-5.

969.    For the reasons discussed herein, Defendant violated and continues to violate the UCSPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices

proscribed by Utah Code Ann. §§13-11-1, *et seq.*  Beech-Nut's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

970.   Beech-Nut repeatedly advertised on the labels for Beech-Nut Baby Foods, on its websites, and through national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe, healthy, and suitable for infant and child consumption. Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals.

971.   Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Utah Plaintiff and Utah Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less,  because it contains or materially risked containing elevated levels of toxic heavy metals.

972.   Beech-Nut's deceptive trade practices caused injury in fact and actual damages to Utah Plaintiff and Utah Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Utah Plaintiff and Utah Subclass Members purchased, which allowed Defendant to profit at the expense of Utah Plaintiff and Utah Subclass Members. The injuries to Utah Plaintiff and Utah Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

973.    Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Utah Plaintiff and Utah Subclass Members, such that prospective injunctive relief is necessary.

974.    Utah Plaintiff and Utah Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, including, but not limited to, actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees and/or costs, as well as any other just and proper relief, as provided by Utah Code Ann. §13-11-19 and applicable law.

## SIXTY FOURTH CLAIM FOR RELIEF

### Utah Truth in Advertising Act

### Utah Code Ann. § 13-11a-1, *et seq.*

### (Brought on behalf of Utah Plaintiff and the Utah Subclass)

975.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

976.    Utah Plaintiff and Utah Subclass Members are or were residents of Utah and/or purchased Beech-Nut Baby Foods in Utah.

977.    Defendant is a "person" as defined by Utah Code Ann. § 13-11a-2(7).

978.    Utah's Truth in Advertising Act ("UTIAA"), Utah Code Ann. § 13-11a-1, *et seq.,* prohibits any "deceptive, misleading, and false advertising practices and forms in Utah."

979.    Beech-Nut willfully and purposely engaged in unfair, unconscionable, and deceptive acts or practices in the conduct of trade or commerce In Utah, in violation of Utah Code Ann. §13-11a-3, including but not limited to the following:

(a)     Caused likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of Beech-Nut Baby Foods, in violation of Utah Code Ann. § 13-11a-3(1)(b);

(b)     Made a false or misleading representation on the branding of Beech-Nut Baby Foods as a safe, legally compliant good that is safe for consumption when Defendant knew or should have known that Beech-Nut Baby Foods contain or materially risk containing elevated levels of heavy metals and harmful toxins, in violation of Utah Code Ann. § 13-11a-3(1)(b);

(c)     Section 13-11a-3(c): Caused likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;

(d)     Made a false representation as to the characteristics, ingredients, uses, or benefits of Beech-Nut Baby Foods, in violation of Utah Code Ann. § 13-11a-3(1)(e);

(e)     Made a false representation as to the standard, quality, or grade of Beech-Nut Baby Foods, in violation of Utah Code Ann. § 13-11a-3(1)(g); and

(f)     Advertised Beech-Nut Baby Foods with an intent not to sell it as advertised, in violation of Utah Code § 13-11a-3(1)(i).

980.    For the reasons discussed herein, Defendant violated and continues to violate the UTIAA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by Utah Code Ann. §13-11a-1, *et seq.*  Beech-Nut's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

981.    Beech-Nut repeatedly advertised on the labels for Beech-Nut Baby Foods, on its websites, and through national advertising campaigns, among other items, that Beech-Nut Baby

Foods were and are safe, healthy, and suitable for infant and child consumption. Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals.

982.    Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Utah Plaintiff and Utah Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less,  because it contains or materially risked containing elevated levels of toxic heavy metals.

983.    Beech-Nut's deceptive trade practices caused injury in fact and actual damages to Utah Plaintiff and Utah Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Utah Plaintiff and Utah Subclass Members purchased, which allowed Defendant to profit at the expense of Utah Plaintiff and Utah Subclass Members. The injuries to Utah Plaintiff and Utah Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

984.    Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Utah Plaintiff and Utah Subclass Members, such that prospective injunctive relief is necessary.

985.    Utah Plaintiff and Utah Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, including, but not

limited to, actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees and/or costs, as well as any other just and proper relief, as provided by Utah Code Ann. §13-11a-4 and applicable law.

## SIXTY FIFTH CLAIM FOR RELIEF

### Vermont Consumer Protection Act

### Vt. Stat. Ann. tit. 9, §§2451, *et seq.*

### (Brought on behalf of Vermont Plaintiff and the Vermont Subclass)

986.    Plaintiff incorporates by reference and reallege each and every allegation contained above, as though fully set forth herein.

987.    Vermont Plaintiff and Vermont Subclass Members are or were residents of Vermont and/or purchased Beech-Nut Baby Foods in Vermont.

988.    Vermont Plaintiff and Vermont Subclass Members are "consumers" as defined by Vt. Stat. Ann. tit. 9, §2451(a)(1).

989.    Beech-Nut Baby Foods are "goods" as defined by Vt. Stat. Ann. tit. 9, §2451(a)(2).

990.    Vermont's Consumer Protection Act ("VCPA"), Vt. Stat. Ann. tit. 9, §2453(a). prohibits any "[u]nfair methods of competition in commerce and unfair or deceptive acts or practices in commerce."

991.    Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with trade or commerce leading to damages and/or injury in violation of Vt. Stat. Ann. tit. 9, §2453(a).

992.    For the reasons discussed herein, Defendant violated and continues to violate the VCPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices

proscribed by Vt. Stat. Ann. tit. 9, §§2451, *et seq.* Beech-Nut's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

993.    Beech-Nut repeatedly advertised on the labels for Beech-Nut Baby Foods, on its websites, and through national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe, healthy, and suitable for infant and child consumption. Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals.

994.    Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Vermont Plaintiff and Vermont Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less,  because it contains or materially risked containing elevated levels of toxic heavy metals.

995.    Beech-Nut's deceptive trade practices caused injury in fact and actual damages to Vermont Plaintiff and Vermont Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Vermont Plaintiff and Vermont Subclass Members purchased, which allowed Defendant to profit at the expense of Vermont Plaintiff and Vermont Subclass Members. The injuries to Vermont Plaintiff and Vermont Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

996.   Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Vermont Plaintiff and Vermont Subclass Members, such that prospective injunctive relief is necessary.

997.   Vermont Plaintiff and Vermont Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, including, but not limited to, actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees and/or costs, as well as any other just and proper relief, as provided by Vt. Stat. Ann. tit. 9, §2461(b) and applicable law.

## SIXTY SIXTH CLAIM FOR RELIEF

### VIRGINIA CONSUMER PROTECTION ACT

### Va. Code Ann. §§59.1-196, *et seq.*

### (Brought on behalf of Virginia Plaintiff and the Virginia Subclass)

998.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

999.   Virginia Plaintiff and Virginia Subclass Members are or were residents of Virginia and/or purchased Beech-Nut Baby Foods in Virginia.

1000.   Defendant is a "person" as defined by Va. Code Ann. §59.1-198.

1001.   The Virginia Consumer Protection Act ("VCPA"), Va. Code Ann. §59.1-200, prohibits any "fraudulent acts or practices committed by a supplier in connection with a consumer transaction."

1002.   Defendant knowingly and willfully engaged in deceptive, unfair, unlawful, and fraudulent acts or practices in connection with consumer transactions in violation of Va. Code Ann. §59.1-196, *et seq.*, including but not limited to:

(a)     Misrepresented the source, sponsorship, approval, or certification of Beech-Nut Baby Foods, in violation of Va. Code Ann. § 59.1-200(A)(2);

(b)     Made a false representation as to the characteristics, ingredients, uses, or benefits of Beech-Nut Baby Foods, in violation of Va. Code Ann. § 59.1-200(A)(5);

(c)     Made a false representation as to the standard, quality, or grade of Beech-Nut Baby Foods, in violation of Va. Code Ann. § 59.1-200(A)(6);

(d)     Advertised Beech-Nut Baby Foods with an intent not to sell it as advertised, in violation of Va. Code Ann. § 59.1-200(A)(8); and

(e)     Failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals when such failure to disclose such information was intended to induce Plaintiffs and the Classes to enter into transactions to purchase Beech-Nut Baby Foods, in violation of Va. Code Ann. § 59.1-200(A)(14).

1003.   For the reasons discussed herein, Defendant violated and continues to violate the VCPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by Va. Code Ann. §§59.1-196, *et seq.*  Beech-Nut's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

1004.   Beech-Nut repeatedly advertised on the labels for Beech-Nut Baby Foods, on its websites, and through national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe, healthy, and suitable for infant and child consumption. Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals.

1005.   Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Virginia Plaintiff and Virginia Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less,  because it contains or materially risked containing elevated levels of toxic heavy metals.

1006.   Beech-Nut's deceptive trade practices caused injury in fact and actual damages to Virginia Plaintiff and Virginia Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Virginia Plaintiff and Virginia Subclass Members purchased, which allowed Defendant to profit at the expense of Virginia Plaintiff and Virginia Subclass Members. The injuries to Virginia Plaintiff and Virginia Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

1007.   Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Virginia Plaintiff and Virginia Subclass Members, such that prospective injunctive relief is necessary.

1008.   Virginia Plaintiff and Virginia Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, including, but not limited to, actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees and/or costs, as well as any other just and proper relief, as provided by Va. Code Ann. §59.1-204 and applicable law.

## SIXTY SEVENTH CLAIM FOR RELIEF

### WASHINGTON CONSUMER PROTECTION ACT

### Wash. Rev. Code §§19.86.010, *et seq.*

### (Brought on behalf of Washington Plaintiff and the Washington Subclass)

1009.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

1010.   Washington Plaintiff and Washington Subclass Members are or were residents of Washington and/or purchased Beech-Nut Baby Foods in Washington.

1011.   Defendant is a "person" as defined by Wash. Rev. Code §19.86.010(1).At all times mentioned herein, Beech-Nut engaged in "trade" or "commerce" in Washington, as defined by Wash. Rev. Code §19.86.010(2), in that it engaged in the "sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington."

1012.   Washington's Consumer Protection Act ("WCPA"), Wash. Rev. Code §19.86.020, prohibits any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

1013.   For the reasons discussed herein, Defendant violated and continues to violate the WCPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by Wash. Rev. Code §19.86.010, *et seq.*  Beech-Nut's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

1014.   Beech-Nut repeatedly advertised on the labels for Beech-Nut Baby Foods, on its websites, and through national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe, healthy, and suitable for infant and child consumption. Beech-Nut failed

to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals.

1015.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest in that Defendant's acts: (1) violated the specific legislative declaration of public interest impact described by Wash. Rev. Code §19.86.920; (2) injured other persons as alleged above; (3) had the capacity to injure other persons; and (4) continues to have the capacity to injure other persons.

1016.   Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Washington Plaintiff and Washington Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less, because it contains or materially risked containing elevated levels of toxic heavy metals.

1017.   Beech-Nut's deceptive trade practices caused injury in fact and actual damages to Washington Plaintiff and Washington Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Washington Plaintiff and Washington Subclass Members purchased, which allowed Defendant to profit at the expense of Washington Plaintiff and Washington Subclass Members. The injuries to Washington Plaintiff and Washington Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

1018.   Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Washington Plaintiff and Washington Subclass Members, such that prospective injunctive relief is necessary.

1019.   Washington Plaintiff and Washington Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, including, but not limited to, actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees and/or costs, as well as any other just and proper relief, as provided by Wash. Rev. Code §19.86.090 and applicable law.

## SIXTY EIGHTH CLAIM FOR RELIEF

### WEST VIRGINIA CONSUMER PROTECTION ACT

### W. Va. Code § 46A-6-101, *et seq.*

### (Brought on behalf of West Virginia Plaintiff and the West Virginia Subclass)

1020.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

1021.   West Virginia Plaintiff and West Virginia Subclass Members are or were residents of West Virginia and/or purchased Beech-Nut Baby Foods in West Virginia.

1022.   Plaintiffs provided notice to Defendant pursuant to W.Va. Code §46-6-106(b) of the West Virginia Consumer Protection Act ("WVCPA") by, *inter alia*, sending a certified letter containing the basis of Plaintiffs' claims.

1023.   West Virginia Plaintiff and West Virginia Subclass Members are actual or potential "consumers" of Beech-Nut Baby Goods, as defined by W. Va. Code § 46A-6-102(2).

1024.   At all times mentioned herein, Beech-Nut engaged in "sale" or "advertisement" in connection with "trade" or "commerce" in Washington, as those terms are defined by W. Va. Code §46A-6-102.

1025.   West Virginia's Consumer Protection Act ("WVCPA"), W. Va. Code § 46A-6-104, prohibits any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

1026.   Beech-Nut engaged in deceptive, unfair, and unlawful trade acts or practices in the course of trade or commerce, in violation of W. Va. Code §§46A-6-101, *et seq.,* including but not limited to the following:

(a)     Caused likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of Beech-Nut Baby Goods, in violation of W. Va. Code § 46A-6-102(7)(B);

(b)     Falsely represented the characteristics, ingredients, uses, and benefits of Beech-Nut Baby Foods, in violation of W. Va. Code § 46A-6-102(7)(E);

(c)     Represented that the Beech-Nut Baby Foods were of a particular standard, quality, or grade, when it knew or should have known that they were of another in violation of W. Va. Code § 46A-6-102(7)(G);

(d)     Advertised Beech-Nut Baby Foods with an intent not to sell it as advertised, in violation of W. Va. Code § 46A-6-102(7)(I);

(e)     Represented that Beech-Nut Baby Foods are healthy, nutritious, and safe for consumption by infants and young children when it knew or should have known Beech-Nut Baby Foods contain or materially risk containing elevated levels of heavy metals, in violation of W. Va. Code § 46A-6-102(7)(L); and

(f)     Failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals when such failure to disclose such information was intended to induce Plaintiffs and the Classes to enter into

transactions to purchase Beech-Nut Baby Foods, in violation of W. Va. Code § 46A-6-102(7)(M).

1027.   For the reasons discussed herein, Defendant violated and continues to violate the WVCPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by W. Va. Code § 46A-6-101, *et seq.*  Beech-Nut's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

1028.   Beech-Nut repeatedly advertised on the labels for Beech-Nut Baby Foods, on its websites, and through national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe, healthy, and suitable for infant and child consumption. Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals.

1029.   Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, West Virginia Plaintiff and West Virginia Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less, because it contains or materially risked containing elevated levels of toxic heavy metals.

1030.   Beech-Nut's deceptive trade practices caused injury in fact and actual damages to West Virginia Plaintiff and West Virginia Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods West Virginia Plaintiff and West Virginia

Subclass Members purchased, which allowed Defendant to profit at the expense of West Virginia Plaintiff and West Virginia Subclass Members. The injuries to West Virginia Plaintiff and West Virginia Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

1031.   Plaintiffs provided notice to Defendant pursuant to W.Va. Code §46-6-106(b) by, *inter alia,* sending a certified letter containing the basis of Plaintiffs' claims.

1032.   Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to West Virginia Plaintiff and West Virginia Subclass Members, such that prospective injunctive relief is necessary.

1033.   West Virginia Plaintiff and West Virginia Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, including, but not limited to, actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees and/or costs, as well as any other just and proper relief, as provided by W.Va. Code § 46A-6-106 and applicable law.

## SIXTY NINTH CLAIM FOR RELIEF

### WISCONSIN DECEPTIVE TRADE PRACTICES ACT

### Wis. Stat. §100.18, *et seq.*

### (Brought on behalf of Wisconsin Plaintiff and the Wisconsin Subclass)

1034.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

1035.   Wisconsin Plaintiff and Wisconsin Subclass Members are or were residents of Wisconsin and/or purchased Beech-Nut Baby Foods in Wisconsin.

1036.   Defendant is a "person" as defined by Wis. Stat. §990.01.

1037.   .Wis. Stat. §100.18(1) prohibits the use of fraudulent representations by a person "with the intent to sell, distribute, or increase the consumption of merchandise or anything offered by such person, directly or indirectly, to the public" including but not limited to any "advertisement, announcement, statement, or representation of any kind to the public relating to the purchase, sale…or use of…merchandise which advertisement, announcement, statement, or representation… is untrue, deceptive, or misleading."

1038.   Wis. Stat. §100.183 further specifically prohibits untrue, deceptive, or misleading practices with respect to the sale of food.

1039.   For the reasons discussed herein, Defendant violated and continues to violate the Wisconsin Deceptive Trade Practices Act by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by Wis. Stat. §§100.18, *et seq.*  Beech-Nut's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

1040.   Beech-Nut repeatedly advertised on the labels for Beech-Nut Baby Foods, on its websites, and through national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe, healthy, and suitable for infant and child consumption. Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals.

1041.   Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or

practices, Wisconsin Plaintiff and Wisconsin Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless, and/or worth less,  because it contains or materially risked containing elevated levels of toxic heavy metals.

1042.   Beech-Nut's deceptive trade practices caused injury in fact and actual damages to Wisconsin Plaintiff and Wisconsin Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Wisconsin Plaintiff and Wisconsin Subclass Members purchased, which allowed Defendant to profit at the expense of Wisconsin Plaintiff and Wisconsin Subclass Members. The injuries to Wisconsin Plaintiff and Wisconsin Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

1043.   Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Wisconsin Plaintiff and Wisconsin Subclass Members, such that prospective injunctive relief is necessary.

1044.   Wisconsin Plaintiff and Wisconsin Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, including, but not limited to, actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees and/or costs, as well as any other just and proper relief, as provided by Wis. Stat. §100.18 and applicable law.

## SEVENTIETH CLAIM FOR RELIEF

### WYOMING CONSUMER PROTECTION ACT

### Wyo. Stat. Ann. § 40-12-101, *et seq.*

### (Brought on behalf of Wyoming Plaintiff and the Wyoming Subclass)

1045.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

1046.   Wyoming Plaintiff and Wyoming Subclass Members are or were residents of Wyoming and/or purchased Beech-Nut Baby Foods in Wyoming.

1047.   Defendant is a "person" as defined by Wyo. Stat. Ann. §40-12-102(a)(i).

1048.   Plaintiffs provided notice to Defendant pursuant to Wyo. Stat. Ann. §40-12-109 of the Wyoming Consumer Protection Act ("WCPA").

1049.   The WCPA prohibits any "unfair or deceptive acts or practices." Wyo. Stat. Ann. §40-12-105.

1050.   Beech-Nut engaged in deceptive, unfair, and unlawful trade acts or practices in the course of trade or commerce, Wyo. Stat. Ann. §§40-12-101, *et seq.*, including but not limited to the following:

(a)   Represented that Beech-Nut Baby Foods has a source, origin, sponsorship, approval, or uses it does not have, in violation of Wyo. Stat. Ann. § 40-12-105(a)(i);

(b)   Represented that the Beech-Nut Baby Foods were of a particular standard, quality, or grade, when they were of another in violation of Wyo. Stat. Ann. § 40-12-105(a)(iii);

(c)   Advertised Beech-Nut Baby Foods with an intent not to sell it as advertised, in violation of Wyo. Stat. Ann. § 40-12-105(a)(x);

(d)   Failed to disclose the material information that Beech-Nut Baby Foods contained or materially risked containing elevated levels of toxic heavy metals when such failure to disclose such information was intended to induce Plaintiffs and the Classes to enter into transactions to purchase Beech-Nut Baby Foods, in violation of Wyo. Stat. Ann. § 40-12-105(a)(xv); and

(e)  Falsely represented the characteristics, ingredients, uses, and benefits of Beech-Nut

Baby Foods, in violation of Wyo. Stat. Ann. § 40-12-105(a)(xv).

1051.   For the reasons discussed herein, Defendant violated and continues to violate the

WCPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices

proscribed by Wyo. Stat. Ann. §§40-12-101, *et seq*.  Beech-Nut's acts and practices, including its

material omissions, described herein, were likely to, and did in fact, deceive and mislead members

of the public, including consumers acting reasonably under the circumstances, to their detriment.

1052.   Beech-Nut repeatedly advertised, on the labels for Beech-Nut Baby Foods, on its

websites, and through national advertising campaigns, among other items, that Beech-Nut Baby

Foods were and are safe, healthy, and suitable for infant and child consumption. Beech-Nut failed

to disclose the material information that Beech-Nut Baby Foods contained or materially risked

containing elevated levels of toxic heavy metals.

1053.   Beech-Nut's representations and omissions were material because they were likely

to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being

aware that Beech-Nut Baby Foods contained or materially risked containing elevated levels of

toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or

practices, Wyoming Plaintiff and Wyoming Subclass Members suffered damages by purchasing

Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they

known the truth, and they received a product that was worthless, and/or worth less,  because it

contains or materially risked containing elevated levels of toxic heavy metals.

1054.   Beech-Nut's deceptive trade practices caused injury in fact and actual damages to

Wyoming Plaintiff and Wyoming Subclass Members in the form of the loss or diminishment of

value of Beech-Nut Baby Foods Wyoming Plaintiff and Wyoming Subclass Members purchased,

which allowed Defendant to profit at the expense of Wyoming Plaintiff and Wyoming Subclass Members. The injuries to Wyoming Plaintiff and Wyoming Subclass Members were to legally protected interests. The gravity of the harm of Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

1055.   Plaintiffs provided notice to Defendant pursuant to Wyo. Stat. Ann. §40-12-109 by, *inter alia*, sending a certified letter containing the basis of Plaintiffs' claims

1056.   Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm to Wyoming Plaintiff and Wyoming Subclass Members, such that prospective injunctive relief is necessary.

1057.   Wyoming Plaintiff and Wyoming Subclass Members seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, including, but not limited to, actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees and/or costs, as well as any other just and proper relief, as provided by Wyo. Stat. Ann. §40-12-108 and applicable law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against the Defendant as to each and every count, including:

A.      An order certifying this case as a class action on behalf of the Class and Subclasses above, appointing Plaintiffs and their counsel to represent the Class and Subclasses, and requiring Defendant to bear the costs of class notice;

B.      A declaration that Defendant's actions, as described herein, constitute violations of the claims described herein;

C.      An award to Plaintiffs and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiffs and the proposed Classes as a result of its unlawful, unfair and fraudulent business practices described herein;

D.      An order enjoining Defendant from selling the Beech-Nut Baby Foods until the elevated levels of heavy metals are removed or full disclosure of the presence of such appears on all labels, packaging, and advertising;

E.      An order enjoining Defendant from selling the Beech-Nut Baby Foods in any manner suggesting or implying that they are healthy, nutritious, and safe for consumption by infants and young children;

F.      An order requiring Defendant to engage in a corrective advertising campaign and engage in further necessary affirmative injunctive relief, such as recalling existing products;

G.      An order requiring Defendant to engage in testing of its finished products to measure the levels of heavy metals;

H.      An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's past conduct.

I.      An award of all economic, monetary, actual, statutory, consequential, compensatory, and treble damages caused by Defendant's conduct;

J.      An award to Plaintiffs and the proposed Classes of punitive damages, as allowed by law;

K.       An award to Plaintiffs and their counsel of their reasonable expenses and attorneys'

fees;

L.       An award to Plaintiffs and the proposed Classes of pre- and post-judgment interest,

to the extent allowable; and

L.       For such further relief that the Court may deem just and proper

### DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury for all issues so triable.

Dated:  June 24, 2022

Respectfully submitted,

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

By: /s/ Erin Green Comite
Erin Green Comite (Bar Roll
#702705)
156 S. Main St., P.O. Box 192
Colchester, CT 06415
Tel.: (860) 537-5537
Fax: (860) 537-4432
ecomite@scott-scott.com

Joseph P. Guglielmo (Bar Roll #702673)
Sean T. Masson (Bar Roll #702794)
The Helmsley Building
230 Park Ave., 17th
Floor New York, N.Y.
10169 Tel.: (212) 223-
6334
Fax: (212) 223-6444
jguglielmo@scott-
scott.com
smasson@scott-scott.com

Steven L. Bloch (Bar Roll #509339)
Ian W. Sloss (Bar Roll #702557)
Zachary Rynar (Bar Roll #702588)
**SILVER GOLUB & TEITELL
LLP**
184 Atlantic Street
Stamford, CT 06901

Tel.: (203) 325-4491
Fax: (203) 325-3769
sbloch@sgtlaw.com
isloss@sgtlaw.com
zrynar@sgtlaw.com

*Co-Lead Interim Counsel for Plaintiffs and the
Putative Class*

James E. Hacker (Bar Roll #101888)
Randolph Treece (Bar Roll #
102735)
Julie A. Nociolo (Bar Roll #519914)

**E. STEWART JONES HACKER MURPHY,
LLP**
28 Second Street, Suite 203
Troy, N.Y. 12180
Tel.: (518) 274-5820
Fax: (518) 274-5875
jhacker@joneshacker.com
rtreece@joneshacker.com
jnociolo@joneshacker.com

*Liaison Counsel*

Aaron M. Zigler (Bar Roll #703294)
Robin H. Silverman (*pro hac vice*)
**ZIGLER LAW GROUP, LLC**
308 S. Jefferson Street, Suite 333
Chicago, IL 60661
Tel.: (312) 535-5995
aaron@ziglerlawgroup.com
robin.horton@ziglerlawgroup.com

Troy E. Walton (*pro hac vice*)
Stephen J. Telken (*pro hac vice*)
**WALTON TELKEN, LLC**
241 N. Main Street
Edwardsville, IL 62025
Tel.: (618) 307-9880
twalton@waltontelken.com
stelken @waltontelken.com

*Additional Counsel for Plaintiffs*