**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re BEECH-NUT NUTRITION | : | Master File No. 1:21-CV-00133-DNH-CFH |
| COMPANY BABY FOOD LITIGATION | : | |
| | : | |
| This Document Relates to: | : | |
| ALL ACTIONS | : | |
| | : | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO BEECH-NUT
NUTRITION COMPANY'S MOTION TO DISMISS THE CONSOLIDATED AMENDED
<u>CLASS ACTION COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. SUMMARY OF ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A. The Primary Jurisdiction Doctrine Is Inapplicable . . . . . . . . . . . . . . . . . . . . . 6

        1. Whether the Baby Foods Are Deceptively Labeled and
Marketed Is Within the Conventional Experience of this Court . . . . . . . . 7

        2. There Is No Prior Application to the FDA or Substantial
Danger of Inconsistent Rulings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        3. Applying the Doctrine Would Needlessly Delay Resolution
of the Case, Prejudicing Plaintiffs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    B. Plaintiffs' Claims Are Not Preempted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    C. Defendant Does Not Address the Sufficiency of Plaintiffs'
Consumer Protection Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    D. Plaintiffs' Affirmative Misrepresentation-Based Claims Are Adequately
Pleaded . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        1. Plaintiffs' Allegations Satisfy Rules 8 and 9(b) . . . . . . . . . . . . . . . . . . . 15

        2. Plaintiffs Identify Actionable Misleading Affirmative
Statements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        3. Plaintiffs Plausibly Plead that Beech-Nut's Deceptive
Conduct Would Mislead the Reasonable Consumer . . . . . . . . . . . . . . . . 20

        4. Plaintiffs Sufficiently Allege Reliance . . . . . . . . . . . . . . . . . . . . . . . . . . 21

        5. Plaintiffs Sufficiently Allege Scienter . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    E. Plaintiffs Adequately Allege Beech-Nut Had a Duty to Disclose That
Its Baby Foods Contain or Risk Containing Toxic Heavy Metals . . . . . . . . . . 23

1.      Beech-Nut Is Wrong That a Fiduciary or Special Relationship
        Is Required to State Omission-Based Fraud Claims Under
        Certain Laws  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

2.      Plaintiffs Allege Beech-Nut Has Superior Knowledge Regarding
        the Amount of Heavy Metals in Its Baby Foods  . . . . . . . . . . . . . . . . . . . 24

3.      Plaintiffs Allege Beech-Nut Made Partial and Ambiguous
        Statements of Fact that Were Misleading Absent Further
        Disclosure  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

4.      Plaintiffs Allege Beech-Nut Actively Concealed Material
        Information Regarding the Baby Foods' Contaminants from
        the Public . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

5.      Beech-Nut Had a Duty to Disclose Unreasonable Safety Risk  . . . . . . . . 28

F.      Plaintiffs Have Article III Standing for Their Injunctive Relief Claims  . . . . . . . 29

G.      Beech-Nut's Other Arguments as to the Common Law Claims Lack
        Merit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

        1.      Plaintiffs' Breach of Express Warranty Claim Is Adequately
                Pleaded . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

        2.      Plaintiffs' Implied Warranty Claim Is Adequately Pleaded  . . . . . . . . . 33

        3.      The Economic Loss Rule Does Not Bar Plaintiffs'
                Negligent Misrepresentation Claims Under Most State Laws
                misrepresentation claim under most states' laws . . . . . . . . . . . . . . . . . . . 34

        4.      Plaintiffs' Unjust Enrichment Claim Is Not Duplicative  . . . . . . . . . . . 35

IV.     CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

**TABLE OF AUTHORITIES**

Cases                                                                                    Page

*4D-Enter., LLC v. Aalto Hyperbaric Oxygen, Inc.*,
    2020 WL 13200492 (E.D. Va. May 22, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Acbel Polytech v. Fairchild Semiconductor Intern.*,
    2014 WL 4656608 (D. Mass. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Ackerman v. Coca-Cola Co.*,
    2010 WL 2925955 (E.D.N.Y. July 21, 2010) . . . . . . . . . . . . . . . . . . . . . . . 17, 19, 21, 22

*Ackerman v. Coca-Cola Co.*,
    2013 WL 7044866 (E.D.N.Y. July 18, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Acquard v. Big Heart Pet Brands, Inc.*,
    2020 WL 12904361 (W.D.N.Y. Nov. 30, 2020),
    *report and recommendation adopted*,
    2021 WL 6550088 (W.D.N.Y. Jan. 4, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
    404 F.3d 566 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Ahern v. Apple Inc.*,
    411 F. Supp. 3d 541 (N.D. Cal. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Allen v. Similasan Corp.*,
    306 F.R.D. 635 (S.D. Cal. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Ault v. J.M. Smucker Co.*,
    2014 WL 1998235 (S.D.N.Y. May 15, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Axon v. Citrus World, Inc.*,
    354 F. Supp. 3d 170 (E.D.N.Y. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Backus v. General Mills, Inc.*,
    122 F. Supp. 3d 909 (N.D. Cal. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Barreto v. Westbrae Natural, Inc.*,
    518 F. Supp. 3d 795 (S.D.N.Y. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Barrett v. Brian Bemis Auto World*,
    408 F. Supp. 2d 539 (N.D. Ill. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Baykeeper v. NL Indus., Inc.,*
    660 F.3d 686 (3d Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Belmont Condo. Ass'n, Inc. v. Geibel,*
    74 A.3d 10 (App. Div. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Birdsong v. Apple, Inc.,*
    590 F. 3d 955 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Bland v. Sequel Nat. Ltd.,*
    2019 WL 4674337 (N.D. Cal. Aug. 2, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33

*Brass v. Am. Film Techs., Inc.,*
    987 F.2d 142 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Buettner v. R.W. Martin & Sons, Inc.,*
    47 F.3d 116 (4th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Carter Hawley Hale Stores, Inc. v. Conley,*
    372 So.2d 965  (Fla. 3d DCA 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Celex Grp., Inc. v. Exec. Gallery, Inc.,*
    877 F. Supp. 1114 (N.D. Ill. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Chacanaca v. Quaker Oats Co.,*
    752 F. Supp. 2d 1111(N.D. Cal. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Chery v. Conduent Educ. Servs., LLC,*
    581 F. Supp. 3d 436 (N.D.N.Y. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Colangelo v. Champion Petfoods USA, Inc.,*
    2020 WL 777462 (N.D.N.Y. Feb. 18, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Cooper v. Anheuser-Busch, LLC,*
    553 F. Supp. 3d 83 (S.D.N.Y. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 21

*Cortina v. Goya Foods, Inc.,*
    94 F. Supp. 3d 1174 (S.D. Cal. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Daniel v. Mondelez Int'l, Inc.,*
    287 F. Supp. 3d 177  (E.D.N.Y. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Davis v. Hain Celestial Grp., Inc.,*
    297 F. Supp. 3d 327 (E.D.N.Y. 2018)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956, 967 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Davidson Lumber Sales, Inc. v. Bonneville Inv., Inc.*,
    794 P.2d 11 (Utah 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*De Shazer v. Nat'l RV Holdings, Inc.*,
    391 F. Supp. 2d 791 (D. Ariz. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Devane v. L'Oreal USA, Inc.,
    2020 WL 5518484 (S.D.N.Y. Sept. 14, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Diemert v. Johnson*,
    299 N.W.2d 546 (N.D. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*District of Columbia v. Beech-Nut Nutrition Company*,
    Case No. 2021 CA 001292 B 2021 WL 9593409
    (D.C. Super. Sep. 21, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 16, 21

*Driscoll v. Standard Hardware, Inc.*,
    785 N.W.2d 805 (Minn. Ct. App. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Drobnak v. Andersen Corp.*,
    2008 WL 80632 (D. Minn. Jan. 8, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Duran v. Henkel of Am., Inc.*,
    450 F. Supp. 3d 337 (S.D.N.Y. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Ellis v. Tribune TV Co.*,
    443 F.3d 71 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8

*Feliciano v. Gen. Motors LLC*,
    2016 WL 9344120 (S.D.N.Y. Mar. 31, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Figueroa v. Foster*,
    864 F.3d 222 (2d Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Figy v. Frito-Lay N. Am. Inc.*,
    67 F. Supp. 3d 1075 (N.D. Cal. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Ford v. Rensselaer Polytechnic Inst.*,
    507 F. Supp. 3d 406 (N.D.N.Y. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Forsher v. J.M. Smucker Co.*,
    2020 WL 1531160 (N.D. Ohio Mar. 31, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Fortune View Condo. Ass'n v. Fortune Star Dev. Co.*,
    151 Wash. 2d 534 (Wash. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Gabriele v. Am. Home Mortg. Serv., Inc.*,
    503 Fed. Appx. 89 (2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Gavilanes v. Gerber Prods. Co.*,
    2021 WL 5052896 (E.D.N.Y Nov. 1, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Geis v. Nestle Waters N. Am., Inc.*,
    321 F. Supp. 3d 230 (D. Mass. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Geier v. Am. Honda Motor Co.*,
    529 U.S. 861 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Gibson v. Quaker Oats Co.*,
    2017 WL 3508724 (N.D. Ill. Aug. 14, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Glacier Gen. Assur. Co. v. Cas. Indem. Exch.*,
    435 F. Supp. 855 (D. Mont. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Global Crossing Bandwidth, Inc. v. OLS, Inc.*,
    2009 WL 763483 (W.D.N.Y. Mar. 19, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Glover v. Bausch & Lomb Inc.*,
    6 F.4th 229 3 (2d Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*,
    8 F. Supp. 3d 467 (S.D.N.Y. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Gonzalez v. Pepsico, Inc.*,
    489 F. Supp. 2d 1233 (D. Kan. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33

*Goya Foods, Inc. v. Tropicana Prods., Inc.*,
    846 F.2d 8481 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 24

*Greene v. Gerber Prod. Co.*,
    262 F. Supp. 3d 38 (E.D.N.Y. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Guvenoz v. Target Corp.*,
    30 N.E.3d 404 (IL App. (1st) 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

vi

*Hadley v. Kellogg Sales Co.,*
    243 F. Supp. 3d 1074 (N.D. Cal. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Hemmings v. Camping Time RV Centers, LLC,*
    2017 WL 4552896 (N.D. Ga. Oct. 11, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Herron v. Best Buy Co.,*
    924 F. Supp. 2d 1161 (N.D. Cal. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Hesse v. Godiva Chocolatier, Inc.,*
    463 F. Supp.3d 453 (S.D.N.Y. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Holk v. Snapple Bev. Corp.,*
    575 F.3d 329 (3d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Hughes v. Ester C Co.,*
    930 F. Supp. 2d 439 (E.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 22, 23

*In re 5-hour ENERGY Mktg. & Sales Pracs. Litig.,*
    2017 WL 385042 (C.D. Cal. Jan. 24, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*In re Allergan Biocell Textured Breast Implant Prod. Liab. Litig.,*
    537 F. Supp. 3d 679 (D.N.J. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 32

*In re Edgewell Personal Care Litig.,*
    2018 WL 7858623 (E.D.N.Y. Sept. 4, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Frito-Lay v. Am., Inc. All Nat. Litig.,*
    2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*In re Gen. Mills Glyphosate Litig.,*
    2017 WL 2983877 (D. Minn. July 12, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re General Motors Air Conditioning Mktg. and Sales Practice Litig.,*
    406 F. Supp. 3d 618 (E.D. Mich. Sept. 5, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*In re: Gerber Prods. Co. Heavy Metals Baby Food Litig.,*
    Case No. 1:21-cv-269 , 2022 WL 10197651 (E.D. Va. Oct. 17, 2022) . . . . . . . . 10, 19, 23

*In re Kind LLC "Healthy & All Natural" Litig.,*
    287 F. Supp. 3d 457 (S.D.N.Y. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Pracs. Litig.,*
    422 F. Supp. 3d 194 (D.D.C. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*In re MTBE Prods. Liab. Litig.*,
    725 F.3d 65, 96-97 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Plum Baby Food Litig.*,
    No. 4:21-CV-913-YGR (N.D. Cal. Jan. 1, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*,
    2021 WL 222776 (D.N.J. Jan. 22, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33

*In re Volkswagen Timing Chain Prod. Liab. Litig.*,
    2017 WL 1902160 (D.N.J. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*,
    45 F. Supp. 3d 706  (N.D. Ohio 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Jackson-Mau v. Walgreen Co.*,
    18-cv-4868, 2019 WL 5653757 (E.D.N.Y. Oct. 31, 2019) . . . . . . . . . . . . . . . . . . . . . 30

*Johnson v. Smith & Newphew, Inc.*,
    2022 WL 3327767 (W.D.N.C. Aug. 11, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 32

*Kamara v. Pepperidge Farm, Inc.*,
    570 F. Supp. 3d 69 (S.D.N.Y. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Kearney v. Bayerische Motoren Werke Aktiengesellschaft*,
    2018 WL 4144683 (D.N.J. Aug. 29, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Kimca v. Sprout Foods, Inc.*,
    No. BER-L-002538-22 (N.J. Super. Aug. 17, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Kinlaw v. Long Mfg. N.C., Inc.*,
    298 N.C. 494, 259 S.E.2d 552 (N.C. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Kirsopp v. Yamaha Motor Co.*,
    2015 WL 11197829 (C.D. Cal. Jan. 7, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Klaehn v. Cali Bamboo, LLC*,
    2021 WL 3044166 (S.D. Cal. June 14, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 28

*Kochar v. Walmart, Inc.*,
    No. 21-cv-2343-JD (N.D. Cal. Apr. 25, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Koenig v. Boulder Brands, Inc.*,
    995 F. Supp.2d 274 (S.D.N.Y. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Kommer v. Bayer Cons. Health,*
    710 Fed. Appx. 43 (2d Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Kurtz v. Costco Wholesale Corp.,*
    818 Fed. Appx. 57 (2d Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Lam v. Gen. Mills, Inc.,*
    859 F. Supp. 2d 1097 (N.D. Cal. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Lemus v. Rite Aid Corp.,*
    2022 WL 2721385 (C.D. Cal. July 7, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Leonard v. Abbott Lab'ys, Inc.,*
    2012 WL 764199 (E.D.N.Y. Mar. 5, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Liguori v. Hansen,*
    2016 WL 756526 (D. Nev. Feb. 25, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Livery Coach Sol., L.L.C. v. Music Express/E., Inc.,*
    245 F. Supp. 3d 639 (D. Del. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Lockwood v. Conagra Foods, Inc.,*
    597 F. Supp. 2d 1028 (N.D. Cal. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Loduca v. WellPet LLC,*
    2021 WL 2948848 (E.D. Pa. July 13, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Louisville Gas & Elec. Co. v. Continental Field Systems, Inc.,*
    420 F. Supp. 2d 764 (W.D. Ky. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Mac's Homeowners Ass'n v. Gebo,*
    87 N.E.3d 1184 (2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Mancuso v. RFA Brands, LLC,*
    454 F. Supp. 3d 197 (W.D.N.Y. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Mantikas v. Kellogg Co.,*
    910 F.3d 633 (2d Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 20

*Mason v. Reed's Inc.,*
    515 F. Supp. 3d 135 (S.D.N.Y. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*McGee v. S-L Snacks Nat'l,*
    982 F.3d 700 (9th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*McNulty v. Polar Corp.*,
No. 19 CIV. 8903 (LGS), 2020 WL 5658667
(S.D.N.Y. Sept. 23, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Medtronic v. Lohr*,
518 U.S. 470 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Moore v. Trader Joe's Co.*,
4 F.4th 874 (9th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Morales v. Kimberly-Clark Corp.*,
18-cv-7401, 2020 WL 2766050 (S.D.N.Y. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Naiser v. Unilever U.S., Inc.*,
975 F. Supp. 2d 727 (W.D. Ky. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Nat'l Commc'ns Ass'n, Inc. v. Am. Tel. & Tel. Co.*,
46 F.3d 220 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 32

*Newmar Corp. v. McCrary*,
309 P.3d 1021 (Nev. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Nicolet, Inc. v. Nutt*,
525 A.2d 146 (Del. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 28

*Nicosia v. Amazon, Inc.*,
834 F.3d 220 (2d Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Pack & Process, Inc. v. Celotex Corp.*,
503 A.2d 646 (Del. Super. Ct. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Pack v. Damon Corp.*,
434 F.3d 810 (6th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Parks v. Ainsworth Pet Nutrition, LLC*,
377 F. Supp. 3d 241 (S.D.N.Y. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Pelman ex rel. Pelman v. McDonald's Corp.*,
396 F.3d 508 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Perth Amboy Iron Works, Inc. v. Am. Home Assur. Co.*,
543 A.2d 1020 (App. Div. 1988), aff'd, 571 A.2d 294 (1990) . . . . . . . . . . . . . . . . . . . . 14

x

*Petrosino v. Stearn's Prods., Inc.,*
2018 WL 1614349 (S.D.N.Y. Mar. 30, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC,*
221 P.3d 234, 252 (Utah 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Physician's Comm. For Responsible Medicine v. General Mills, Inc.,*
2006 WL 3487651 (E.D. Va. Nov. 30. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Porrazzo v. Bumble Bee Foods, LLC,*
822 F. Supp. 2d 406 (S.D.N.Y. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12, 33

*Plant Food Co-op v. Wolfkill Feed & Fertilizer Corp.,*
633 F.2d 155 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Randy Knitwear v. Am. Cyanamid Co.,*
181 N.E.2d 399 (N.Y. 1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Reid v. GMC Skin Care USA Inc.,*
2016 WL 403497 (N.D.N.Y. Jan. 15, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Robles v. Domino's Pizza, LLC,*
913 F.3d 898 (9th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Samuel-Bassett v. Kia Motor Am., Inc.,*
34 A.3d 1 (Pa. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Schiller v. Tower Semiconductor Ltd.,*
449 F.3d 286 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Schmetter & Assoc. v. Bernzott Capital Advisors,
2019 WL 4640801 (D. Colo. Jul. 18, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Schwartz v. Morgan,*
776 N.W.2d 827 (S.D. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Segedie v. Hain Celestial Grp., Inc.,*
2015 WL 2168374 (S.D.N.Y. May 7, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Short v. Hyundai Motor Co.,*
444 F. Supp. 3d 1267 (W.D. Wash. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Silva v. Hornell Brewing Co., Inc.,*
2020 WL 4586394 (E.D.N.Y. Aug. 10, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Simon v. SeaWorld Parks & Ent., Inc.*,
    2022 WL 1594338 (S.D. Cal. May 19, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Simpson v. Champion Petfoods USA, Inc.*,
    397 F. Supp. 3d 952 (E.D. Ky. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Singleton v. Fifth Generation, Inc.*,
    2016 WL 406295 (N.D.N.Y. Jan. 12, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Smith v. Ethicon Inc.*,
    2021 WL 3578681 (D. Or. May 13, 2021),
    *report and recommendation adopted*,
    2021 WL 3575099 (D. Or. Aug. 12, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Snyder v. Green Roast of Fla. LLC*,
    430 F. Supp. 3d 1297 (S.D. Fla. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Standish-Parkin v. Lorillard Tobacco Co.*,
    786 N.Y.S.2d 13, 14 (3d Dept. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*State v. GAF Corp.*,
    760 P.2d 310 (Utah 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Suarez v. California Nat. Living, Inc.,
    2019 WL 1046662 (S.D.N.Y. Mar. 5, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Summers v. Earth Island Inst.*,
    555 U.S. 167 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Swersky v. Dreyer & Traub*,
    219 A.D.2d 321, 643 N.Y.S.2d 33 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Tassy v. Brunswick Hosp. Ctr., Inc.*,
    296 F.3d 65 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Thomas v. Costco Wholesale Corp.*,
    2014 WL 5872808 (N.D. Cal. Nov. 12, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Tran v. Sioux Honey Ass'n, Coop*,
    2017 WL 5587276 (C.D. Cal. Oct. 11, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Trevillyan v. APX Alarm Sec. Sys., Inc.*,
    2011 WL 11611 (D.S.C. Jan. 3, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Ulbrich v. Groth,*
    310 Conn. 375 (Conn. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Unified School Dist. No. 500 v. U.S. Gypsum Co.,*
    788 F. Supp. 1173 (D. Kan. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*U.S. Tire-Tech, Inc. v. Boeran, B.V.,*
    110 S.W.3d 194 (Tex. App. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Vagias v. Woodmont Properties, L.L.C.,*
    894 A.2d 68 (App. Div. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Van Deusen v. Snead,*
    441 S.E.2d 207 (Va. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Van Valkenberg ex rel. B.G. v. Astrue,*
    2010 WL 2400455 (N.D.N.Y. May 27, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Vt. Plastics, Inc. v. Brine, Inc.,*
    824 F. Supp. 444 (D. Vt. 1993), *aff'd,* 79 F.3d 272 (2d Cir. 1996) . . . . . . . . . . . . . . . 32

*Wai Chu v. Samsung Elec. Am., Inc.,*
    1:18-cv-11742, 2020 WL 1330662 (S.D.N.Y. Mar. 23, 2020) . . . . . . . . . . . . . . . . . . . . 30

*Waters v. Electrolux Home Prod., Inc.,*
    154 F. Supp. 3d 340 (N.D.W. Va. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Watts v. Jackson Hewitt Tax Serv. Inc.,*
    579 F. Supp. 2d 334 (E.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Webb v. Dr Pepper Snapple Grp., Inc.,*
    2018 WL 1955422 (W.D. Mo. Apr. 25, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Williams v. Coca Cola Co.,*
    8:15-CV-1534, 2017 WL 1214503 (N.D.N.Y. Mar. 31, 2017) . . . . . . . . . . . . . . . . . 11, 12

*Williams v. Gerber Prod. Co.,*
    552 F.3d 934 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Zeiger v. WellPet LLC,*
    304 F. Supp. 3d 837 (N.D. Cal. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18, 24, 27, 34

Statutes:

Nutritional Labeling and Education Act, § 6(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

N.J. Stat. Ann. § 56:8-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

N.Y General Business Law § 349 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

N.Y. General Business Law §350 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

N.Y. U.C.C. § 2-313(1)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

N.Y. U.C.C. §2-314(2)(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

N.Y. U.C.C. §2-314(2)(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Other Authorities:

Fed. R. Civ. P. 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Fed. R. Civ. P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Restatement (Second) Torts § 551 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Restatement (Second) of Torts § 552 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

## I.    INTRODUCTION

For years, Beech-Nut Nutrition Company, Inc. ("Beech-Nut" or "Defendant"), a baby food manufacturer holding – and aggressively promoting – a special position of trust with parents and the consuming public, has touted that it has been "testing [its] ingredients for *heavy metals* since 1985," and is "aware of no higher standards in the industry than the ones [it] employ[s]." Beech-Nut represents that it:

> test[s] for up to 255 pesticides and heavy metals (like *lead, cadmium, arsenic* and other nasty stuff). Just like you would, we send the produce back if it's not good enough. *Even in the case of our infant rice cereal, which is already below the proposed FDA limit for arsenic in rice cereals, we still test every, single lot to ensure it's safe to consume.*

To further engender the trust of parents and the consuming public, it also represents that it:

> conduct[s] more than 20 rigorous tests on our delicious purees to ensure that the safety, quality and flavors are just right – before they reach your baby's high chair. So you know that you are feeding your baby only the very best quality…. We know moms, dads, and caregivers depend on our commitment to safety and quality to help keep their children thriving.

Despite these representations, extensive Congressional Reporting, together with testing by Alaska's Department of Environmental Health *funded and reviewed (at Beech-Nut's urging) by the U.S. Food and Drug Administration* ("FDA"), as well as Beech-Nut's own internal testing submitted to and reviewed by the FDA, confirmed Beech-Nut's food safety violations. As a result, Beech-Nut recalled certain rice cereal products because they exceeded FDA limits for inorganic arsenic and, more importantly, *exited the rice cereal market entirely* because Beech-Nut was "concerned about [it's] ability to consistently obtain rice flour well below the FDA guidance level and Beech-Nut specifications for naturally occurring inorganic arsenic."

The Congressional Reporting and testing also uncovered numerous examples of *elevated* levels of arsenic, lead, and cadmium in Beech-Nut baby food products – exposure to which indisputably risks harm to infants and toddlers through accumulated effects (which was the basis for the FDA's sole baby food action level for inorganic arsenic in rice cereal that Beech-Nut violated), hence the reason why Beech-Nut represents that it tests for these toxic heavy metals

(though it does not test for mercury). Significantly, the Congressional Reporting revealed that Beech-Nut does *not* test its finished products (despite its representation that it tests "every, single lot" of rice cereal), that its food additives tested at elevated levels for arsenic, and that other commonly used ingredients contained elevated levels of multiple toxins in a single ingredient, and calling into question Beech-Nut's proclaimed industry leading testing and safety standards as well as the marketing of its entire line of baby food. Indeed, the Congressional Reporting highlighted that Beech-Nut set internal guidelines for lead and cadmium that "far surpass any existing regulatory standard" as well as the levels of any other responding baby food manufacturer, and that Beech-Nut sold products to the public that *exceeded even those comparatively-lax internal limits*.

Beech-Nut's (unsupported) assertions that the Congressional Reporting and testing verified by the FDA are politically motivated and "replete with errors and erroneous assumptions" simply cannot be credited on a motion to dismiss, especially given its own actions to pull product from the shelf and discontinue its successful infant rice cereal product line, which is the most commonly consumed infant instant cereal in the U.S.. Regardless, other reports have also found that, in addition to rice cereal, Beech-Nut's carrot, sweet potato, and oatmeal cereal, all core foods and ingredients in Beech-Nut's products, contained elevated levels of toxic heavy metals. Yet Beech-Nut consistently engaged in public campaigns to blunt or repel these concerns, always touting its commitment to safety through its "rigorous testing protocols."

Through its labeling and marketing practices, Beech-Nut knowingly sold its premium-priced baby foods by misrepresenting and omitting material information about the dangerous levels of toxic heavy metals in its products, which rendered them unsafe and risked harm to infants and toddlers in their developmental phase. Now, after misrepresenting and concealing this danger from parents, Beech-Nut seeks to evade liability for its conduct. But Beech-Nut's Motion lacks merit and should be denied. Notwithstanding Beech-Nut's attempt to recast Plaintiffs' claims, this case is not about "trace" levels of naturally occurring, omnipresent heavy metals but rather the

elevated, dangerous levels of neurotoxic heavy metals that contaminate Beech-Nut's baby foods, borne out in testing verified by the FDA and resulting in Beech-Nut exiting the infant rice cereal market.

Notably, the Superior Court of the District of Columbia denied a motion to dismiss claims made against Beech-Nut by the D.C. Attorney General under the D.C. Consumer Protection Procedures Act ("CPPA") based on similar allegations. *See District of Columbia v. Beech-Nut Nutrition Company*, Case No. 2021 CA 001292 B, 2021 WL 9593409, at *1 (D.C. Super. Sep. 21, 2021). Specifically, the D.C. Superior Court rejected Beech Nut's arguments that it is not liable because (i) its labeling is true; (ii) no reasonable consumer would believe that the products are free of toxic heavy metals because heavy metals (purportedly) are present everywhere in the environment; and (iii) there is no duty to disclose naturally occurring metal content in food, and found that Beech-Nut's product packaging and marketing contain actionable misrepresentations and omissions. *Id*. at 2-5. Tellingly, Beech-Nut's Motion to Dismiss ("Motion") (ECF No. 189) studiously avoids directly addressing the merits of Plaintiffs' consumer protection claims, seemingly attempting to imply that the same formalistic standards of the common law claims – which, in any event, Plaintiffs readily satisfy – equally apply. But Beech-Nut's gloss does not change the fact that the consumer protection laws were designed to broadly address Beech-Nut's deceptive, misleading, and unfair conduct, as recognized by the D.C. Superior Court. This Court should follow the D.C. Superior Court and find that Plaintiffs have adequately alleged their misrepresentation and omissions-based claims. Likewise, Plaintiffs have sufficiently alleged their fraud-based claims, fully demonstrating Beech-Nut had a duty to disclose unsafe levels of toxic heavy metals and its testing deficiencies, and also affirmatively misrepresented that (i) its foods are safe, healthy, and suitable for infants and toddlers at different stages of development as its packaging prominently displays; (ii) that it complies with all available standards; and (iii) that it employs a stringent testing regime.

Privity also does not bar breach of warranty claims and the economic loss rule does not bar

negligent misrepresentation in most states, while Plaintiffs' unjust enrichment claims are independent causes of action, not duplicative, and in any event, may be pled in the alternative. Further, Plaintiffs have standing to pursue injunctive relief notwithstanding that they *now* know about the high levels of toxic heavy metals in Beech-Nut's baby foods. What matters is that Plaintiffs cannot trust Beech-Nut's baby food labels for future purchases.

Finally, and importantly, there is no basis for deferring to the FDA on primary jurisdiction grounds since this Court is capable of adjudicating Plaintiffs' breach of warranty, consumer protection, and misrepresentation and omissions-based claims. Indeed, an FDA action level for inorganic arsenic in rice cereal already exists, which Beech-Nut violated, as evidenced by its recall and exit from the rice cereal market. The FDA's significantly delayed timeline for instituting other heavy metal action levels also militates against the doctrine's application. Any final action level for lead will be delayed until at least *2024*, and there is no timeline to regulate arsenic, cadmium, and mercury, other than a process that will *begin sometime after 2024*. And any future (and likely long-delayed) FDA rulings will be prospective and will not resolve Plaintiffs' claims for past harm. Beech-Nut also fails to identify any federal law or regulation in conflict with Plaintiffs' claims, which is fatal to its federal preemption argument. Thus, Beech-Nut's Motion should be denied.

## II.   SUMMARY OF ALLEGATIONS

Beech-Nut knowingly sells Baby Foods[1] to unsuspecting consumers with deceptive labeling, packaging, and marketing that misrepresents and fails to disclose information concerning the presence (or material risk) of toxic heavy metals such as arsenic, lead, cadmium, and mercury, all particularly neurotoxic to babies and children. ¶¶4-8, 150-65. Beech-Nut does so despite promoting the trustworthiness, safety, and quality of its Baby Foods. ¶¶93, 107-13, 165-70. Beech-Nut promotes this on its packaging and labels, prominently displaying words such as "organic," "natural," "USDA-Certified Organic," "real food for babies," "nothing artificial added," and "non-

---

[1] *See* ECF No. 175, Consolidated Amended Class Action Complaint ("CACC"), ¶115 for complete listing of products at issue. All references to "¶" or "¶¶" are to the CACC.

GMO," represents that it is safe, suitable, and healthy for infants and toddlers at different "Stages" of development, and lists *healthy* heavy metals such as "Iron." (but not toxic heavy metals) ¶¶95-105. Plaintiffs allege it is widely scientifically accepted that these unlisted heavy metals are dangerous neurotoxins that bioaccumulate and can have irreversible long-term effects on a baby's developing brain and nervous systems, even in very small quantities. ¶¶122-48.

Plaintiffs further allege that Beech-Nut, through website representations and public campaigns, assures parents of its strict product testing practices, even though Beech-Nut is unaware of or recklessly disregards the actual levels of toxic heavy metals contained in its finished products because it fails to test them (or fails to test properly). ¶¶10, 108-13, 152, 156, 168-70.  Beech-Nut does not test *at all* for mercury.  ¶150.  Beech-Nut heavily advertises that its products meet "food quality standards you can trust," and that Beech-Nut is "aware of no higher standards in the industry than the ones we employ."  ¶111.  Yet, Beech-Nut has adopted lax internal testing standards.  ¶¶171-73.  Beech-Nut also allows products to be sold in excess of even those lax standards.  ¶¶174-75; 163.  Still, Beech-Nut does not disclose any information on its packaging about the presence (or material risk) of heavy metals despite knowing that reasonable consumers, who lack scientific knowledge, trust manufacturers to sell baby food free from such harmful contaminants. ¶¶9, 91-106, 118-19, 176, 196-97, 330-31, 340. No consumer would knowingly purchase baby foods from a retailer that allowed its baby foods to contain (or risk containing) unsafe levels of arsenic, lead, cadmium, or mercury, in particular where those products are not adequately tested for such contamination. *See, e.g.*, ¶¶85, 179, 203.

On February 4, 2021, the U.S. House of Representatives Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform ("Subcommittee"), released a report titled, "Baby Foods are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury" ("Report"). The Report revealed that Beech-Nut knowingly distributed and sold baby foods with toxic heavy metals. ¶¶4-5, 149-52, 171-75. In September 2021, the Subcommittee released a supplemental report, titled, "New Disclosures Show Dangerous Levels of Toxic Heavy Metals in

Even More Baby Foods" ("Supplemental Report"), reporting that the State of Alaska conducted further testing of Beech-Nut Rice Cereal and found all samples contaminated with "dangerously high" levels of inorganic arsenic, causing Beech-Nut to recall rice cereal products and exit the market segment entirely. ¶¶6-7, 153-54, n.87.

Based on these allegations, Plaintiffs bring claims under the consumer protection statutes of all 50 states and the District of Columbia and common law claims under each of those state laws for breach of express and implied warranties, fraud by omission, and unjust enrichment. Plaintiffs' claims rest on allegations that Beech-Nut warranted, misrepresented, failed to disclose, and/or engaged in unfair and deceptive trade practices relating to three pieces of material information about its Baby Foods, namely, that (1) they contain or were at material risk of containing unsafe levels of heavy metals; (2) Beech-Nut inadequately tested, or never tested, for all four heavy metals in all the ingredients it uses and/or its finished products; and (3) when Beech-Nut does set internal standards, it allows for the sale of Baby Foods with heavy metals in amounts that could cause harm to babies and children. Plaintiffs seek damages for these misrepresentations, material omissions, and unfair and deceptive business practices and appropriate injunctive, equitable, and declaratory relief.[2]

## III.   ARGUMENT

### A.   The Primary Jurisdiction Doctrine Is Inapplicable

The "primary jurisdiction" doctrine is "relatively narrow" in scope, " *Goya Foods, Inc. v. Tropicana Prods., Inc.*, 846 F.2d 848, 851 (2d Cir. 1988); *Ellis v. Tribune TV Co.*, 443 F.3d 71,

---

[2] Beech-Nut requests that the Court judicially notice 16 exhibits.  While Exs. A-C and E-P may be proper for judicial notice, the Court *cannot* consider the exhibits for their truth.  *See Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 412 (S.D.N.Y. 2011). Thus, the Court must reject Beech-Nut's invitation to adopt Beech-Nut's contrary version of the facts presented in its exhibits. Ex. D, an August 2022 report by Healthy Babies Bright Futures ("HBBF"), however, is not appropriate for judicial notice.  Beech-Nut claims this report is incorporated by reference because it is "found in sources cited and relied upon in the CACC."  This is misleading.  Ex. D is not the October 2019 HBBF report that Plaintiffs rely on.  Rather, Ex. D is a later HBBF report that is not cited or referred to in the CACC, and thus, cannot be judicially noticed.  *See, e.g., Lateral Recovery, LLC v. Cap. Merch. Servs., LLC*, 2022 WL 4815615, at *28 (S.D.N.Y. Sept. 30, 2022).

82-83 (2d Cir. 2006), and "the case law establishes that [it] should not be lightly invoked or applied, and that cases in which its application is warranted tend to be the exception, not the norm." *Global Crossing Bandwidth, Inc., v. OLS, Inc.*, 2009 WL 763483, at *2 (W.D.N.Y. Mar. 19, 2009). Primary jurisdiction does not apply when claims involve matters within the "traditional realm of judicial competence." *Tassy v. Brunswick Hosp. Ctr., Inc.*, 296 F.3d 65, 73 (2d Cir. 2002). And, in particular, "[t]he primary jurisdiction doctrine 'is not designed to secure expert advice from agencies every time a court is presented with an issue conceivably within the agency's ambit." *In re Edgewell Personal Care Litig.*, 2018 WL 7858623, *4 (E.D.N.Y. Sept. 4, 2018). Where the "courts or jury are equally well-suited to determine" the matter "the court must not abdicate its responsibility." *Baykeeper v. NL Indus., Inc.*, 660 F.3d 686, 691 (3d Cir. 2011).

> District courts, in their discretion, should consider these non-exclusive factors:
>
> (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made.

*Schiller v. Tower Semiconductor Ltd.*, 449 F.3d 286, 294-95 (2d Cir. 2006). The Second Circuit also instructs courts to "balance the advantages of applying the doctrine against the potential costs resulting from complications and delay in the administrative proceedings." *Ellis*, 443 F.3d at 83. Each factor weighs against invoking the doctrine. In particular, significant delays would result from the FDA's proposed timeline (2024 and beyond) to institute final heavy metal action levels. More importantly, Beech-Nut violated the FDA's sole action level for inorganic arsenic in rice cereal, which it conceded by recalling rice cereal products and exiting the lucrative market segment entirely. At a minimum, this falls squarely to the Court for adjudication.

### 1.   Whether the Baby Foods Are Deceptively Labeled and Marketed Is Within the Conventional Experience of this Court

Beech-Nut depicts the issues in the case as too "complex" for this Court, stating they must be resolved by the FDA. ECF No. 189 ("Br.") at 6-7. Beech-Nut, however, mischaracterizes this case. Plaintiffs allege Beech-Nut's non-disclosures and misrepresentations were materially

misleading to reasonable consumers who, relying on Beech Nut's labels and packaging, purchased the Baby Foods believing them to be safe, healthy, suitable for consumption by infants and toddlers, and adequately tested, when they were not. These issues relating to misrepresentations, non-disclosures, materiality, reliance, and causation fall squarely within the "conventional experience of judges." *Schiller*, 449 F.3d at 295.   Conversely, the FDA has no special expertise in assessing these elements under consumer protection laws.   As one California district court stated, in a substantially similar case, "[t]he Court need not rely on the FDA's expertise or its potential guidance on action levels [for heavy metals in baby food] to determine whether [Plum Baby Food's] alleged omissions are actionable given the allegations of the operative complaint." Ex. 1, ECF No. 125, *In re Plum Baby Food Litig.*, No. 4:21-CV-913-YGR (N.D. Cal. Jan. 1, 2022) ("Plum MTD Order"). Many courts in the Second Circuit have taken the same view.   *See, e.g.*, *Silva v. Hornell Brewing Co., Inc.*, 2020 WL 4586394, at *2 (E.D.N.Y. Aug. 10, 2020); *Gavilanes v. Gerber Prods. Co.*, 2021 WL 5052896, at *3 (E.D.N.Y Nov. 1, 2021); *McNulty v. Polar Corp.*, No. 19 CIV. 8903 (LGS), 2020 WL 5658667 (S.D.N.Y. Sept. 23, 2020), at *6-7 , at *6-7; *In re Edgewell*, 2018 WL 7858623, at *5-6; *Petrosino v. Stearn's Prods., Inc.*, 2018 WL 1614349, at *10 (S.D.N.Y. Mar. 30, 2018); *In re Frito-Lay v. Am., Inc. All Nat. Litig.*, 2013 WL 4647512, at *8 (E.D.N.Y. Aug. 29, 2013).   Experts can fill in the gaps on scientific issues. *See Robles v. Domino's Pizza, LLC,* 913 F.3d 898, 911 (9th Cir. 2019).   Thus, the first two factors weigh against invoking the doctrine.

## 2.   There Is No Prior Application to the FDA or Substantial Danger of Inconsistent Rulings

Neither party has made "prior application" to the FDA to resolve the legal claims before this Court.   *Ellis*, 443 F.3d at 89.   Further, there is no danger of any "inconsistency" between any decision by this Court and any prospective, potential FDA standards.   *Schiller*, 449 F.3d at 295.

First, there currently are no such standards, except as to infant rice cereal,[3] and so no basis for any inconsistency.  Second, the FDA's Closer to Zero program involves reducing infant and childhood exposure by setting prospective, non-mandatory action levels in successive stages, starting with lead only, which the FDA states will continue through April 2024 and "beyond."  Br. at 3-5.  The FDA has no timeline for agency action for arsenic, mercury, and cadmium.  *Id.* at 5.  The FDA has not stated its intent to regulate baby food *labeling*.  Further, Plaintiffs' claims are primarily for past damages; thus, what the FDA does in the future is irrelevant to the damages already incurred.  Given this, any decision in this case would not be "inconsistent" with any future FDA action.  *See, e.g.*, *Silva*, 2020 WL 4586394, at *2.  Thus, the third and fourth factors also weigh against invoking the doctrine.

### 3.  Applying the Doctrine Would Needlessly Delay Resolution of the Case, Prejudicing Plaintiffs

The Second Circuit instructs that courts must "balance the advantages of applying the doctrine against the potential costs resulting from complications and delay in the administrative proceedings."  *Nat'l Commc'ns Ass'n, Inc. v. Am. Tel. & Tel. Co.*, 46 F.3d 220 (2d Cir. 1995).  Given that it will take until 2024 and beyond for FDA to set prospective, non-mandatory action levels for just one of the four toxic heavy metals, after which the process may begin for other heavy metals, the balance tips against applying the doctrine due to the costs and complications from the

---

[3]  The FDA has set a 100 ppb action level for inorganic arsenic in infant rice cereal.  ¶131.  In setting this level, the FDA focused solely on cancer risks because it was unable to quantify the neurological and developmental risks for infants and young children, making the current action level "too high to adequately protect infants and children from the effects of inorganic arsenic."  *Id.*  Beech-Nut, however, regularly exceeded even this level, often by multiples.  ¶¶150, 172.  In fact, following testing by Alaskan public health officials, who found dangerous levels of inorganic arsenic in all Beech-Nut samples, Beech-Nut was forced to recall certain rice cereal products in June of 2021 and ultimately exited the market because it could not even meet this most basic level for inorganic arsenic.  ¶¶7-8, 99, 131, 150, 153-55, 163, 170.  This regulation weighs against invoking the doctrine because the FDA already has weighed in, and there is no impending regulatory change for which this Court has to wait.[4]  Beech-Nut argues that "Plaintiffs do not claim that Beech-Nut adds heavy metals to their foods as an ingredient separate from the fruits, vegetables, etc. that are used to manufacture the challenged products."  Br. at 17 n.6.  This is not accurate.  Plaintiffs have alleged that "Beech-Nut routinely used high-arsenic additives that tested over 300 ppb arsenic to address product characteristics such as 'crumb softness.'"  ¶150.

(indefinite) delay resulting from this protracted regulatory process.  *See* Ex. 1, Plum MTD Order at 2; *Silva*, 2020 WL 4586394, at *3.  Beech-Nut's inapposite, non-precedential cases do not require a different result.  Br. at 8-9.

*Backus v. General Mills, Inc.*, 122 F. Supp. 3d 909 (N.D. Cal. 2015), involved a plaintiff's claims trans fats ("PHOs") in baking mix.  The court applied primary jurisdiction under facts that contrast with those here, noting the FDA's extensive involvement in the safety of trans fats, including (1) its publication of a final determination establishing that PHOs were not "generally recognized as safe;" (2) its establishment of a formal deadline for their removal from food products; and (3) its "explicit[ ]" invitation to the industry to submit food additive petitions" pertaining to PHOs. *Id*. at 933-35. *See also Physician's Comm. For Responsible Medicine v. General Mills, Inc.,* 2006 WL 3487651 (E.D. Va. Nov. 30. 2006) (staying case on primary jurisdiction grounds where, unlike here, plaintiffs filed administrative petitions that were "closely related" to its claims); *Tran v. Sioux Honey Ass'n, Coop*, 2017 WL 5587276 (C.D. Cal. Oct. 11, 2017) (invoking doctrine because FDA, unlike here, was *less than three months away* from issuing its assessment of glyphosates' effects on human health); *Snyder v. Green Roast of Fla. LLC*, 430 F. Supp. 3d 1297 (S.D. Fla. 2020) (staying case because, unlike here, "[r]egulatory oversight of CBD ingestible products, *including labeling*," was the subject of an ongoing formal rulemaking proceeding); *In re Kind LLC "Healthy & All Natural" Litig.*, 287 F. Supp. 3d 457, 464-66 (S.D.N.Y. 2018) (stay granted where agency had legislative deadline for a regulatory decision of five months from the date of the opinion).  Beech-Nut also cites *Kimca v. Sprout Foods, Inc*., No. BER-L-002538-22 (N.J. Super. Aug. 17, 2022) (Kiser Dec. Ex. I), where the court invoked primary jurisdiction in a similar case. Beech-Nut likely will also cite on reply *In re: Gerber Prods. Co. Heavy Metals Baby Food Litig.*, 2022 WL 10197651, *11-14 (E.D. Va. Oct. 17, 2022). Respectfully, neither of those courts, in contrast to the court in *In re Plum* (Ex. 1, *supra*), properly balanced the significant delays from the FDA's prospective (and perhaps indefinite) timeline. More importantly, the FDA previously established an action level for inorganic arsenic in rice

cereal that Beech-Nut violated forcing recall and market exit, placing this case in a unique posture.

**B.      Plaintiffs' Claims Are Not Preempted**

Beech-Nut argues that federal law preempts Plaintiffs' state law claims.  Br. at 13-14. Although Beech-Nut fails to specify, Plaintiffs interpret Beech-Nut to be asserting field or conflict preemption.  Beech-Nut, however, cannot overcome the strong "presumption against preemption" under these standards. *See Medtronic v. Lohr,* 518 U.S. 470, 485 (1996); *In re MTBE Prods. Liab. Litig.*, 725 F.3d 65, 96-97 (2d Cir. 2013).  The "presumption against preemption is especially strong in the area of food safety, a field of traditional state power."  *Williams v. Coca Cola Co.*, 2017 WL 1214503, at *3 (N.D.N.Y. Mar. 31, 2017).

Field preemption arises "where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law."  *Figueroa v. Foster*, 864 F.3d 222, 228 (2d Cir. 2017); *see also MTBE*, 725 F.3d at 96-97.  Although Beech-Nut asserts that the "FDA pervasively regulates food safety," Br. 14, it is clear that Congress did not intend to "occup[y] the entire field" of food safety because it said so in § 6(c)(2) of the NLEA.  *See Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 128, 1033 (N.D. Cal. 2009); *Williams*, 2017 WL 1214503, at *3.  Thus, field preemption does not apply here.

Conflict preemption arises "where local law conflicts with federal law such that it is impossible for a party to comply with both or that the local law is an obstacle to the achievement of federal objectives."  *Figueroa*, 864 F.3d at 227-28.  Beech-Nut argues the "obstacle" prong, contending that the FDA (1) "has assessed and continues to study the issues of heavy metals in foods and to regulate their presence in baby food;" and (2) "has not banned their presence in food or found that baby food, much less any of the products challenged in [this action], is thereby adulterated and cannot be sold."  Br. at 14.  Beech-Nut, however, fails to identify any federal laws conflicting with Plaintiffs' claims – because there is no such federal law.  As shown above, the FDA has not yet even set "action levels," much less enacted regulations, governing the presence of heavy metals in baby food (with the exception of the rice cereal action level), and even when

(and if) it does, such non-mandatory, prospective levels may not apply to baby food labeling and packaging. The FDA's "Closer to Zero" plan to study the heavy metals in baby foods cannot support preemption. *Cf. Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 285-86 (S.D.N.Y. 2014) (FDA's non-binding "advisory opinions" are "not entitled to preemptive effect"); *In re Frito-Lay*, 2013 WL 4647512, at *10 (declining to give preemptive effect to the FDA's "non-binding guidance on the meaning of . . . 'natural'"); *Porrazzo*, 822 F. Supp. 2d at 411-13 (Policy Guide regarding mercury in seafood did not create a "pervasive regulatory scheme" sufficient to preempt state law); *Holk v. Snapple Bev. Corp.*, 575 F.3d 329, 342 (3d Cir. 2009) (FDA "policy statement" lacks the "force of law required to preempt conflicting state law").

Further, that the FDA has not banned heavy metals in baby food does not support preemption. Beech-Nut cites *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 881-82 (2000) to assert the staggeringly broad proposition that where "FDA has regulated in an area of its expertise . . . state law may not be used to bar any conduct the agency has chosen not to prohibit." Br. at 13. But that is wrong. In *Geier*, the court held that state tort claims based on Honda's failure to install airbags in all its cars conflicted with a federal regulation that did not require airbags for all cars. *Id*. at 875. The Department of Transportation, after a formal rulemaking and based on a full record, promulgated a rule expressly allowing a mix of passive restraint devices (including, but not limited to, airbags), and explicitly rejected an "all airbag" standard to spur technological advance and consumer acceptance. *Id.* at 879. The court found that, unlike here, the plaintiffs' tort action – which would have required the installation of airbags in all cars – thwarted the "variety and mix of devices that the federal regulation sought." *Id*. at 881.

Here, Beech-Nut – despite having the burden of supporting its affirmative defense of preemption, *see Glover v. Bausch & Lomb Inc*., 6 F.4th 229, 236 n. 3 (2d Cir. 2021) – has failed either to cite any binding FDA rule whose purpose would be obstructed by Plaintiffs' claims, or to show how this action would interfere with any such rule (if there were one). *See Williams*, 2017 WL 1214503, at *3. Accordingly, the Court should reject Beech-Nut's preemption argument.

### C. Beech-Nut Does Not Address the Sufficiency of Plaintiffs' Consumer Protection Claims

Other than citing a few isolated cases (distinguished below), Beech-Nut inappropriately elides discussion of the pleading standards of the consumer protection laws with that go to Plaintiffs' common law claims. The consumer protection laws, however, are self-avowedly "broad" and "remedial" (often relaxing strict common law requirements such as reliance and duty to disclose), meant to remedy misleading, deceptive, and unfair conduct that may or may not also have a remedy in the common law. For example, in rejecting Beech-Nut's motion to dismiss in *Dist. of Columbia v. Beech-Nut Nutrition Co.*, 2021 WL 9593409, *supra*, the court noted the "remov[al]" of common law fraud pleading requirements, that representations and omissions need not be "intentional," that "consumers can find even accurate statements misleading," and that a plaintiff need only show that an "omission was material and had a tendency to mislead" and is "not required to plead and to prove a duty to disclose information." *Id*.

Numerous consumer protection laws follow suit in broadly prohibiting misconduct in the consumer context and relaxing or eliminating common law pleading requirements. For example, Illinois: *Guvenoz v. Target Corp.*, 30 N.E.3d 404, 426 (IL App. (1st) 2015) (reliance not an element in Illinois (ICFA)); *Barrett v. Brian Bemis Auto World*, 408 F. Supp. 2d 539, 544 (N.D. Ill. 2005) (scienter not required); *Celex Grp., Inc. v. Exec. Gallery, Inc.*, 877 F. Supp. 1114, 1129 (N.D. Ill. 1995) ("common law requirement of a duty to disclose is not required in order for an omission or concealment to be actionable under [ICFA]"); Massachusetts: *Mac's Homeowners Ass'n v. Gebo*, 87 N.E.3d 1184, 1190 (2017) (no actual reliance required); *Geis v. Nestle Waters N. Am., Inc.*, 321 F. Supp. 3d 230, 245 (D. Mass. 2018) (an act is unfair or deceptive if it is "within at least the penumbra of some common-law, statutory, or other established concept of unfairness" or "immoral, unethical, oppressive, or unscrupulous."); New Jersey: broadly prohibiting misconduct in the consumer context, "whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." N.J. Stat. Ann. § 56:8-2; *Belmont*

13

*Condo. Ass'n, Inc. v. Geibel*, 74 A.3d 10, 21 (App. Div. 2013) (reliance not required); *Perth Amboy Iron Works, Inc. v. Am. Home Assur. Co.*, 543 A.2d 1020, 1025 (App. Div. 1988), *aff'd*, 571 A.2d 294 (1990) (no duty to disclose requirement); *Vagias v. Woodmont Properties, L.L.C.*, 894 A.2d 68, 72 (App. Div. 2006) (no scienter requirement for claims premised on unlawful conduct or affirmative misrepresentation).

This Court has recognized these crucial pleading differences. *See, e.g.*, *Chery v. Conduent Educ. Servs., LLC*, 581 F. Supp. 3d 436, 449, 451 (N.D.N.Y. 2022) (Hurd, J.) (granting *plaintiff* summary judgment on GBL § 349 claim, notwithstanding defendant's allegations that plaintiffs never "saw or were deceived by the allegedly deceptive statements," and holding that "reliance is not an element of a Section 349 claim."); *Ford v. Rensselaer Polytechnic Inst.*, 507 F. Supp. 3d 406, n.7 (N.D.N.Y. 2020) (Hurd, J.) (reliance is not an element under GBL §350). Thus, Defendant's contention that Plaintiffs "never specifically allege that they read or relied on website statements, and claims based on these statements must be dismissed as a result" (Br. at 20), is an ill-formed attempt to escape Beech-Nut's website representations trumpeting its leading testing and safety standards. ¶¶108-113. Indeed, the Second Circuit permitted GBL §349 claims by parents of children who regularly consumed McDonald's based upon various advertisements about the nutritional benefits of its foods, without requiring a showing of "reliance."*Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005). Plaintiffs here never averred they ever saw or heard the advertisements.

In any and all events, as outlined at length herein, Plaintiffs have sufficiently pled: (1) their "reliance" on Beech-Nut's actionable representations and omissions and Beech-Nut's duty to disclose; (2) the trust created by Beech-Nut and Beech-Nut's superior knowledge of the toxic heavy metal content; and (3) the degree to which Beech-Nut had knowledge (or recklessly disregarded) that its foods contained elevated levels of toxic heavy metals yet made representations suggesting otherwise, and thus that Beech-Nut violated the respective consumer protection laws to Plaintiffs' economic detriment.

**D.    Plaintiffs' Affirmative Misrepresentation-Based Claims Are Adequately Pleaded**

Impermissibly relying on arguments that factually contradict Plaintiffs' allegations, Beech-Nut challenges the particularity, plausibility, and adequacy of Plaintiffs' "affirmative misrepresentation theory," claiming that Plaintiffs have failed to sufficiently allege: (1) affirmative misrepresentations that have the capacity to deceive the reasonable consumer; (2) reliance; and (3) scienter.  Br. at 15-21.  Taking Plaintiffs' allegations as true and drawing all inferences in Plaintiffs' favor, *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009), Plaintiffs' detailed allegations are more than sufficient to adequately plead the elements Beech-Nut challenges.  *See, e.g.*, *Colangelo v. Champion Petfoods USA, Inc.*, 2020 WL 777462, at *10 (N.D.N.Y. Feb. 18, 2020) (denying motion to dismiss consumer protection, breach of express warranty, fraudulent misrepresentation, and fraud by omission claims based on allegations that defendant deceived reasonable consumers regarding the heavy metal content of its dog food).

**1.    Plaintiffs' Allegations Satisfy Rules 8 and 9(b)**

Beech-Nut wrongly claims Plaintiffs have failed to satisfy the Rule 8 and Rule 9(b) pleading standards.  Br. at 20.  Each Plaintiff specifically identifies which Baby Foods they purchased, when, at which store(s), and in which state(s).  ¶¶16-84.  Plaintiffs further identify the the specific Beech-Nut statements at issue, including the words used to describe the Baby Foods along with their pictures.  *See infra* Sec. III.D.2.  Each Plaintiff also alleges they relied on the packaging to purchase the products, believing them to be healthy, safe, and suitable for babies and young children (*see, e.g.*, ¶85), when in fact Beech-Nut knew they contained or materially risk containing toxic heavy metals that are unsafe, unhealthy, unsuitable for babies and young children to consume, and not adequately tested.  *See infra* Sec. III.D.4-5.  Plaintiffs thus clear Rule 9(b)'s "who, what, where, when, and how" particularity bar – and thus also Rule 8's more lenient standard.  *See, e.g.*, *Colangelo*, 2020 WL 777462, at *12-13; *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 472-74 (E.D.N.Y. 2013); Ex. 2, ECF No. 51, *Kochar v. Walmart, Inc.*, No. 21-cv-2343-JD (N.D. Cal. Apr. 25, 2022) ("Walmart MTD Order") (finding Rules 8 and 9(b) satisfied on

similar allegations against Walmart).

### 2. Plaintiffs Identify Actionable Misleading Affirmative Statements

Beech-Nut asserts that "Plaintiffs do not point to a single representation regarding heavy metals on the products' labeling that they claim is misleading." Br. at 15. Putting aside omissions, Plaintiffs have sufficiently pled misleading affirmative statements on the Baby Foods' labels and packaging, including: "organic," "natural," "USDA-Certified Organic," "real food for babies," "nothing artificial added," "non-GMO," the U.S.D.A. organic logo, and the target age or "stage" of the baby.. ¶¶95-105. And, contrary to Beech-Nut's assertion that no affirmative misstatement relates to heavy metals, certain labels do indicate the presence of a beneficial heavy metal (*i.e.*, iron) but not the presence of toxic heavy metals. ¶¶98-99. Plaintiffs also allege that the presence of heavy metals in baby food is material to consumers. *See, e.g.*, ¶¶11, 91-92, 94, 118, 194, 320, 333, 342. These representations are specific and, more importantly, relate to food safety.

Courts routinely find similar allegations to be sufficient to state a claim for intentional and negligent misrepresentation, breach of express warranty, unfair and deceptive trade practices claims, and unjust enrichment. In fact, the D.C. AG sued Beech-Nut in *District of Columbia v. Beech-Nut Nutrition Company*, *supra*, No. 2021 CA 001292 B (D.C. Super. Ct.), for violation of the D.C. CPPA based on substantially the same allegations alleged here. In denying Beech-Nut motion to dismiss, the court rejected the same arguments raised here, finding the same affirmative misrepresentations sufficient to state a claim. 2021 WL 9593409, *2-5. And, in *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 851 (N.D. Cal. 2018), the plaintiffs' misrepresentation claims were premised WellPet's product labels being misleading because they claimed to be healthy, safe, pure, and/or natural but failed to disclose that they contained arsenic and lead. While WellPet argued plaintiffs could not establish that the levels of arsenic and lead in the foods was unsafe for dogs, the court found (as this Court should) the disputed issue inappropriate on a motion to dismiss. *Id.* Like here, the *Zeiger* plaintiffs "provided an actionable theory why the [p]roducts are unsafe and why the labels are misleading." *Id.*; *see also Colangelo*, 2020 WL 777462, at *7

Despite the case law permitting allegations similar to Plaintiffs', Beech-Nut contends certain identified misstatements are "objectively true" or non-actionable puffery.  *Id.* at 15-18[4]  Yet, "[i]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018).  Courts must "therefore consider [a] challenged advertisement as a whole." *Id.*  And, whether a label is misleading is normally a question of fact that cannot be resolved on a motion to dismiss.  *See, e.g.*, *Segedie v. Hain Celestial Grp., Inc.*, 2015 WL 2168374, at *12 (S.D.N.Y. May 7, 2015).  Beech-Nut's representations (¶¶95-113), taken as a whole, convey to parents that the Baby Foods are safe, healthy, and suitable for consumption by infants and young children – a representation made irrefutably false and misleading by the presence and risk of toxic heavy.  ¶¶150, 153-55, 160-75.  *See Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939, n. 3 (9th Cir. 2008) (statement that a product is "nutritious" standing on its own could "arguably constitute puffery" but "certainly contributes, however, to the deceptive context of the packaging as a whole"); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1115-16, 1125-26 (N.D. Cal. 2010) (rejecting argument that truthful labels could not be deceptive and finding label statements such as "wholesome" and "smart choices made easy" were misleading in context because products contained dangerous amounts of trans fat). *See also Colangelo*, 2020 WL 777462, at *5; *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 103 (S.D.N.Y. 2021); *In re Frito-Lay*, 2013 WL 4647512, at *16; *Ackerman v. Coca-Cola Co.*, 2010 WL 2925955, at *16 (E.D.N.Y. July 21, 2010).[5]With respect to Beech-Nut's puffery argument,  Br. at 17-18 (citing ¶¶95, 107-08), courts are "often reluctant to label claims non-actionable puffery—and thus rule that the statements cannot be deceptive—at the motion to

---

[4]  Beech-Nut argues that "Plaintiffs do not claim that Beech-Nut adds heavy metals to their foods as an ingredient separate from the fruits, vegetables, etc. that are used to manufacture the challenged products." Br. at 17 n.6. This is not accurate. Plaintiffs have alleged that "Beech-Nut routinely used high-arsenic additives that tested over 300 ppb arsenic to address product characteristics such as 'crumb softness.'"  ¶150.

[5]  Of note, Beech-Nut claims the statements at ¶109 are true.  As alleged, those statements, however, are misleading because Beech-Nut's purported insistence on safety and quality cannot be squared with the Subcommittee findings that Beech-Nut maintains lax internal testing specifications and even exceeds those lax specifications.  ¶¶151, 171-75; *see also* ¶167.

dismiss stage." *Colangelo*, 2020 WL 777462, at *8.

Plaintiffs' alleged misrepresentations are also not vague. Indeed, Beech-Nut impermissibly contradicts Plaintiffs' allegations, which the Court must take as true at this stage, in claiming the alleged misrepresentations are puffery. For example, Plaintiffs allege the purported "puffery" statements at ¶95 (Br. at 17)[6] are literally false. Despite promising that nothing else is the Baby Foods, there are, in fact, also toxic heavy metals, including additives, that are not on the label. ¶¶150, 153-54, 163. Regarding ¶107 (Br. at 18),[7] Plaintiffs allege these statements are literally false—because health and safety cannot possibly be a top priority when Beech-Nut turns a blind eye to evident heavy metal contamination. ¶¶167-75. Beech-Nut also says its statements about its testing are puffing. Br. at 18 (citing ¶108). There, Beech-Nut claims to test for "up to 255 pesticides and heavy metals," but leaves out that it does not test for mercury and that it nonetheless includes ingredients with heavy metal concentrations above their own internal specifications. ¶¶150, 166-67, 171-75. As Beech-Nut's cited case (Br. at 18) states: "Puffery does not include . . . '[a] specific and measurable advertisement claim of product superiority based on product testing[.]" *Klaehn v. Cali Bamboo LLC*, 2022 WL 1830685, at *1 (9th Cir. June 3, 2022). Here, unlike in *Klaehn* and Beech-Nut's other cited case (Br. at 17), *Leonard v. Abbott Lab'ys, Inc.*, 2012 WL 764199, at *21 (E.D.N.Y. Mar. 5, 2012), Beech-Nut backs up its claims of product safety based on its testing for heavy metals. A jury can decide whether Beech-Nut's misrepresentations, in totality, are deceptive and misleading.[8] *See Colangelo*, 2020 WL 777462,

---

[6] The identified statements are: "[w]hat you see is what's inside. So you'll know exactly what you're eating"; "[w]e make it easy to know what goes into your baby food/Just what You See and Nothing Else"; "What you see is what you get/Every mom wants to know what goes into her baby's food"; and "Just real ingredients + no artificial anything + simple preparation = real baby food." ¶95 (footnotes omitted).

[7] "Beech-Nut assures parents that the 'health and safety of your children is at the heart of what we do.' 'As parents ourselves, we are proud to feed our own children Beech-Nut products and have taken the responsibility to provide safe, nutritious food as our highest purpose for over 130 years.'" ¶107.

[8] Notably, Beech-Nut does not challenge the statements about testing at ¶¶110-113, 166 as puffery or otherwise, and thus, concedes these are actionable.

at *8-9; *Ackerman*, 2010 WL 2925955, at *17; *Zeiger*, 304 F. Supp. 3d at 851.

Beech-Nut relies on a series of easily-distinguishable decisions in cases alleging glyphosate and herbicide contamination. Br. 16, 19. In *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170 (E.D.N.Y. 2018), the court found it implausible that reasonable consumers would believe that a product labeled "Florida's Natural" could not contain any glyphosate when the amount of glyphosate in the product was below FDA regulations. *Id.* at 174 n.1, 183; *see also In re Gen. Mills Glyphosate Litig.*, 2017 WL 2983877, at *6 (D. Minn. July 12, 2017) (similar holding). Here, no allowable FDA tolerance level exists, making these cases inapposite. Similarly, the court in *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241 (S.D.N.Y. 2019), held a reasonable consumer would not interpret "natural" to mean "there is no glyphosate" in the products because the plaintiff "[did] not set forth in his complaint the amount of glyphosate in [the dog food at issue] or whether that amount [wa]s harmful or innocuous." *Id.* at 247. Plaintiffs' detailed allegations make *Parks* inapposite. ¶150 (alleging arsenic levels "over 100 ppb," cadmium levels over 20 ppb and as high as 344.55 ppb, and lead levels over 20 ppb and "as much as 886.9 ppb"); ¶¶163, 170, 172-74; ¶¶122-48 (detailing the significant dangers posed by repeated ingestion).[9] For similar reasons, *In re: Gerber Prods. Co. Heavy Metals Baby Food Litig.*, 2022 WL 10197651, *supra*, which Beech-Nut likely will cite on Reply, is distinguishable given that Plaintiffs here allege the baby food products were unsafe and increased the risk of harm to infants and toddlers; that the Congressional Reporting and testing (verified by the FDA) confirmed violations of the FDA's inorganic rice action level which Beech-Nut conceded by recalling and discontinuing it product lines; that the foods were not safe, healthy, and nutritious and thus not fit for their intended

---

[9] Beech-Nut's cited cases (Br. at 17 n.5), *Figy v. Frito-Lay N. Am. Inc.*, 67 F. Supp. 3d 1075 (N.D. Cal. 2014); *Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097 (N.D. Cal. 2012); *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074 (N.D. Cal. 2017) are factually distinguishable. Those courts found that label statements about one ingredient could not be misleading regarding the amount of a different ingredient. Here, Plaintiffs allege Beech-Nut's statements are misleading regarding the safety and suitability of the Baby Foods due to the presence of contaminants, not other ingredients. *Gibson v. Quaker Oats Co.*, 2017 WL 3508724, at *4 (N.D. Ill. Aug. 14, 2017) also is not relevant where the court dismissed the glyphosate-based claims as preempted.

purpose; that the products (and their value) were falsely represented and sold to Plaintiffs given their expectations created by Beech-Nut packaging and marketing; and that Plaintiffs did get the benefit of their bargain because they did not receive safe, health and suitable foods. Compare *id*. at *5-10.

### 3. Plaintiffs Plausibly Plead that Beech-Nut's Deceptive Conduct Would Mislead the Reasonable Consumer

"To state a claim for false advertising or deceptive business practices under New York … law, a plaintiff must plausibly allege that the deceptive conduct was 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Mantikas*, 910 F.3d at 636. However, "this inquiry is generally a question of fact not suited for resolution at the motion to dismiss stage." *Duran v. Henkel of Am., Inc*., 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020).

Beech-Nut argues that Plaintiffs' allegations are "implausible" because, according to it, "the reasonable consumer would be aware of the potential that heavy metals might be contained in baby food products," and thus, cannot be deceived as a matter of law. Br. at 18-19. Beech-Nut ignores the entire point of this case: Plaintiffs allege that the underlying facts of Beech Nut's deception were *not* reasonably available to Plaintiffs –particularly so in light of Defendant's omissions – and that *no* court has imposed such an onerous burden on consumers that requires them to investigate and research the veracity of product label representations and omissions. ¶¶119-21; *see Mantikas*, 910 F.3d at 637 ("Reasonable consumers should not be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box"). Rather, what is important here is that Plaintiffs allege they were not aware of the reports regarding the presence of heavy metals in the Baby Foods at the time they purchased them, nor would it be reasonable to expect them to be, and they properly allege they would not have purchased the Baby Foods had they known . ¶¶85, 120-21. Plaintiffs describe at length that information about heavy metals is material to their purchasing decisions due to the health risks for infants and children. ¶¶117-20, 121-27, 128-33, 134-38, 139-44, 145-

48, 198.  The Court should follow *District of Columbia v. Beech-Nut Nutrition Company*;Plaintiffs have adequately pleaded that Beech-Nut's misrepresentations are likely to deceive the reasonable consumer.  2021 WL 9593409, *2-5, *supra* (rejecting same arguments Beech-Nut raises here); *see also* Ex. 1, Plum MTD Order at 2 (rejecting Plum argument that "consumers know and understand that trace amounts of heavy metals are ubiquitous" as inappropriate for resolution at motion to dismiss stage); *Cooper*, 553 F. Supp. 3d at 104-05; *In re Frito-Lay*, 2013 WL 4647512, at *16; *Ackerman*, 2010 WL 2925955, at *15.  This is all that Rule 12(b)(6) requires.

The cases Beech-Nut relies on (Br. at 19) have no application here. In *Moore v. Trader Joe's Co.*, the Ninth Circuit affirmed dismissal of a misrepresentation claim where Manuka honey was properly listed "as the sole ingredient" because "the product in fact d[id] '100%' consist of honey." 4 F.4th 874, 886 (9th Cir. 2021). And in *McGee v. S-L Snacks Nat'l*, the label at issue actually "disclosed the presence of artificial trans fat." 982 F.3d 700, 707 (9th Cir. 2020).  No such disclosures occurred here.  And, the fact disputes Beech-Nut raises are inappropriate for resolution on a motion to dismiss.  *Duran*, 450 F. Supp. 3d at 346.  *Compare* Br. at 18-19 (claiming only "trace" amounts of heavy metals in the Baby Foods) *with* ¶¶12, 122-48 (alleging the amount is well above the levels set for other products and that due to bioaccumulation disclosure heavy metal levels is required); *compare* Br. 18-19 (claiming manufacturing baby food with heavy metals cannot be avoided) with ¶¶182-92 (alleging manufacturing processes can be improved).

### 4.    Plaintiffs Sufficiently Allege Reliance

Defendant argues "Plaintiffs' fraud claim fails because they fail to plead reliance."  Br. at 19.[10]  To the contrary, Plaintiffs adequately allege they relied on the above representations on the labels and packaging when purchasing the Products, believing them to be safe for their children's

---

[10]   Given that Beech-Nut frames this issue as pertaining to the "fraud claim," Plaintiffs assume Beech-Nut is only challenging Plaintiffs' fraudulent misrepresentation claim. ¶¶317-26. To the extent Beech-Nut is challenging Plaintiffs' misrepresentation-based consumer protection claims, reliance is not an element of many consumer protection statutes.  *See supra* Sec. III.C. Importantly, Plaintiffs' additional advertising misrepresentations provide the full context of Beech-Nut's marketing scheme and are particularly applicable to Defendant's intent and to Plaintiffs' unfair and deceptive trade practices claims.  *See* Sec. III.D.2, D.5.

consumption.  ¶¶85, 120, 324, 333-35 (reliance); ¶¶95-105 (labeling statements with product images).  Whether reliance is reasonable is a question for the jury that cannot be answered on a motion to dismiss.  *Hughes*, 930 F. Supp. 2d at 473; *Ackerman*, 2010 WL 2925955, at *17.

Defendant's cited cases (Br. at 20) are inapposite.  *Simon v. SeaWorld Parks & Ent., Inc*., 2022 WL 1594338, at *4 (S.D. Cal. May 19, 2022) does not involve product labels and is factually distinguishable.  *Id*. (reliance not adequately pleaded because plaintiff failed to plead that he actually visited the website containing the alleged misrepresentation).  In *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 199 (E.D.N.Y. 2018), the court held reliance was not adequately pleaded where the plaintiff conceded the labels were accurate and "a person of 'ordinary intelligence' could have learned of the extent of slack-fill and the amount of food by looking to the labels (and also by manipulation of the package)."  Here, though, Plaintiffs plead consumers are unable to ascertain on their own whether the Baby Foods contain heavy metals.  ¶¶9, 118.

### 5.   Plaintiffs Sufficiently Allege Scienter

Beech-Nut claims that "Plaintiffs' fraud claim also fails because they do not allege scienter."  Br. at 20.[11]  "As to scienter, conclusory assertions of intent are sufficient 'if supported by facts giving rise to a strong inference of fraudulent intent.'"  *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 579 (2d Cir. 2005).  This inference may be established "by (1) alleging facts to show that defendants had both motive and opportunity to commit fraud, or by (2) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  *Gabriele v. Am. Home Mortg. Serv., Inc*., 503 Fed. Appx. 89, 97 (2d Cir. 2012).  Here, allegations raising a strong inference of fraudulent intent are far from conclusory and satisfy either standard.

Plaintiffs allege that Beech-Nut expressly marketed the Baby Foods to target consumers

---

[11] Given that Beech-Nut frames this issue as pertaining to the "fraud claim" Plaintiffs assume Beech-Nut is only challenging the fraudulent misrepresentation claim.  ¶¶317-26.  To the extent Beech-Nut is challenging Plaintiffs' misrepresentation-based consumer protection claims, scienter is not an element of many consumer protection statutes.  *See, e.g*., *In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Pracs. Litig*., 422 F. Supp. 3d 194, 227 (D.D.C. 2019) (no scienter requirement for consumer protection claims under CA, CT, D.C., FL, MA, NY, and WA law).

who would pay more for purportedly natural, organic, high-quality baby foods that were healthy, safe, and suitable for consumption by infants and young children (¶¶91-95), including by (falsely) touting its staunch product safety commitment and its testing standards for heavy metals (¶¶108-113, 165-66), yet **knew for years** that its Baby Foods contained heavy metals – at levels far surpassing any existing regulatory standard for similar products and vastly exceeding the contamination levels of its competitors' baby food products.  ¶¶151, 158-64.  In the wake of the Healthy Babies Bright Futures Report, Beech-Nut even co-founded The Baby Food Council in 2019 and expressed its commitment to reducing toxic heavy metals in its products, **thereby acknowledging a problem and promising to fix the issue**.  ¶165.  Further evidencing its fraudulent intent is that while touting its testing standards, Beech-Nut in fact did not test finished products (a practice the House found to "recklessly endanger[] babies and children"), did not test at all for mercury (the third most dangerous environmental substance), and set arbitrary and inadequate internal specifications that often were exceeded.  ¶¶142, 150, 168-69, 171-75.  These detailed allegations – which Beech-Nut ignores – far exceed the standard for pleading a strong inference of Beech-Nut's fraudulent intent.  *See, e.g., Greene v. Gerber Prod. Co.*, 262 F. Supp. 3d 38, 73–74 (E.D.N.Y. 2017); *Hughes*, 930 F. Supp. 2d at 473; *Colangelo*, 2020 WL 777462, at *13-14. And they far outstrip the bare conclusory statements in Beech-Nut's cited case (Br. at 20), *Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 337 (E.D.N.Y. 2018) (failing to allege facts to support "that '[d]efendants knew that other juice products more accurately represented their products'").[12]

### E.   Plaintiffs Adequately Allege Beech-Nut Had a Duty to Disclose That Its Baby Foods Contain or Risk Containing Toxic Heavy Metals

Beech-Nut concedes that a duty to disclose arises in numerous circumstances, such as when a defendant has exclusive or superior knowledge, actively conceals or makes partial

---

[12]  Plaintiffs allege more than a general profit motive, as alleged in Beech-Nut's cited case (Br. at 21), *In re Frito-Lay*, 2013 WL 4647512, at *25, where the defendant had no knowledge that its product contained the alleged contaminants, unlike here where Beech Nut's internal testing results demonstrate it knew the ingredients in its Baby Foods contained heavy metals.

representations about material information, or there is a safety concern that a consumer could not determine on their own through reasonable diligence. Br. at 21-22 and Def. App'x D. It contends, however, that the facts alleged are insufficient as a matter of law to establish such a duty here. *Id.* at 22-24. At best, Beech-Nut raises disputed fact issues that cannot be resolved on a motion to dismiss. *See* Restatement (Second) Torts § 551 (1977) ("If there are disputed facts bearing upon the existence of the duty, . . . they are to be determined by the jury[.]"). Plaintiffs undoubtedly have plausibly alleged their omissions-based claims. *See Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1180, 1193-94 (S.D. Cal. 2015) ("nutritious," "safe for consumption" plausibly supported intentional/negligent misrepresentation and unjust enrichment claims where beverages alleged to contain dangerous levels of a potential carcinogen); *Zeiger*, 304 F. Supp. 3d 837, 851-52.

### 1. Beech-Nut Is Wrong That a Fiduciary or Special Relationship Is Required to State Omission-Based Fraud Claims Under Certain Laws

Beech-Nut contends that under the laws of Arizona, Delaware, Massachusetts, Minnesota, New Jersey, North Carolina, South Dakota, Tennessee, Virginia, and West Virginia the only way to establish a duty to disclose is to plead the existence of a fiduciary or special relationship. Br. at 21. Beech-Nut is wrong. The law in each of these jurisdictions recognizes other bases (discussed below) under which the duty to disclose may arise.[13]

### 2. Plaintiffs Allege Beech-Nut Has Superior Knowledge Regarding the Amount of Heavy Metals in Its Baby Foods.

---

[13] *In re General Motors Air Conditioning Mktg. and Sales Practice Litig.*, 406 F. Supp. 3d 618, 639 (E.D. Mich. Sept. 5, 2019) (AZ law, fraudulent concealment exception); *Nicolet, Inc. v. Nutt,* 525 A.2d 146, 149-50 (Del. 1987) (same); *Van Deusen v. Snead*, 441 S.E.2d 207, 209-10 (1994) (same, VA law); *Acbel Polytech v. Fairchild Semiconductor Intern.*, 2014 WL 4656608, at *10 (D. Mass. 2014) (superior knowledge exception); *Driscoll v. Standard Hardware, Inc.*, 785 N.W.2d 805, 812 (Minn. Ct. App. 2010) (same); *Short v. Hyundai Motor Co.,* 444 F. Supp. 3d 1267, 1280 (W.D. Wash. 2020) (same, WV law); *In re Volkswagen Timing Chain Prod. Liab. Litig.,* 2017 WL 1902160, at *20 (D.N.J. 2017) (partial disclosure exception); *id.*, at *19 (NC law, superior knowledge and active concealment exceptions); *Schwartz v. Morgan*, 2009 S.D. 776 N.W.2d 827, 831 (finding a duty to disclose "facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts"); *In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*, 406 F. Supp. 3d 618, 639 (E.D. Mich. 2019) (TN law, a party has a duty to disclose defects that render the product dangerous or defective).

A party has a duty to disclose "where one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair" and the defrauded party could not "have through 'the exercise of ordinary intelligence' independently ascertained" the truth. *Swersky v. Dreyer & Traub*, 219 A.D.2d 321, 327, 643 N.Y.S.2d 33, 37 (1996). Beech-Nut shockingly contends it does not have superior knowledge regarding the contents and suitability of its Baby Foods because, according to Beech-Nut, the common consumer through ordinary diligence should know at the point of purchase that Beech-Nut's Baby Foods are contaminated with heavy metals. Br. at 22-23. The very fact that the Subcommittee had to investigate every major baby food manufacturer to raise public awareness rebuts Beech-Nut's contention. Only Beech-Nut would have access to its internal testing standards and results regarding the levels and prevalence of heavy metal contaminants in its products. ¶¶330, 340. In fact, Plaintiffs plead that consumers lack the scientific knowledge to determine whether the Baby Foods contained heavy metals and that the only way consumers could have known whether the Baby Foods contained elevated levels of heavy metals would have been to conduct their own testing (which, of course, no rational consumer would do). ¶¶9, 118. These allegations, which the Court must take as true, are sufficient at this stage to demonstrate Beech-Nut had a duty to disclose. *Colangelo*, 2020 WL 777462, at *14. Beech-Nut draws the illogical conclusion that because the third-party testing information is online, Beech-Nut as a matter of law cannot hold superior knowledge. To the contrary, exclusive knowledge is not automatically defeated by the existence of information online. *See, e.g.*, *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 151 (2d Cir. 1993) ("in an increasing number of situations, a buyer is not required to conduct investigations to unearth facts and defects that are present, but not manifest."); *Feliciano v. Gen. Motors LLC*, 2016 WL 9344120, at *9 (S.D.N.Y. Mar. 31, 2016).

Unlike in Defendant's cite case *Simpson v. Champion Petfoods USA, Inc.*, 397 F. Supp. 3d 952, 972 (E.D. Ky. 2019), where the toxicity of **all** fish products had been publicly known for years, there is, and has been, ***conflicting*** information regarding the presence of heavy metals in baby foods and the safety of those products in the public domain, and Plaintiffs allege they lack

the scientific knowledge necessary to determine the true nature of the ingredients in **Beech-Nut** Baby Foods.  ¶¶9, 118.  For example, even the FDA seeks to dispel the fact that baby foods contained high levels of toxic heavy metals, while simultaneously pledging to remove toxic heavy metals from baby foods.  Br. 3-5.  That Beech-Nut posted on its website that it purportedly tests "for up to 255 pesticides and heavy metals" (¶109) and that it engaged in efforts to create "standards for reducing levels of heavy metals in food products to as low as reasonably achievable" (¶110) is at odds with their argument that a reasonable consumer exercising ordinary diligence would know the potential for high levels of toxic metals in Beech-Nut's Baby Foods.  Even if Plaintiffs were aware of third-party reports (which they weren't), Plaintiffs allege Beech-Nut's own public statements would lead the reasonable consumer to believe that Beech-Nut would never employ inadequate testing standards and allow heavy metal contamination in excess of its own such standards.  This distinguishes Beech-Nut's cited case, *Herron v. Best Buy Co.* 924 F. Supp. 2d 1161, 1175 (N.D. Cal. 2013).

### 3. Plaintiffs Allege Beech-Nut Made Partial and Ambiguous Statements of Fact that Were Misleading Absent Further Disclosure

A duty to disclose also can arise "where a party has made a partial or ambiguous statement, as a party cannot give only half of the truth."  *Watts v. Jackson Hewitt Tax Serv. Inc.*, 579 F. Supp. 2d 334, 352 (E.D.N.Y. 2008).  Beech-Nut argues, implausibly, Plaintiffs have failed to identify any partial or ambiguous statements.  As discussed above, Beech-Nut made numerous representations on labels and packaging that would lead a reasonable consumer to believe the Baby Foods are healthy, safe, and suitable for consumption by infants and young children as well as adequately tested.  ¶¶91-113.  Beech-Nut's representations were (at best) materially misleading without further disclosures concerning toxic heavy metals in those products, and Beech-Nut either knew that was the case or recklessly disregarded it.  Beech-Nut clearly knew, for years, about third-party testing that revealed high amounts of toxic heavy metals in its Baby Foods.  ¶¶158-65. In addition, Beech-Nut claims that it "[goes] above and beyond standard," and that its products are

"already below the proposed FDA limit for arsenic in rice cereals – we test every lot to ensure this."  ¶112.  Beech-Nut conveniently discloses these favorable (though in the case untrue) facts, and others, while omitting material facts like that its products often test above its own internal limits and that it does not test finished products.  *See, e.g.*, ¶¶163, 170-75.  Thus, Plaintiffs have set forth sufficient facts that Beech-Nut made partial disclosures triggering a duty to disclose more information regarding the safety and testing of its Baby Foods, so as to not mislead consumers.

Beech-Nut's argument to the contrary, Br. 22, is based entirely on *Simpson v. Champion Petfoods USA, Inc*., where the court found that "a company is not required to volunteer [information] simply because it makes statements about the high quality of its products."  397 F. Supp. 3d at 972-73.  This case is materially different.  First, of course, dogs are not babies, and it is reasonable for the law (and consumers) to hold producers of baby food to higher standards of disclosure than producers of dog food.  Moreover, vague representations that the ingredients of a dog food are "biologically appropriate" or "high quality," 397 F. Supp. 3d at 972, are simply not comparable – in material factual content – to representations that baby food is, *e.g*., safe for consumption by infants.  Notably, a federal court applying California law declined to follow *Simpson* in a similar case. *See Zeiger v. WellPet, LLC*, 526 F. Supp. 652, 664-66 (N.D. Cal. 2021). There, the defendant, WellPet, marketed its dog food as a "premium dog food" that was "natural and nutritious" and had "unrivaled quality standards" but did not disclose that its products contained heavy metals.  *Id*. at 664.  The district court denied summary judgment, holding that "[h]ow a reasonable consumer would understand [WellPet's representations] is a quintessential matter for the jury."  *Id*. at 682.  Such statements "might be understood as a marketing platitude, or it might be understood to communicate that steps are taken to ensure quality control . . . that could . . . eliminat[e] . . . heavy metals.  *Id*. at 683.  The same is true here.

### 4. Plaintiffs Allege Beech-Nut Actively Concealed Material Information Regarding the Baby Foods' Contaminants from the Public

"'[F]raud does not consist merely of overt misrepresentations. It may also occur through

deliberate concealment of material facts, or by silence in the face of a duty to speak[.]" *Nicolet*, 525 A.2d at 148.  Plaintiffs allege they reasonably trust and rely on Beech-Nut to sell baby food that is healthy, nutritious, safe for consumption, and that has been rigorously tested.  ¶¶9, 91-92, 119, 176.  Beech-Nut knew and plainly intended this by promoting the trustworthiness, quality, and testing.  ¶¶93, 107-13, 165-70, 196-97, 331.  Beech-Nut knew or should have known that the Beech-Nut Baby Foods contained or had a material risk of containing levels of toxic heavy metals that pose health risks, particularly to infants and young children. ¶¶110, 158-65, 174, 198.  Beech-Nut also knew or should have known that the contaminant content of the Baby Foods is material to consumers.  ¶¶11, 91-94, 198, 334.  Yet, Beech-Nut does not disclose any information on its packaging about heavy metals.  ¶¶95-106, 208, 289, 329, 333.  And, it makes affirmative misstatements about its testing.  ¶¶107-13.  Plaintiffs did not and could not through ordinary diligence have reasonably discovered Beech-Nut's conduct.  ¶¶9, 118, 209.  Thus, Beech-Nut's active concealment of material information was likely to deceive reasonable consumers.  *See, e.g.*, *Diemert v. Johnson*, 299 N.W.2d 546, 549 (N.D. 1980) ("suppression of a material fact, which a party is bound in good faith to disclose, is equivalent to a false representation.").[14]

### 5.    Beech-Nut Had a Duty to Disclose Unreasonable Safety Risk

Plaintiffs have pled an actual and material safety defect in Beech-Nut's Baby Foods. ¶¶122-48, 340, 342.   Unlike in Defendant's cited cases (Br. at 24), Plaintiffs allege that consumption of toxic heavy metals is known to cause irreversible developmental damage over time – not a hypothetical safety hazard. *Compare Klaehn v. Cali Bamboo, LLC*, 2021 WL 3044166, at *10 (S.D. Cal. June 14, 2021); *Kirsopp v. Yamaha Motor Co*., 2015 WL 11197829, at *10 (C.D. Cal. Jan. 7, 2015); *Birdsong v. Apple, Inc*., 590 F. 3d 955, 961 (9th Cir. 2009).  Thus,

---

[14] Defendants' cited cases (Br. at 23) are distinguishable.  Unlike in *Ahern*, Plaintiffs have set forth sufficient allegations that Beech-Nut took affirmative steps to conceal from consumers the fact that its Baby Food contained or risked containing toxic metals.  *Compare Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 565 (N.D. Cal. 2019); *see also Devane v. L'Oreal USA, Inc.*, 2020 WL 5518484, at *1 (S.D.N.Y. Sept. 14, 2020) *(*dismissing fraud claim on grounds other than failure to plead active concealment).

Beech-Nut owed a duty to disclose information concerning an unreasonable safety hazard in its Baby Foods. *See Standish-Parkin v. Lorillard Tobacco Co.*, 786 N.Y.S.2d 13, 14 (3d Dept. 2004).

In sum, Defendant's motion to dismiss Plaintiffs' fraud by omission claim based on the absence of a duty to disclose should be denied.

### F.   Plaintiffs Have Article III Standing for Their Injunctive Relief Claims

Beech-Nut argues Plaintiffs lack Article III standing to pursue injunctive relief. Br. at 25. To establish Article III standing for injunctive relief, a plaintiff must allege a threat of injury which is "actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 167, 185 (2000); *Kurtz v. Costco Wholesale Corp.*, 818 Fed. Appx. 57, 60 (2d Cir. 2020); *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018). "Past wrongs, though insufficient by themselves to grant standing, are 'evidence bearing on whether there is a real and imminent threat of repeated injury.'" *Davidson*, 889 F.3d at 967. Plaintiffs' allegations are sufficient here.

The Second Circuit has not yet determined the circumstances under which a previously deceived consumer who brings a false advertising or labeling or similar consumer protection claim can allege a threat of future injury sufficiently "real and imminent." It has, however, issued several instructive decisions in cases where plaintiffs have sought to enjoin misleading advertisements. In *Nicosia v. Amazon, Inc*., 834 F.3d 220, 239 (2d Cir. 2016), the court concluded the plaintiff lacked standing to pursue an injunction in a false advertising case because "Amazon ha[d] ceased selling [the diet product at issue] on its website, and [plaintiff had] failed to allege that he intended to use Amazon in the future to buy any products, let along food or drug products general or weight loss products in particular." In *Kurtz v. Costco Wholesale Corp.*, 818 Fed. Appx. 57, 60-61 (2d Cir. 2020), the court likewise found there was no standing because "Kurtz makes no assertion that he intends to purchase additional flushable wipes products from Costco, Kimberly-Clark, or any other company." The court concluded that "[a]bsent any stated intention to buy additional flushable wipes products in the future, Kurtz has not pleaded an injury that is 'actual and imminent, not conjectural or hypothetical.'" *Id*. And, in *Kommer v. Bayer Cons. Health*, 710 Fed. Appx. 43 (2d

Cir. 2018), the plaintiff "concede[d] [that] now he knows of [d]efendants' alleged deception and false advertising, he is no longer likely to purchase another [of defendants' products] ever again." *Id.* at 44.  The court found that concession defeated injunctive standing.  *Id.*

Unlike these Second Circuit decisions, several Plaintiffs allege they "would be willing to purchase Beech Nut's baby food products in the future if they could be certain that they do not contain (or have a material risk of containing) heavy metals."  ¶¶17, 24, 46, 54, 56, 62, 66, 71, 86. Plaintiffs also allege "Defendant's unlawful conduct is continuing, with no indication of Defendant's intent to cease this fraudulent course of conduct, posing a threat of future harm[.]." *See, e.g.*, ¶¶368, 388, 397, 413, 424, 439, 450.  Many courts have found that comparable allegations support standing.  *See Davidson*., 889 F.3d 970-71 (finding standing to pursue injunctive relief where plaintiff alleged she "continues to desire to purchase wipes that are suitable for disposal in a household toilet;" and would purchase truly flushable wipes manufactured by [Kimberly-Clark] if it were possible," but has "no way of determining whether the representation 'flushable' is in fact true.").  A number of district courts in the Second Circuit have explicitly followed *Davidson*. *See, e.g., Morales v. Kimberly-Clark Corp.*, 2020 WL 2766050, *4-5 (S.D.N.Y. 2020); *Jackson-Mau v. Walgreen Co.*, 2019 WL 5653757, at *3 (E.D.N.Y. Oct. 31, 2019); *Wai Chu v. Samsung Elec. Am., Inc.*, 2020 WL 1330662, at *4 & n.1 (S.D.N.Y. Mar. 23, 2020).  Even prior to *Davidson*, districts courts – inside and outside the Second Circuit – had reached similar results.  *See, e.g., Ackerman v. Coca-Cola Co.*, 2013 WL 7044866, at *15, n. 23 (E.D.N.Y. July 18, 2013) (citing cases).[15] The Court also should follow *Davidson*.

### G.    Beech-Nut's Other Arguments as to the Common Law Claims Lack Merit

#### 1.    Plaintiffs' Breach of Express Warranty Claim Is Adequately Pleaded

Beech-Nut contends Plaintiffs' breach of express warranty claim "fail[s] for the same

---

[15]  Notwithstanding these decisions, there is a split among the district courts in the Second Circuit with respect to the requirements for pleading Article III standing to pursue injunctive relief in consumer protection cases. *See, e.g., Hesse v. Godiva Chocolatier, Inc*., 463 F. Supp.3d 453, 464 (S.D.N.Y. 2020) (noting the split; rejecting *Davidson*; citing cases going both ways).

reasons as their fraud claims." Br. at 26. Plaintiffs interpret this abbreviated argument to mean that Plaintiffs have failed to plead an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain[.]" N.Y. U.C.C. § 2-313(1)(a); *see also Singleton v. Fifth Generation, Inc*., 2016 WL 406295, at *11 (N.D.N.Y. Jan. 12, 2016). As discussed above, Beech-Nut expressly warranted and represented to Plaintiffs that its Baby Foods were and are safe, healthy, suitable for consumption by infants and young children, and adequately tested by way of packaging and labels, and through other forms of uniform, nationwide marketing, its website and on social media and in connection with the sale of the Baby Foods to Plaintiffs. *See supra* Sec. III.D.2; ¶¶95-113, 283-285. Courts in this Circuit have held that "product labels and advertisements can create express warranties." *Mason v. Reed's Inc.,* 515 F. Supp. 3d 135, 146 (S.D.N.Y. 2021); *In re Frito-Lay*, 2013 WL 4647512, at *27. And, "what a reasonable consumer's interpretation might be is a matter of fact" that cannot be decided on a motion to dismiss. *Ault v. J.M. Smucker Co*., 2014 WL 1998235, at *6 (S.D.N.Y. May 15, 2014).

Beech-Nut next argues that "the laws of thirty-two states require Plaintiffs to plead reliance on an alleged express warranty[.]" Br. at 26 and Def. App'x A. As discussed above, Plaintiffs have adequately pled reliance to the extent required. *See supra* Sec. III.D.4.[16] Beech-Nut then asserts that "the laws of twenty-eight states require privity between the Plaintiffs and Beech-Nut in order to state a claim for breach of *express or implied* warranty." Br. at 26 and Def. App'x B. Importantly, courts refuse to dismiss warranty claims at the motion to dismiss stage due to the fact-specific nature of the inquiry. *See, e.g*., *In re Allergan Biocell Textured Breast Implant Prod. Liab. Litig*., 537 F. Supp. 3d 679 (D.N.J. 2021) (rejecting privity arguments as to express and implied warranty claims under AZ, FL, GA, ID, KY, OH, and WA law at motion to dismiss stage).

---

[16] Reliance also is not required under DE, FL, KS, MN, MT, and PA law. *See Pack & Process, Inc. v. Celotex Corp.,* 503 A.2d 646, 659 (Del. Super. Ct. 1985); *Carter Hawley Hale Stores, Inc. v. Conley,* 372 So.2d 965, 968 (Fla. 3d DCA 1979); *Unified School Dist. No. 500 v. U.S. Gypsum Co.,* 788 F. Supp. 1173, 1177 (D. Kan. 1992); *Drobnak v. Andersen Corp.,* 2008 WL 80632, at *7 (D. Minn. Jan. 8, 2008); *Glacier Gen. Assur. Co. v. Cas. Indem. Exch*., 435 F. Supp. 855, 860 (D. Mont. 1977); *Samuel-Bassett v. Kia Motor Am., Inc.,* 34 A.3d 1, 25 (Pa. 2011).

Moreover, Beech-Nut is wrong that privity is required under the applicable circumstances of this case under many state laws. For example, under New York law, a plaintiff need not be in privity with a defendant to prevail on breach of express warranty claim. *See Suarez v. California Nat. Living, Inc.*, 2019 WL 1046662, at *8 (S.D.N.Y. Mar. 5, 2019); *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014); *Mancuso v. RFA Brands, LLC*, 454 F. Supp. 3d 197, 207 (W.D.N.Y. 2020).[17] Similarly, many states recognize exceptions to the privity requirement for breach of implied warranty claims.[18]

_____

[17] The laws of AZ, CA, GA, KY, NY, NC, OH, OR, TX, UT, VT, and WA do not require or recognize exceptions to the privity requirement for express warranty claims, and Beech-Nut's cited cases do not support its position under MT and NV law. *De Shazer v. Nat'l RV Holdings, Inc.,* 391 F. Supp. 2d 791, 794-95 (D. Ariz. 2005); *Allen v. Similasan Corp.*, 306 F.R.D. 635 (S.D. Cal. 2015); *Hemmings v. Camping Time RV Centers, LLC*, 2017 WL 4552896, at *6 (N.D. Ga. Oct. 11, 2017); *Naiser v. Unilever U.S., Inc.,* 975 F. Supp. 2d 727, 740 (W.D. Ky. 2013); *Randy Knitwear v. Am. Cyanamid Co.*, 181 N.E.2d 399, 403 (N.Y. 1962); *Kinlaw v. Long Mfg. N.C., Inc.*, 298 N.C. 494, 500, 259 S.E.2d 552, 557 (N.C. 1979); *Forsher v. J.M. Smucker Co.*, 2020 WL 1531160, at *9 (N.D. Ohio Mar. 31, 2020); *Waters v. Electrolux Home Prod., Inc.,* 154 F. Supp. 3d 340, 348 (N.D.W. Va. 2015); *Smith v. Ethicon Inc.*, 2021 WL 3578681, at *7 (D. Or. May 13, 2021), *report and recommendation adopted*, 2021 WL 3575099 (D. Or. Aug. 12, 2021); *U.S. Tire-Tech, Inc. v. Boeran, B.V.,* 110 S.W.3d 194, 198 (Tex. App. 2003); *State v. GAF Corp.,* 760 P.2d 310, 315 (Utah 1988); *Vt. Plastics, Inc. v. Brine, Inc.*, 824 F. Supp. 444, 453 (D. Vt. 1993), *aff'd*, 79 F.3d 272 (2d Cir. 1996); *Fortune View Condo. Ass'n v. Fortune Star Dev. Co.,* 151 Wash. 2d 534, 541 (2004). Further, Beech-Nut's cited case *Plant Food Co-op v. Wolfkill Feed & Fertilizer Corp*., 633 F.2d 155, 160 (9th Cir. 1980), held that privity was ***not*** required for warranty claims. *Newmar Corp. v. McCrary*, 309 P.3d 1021, 1026 (Nev. 2013) also is inapposite because the privity discussion was specific to the context of revocation of acceptance, which is not at issue here.

[18] The laws of CA, CT, FL, GA, IL, KS, KY, MI, NY, NC, OH, VT, and VA recognize exceptions to the privity requirement for implied warranty claims, and Beech-Nut's cited cases do not support its position under NV and UT law. *See Bland v. Sequel Nat. Ltd*., 2019 WL 4674337, at *3 (N.D. Cal. Aug. 2, 2019) (privity exception for foodstuffs, even without physical injury); *In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig*., 2021 WL 222776, at *17 (D.N.J. Jan. 22, 2021) (privity not required, FL and GA law); *id.*, at *17 (privity imputed under FL, GA, IL, VT law "when the manufacturer has made express warranties to the ultimate consumer"); *id.*, at *18 (CT, NY recognize privity exception for food); *Gonzalez v. Pepsico, Inc*., 489 F. Supp. 2d 1233, 1246 (D. Kan. 2007) (privity requirement in consumer transactions abolished); *Pack v. Damon Corp*., 434 F.3d 810, 820 (6th Cir. 2006) (privity requirement abandoned, MI law); *Johnson v. Smith & Newphew, Inc.*, 2022 WL 3327767, at *3 (W.D.N.C. Aug. 11, 2022) (privity exception where manufacturer intends warranties for buyer); *In re Allergan Biocell Textured Breast Implant Prod. Liab. Litig.*, 537 F. Supp. 3d 679, 746-47 (D.N.J. 2021) (same, KY law); *Louisville Gas & Elec. Co. v. Continental Field Systems, Inc*., 420 F. Supp. 2d 764, 770 (W.D. Ky. 2005) (same); *Buettner v. R.W. Martin & Sons, Inc*., 47 F.3d 116, 118 (4th Cir. 1995) (same, VA law); *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig*., 45 F. Supp. 3d 706, 715 (N.D. Ohio 2014) (OH law recognizes implied warranty in tort, which doesn't require privity). As stated in footnote 17, Beech-Nut's cited cases under NV law are inapposite, and its UT cases do not support its position. *Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 221 P.3d 234, 252 (Utah 2009) relates to the sale of new homes. The facts of *Davidson Lumber Sales, Inc. v.*

### 2.    Plaintiffs' Implied Warranty Claim Is Adequately Pleaded

Beech-Nut argues Plaintiffs' breach of implied warranty claim fails because Plaintiffs cannot plausibly allege the amount of heavy metals in the Baby Foods renders them unsafe.  Br. at 27.  First, this impermissibly seeks to factually contradict Plaintiffs' allegations.  Even if the FDA's statements are proper for judicial notice, the Court **cannot** consider the statements for their truth.  *See Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 412 (S.D.N.Y. 2011); Fed. R. Evid. 201.  In a food case, merchantability is breached if the product lacks "even the most basic degree of fitness for ordinary use." *Bland*, 2019 WL 4674337, at *4.  A plaintiff is not required to prove at the pleading stage that the level of contamination surpassed some threshold.  *Id*.  Second, this argument defies common sense and well-settled law.  A product is not merchantable or fit for its ordinary purpose if it is contaminated.  *See In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*, 2021 WL 222776, at *16 (D.N.J. Jan. 22, 2021). Here, the Complaint is rife with allegations that the Baby Foods include undisclosed contaminants that are unfit for infants and children to consume based on the health risks.  ¶¶1-2, 4-8, 12, 122-175, 300, 306-07.  Plaintiffs also cite congressional reports and reports from third party organizations that found that Beech-Nut Baby Foods contain dangerously high levels of heavy metals and that Beech-Nut's safety standards to detect and prevent heavy metals in their products do not meet either industry standards or regulatory standards. ¶¶4-8, 10, 131, 150-156, 158-164, 171-175.  Plaintiffs thus adequately allege the Baby Foods are unfit for their ordinary use.  *Valsartan*, 2021 WL 222776, at *16; *Gonzalez*, 489 F. Supp. 2d at 1247; *Porrazzo*, 822 F. Supp. 2d at 421-22; *Bland*, 2019 WL 4674337, at *4.

Notably, Beech-Nut fails to cite a single case granting a motion to dismiss where the plaintiff specifically alleged that a food product was unsafe for consumption, and none of the cases Beech-Nut cites involve a product that was challenged for the reason it is here – because it was contaminated by or contained a non-food substance.  Instead, in each case Beech-Nut cites, the implied warranty claim was that the labeling and advertising of food products were misleading

---

*Bonneville Inv., Inc.*, 794 P.2d 11, 18 n.8 (Utah 1990) do not seem relevant.

because of the presence or absence of some *food* ingredient – for example, artificial vanilla instead of real vanilla, evaporated cane juice instead of sugar, or a mixture of butter and vegetable oil rather than pure butter.[19] The implied warranty claims failed in those cases solely because plaintiffs, unlike Plaintiffs here, made *no* allegation that the product was unfit for human consumption – and indeed, could not because the ingredients at issue were well-recognized food ingredients, not toxic substances that bioaccumulate.

Additionally, Beech-Nut ignores that Plaintiffs have alleged that the Baby Foods not only are not "fit for the ordinary purposes for which such goods are used," under U.C.C. §2-314(2)(c) (which is the only prong Beech-Nut focuses on), but also do not "conform to the promises or affirmations of fact made on the container or label if any," under U.C.C. §2-314(2)(f).  ¶¶305, 300-10, 316.  As discussed above, Beech-Nut made affirmations on the packaging and labels of the Baby Foods (*see supra* Sec. III.D.2, III.G), and the Baby Foods failed to conform to these affirmations because they contained heavy metals.  These allegations are adequate to state a claim for breach of implied warranty under U.C.C. §2-314(2)(f).  *See Zeiger*, 304 F. Supp. 3d at 855; *Webb v. Dr Pepper Snapple Grp., Inc*., 2018 WL 1955422, at *5 (W.D. Mo. Apr. 25, 2018). *In re 5-hour ENERGY Mktg. & Sales Pracs. Litig*., 2017 WL 385042, at *12 (C.D. Cal. Jan. 24, 2017).

### 3.   The Economic Loss Rule Does Not Bar Plaintiffs' Negligent Misrepresentation Claims Under Most State Laws

Beech-Nut claims the economic loss rule ("ELR") bars a negligent misrepresentation under California, Colorado, Connecticut, Delaware, Illinois, Indiana, Minnesota, Nevada, New Jersey, New York, Pennsylvania, South Carolina, and Virginia law.  Br. at 27 and Def. App'x F.  However, California, Colorado, Connecticut, Delaware, Nevada, New Jersey, South Carolina, and Virginia recognize an exception to the ELR where the plaintiff alleges defendant's fraudulent inducement

---

[19]  *Thomas v. Costco Wholesale Corp.*, 2014 WL 5872808, at * 3 (N.D. Cal. Nov. 12, 2014) (products not unfit for ordinary use on the basis that they used evaporated cane juice instead of sugar); *Barreto v. Westbrae Natural, Inc.*, 518 F. Supp. 3d 795, 806-07 (S.D.N.Y. 2021) (same, artificial vanilla rather than natural vanilla); *Kamara v. Pepperidge Farm, Inc.*, 570 F. Supp. 3d 69, 80 (S.D.N.Y. 2021) (same, vegetable oil rather than butter.).

caused their economic loss, as Plaintiffs do here.  ¶¶318-324, 329-335, 338-46.[20]  Additionally, Pennsylvania courts do not apply the ELR to claims stemming from reliance on false information under Section 552 of the Restatement (Second) of Torts.  *Loduca v. WellPet LLC*, 2021 WL 2948848, at *6 (E.D. Pa. July 13, 2021).  Thus, the ELR is not a basis to dismiss Plaintiffs' negligent misrepresentation claim under most states' laws.

### 4.  Plaintiffs' Unjust Enrichment Claim Is Not Duplicative

Beech-Nut argues Plaintiffs' unjust enrichment claim under New York law should be dismissed as duplicative.  Br. at 28.[21]  But in fact, an unjust enrichment claim can stand where a plaintiff's other claims require a distinct element of proof.  *See Acquard v. Big Heart Pet Brands, Inc*., 2020 WL 12904361, at *7 (W.D.N.Y. Nov. 30, 2020), *report and recommendation adopted*, 2021 WL 6550088 (W.D.N.Y. Jan. 4, 2021).  As in *Acquard*, each of Plaintiffs' claims requires an element of proof different from their unjust enrichment claim, and therefore, Beech-Nut's argument should be rejected.  Additionally, unjust enrichment can be pleaded in the alternative to other claims.  *See* Fed. R. Civ. P. 8(d)(2); Ex. 1, Walmart MTD Order at 1.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Motion be denied.

---

[20] *Lemus v. Rite Aid Corp.*, 2022 WL 2721385, at *8 (C.D. Cal. July 7, 2022); *Schmetter & Assoc. v. Bernzott Capital Advisors*, 2019 WL 4640801, at *6 (D. Colo. Jul. 18, 2019); *Van Reese v. Unleaded Software, Inc*., 373 P.3d 603, 607 (Colo. 2016); *Ulbrich v. Groth*, 310 Conn. 375, 406 (Conn. 2013); *Livery Coach Sol., L.L.C. v. Music Express/E., Inc*., 245 F. Supp. 3d 639, 646 (D. Del. 2017); *Liguori v. Hansen*, 2016 WL 756526, at *7-8 (D. Nev. Feb. 25, 2016); *Kearney v. Bayerische Motoren Werke Aktiengesellschaft*, 2018 WL 4144683, at *14 (D.N.J. Aug. 29, 2018); *Trevillyan v. APX Alarm Sec. Sys., Inc*., 2011 WL 11611, at *8 (D.S.C. Jan. 3, 2011); *4D-Enter., LLC v. Aalto Hyperbaric Oxygen, Inc*., 2020 WL 13200492, at *3 (E.D. Va. May 22, 2020).

[21] This claim is brought on behalf of each state subclass.  ¶¶350-356.  Citing only New York law, Beech-Nut has waived any challenge under other state laws. *See Van Valkenberg ex rel. B.G. v. Astrue*, 2010 WL 2400455, at *19 (N.D.N.Y. May 27, 2010).

Dated:  October 24, 2022                    Respectfully submitted,

By: /s/ Erin Green Comite
Erin Green Comite (Bar Roll #702705)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
156 S. Main St., P.O. Box 192
Colchester, CT 06415
Tel.: (860) 537-5537
Fax: (860) 537-4432
ecomite@scott-scott.com

Steven L. Bloch (Bar Roll #509339)
Ian W. Sloss (Bar Roll #702557)
Zachary Rynar (Bar Roll #702588)
**SILVER GOLUB & TEITELL LLP**
184 Atlantic Street
Stamford, CT 06901
Tel.: (203) 325-4491
Fax: (203) 325-3769
sbloch@sgtlaw.com
isloss@sgtlaw.com
zrynar@sgtlaw.com

*Co-Lead Interim Counsel*
*for Plaintiffs and the Putative Class*

James E. Hacker (Bar Roll #101888)
Randolph Treece (Bar Roll # 102735)
Julie A. Nociolo (Bar Roll #519914)
**E.  STEWART  JONES  HACKER  MURPHY,**
**LLP**
28 Second Street, Suite 203
Troy, NY 12180
Tel.: (518) 274-5820
Fax: (518) 274-5875
jhacker@joneshacker.com
rtreece@joneshacker.com
jnociolo@joneshacker.com

*Liaison Counsel*

36